

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 20, 2019

**BY ECF**

Honorable Edgardo Ramos
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

    Re:    *United States v. Mark S. Scott*,
              S6 17 Cr. 630 (ER)

Dear Judge Ramos:

      The Government submits this letter to: (1) request that the Court schedule trial in this matter to begin on October 7, 2019; and (2) seek an ends-of-justice continuance under the Speedy Trial Act between June 12, 2019,[1] and October 7, 2019.  This letter is intended to supplement the application that the Government made in two prior written submissions, on March 8, 2019 (Dkt. No. 47), and March 12, 2019 (Dkt. No. 57), as well as the arguments put on the record at the conference on March 18, 2019 (the "March 18 Conference").  A copy of the prior letters are attached as Exhibits A and B, respectively, and the transcript from the March 18 Conference is attached hereto and incorporated by reference as Exhibit C.  For the reasons noted previously, as well as those set forth below, October 7, 2019, is an appropriate date for trial in this matter.  Further, the exclusion of time through that date would serve the ends of justice.

## Background

      The defendant, Mark Scott, is alleged to have participated in laundering approximately $400 million in proceeds of a global pyramid scheme involving a purported cryptocurrency known as "OneCoin."  Scott was charged in a superseding S6 Indictment (the "Indictment") with one count of conspiracy to commit money laundering in violation of Title 18, United States Code, Section 1956(h), from at least 2016 through 2018.  (*See* Dkt. No. 6).  Scott was arrested and presented on September 5, 2018.  Scott has remained out on bail with the exception of a brief

---

[1] The Court has already excluded time through June 12, 2019.

period of incarceration at the outset of the case. On the date of his arrest, law enforcement agents executed search warrants at his residences, and seized more than a dozen electronic devices containing several terabytes of data.

The investigation has revealed that OneCoin Ltd., the company that markets OneCoin, is in fact a fraudulent scheme. OneCoin Ltd. was founded in or about 2014, and markets OneCoin through a multi-level-marketing network. OneCoin members receive commissions for recruiting others to purchase cryptocurrency packages. This multi-level marketing structure appears to have influenced rapid growth of the OneCoin member network. Records that the investigation team have obtained in the course of the investigation show that, between the fourth quarter of 2014 and the third quarter of 2016 alone, OneCoin Ltd. generated €3.353 billion in sales revenue and earned "profits" of €2.232 billion from OneCoin members across the world.

Scott was a prolific money launderer who assisted the founder and former leader of OneCoin, Ruja Ignatova, to launder approximately $400 million in OneCoin fraud proceeds. The defendant's money laundering was sophisticated and perpetrated through the use of financial accounts across the globe. Specifically, Scott set up a series of hedge funds registered abroad with accounts at banks located in the Cayman Islands in order to launder OneCoin proceeds. Furthermore, Scott transferred a significant portion of the funds to related accounts at banks in the Republic of Ireland. The Government will very likely call witnesses from these financial institutions, as well as other witnesses who reside overseas to testify at trial.

Given the scope of the defendant's and his co-conspirators' conduct, it is no surprise that discovery in this case has been voluminous. The Government has produced approximately a hundred thousand pages of non-privileged discovery, in addition to several terabytes worth of data of potentially privileged discovery. As noted in the Government's prior submissions, there are myriad privilege review issues that the parties will need to address before this case can proceed to trial. (*See* Exhibit A at 1-2; Exhibit C at 6-14). The Government will continue to work with defense counsel to address these issues, but it is expected that they will likely result in protracted litigation. As the Court is aware, litigation over privilege issues has already begun; the Government has moved this Court earlier this week to order the disclosure of the defendant's list of clients represented by the defendant and the attorneys who represented the defendant. (*See* Dkt. 59). The defendant opposes this request.

### The Government's Ends-Of-Justice Continuance Application

An October 7, 2019 trial date would ensure that the complex issues presented in this case —including privilege-related issues—are appropriately addressed before trial; allow the Government sufficient time to coordinate international and domestic witnesses to testify at trial; permit both parties to adequately prepare for a trial that involves a significant volume of discovery and evidence; and also protect the public's and the defendant's interest in a speedy trial. The Government accordingly requests that the Court schedule trial in this matter for October 7, 2019.

The requested continuance, and the exclusion of time under the Speedy Trial Act ("STA"), 18 U.S.C. § 3161(h)(7)(A), from June 12, 2019, until October 7, 2019, would also serve the ends of justice in this case. As a threshold issue, the Court has broad latitude to order a continuance. "The decision whether to grant a continuance is a matter 'traditionally within the discretion of the

trial judge.'" *United States v. O'Connor*, 650 F.3d 839, 854 (2d Cir. 2011) (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)). Under the STA, a defendant must generally be brought to trial within seventy days of the filing of the indictment or information or the defendant's initial appearance, whichever occurs later. *See* 18 U.S.C. § 3161(c)(1). The STA, however, "excludes from the seventy-day trial mandate certain periods covered by a court's grant of a motion for a continuance." *United States v. Lynch*, 726 F.3d 346, 356 (2d Cir. 2013). One such exclusion is the ends-of-justice continuance, which covers "[a]ny period of delay resulting from a continuance granted by any judge . . .. if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A).

To grant an ends-of-justice continuance, the district court must "set [] forth, in the record of the case . . . its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A); *see also* 18 U.S.C. § 3161(h)(7)(B) (setting forth non-exhaustive list of factors that court may consider in deciding whether to suspend the speedy trial clock so as to further the "ends of justice"). Among the factors listed in § 3161(h)(7)(B) are whether the case is so unusual or so complex due to, among other reasons, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation within 70 days. 18 U.S.C. § 3161(h)(7)(B)(ii).

Courts routinely grant ends-of-justice continuances in cases such as this that present particularly complex issues of fact and law. *See, e.g.*, *United States v. Ruggiero*, 726 F.2d 913, 925 (2d Cir. 1984) (continuances granted by district court were proper in light of the large volume of evidence, the complexity of the case, and the continuing investigation),[2] *abrogated on other ground by Salinas v. United States*, 118 S. Ct. 469 (1997); *United States v. Hickey*, 580 F.3d 922, 928 (9th Cir. 2009) (77-page indictment charging defendant with "massive fraudulent securities offerings and with misapplying and embezzling a substantial portion of the $20,000,000 raised in those offerings" supported finding that case was complex under § 3161(h)(7)(B)(ii)); *United States v. Naseer*, 38 F. Supp. 3d 269, 276 (E.D.N.Y. 2014) (ends of justice served by granting a continuance over defendant's objection given the nature of the case, the significant amount of discovery, and the importance of ensuring both parties had time to sufficiently prepare for trial); *United States v. Astra Motor Cars*, 352 F. Supp. 2d 367, 369 (E.D.N.Y. 2005) (case related to multi-state motor-vehicle theft ring involving at least 100 motor vehicles, extraordinary volume of discovery, and large number of defendants was properly designated as complex under § 3161(h)(8)(B)(ii)); *United States v. Balsiger*, 644 F. Supp. 2d 1101, 1120 (E.D. Wis. 2009) (specifically citing ongoing litigation regarding attorney-client privilege issues, as well as the large volume of discovery materials, as reasons why the ends of justice served by granting a continuance of the speedy trial deadline outweighed the best interests of the public and defendants in a speedy trial).

As set forth above, this prosecution raises complex issues of fact and law that weigh in favor of granting a continuance of the speedy trial deadline, and outweigh any interest of the public and the defendant in a speedy trial. The defendant is accused of laundering four hundred million

---

[2] The Court in *Ruggiero* cited a prior version of the STA, which contained identical statutory language as § 3161(h)(7)(B)(ii) of the current STA, but in a different subsection—3161(h)(8)(B)(ii).

3

dollars through a series of hedge funds registered abroad with accounts at banks located in the Cayman Islands. Further, the defendant transferred a significant portion of the funds to related accounts at banks in the Republic of Ireland. In addition, the underlying source of the money that Scott was laundering was from the proceeds of a complex fraud scheme that spanned the globe and resulted in billions of dollars in loss to victims. Participants in the fraud scheme, as well as the bank accounts they used in furtherance of the fraud scheme, were based in countries around the world. Further, millions of victims of the fraud scheme are believed to be located overseas. Although this is a single-defendant and single-count case at present, the underlying conduct is complex and involves numerous co-conspirators. For example, one of the top leaders of OneCoin, Konstantin Ignatov, is charged in a 32-page complaint, *see* Exhibit D, for his role in the underlying fraud scheme. The allegations set forth in that complaint underscore the complexity of this case—indeed, at the trial against Scott, the Government will likely present a significant amount of evidence concerning the underlying OneCoin fraud scheme that Scott laundered proceeds from.

Furthermore, discovery in this case is voluminous, and much of the discovery is potentially privileged. As described in detail in the Government's prior written submissions, and on the record at the March 18 Conference, there are a significant set of complex legal issues concerning the potentially privileged materials that the parties will need to litigate before this Court. All of these factors demonstrate that this case is clearly "unusual or complex" under 18 U.S.C. § 3161(h)(7)(B)(ii), and that the ends of justice served by the granting of a limited continuance to October 2019 outweigh the best interests of the public and the defendant in a speedy trial.[3]

---

[3] In addition, granting a continuance is appropriate under §§ 3161(h)(7)(B) (i) in order to avoid a miscarriage of justice that could result from denying the parties an adequate amount of time to conduct a thorough privilege review and ensure that the attorney-client rights of third parties not before this Court are protected.

**CONCLUSION**

      For all of the foregoing reasons, the Government respectfully requests that the Court grant the Government's motion to set a trial in this matter for October 7, 2019, and to exclude time under the STA from June 12, 2019 through October 7, 2019.

Very truly yours,

GEOFFREY S. BERMAN
United States Attorney

By:    /s/
     Christopher J. DiMase / Nicholas Folly/
     Julieta V. Lozano
     Assistant United States Attorneys /
     Special Assistant United States Attorney
     (212) 637-2433 / (212) 637-1060/
     (212) 335-4025

Cc:    David Garvin, Esq.
       James Nobles, Esq.