LAW OFFICES
# DAVID M. GARVIN, P.A.
200 SOUTH BISCAYNE BOULEVARD, SUITE 3150
MIAMI, FLORIDA 33131
TELEPHONE (305) 371-8101
FAX (305) 371-8848

David M. Garvin
Florida Bar Board Certified in Taxation
LLM, Tax

E-MAIL: ontrial2@gmail.com
WEBSITE: davidmgarvin.com

March 25, 2019

**BY ECF**

Honorable Edgardo Ramos
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

    **Re: United States v. Mark S. Scott,**
       **S6 17 Cr. 630 (ER)**

Dear Judge Ramos:

    Mark Scott submits this letter in support of his request for his trial in this case to commence on or about July 15, 2019, consistent with his right to a speedy trial. Mr. Scott opposes the Government's request to schedule the trial to commence on October 7, 2019.

    As discussed herein, the Government's claims that trial must be delayed to permit the Government to search electronic evidence seized six months ago from Mr. Scott pursuant to a warrant -- material that it has apparently made no effort to review to date -- cannot outweigh Mr. Scott's right to a speedy trial. Nor do the Government's other excuses for delay, such as seeking to label this one-defendant, one-count case unduly "complex," or failing to secure testimony from overseas witnesses, warrant postponing trial. Indeed, it is increasingly apparent that the Government was unprepared to prove the career-destroying accusations it made against Mr. Scott at the time it arrested him, and is unprepared to prove its case today or even within the next four months. The Government's inability to prove allegations that have resulted in the seizure of most of Mr. Scott's assets and have caused immeasurable damage to his reputation cries out not for a delayed trial, but for an expeditious one.

**Via ECF**
The Honorable Edgardo Ramos
United States District Judge
March 25, 2019
Page -2-

## Background Facts

Mr. Scott is a licensed lawyer that has practiced law for over 20 years. During this period of time, Mr. Scott has been a partner at several large and widely recognized law firms. Mr. Scott's law practice has often involved substantial real estate and financial transactions. In or about 2016, Mr. Scott formed several private equity funds. Mr. Scott sought qualified investors for these funds. The private equity funds were terminated in 2017, in part due to the changing political and economic conditions in Europe. Upon termination, and prior to September 30, 2017, Mr. Scott caused the private equity funds to return the net amount invested to each of the original investors.

The United States has alleged that the investors in the private equity funds, formed by Mark Scott, were a handful of people who were principals of a cryptocurrency company known as OneCoin. During 2016 and 2017, there were many newly formed cryptocurrency entities inexistence such as BitCoin, LiteCoin, Ethereum, Zcash, Dash, and Ripple. As of February 1, 2019 there were over 1,500 cryptocurrencies in existence.

OneCoin utilized the internet to promote and market its product. It is reported that only 3% of the investors in OneCoin reside in North America. It is unclear what portion of the 3% were residents of the United States as opposed to Canada and/or Mexico. During this period of time, the United States commenced an investigation into marketing techniques used by OneCoin. In or about 2018, the United States came to the conclusion that OneCoin was a global pyramid scheme that had raised in excess of $4 billion. The operations of OneCoin and its principals were located in Europe and the Mid-East.

During 2016 the investors in the private equity funds formed by Mr. Scott invested approximately $380 million. By the summer of 2017, Mr. Scott decided to terminate the subject equity funds and by September 2017 the net investments, approximately $340 million, were returned to the investors. The Government alleges that the $380 million invested in the equity funds came from the principals of OneCoin. The Government asserts that these funds were the result of wire fraud committed by OneCoin in the United States.

The United States arrested Mr. Scott on September 4, 2018. Mr. Scott was charged in a superseding indictment with one count of conspiracy to commit money laundering in violation of 18 U.S.C. Section 1956(h). Core to the Government's theory is that Mr. Scott knew -- at the time he was operating the private equity funds -- that the funds his investors provided were the product of unlawful activity. The superseding indictment is silent as to the specified illegal activity. This led to Mr. Scott serving a request for a bill of particulars upon the government. The

**Via ECF**
The Honorable Edgardo Ramos
United States District Judge
March 25, 2019
Page -3-

government responded that the specified unlawful activity was wire fraud.

When Mr. Scott sought to be released, the Government opposed any bond, declaring that the strength of the case and other factors made Mr. Scott was such a flight risk that he must be detained. In making this argument, the United States represented before this Court that it had "communications among Mr. Scott and the coconspirators that establishes that he knew that the money that was coming into his funds were the proceeds of the cryptocurrency scheme." (9/13/18 Tr., at 26).

During the course of discovery the defense has repeatedly requested the United States to identify the specific emails and/or documents that support its claim that Mr. Scott knew that the funds he received were the proceeds of a specified illegal activity, i.e. wire fraud. The Government has failed to identify the specific documents. Instead, the Government has responded that it has turned over everything that has been made available to it. The defense has searched the discovery produced to date and has not located any communication -- among Mr. Scott and his coconspirators or otherwise" -- that could be reasonably interpreted to suggest that Mr. Scott had any knowledge whatsoever that OneCoin was anything other than a legitimate business.

At the time that Mr. Scott was arrested on September 4, 2018, the United States executed a search warrant at his home in Miami, Florida and at his residence in Massachusetts. The United States seized all of the electronic devises at each residence including electronic devises that did not belong to Mr. Scott. This included numerous computers, tablets, and smartphones. Mr. Scott believes that the government did not have probable cause to search his home to seize all electronic devices when the government had no idea what information, if any, his telephones and other electronics devices held. Mr. Scott relies upon the ruling of the Court in *United States v. Griffith, case no. 1:13-cr-00013-1 (D.C. Cir. 2017)* as support for his position that the electronic devises should be returned to him.

The warrants in issue state on their face that the relevant period of time is 2016 through 2017. The electronic devises here in issue hold communications between Mr. Scott and his clients that have taken place over the past 20 years. The seizures of these items resulted in overbroad and unreasonable seizures.

During the past 6.5 months, the United States has not caused its designated taint team to conduct any physical or computer searches of the seized devises to narrow the universe of documents in dispute to those bearing a date within 2016 or 2017, or used other search terms

**Via ECF**
The Honorable Edgardo Ramos
United States District Judge
March 25, 2019
Page -4-

to screen materials for conceivable relevance to the case. Instead of searching the data seized, in or about February 2019, the Government requested the defense to provide the taint team with a list of Mr. Scott's clients and the names of lawyers he consulted. Mr. Scott was under no obligation to provide such a list. Indeed, the Fifth Amendment provides Mr. Scott with the right to remain silent. However, Mr. Scott agreed to provide such a list to the taint team only to insure that clients he had represented would not waive the privilege they had expected when they communicated with Mr. Scott as an attorney. Under these circumstances, Mr. Scott was within his rights to place conditions upon any agreement by him to provide the taint team the requested list. Mr. Scott agreed to provide the requested list on the express condition that it not be disclosed by the taint team to anyone, including the Government's trial team. The Government no longer wishes to honor the agreement and has requested the Court to authorize the taint team to disclose to its trial team the list provided by Mr. Scott.

The Government now argues that it is not ready for trial and it will not be ready approximately 4 months from now on July 15, 2019. The government urges the Court to hold that the case is complex and to continue the trial until October 7, 2019, as an ends-of-justice continuance under the Speedy Trial Act. Mr. Scott opposes this request.

## ARGUMENT

The United States began its investigation of OneCoin over 3 years ago in or about February 2016. Mr. Scott was arrested more than 6 months ago and has requested that his trial take place in July 2019 approximately 4 months from now. Nonetheless, the United States continues to lay blame upon Mr. Scott for the Government's challenges in being prepared to go to trial. Remarkably, the Government has not begun the process of trying to identify documents dated 2016 and/or 2017. It is completely disingenuous for the Government to suggest that its efforts have been in anyway hindered by anything that Mr. Scott has or has not done.

Mr. Scott agreed to provide a client list to the taint team to assist it in conducting its privilege review. The Government's taint team agreed not to disclose the list to anyone including the trial team. Now that the list has been prepared and provided to the taint team the Government should not be permitted to argue that the document is not privileged and the Court should authorize the taint team to ignore the agreement previously reached with Mr. Scott to keep the list confidential. This entire dispute falls within the ambit of the phrase: "No good deed

**Via ECF**
The Honorable Edgardo Ramos
United States District Judge
March 25, 2019
Page -5-

goes unpunished." The Government should not be permitted to obtain agreements by promises it has no intention of honoring.

It is widely recognized that taint team members must not have been and may not be involved in any way in the investigation or prosecution of the defendants subject to indictment — presently or in the future. Taint team members are prohibited from disclosing at any time to the prosecution team the search terms submitted by the defendants and disclosing to the prosecution team any e-mails or information contained in any e-mails, subject to review until the taint team process is complete and in compliance with its terms. *See, Preventive Med. Assocss. v Commonwealth*, 465 Mass. *810, 828 (2013);* (Court considered each of these four requirements to be an essential component -- a sine qua non -- of a valid taint team procedure that satisfied 6th Amendment).

In the instant case, the Government sought and obtained overly broad warrants. The Government seized all of the devices located in Mr. Scott's homes including devices that did not belong to Mr. Scott. Inexplicably, the Government has permitted over half a year to lapse and has not yet begun to review the devices seized. The Government's further delay of the trial past July 15, 2019 is simply inexcusable.

The Government recites that it will not be ready due to the voluminous amount of discovery. The Defense, having far fewer resources available than the Government, has completed review of the hundreds of thousands of documents provided to date. Had the Government conducted a thorough investigation prior to indicting Mr. Scott, the Government would not be in this position. Nonetheless, further delay by the United States is not warranted and would be prejudicial to Mr. Scott. *See, United States v Gonzales, 137 F.3d 1431 (10th Cir. 1998)* (The prosecutor's statement that he could not prepare for trial in the allotted time was not an adequate basis for granting an ends-of-justice Speedy Trial continuance.) Although Ms. Korologos indicated in Court that the taint team had begun privilege review in this investigation over all, she made it clear to the defense earlier that day that the Government has not yet begun to review the documents contained on the electronic devices seized from Mr. Scott's two residences on September 4, 2018.

Given the Government's taint teams inefficient use of the past 6 months and the Government's position that it will not be ready with 4 additional months, the defense believes that the entire system should be abandoned and replaced with a special master. In support for this position Mr. Scott cites the following cases:

Via ECF
The Honorable Edgardo Ramos
United States District Judge
March 25, 2019
Page -6-


In the case of <u>In re Grand Jury Subpoenas (04-124-03 & 04-124-05)</u>, 454 F.3d 511, 523 (6th Cir. 2006; the Sixth Circuit noted:

> Furthermore, taint teams present inevitable, and reasonably foreseeable, risks to privilege, for they have been implicated in the past in leaks of confidential information to prosecutors. That is to say, the government taint team may have an interest in preserving privilege, but it also possesses a conflicting interest in pursuing the investigation, and, human nature being what it is, occasionally some taint-team attorneys will make mistakes or violate their ethical obligations. It is thus logical to suppose that taint teams pose a serious risk to holders of privilege, and this supposition is substantiated by past experience. In *United States v. Noriega*, 764 F. Supp. 1480 (S.D. Fla. 1991), for instance, the government's taint team missed a document obviously protected by attorney-client privilege, by turning over tapes of attorney-client conversations to members of the investigating team. This *Noriega* incident points to an obvious flaw in the taint team procedure: the government's fox is left in charge of the appellants' henhouse, and may err by neglect or malice, as well as by honest differences of opinion.

In *In re Search Warrant for Law Offices Executed on March 19, 1992*, 153 F.R.D. 55, 59 (S.D.N.Y. 1994), the court noted "that reliance on the implementation of a Chinese wall, especially in the context of a criminal prosecution, is highly questionable, and should be discouraged." *See also United States v. Stewart*, 2002 U.S. Dist. LEXIS 10530, 02 CR 396, 2002 WL 1300059 (S.D.N.Y. June 11, 2002) (appointing special master to review documents seized from criminal defendant's law office). This Court agreed that reliance on review by a "wall" Assistant in the context of a criminal prosecution should be avoided when possible. Therefore, if the volume of the documents precludes review by this Court, the Court will appoint a special master to review the documents seized to determine if they are subject to any relevant privilege. <u>In re All Funds on Deposit in Accounts in the Names of Nat'l Elecs., Inc.</u>, No. M-18-65 (HB), 2005 U.S. Dist. LEXIS 19490, at *7-9 (S.D.N.Y. Sep. 6, 2005)

Reliance on the implementation of a Chinese wall, especially in the context of a criminal prosecution- particularly in reviewing files of a practicing lawyer -- is highly questionable, and

**Via ECF**
The Honorable Edgardo Ramos
United States District Judge
March 25, 2019
Page -7-

should be discouraged. The appearance of Justice must be served, as well as the interests of Justice. It is a great leap of faith to expect that members of the general public would believe any such Chinese wall would be impenetrable; this notwithstanding our own trust in the honor of an AUSA. Furthermore, in a case such as this the Chinese wall attorney to perform the search required the physical assistance of agents, laborers, truckmen and others not bound by the ethical considerations which affect a lawyer. *In re Search Warrant for Law Offices Executed on March 19, 1992*, 153 F.R.D. 55, 59 (S.D.N.Y. 1994).

It is the position of the Defense that this case does not involve complex issues and should not be designated as such. Mr. Scott is accused in a one count indictment alleging he assisted in laundering approximately $380 million. The Southern District of New York (SDNY) has jurisdiction over this matter, despite the fact that fewer than a dozen bank transactions between Caribbean banks and European banks passed through a correspondent bank in New York City. The SDNY prosecutes more white collar crime and money laundering cases than any other jurisdiction in the United States. Seldom are these cases declared complex for Speedy Trial purposes, and seldom if at all does the SDNY seek such a designation. Mr. Scott's case is a one count indictment with a single defendant. The matter could not be less complex. If this case is declared complex virtually every criminal case that appears in this district will qualify to be declared complex. It should also be noted that the discovery relevant to the institutions outlined in the Government's letter has already been provided and reviewed.

The Government's March 20, 2019 letter is a recitation of the statute and a reminder of the work it neglected to do prior to indictment. The argument laid out is weak. Discovery relevant to the allegation has already been disclosed. Additional time to accommodate review is unnecessary and would only cause undue delay. Lack of preparation by the Government does not warrant an ends-of-justice continuance. Nor do issues of privilege. *United States v Toombs*, 574 F.3d 1262 (10th Cir. 2009).

The United States now alleges that there are victims of the alleged wire fraud in the SDNY. Over 97% of the alleged victims reside outside of the United States. The presence of every alleged victim is not necessary to move forward with trial. In preparation for release of the indictment against Mr. Scott, the United States had nearly 18 months to coordinate with the alleged victims. *See, Zedner v United States*, 547 U.S. 489 (2006). Inadequate reasons to justify the ends-of-justice continuance have been provided. *United States v Larson*, 627 F.3d 1198 (10th

Via ECF
The Honorable Edgardo Ramos
United States District Judge
March 25, 2019
Page -8-

Cir. 2010). An "ends of justice" continuance needs to be specifically limited in time and specific findings must be made in the record to justify such a continuance under 18 U.S.C. §3161(h)(8)(A). *United States v Jordan*, 915 F.2d 563 (9th Cir. 1990).

The Second Circuit has enforced a defendant's right to a speedy trial. The Court has pointed out the psychological harm suffered by the defendant resulting from the Government's delay and indecision. As recently as last week, the topic was covered in the media following last Monday's decision in *United States v Black*, 18-496 (2d Cir., decided March 18, 2019). *See also, United States v Tigano*, 880 F.3d. 602 (2d Cir. 2018); *United States v Pennick*, 713 F. App'x 33 (2d Cir. 2017); *United States v. New Buffalo Amusement Corp.*, 600 F.2d 368, 377 (2d Cir. 1979) (quoting Barker, 407 U.S. at 531); see also *United States v. Carini*, 562 F.2d 144, 149-50 (2d Cir. 1977); and *United States v. Bert*, 814 F.3d 70, 85 (2d Cir. 2016).

As previously noted, Mr. Scott's mother resides in Germany and is terminally ill with Stage 4 cancer. The conditions of Mr. Scott's release prevent him from traveling to visit his mother. A period of eleven additional weeks of delay could be the difference between Mr. Scott ever seeing his mother again, or not. Mr. Scott was raised predominantly by his mother in Germany, while his father resided in the United States. Mr. Scott struggles with this daily, and may be forced to watch his mother die from afar. The stress of his family situation, along with financial losses he continues to incur as a side effect of this matter can in part be alleviated by proceeding to trial in July 2019. The best interests of the public are to proceed to trial on July 15, 2019. Accordingly, an ends-of-justice continuance should not be granted.

For all of the reasons set forth above, the Mr. Scott respectfully requests that the Government's request for an ends-of-justice continuance be denied, and jury trial be set to commence July 15, 2019.

Respectfully submitted,

David M. Garvin

cc: Government's counsel