**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 17-cr-630 (ER) |
| v. | **MEMORANDUM OF LAW IN** |
| | **SUPPORT OF DEFENDANT'S** |
| MARK SCOTT, | **MOTION FOR DISCLOSURE** |
| | **OF *BRADY* MATERIAL** |
| Defendant | |
| | **ECF CASE** |

Defendant Mark Scott respectfully submits this memorandum of law in support of his Motion for Disclosure of *Brady* Material. The Government's money laundering case against Mr. Scott is entirely dependent on the crucial question of whether Mr. Scott in fact knew at the time he was operating his private equity funds that the investors in those funds had invested proceeds of criminal activity. Crucial to Mr. Scott's defense is any information in the possession or control of the prosecution team that tends to undermine the Government's unsupported allegation that Mr. Scott in fact knew he was handling criminal funds. Such information is core *Brady* material, and should be provided to the defense forthwith. The Government has responded to Mr. Scott's request for such *Brady* material in a non-comital fashion and in a way that casts doubt on whether the Government has accepted all of its *Brady* obligations in a case of this nature. Accordingly, Mr. Scott seeks through the Court an order directing the Government to immediately produce all *Brady* material in possession or control of the prosecution team, including

specific categories of information that go to the core knowledge and intent issues central to this case.

## Background

Mark Scott has for the past two decades worked as a lawyer and businessman specializing in private equity. His legal work in this area, carried out through his association and partnership with various leading law firms in the sector, including Locke Lorde, involved among other things drafting fund formation agreements, creating investment vehicles and advising his clients on the various laws and regulations governing the operation of private equity funds in various jurisdictions. While serving as a partner at Locke Lorde, Mr. Scott was introduced to several existing Locke Lorde clients. The Government now contends certain of these clients were involved in a cryptocurrency fraud scheme involving OneCoin.

Mr. Scott decided to create his own private equity venture called Fenero Funds. Through the Indictment, the Government alleges the entirety of the investment in Fenero (which it calculates as $400 million) could be sourced the cryptocurrency OneCoin and that OneCoin was a essentially a Ponzi scheme. *See* Indictment ¶2. The Indictment further alleges that Mr. Scott knew the investments in the funds he managed could be traced to illegal activity; however, the bare bones Indictment provides no detail whatsoever as to the basis for this claim. And although the Government represented to the Court that it was in fact in possession of "communications among Mr. Scott and the coconspirators that establishes that he knew that the money that was coming into his funds were the proceeds of the

cryptocurrency scheme" in connection with its efforts to detain Mr. Scott (Transcript of September 13, 2018 hearing at 26), no such communications have been produced in discovery, and the Government has refused repeated requests by the defense to identify such communications.    The Government, it appears, has assumed that because it has developed evidence through its investigation that (1) OneCoin was operating unlawfully (apparently fooling the major financial institutions OneCoin used to handle its transactions) and (2) because Mr. Scott dealt with certain people associated with OneCoin in raising funds for his private equity scheme (never mind that they were existing Locke Lorde clients), Mr. Scott *must* have known the investments in his funds were criminal in nature.  The fundamental hollowness of the Government's assumptions will be demonstrated at trial.

Given the centrality of the knowledge and intent element of the money laundering charge to Mr. Scott's defense, defense counsel submitted a letter to the Government dated January 25, 2019 and attached as Exhibit A to the Declaration of David Garvin filed in support of this motion. In this letter, Mr. Scott requested that the Government produce all *Brady* information in possession of control of the prosecution team including several specific categories of information central to Mr. Scott's defense specifically, the defense sought:

1. Any evidence that OneCoin was, during the relevant period, engaged in legitimate business activity.

2. Any evidence that any regulator, government body or judicial authority determined that OneCoin was engaged in legitimate business activity.

3. Any evidence that any financial services provider, law firm, or other third party service provider did business with OneCoin or any of its affiliates after due diligence.

4. Any evidence tending to show that Mr. Scott was not aware that any of the funds he is alleged to have laundered were proceeds of unlawful activity. Such evidence would include but is not limited to the following:

    a) Any information provided to Mr. Scott to the effect OneCoin was engaged in legitimate, non-criminal activity.  This includes but is not limited to information provided by individuals associated with OneCoin or anyone alleged to be a co-conspirator, regardless of whether that information was accurate.

    b) Any information provided to Mr. Scott to the effect OneCoin or individuals associated with OneCoin had been successfully vetted following due diligence by any third party, including but not limited to information provided by any financial institution or legal services provider.

    c) Any statement by any person interviewed by the prosecution team or otherwise obtained by the prosecution team to the effect that Mr. Scott was not aware, or did not appear to be aware, that some or all of the funds he is accused of laundering were traceable to the operations of OneCoin. With respect to this request and request d below, such statements constitute *Brady* even if the individual making the statement has at other times made statements that are inconsistent.

    i) Any statement by any person interviewed by the prosecution team or otherwise obtained by the prosecution team to the effect that Mr. Scott was not aware, or did not appear to be aware, during any period within the charged conspiracy, that OneCoin was engaged in unlawful activity.

The Government responded to the *Brady* letter on February 19 (Exhibit B), asserting broadly that it "fully recognizes its *Brady* obligations and is committed to providing timely disclosure of any such material in the possession of the prosecution team." However the particulars of its response – discussed in more detail herein – suggest that the Government's conception of its *Brady* obligations with respects to

requests two, three and four is cramped and incorrect.[1]   Accordingly, Mr. Scott

moves for an order directing the Government to immediately produce all *Brady*

material in its possession, and specifically the material called for in 2, 3 and 4.

## Argument

Under *Brady* and its progeny, the government has a "broad duty" to disclose

material information favorable to the defense in a timely manner prior to trial, in

sufficient time for the defense to make effective use of such information.   *Strickler*

*v. Greene*, 527 U.S. 263, 281 (1999).   "Evidence is favorable to the accused if it

either tends to show that the accused is not guilty or if it impeaches a government

witness." *United States v. Gil*, 297 F. 3d 93, 101 (2d Cir. 2002).   *Brady* imposes an

obligation on the prosecutors to provide any potentially exculpatory information

that may directly, or indirectly, rebut the prosecution's case "to assist the defense in

making its case," *United States v. Bagley*, 473 U.S. 667, 675 & n.6, even if that

information also contains portions that are consistent with the government's theory.

See also *United States v. Mahaffy*, 693 F.3d 113, 130-33 (2d Cir. 2012). In *United*

*States v. Rivas*, 377 F.3d 195, 199-200 (2d Cir. 2004) (vacating conviction where

Government failed to disclose witness statement that, while inculpatory in some

ways, also supported defense theory of the case).   "Brady material must be disclosed

in time for its effective use at trial." *United States v.* Coppa, 267 F.3d 132, 142 (2d

---

[1] With respect to Request One, which sought evidence that OneCoin was engaged in legitimate business activity, the Government denied possession of any such evidence but agreed to make available witness statements made by individuals who told the Government that they believed OneCoin was in fact engaged in legitimate business.

Cir. 2001). *See also Gil*, 297 F.3d at 105 (*Brady* material turned over several days in advance of trial did not enable defense sufficient time to make effective us). The Government's duty here extends not just to the federal prosecutors involved in the case, but to all other agencies which assisted in the investigation (which in this case would include the Manhattan District Attorney's Office and appears likely the NYPD). *See United States v. Gupta*, 848 F. Supp. 2d 491, 493 (S.D.N.Y. 2012) (Brady obligations extend to materials of other agencies involved in joint investigation).

In this case, the Government has alleged that Mr. Scott, acting with criminal intent, laundered "proceeds of a cryptocurrency known as 'OneCoin.'" Indictment ¶¶2, 3. Any information of which the prosecution team is aware that tends to rebut that Mr. Scott was aware that the funds he transferred were criminal proceeds, or any other element of the money laundering offense, is core *Brady* material which should be disclosed promptly in order to enable us to prepare a defense. The *Brady* obligation rests with the Government, and because only the Government knows what information has been gathered in its investigation, the defense cannot of course provide an exhaustive categorization of all types of material that may constitute *Brady* in this case. What is clear, though, is that material in the four enumerated categories must be disclosed to the defense.

> *Request Two: Any evidence that any regulator, government body*
> *or judicial authority determined that OneCoin was engaged in*
> *legitimate business activity.*

Evidence that government bodies had determined that OneCoin was engaged in legitimate business activity would constitute *Brady* material in two ways. First, such evidence could undermine the Government's allegation that OneCoin was in fact a wire fraud scheme. OneCoin operated entirely outside the United States, and if foreign regulators, courts or law enforcement officials believed OneCoin was operating lawfully and shared such findings with the Government that would tend to undermine the Government's theory. More critically, however, evidence that regulators or judicial authorities in various jurisdictions viewed OneCoin favorably, *regardless* of whether such views were accurate, would bear directly on the Government's contention that Mr. Scott understood that funds he received, if associated with OneCoin, were proceeds of criminal activity.

In response to this request, the Government noted simply that it has produced certain "legal opinions and audit reports" that OneCoin itself "made available to its members via its website." Exhibit B at 2. Mr. Scott's request is for all material in the Government's possession regarding this issue, not simply what OneCoin itself had on its website, and the Government's attempt to reframe Mr. Scott's request in this narrow fashion suggests that it fails to understand its broader obligation.

> *Request Three: Any evidence that any financial services provider, law firm, or other third-party service provider did business with OneCoin or any of its affiliates after due diligence.*

This request, for information in the Government' possession that third parties did business with OneCoin after conducting due diligence would support the

defense that during the relevant period there were no obvious indications that OneCoin was engaged in criminality, and may be impeachment evidence with respect to witnesses from such firms that the Government intends to call at trial. Indeed, Mr. Scott's knowledge defense will include his reliance on the fact that major law firms and financial firms did business with OneCoin following their own due diligence, including financial institutions that that Mr. Scott is accused of using to launder OneCoin funds.   If these third parties did not identify OneCoin as problematic at the time, then the Government's theory of the case would be severely undermined.

In response to this request, the Government both disputes that such material is *Brady* and then suggests that the defense "is free to contact" the "international financial institutions"  and other parties that were the source of "voluminous bank records" produced in discovery to "directly inquire about diligence efforts."   That response misses the point entirely.   The Government's *Brady* obligation is to produce any information it has in its possession that that falls into this category of exculpatory material, not unhelpfully suggest that the defense attempt to contact all of the parties who have shared information with Government in an effort to learn which did due diligence on OneCoin and proceeded to engage in business with them anyway.   To the extent the Government is now or later becomes aware of such exculpatory information, it should disclose it.

> *Request Four: Any evidence tending to show that Mr. Scott*
> *was not aware that any of the funds he is alleged to have laundered*
> *were proceeds of unlawful activity.*

The defense seeks any information in the Government's possession tending to show that Mr. Scott, at any point in the relevant period, was not aware that the money invested in his funds constituted criminal proceeds. This evidence could fall into several different subcategories, as articulated in request four. For example evidence that anyone investing money in Mr. Scott's funds told him that the funds were from a legitimate source, or that OneCoin was a legitimate operation would be clearly exculpatory. Evidence that alleged co-conspirators made false representations to Mr. Scott about the source of funds (or had internal discussions about doing so) would likewise support a defense that he lacked knowledge of the alleged criminal funding source. In a final example, to the extent witnesses interviewed in the course of the investigation told that Government that they did not believe that Mr. Scott knew the source of funding was illegal, or even that they didn't know one way or other, would be of substantial value to the defense, including enabling the defense to seek the testimony of such witnesses at trial. Given that much of the conduct occurred overseas, and that various witnesses may be difficult to bring before a U.S. court, it is imperative that the Government provide that information to the defense promptly so that he can make use of it while also exercising his right to a speedy trial.

The Government's response to Request Four was to argue that it was not aware of any such evidence without acknowledging such material would be *Brady*, as it clearly is, and then, somewhat contradictorily, attaching redacted witness statements from two individuals who worked with Mr. Scott and, like Mr. Scott, had

no contemporaneous understanding of any illegal activity by OneCoin.  The Government should be compelled to disclose any other material that falls within the categories in Request Four.

Dated: May 14, 2019                    Respectfully submitted,

                                        */s/   David M. Garvin*
                                       David M. Garvin
                                       Counsel for Defendant, Mark S. Scott
                                       DAVID M. GARVIN, P.A.
                                       200 South Biscayne Boulevard
                                       Suite 3150
                                       Miami, Florida 33131
                                       Tel: (305) 371-8101
                                       Fax: (305) 371-8848
                                       Email: ontrial2@gmail.com


## CERTIFICATE OF SERVICE

I hereby certify that on May 14, 2019, I electronically filed Defendant's Memorandum in Support of Motion for Disclosure of *Brady* Material with the Clerk of the District Court using its CM/ECF system, which would then electronically notify the parties in this case:

    Christopher Joseph DiMase, AUSA

    Julieta Veronica Lozano, AUSA

    Nicholas Folly, AUSA

    James Nobles, Esq.

                                        */s/ David M. Garvin*
                                       David M. Garvin, Esq.
                                       Counsel for Defendant, Mark S. Scott
                                       DAVID M. GARVIN, P.A.
                                       200 South Biscayne Boulevard Suite 3150
                                       Miami, Florida 33131
                                       Tel: (305) 371-8101
                                       Fax: (305) 371-8848
                                       Email: ontrial2@gmail.com