

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

February 19, 2019

David M. Garvin, Esq.
200 South Biscayne Blvd.
Suite 3150
Miami, FL 33131
ontrial2@gmail.com

    Re:    *United States* v. *Mark S. Scott*
            S6 17 Cr. 630 (ER)

Dear Mr. Garvin:

    The Government writes in response to your letter dated January 25, 2019 ("January 25 Letter"), in which you request disclosure of certain information that you believe may constitute exculpatory material under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny. As the Government stated in its initial discovery letter dated September 21, 2018, the Government fully recognizes its *Brady* obligations and is committed to providing timely disclosure of any such material in the possession of the prosecution team.

    As an initial matter, the Government has produced all e-mail communications in which any of the defendant's known e-mail addresses appear in the e-mail header (*i.e.*, to, from, cc, and bcc fields) that the Government has located in its database.[1] (See MS_USAO_00000802 – MS_USAO_00002734; MSPP_USAO_003864 – MSPP_USA0_028563). These include, among other communications: (a) direct communications between the defendant and Ruja Ignatova, one of the founders and leaders of OneCoin, in the months leading up to the establishment and use of the Fenero funds ("Fenero Funds") to launder the proceeds of the OneCoin fraud scheme; and (b) communications copying David Pike and others with representatives of Apex Fund Services ("Apex"), and a recording of a telephone call with Apex representatives, in which Scott was directly questioned about the link between funds flowing into the Fenero Funds bank accounts ("Fenero Accounts") and OneCoin. Additionally, the Government anticipates presenting at trial, among other evidence, witness testimony establishing that the defendant was aware that monies transferred into the Fenero Funds represented proceeds of the OneCoin fraud scheme.[2]

---

[1] The e-mail addresses used by the defendant presently known to the Government are:
(a) msscott@msicbvi.com; (b) msscottlaw@gmail.com; (c) Mark.Scott@lockelord.com;
(d) mark@msscottlaw.com; (e) scottmslaw@gmail.com; (f) msscott@arnstein.com;
(g) Mark.Scott@hklaw.com; and (h) MSScott@duanemorris.com.

[2] Indeed, during a January 16, 2019 telephone call, the Government informed you that it intended to present witness testimony demonstrating that the defendant knew that OneCoin was a fraudulent scheme.



Letter to David M. Garvin, Esq.
February 19, 2019

With respect to the specific inquires posed in your January 25 Letter, the Government hereby responds as follows:

1. The Government is not aware of any evidence that OneCoin was, during the relevant period, engaged in any legitimate business activity. The Government's investigation to date—including, but not limited to, its review of the e-mail communications produced to you by letter dated January 3, 2019—has revealed that OneCoin was originally conceived of, and ultimately executed as, a fraud scheme. While OneCoin Ltd. and its associated business entities on occasion contracted with legitimate service providers and vendors in order to further the scheme, its core business of marketing and selling so-called "OneCoin trader packages" to its members was completely fraudulent.

It bears noting that persuading victims of the legitimacy and value of the OneCoin cryptocurrency was a critical feature of the fraud scheme. Indeed, the Government has interviewed a number of witnesses who invested in OneCoin trader packages under the mistaken belief—which was based upon misrepresentations made by the leaders of OneCoin and lower-level OneCoin promoters—that the OneCoin cryptocurrency was valuable and likely to appreciate. Although some of these witnesses have since come to believe that OneCoin is a fraud scheme and that the "tokens" and OneCoins they purchased via OneCoin trader packages are worthless, other such witnesses continue to hope and believe that OneCoin operates a legitimate cryptocurrency business and that their OneCoin investments may someday appreciate in value. While the Government submits that the subjective beliefs of these victims regarding the legitimacy of the OneCoin fraud scheme are not exculpatory as to the defendant—in particular, that their beliefs do not bear on the defendant's knowledge regarding the fraudulent nature of the scheme or the criminal nature of the proceeds he helped launder—the Government will make the reports of these interviews available for your inspection if you wish to review them.

2. The Government has produced in discovery various publicly available legal opinions and audit reports obtained by the Government that OneCoin made available to its members via its website in furtherance of the fraud scheme. (*See* USAO_00114798 – USAO_00114900; USAO_00114940 – USAO_00115000). Additional materials of this nature may be included in the potentially privileged materials that have been produced to the defendant by the Government's filter team.[3]

3. The Government submits that the fact that a third party services provider engaged in business with OneCoin after conducting its own individually prescribed diligence on OneCoin does not constitute *Brady* material as to the defendant. Based on the Government's investigation, OneCoin and its principals frequently utilized intermediary business entities, such as the Fenero Funds, to mask their involvement in financial transactions and thereby frustrate diligence efforts. *See United States v. Bonventre*, No. 10 CR 228 (LTS), 2013 WL 2303726, at

---

[3] As noted in the Government's February 15, 2019 letter regarding privilege review in this matter, these potentially privileged materials have not been made available to the prosecution team.

*8 (S.D.N.Y. May 28, 2013), *aff'd in part*, 646 F. App'x 73 (2d Cir. 2016) ("The fact that certain knowledge could be helpful to the defense, or that the Government's fraud case necessarily involves evidence that victims and regulators were lied to and misled and could to that extent be consistent with defense theories, does not render evidence of such third-party deception exculpatory in the *Brady/Giglio* sense.").

Nonetheless, OneCoin and its principals purportedly engaged various attorneys and auditors, which allegedly conducted diligence on OneCoin, as evidenced by the legal opinions and audit reports described above that have been produced to you. Moreover, the Government has produced voluminous bank records obtained from international financial institutions in connection with bank accounts that were used to transact OneCoin trader package purchases and to hold and transmit aggregated OneCoin fraud proceeds. Of course, the defendant is free to contact these attorneys, auditors, and financial institutions directly to inquire about diligence efforts performed in connection with OneCoin. Again, however, it is the Government's position that the fact that such third parties may have conducted due diligence on OneCoin and subsequently continued to have dealings with OneCoin does not constitute *Brady* material.

Finally, it bears noting that the Government has also produced voluminous records received from financial institutions and fund administrators in the Cayman Islands, Ireland, and the United Kingdom related to the Fenero Funds and various Fenero Accounts. Significantly, these records include documents and communications evidencing certain due diligence efforts performed by those financial institutions in connection with the Fenero Funds themselves.

4. The Government's evidence demonstrates that the defendant was aware that the monies he laundered through the Fenero Funds were the proceeds of illegal activity, specifically, the OneCoin fraud scheme. The Government is not aware of evidence establishing that the defendant believed that OneCoin was a legitimate business enterprise, or that he was provided with any particular materials or information that would have led him to that conclusion. Nor is the Government aware of any witness statement to the effect that the defendant was unaware of OneCoin's fraudulent nature.

With respect to due diligence efforts, as described above, the Government has produced records revealing due diligence conducted in relation to the Fenero Funds and Fenero Accounts. The Government expects the evidence will show, however, that the defendant misrepresented critical facts in connection with such diligence inquires. In addition, as described above, the Government has produced purported legal opinions and audit reports obtained by OneCoin and provided to OneCoin investors in furtherance of the fraud scheme.[4]

---

[4] With respect to paragraph 4(b) of the January 25 Letter, requesting information provided to the defendant "to the effect OneCoin . . . had been successfully vetted following due diligence by any third party," as noted above, the Government submits that such evidence, even if it exists, would not constitute *Brady* material as to the defendant. *See Bonventre*, 2013 WL 2303726, at *8.

Letter to David M. Garvin, Esq.
February 19, 2019

      The Government's evidence further establishes that the defendant was aware that the funds transferred into the Fenero Funds ultimately derived from the OneCoin fraud scheme. That said, the Government has interviewed several individuals to whom the defendant has made, among other statements, self-serving claims to the effect that the Fenero investors included European entities and individuals, and that the defendant's conduct in operating the Fenero Funds was generally lawful and in compliance with advice received from attorneys and auditors. Specifically, the Government has interviewed two individuals who held titles at MSS International Consultants (BVI) Ltd. ("MSSI-BVI"): (a) Nicole Huesmann, Esq., who held the title of General Counsel of MSSI-BVI; and (b) David Pike, who was one of the two directors of MSSI-BVI, along with the defendant. The reports of their interviews are attached hereto as Exhibits A through D.[5] While these interview reports cover topic areas far exceeding the scope of the requests set forth in your January 25 Letter, in an abundance of caution and with the exception of very limited redactions, the Government is producing the reports in full.

      Please note that, to the extent that the defendant wishes to communicate with either Ms. Huesmann or Mr. Pike in connection with this matter, the defendant should do so through the attorneys who represent them. Specifically, Ms. Huesmann is represented in this matter by Harry Solomon, Esq., and Mr. Pike is represented in this matter by Martin Raskin, Esq. and Jane Raskin, Esq.

      Sincerely,

      GEOFFREY S. BERMAN
      United States Attorney

by:      /s/
      Christopher J. DiMase/Nicholas S. Folly/
      Julieta V. Lozano
      Assistant United States Attorneys
      Special Assistant United States Attorney/
      (212) 637-2433 / 1060 / (212) 335-4025

cc:    James Nobles, Esq.
      45 Exchange Blvd
      Suite 275
      Rochester, NY 14614
      james@noblesdefense.com

---

[5] Specifically, Exhibits A and B are reports regarding interviews of Ms. Huesmann on September 5, 2018 and December 5, 2018, respectively; Exhibits C and D are reports regarding interviews of Mr. Pike on September 5, 2018 and December 4, 2018, respectively.