LAW OFFICES
# DAVID M. GARVIN, P.A.
200 SOUTH BISCAYNE BOULEVARD, SUITE 3150
MIAMI, FLORIDA 33131
TELEPHONE (305) 371-8101
FAX (305) 371-8848

**David M. Garvin**
Florida Bar Board Certified in Taxation
LLM, Tax

E-MAIL: ontrial2@gmail.com
WEBSITE: davidmgarvin.com

July 10, 2019

**BY ECF**

Honorable Edgardo Ramos
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

    Re: **United States v. Mark S. Scott,**
        **S6 17 Cr. 630 (ER)**

Dear Judge Ramos:

    Please accept this letter as the motion of the defense for a ruling that the Government's taint team not provide the estimated 96,357 pages of documents it has identified as the first batch of documents it proposes to produce to the Government's trial team because the taint team has not inspected the vast majority of the documents to determine whether they are privileged. Upon a sample review by the defense team, a significant number of privileged documents were discovered. The government's insufficient process will result in the disclosure of privileged material.

    The defense seeks intervention by the Court and an order directing the parties the steps that shall be taken by each party to properly and efficiently segregate privileged documents as well as clearly irrelevant documents.

    On or about September 5, 2018, the Government executed search warrants at the home of Mark Scott located in Florida as well as his home in Massachusetts. At all times, all parties knew that Mr. Scott had been a practicing lawyer for over 20 years. The search warrants provided that a taint team would review any documents taken for privilege issues prior to any documents being provided to the Government's trial team. It is estimated that over a million pages of documents in electronic and hard copy format were taken.

    In accordance with the search warrant a taint team was formed and the documents were placed in the possession of the taint team. It was anticipated that the taint team would begin the

Letter Motion to the Honorable Edgardo Ramos
Page –2–
July 10, 2019

process of inspecting the documents and segregating the documents that were clearly not privileged from the documents that were arguably privileged.

In or about January 2019, the taint team requested assistance from the defense team. The taint team requested Mr. Scott to prepare a list of names of clients and lawyers he dealt with. Mr. Scott did not wish to waive his 5th amendment right to remain silent. At the same time, the defense team wanted to assist the taint team. Ultimately, the defense team agreed to provide a non-exhaustive list of lawyers and clients that Mr. Scott recalled, provided that the list would remain confidential with the taint team and not shown to anyone including the government's trial team. The non-exhaustive list was prepared and provided to the taint team. See Dkt. 61: Letter dated March 25, 2019, regarding trial setting detailing the problems with the taint team procedure and suggesting a special master with citations to authority pointing out dangers of taint team review.

The parties have consulted repeatedly regarding the procedure to be used but have reached an impasse necessitating Court intervention. The taint team unilaterally decided that there were too many documents to physically look at. The taint team decided to segregate the documents by running a computer search based upon a list of key words. The key words included the words lawyer and attorney. The keys words also included the names on the list of lawyers and clients provided by Mr. Scott. After the taint team ran the computer search using the key words, the documents were placed into two separate groups. One group comprised of the documents that did not contain any of the key words the taint team had selected. The second group consisted of documents that contained one or more of the key words according to the computer search.

The taint team decided that it was not going to visually inspect the documents that did not contain any of the key words according to the computer search. The taint team pronounced these documents as non-privileged. The first batch of these documents consists of approximately 78,816 pages of documents. The taint team allegedly inspected the group of documents that contained one or more of the keys words according to the computer search. The taint team determined that 17,541 pages of these documents in the first batch were not privileged. The taint team identified approximately 96,357 pages of documents within the first batch were not privileged. The number of pages of documents is much higher than 96,357 because many multipage documents are marked with the same Bates number on each page of the document.

The defense team objected to the fact that the taint team never visually inspected any of the 78,816 pages of documents in group one. The taint team told the defense team if the defense team wanted to visually inspect each document in group one it was welcome to. The defense team objected and pointed out that it was not the job of the defense team to make that initial inspection of these documents. Mr. Scott does not have the resources to conduct the initial inspection of these before trial. The Government disputed this statement and pointed to isolated personal expenditures made by Mr. Scott, some of which were in 2018. Nonetheless, Mr. Scott

Letter Motion to the Honorable Edgardo Ramos
Page –3–
July 10, 2019

maintains that the Government chose to seize virtually all available electronic documents during the execution of the search warrants, and it ended up with in excess of a million pages of documents. The search warrants contemplated that the government was to form a taint team that would inspect the documents for privileged communications. The Government now refuses to properly perform this task and seeks to make the defense do its work and Mr. Scott to incur the financial expense.

The defense took samples of the approximate 96,357 pages of documents and found a significant number of arguably privileged documents in group one and group two. The defense found numerous documents to and from Nicole Huesmann, Esq. This lawyer represented Mr. Scott during the period of time covered by the indictment. The government knows Huesmann represented Mr. Scott. She has been interviewed by the Government's trial team. How her name was not a key word used by the taint team is not known. However, it shows that the taint team's exclusive reliance upon a computer search using selected key words is misplaced. The taint team must conduct a visual inspection of each document to insure that privileged documents aren't produced to the trial team. If the taint team simply runs the names in the non-exhaustive list provided by defense counsel and never looks at the documents, privileged documents will be produced to the prosecution team.

The defense believes that as much as 90% of the documents in the possession of the taint team are completely irrelevant to the case now before the Court. The defense has proposed as a solution to the privilege inspection problem that the taint team run a computer search for a group of key words provided by the trial team to separate the relevant documents from the irrelevant documents. The irrelevant documents would not be turned over to the trial team but would be held by the taint team. Once this is done, the amount of documents that need to be inspected for privilege issues will be dramatically reduced and will become a manageable number. The trial team has rejected this proposal.

A list of key words relevant to the instant case will be easier to assemble because the period of time involved will not be over 20 years but will cover only three years, 2016 through 2018. Key words could include: crypto, Onecoin, coin, Ruja, Ignotova, Konstanin, Ignotov, Sebastion, Greenwood, DMS, IMS, Bank of Ireland, Apex, Deutsche Bank, and Fenero. During the hearing before this Court on March 18, 2019, Ms. Korologos suggested that if the trial team knew the names of all lawyers and clients of Mr. Scott, the trial team could identify the names that were not relevant and that would reduce the search for privileged documents that were relevant to this case. In making the argument that the trial team should have access to the attorney/client list, the taint team acknowledged that, with information from the prosecution team, it could narrow the scope of the review and weed out documents that were non-responsive.

Letter Motion to the Honorable Edgardo Ramos
Page —4—
July 10, 2019

> The government endeavors to make it more efficient for defense as well as for the government by focusing on those documents most likely to be privileged that we need to determine and also potentially responsive.
>
> There are a number of clients on the defense counsel's client list that may not have anything to do with the issues in this case. If the government knows about these clients and they agree, yes, those clients have nothing to do with those, we would keep those as potentially privileged. We wouldn't be required to review them, because they would be arguably nonresponsive. And although it's not the privilege team's role to decide responsiveness, in that type of situation, we can negotiate certain types of documents are put to the side.

(Transcript from March 18, 2019, Dkt. 62, pp. 9-10). In other words, the government has the ability to narrow the scope of the review. Instead, the government seeks to shift the burden to defense counsel to review tens of thousands of documents, many of which are irrelevant.

The trial team knows the key names and terms in this case. They are listed above. The trial team could provide this key word list to the taint team and instruct the taint team to segregate the documents that contain one or more of these relevant key words. This would reduce the amount of documents by up to 90%. The trail team has refused to do this as part of the solution to the privilege document issue.

Mr. Scott respectfully requests this Honorable Court to intervene and to enter an order directing the taint team to visually inspect each document to determine whether or not it is privileged. Mr. Scott also moves this Honorable Court to order the trial team to produce a key word list to the taint team to segregate the vast amount of irrelevant documents from the group of documents that the taint team will need to inspect in order to make the task more manageable and efficient. Lastly, the Defendant moves that once these two items have been completed, the Defendant be afforded an opportunity to visually inspect the documents that the taint team intends to turn over to the trial team before the documents are given to the trail team.

Respectfully submitted,

*s/s David M. Garvin*
David M. Garvin

cc: Counsel of record through ECF