J7R7SCOC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

        v.                              17 Cr. 630 (ER)

MARK SCOTT,

              Defendant.

------------------------------x
                                        New York, N.Y.
                                        July 30, 2019
                                        2:00 p.m.

Before:

                   HON. EDGARDO RAMOS
                             District Judge

                      APPEARANCES

GEOFFREY S. BERMAN
     United States Attorney for the
     Southern District of New York
BY:  CHRISTOPHER DIMASE
     JULIETA LOZANO
     NICHOLAS FOLLY
     LISA KOROLOGOS
     Assistant United States Attorneys

DAVID GARVIN
     Attorney for Defendant

MARTIN RASKIN
     Attorney for non-party David Pike

1       (Case called)

2       (In open court)

3       MR. DIMASE:  Good afternoon, your Honor.  Christopher
4  DiMase for the government.  I'm joined at counsel table by
5  three other attorneys:  Special assistant United States
6  attorney Julieta Lozano, cross designated from the Manhattan
7  DA's office; and AUSA's Nicholas Folly and Nicholas Korologos
8  from the U.S. Attorney's office.

9       THE COURT:  Good afternoon.

10      MR. RASKIN:  Good morning, your Honor, Martin Rankin
11  on behalf of David Pike.

12      THE COURT:  Good afternoon.

13      MR. GARVIN:  Good afternoon, your Honor.  David Garvin
14  on behalf of Mark Scott, who is also present.

15      THE COURT:  And good afternoon to you all.  This
16  matter is on for a status conference.  Mr. DiMase, what are we
17  doing?  What do you wish to do?

18      MR. DIMASE:  Your Honor, there are four issues that we
19  wanted to briefly address.  I don't think it will take too
20  long.  The first is to update the Court on the status of a
21  privilege review issue that we all spoke about at the last
22  conference; the second is to address the still contentious
23  motion to compel where the parties have not come to an
24  agreement and probably do need the Court to rule; third,
25  address a very quick question on the crime fraud order issued

1  by the Court dated July 23, 2019; and, fourth, raise an issue
2  about the trial date and the order regarding that trial date
3  and the speedy trial time.  So those are the four issues that
4  we wanted to address.
5             THE COURT:  OK.
6             MR. DIMASE:  I will turn it over to Mr. Folly, with
7  the Court's permission, to address the privilege review issue.
8             THE COURT:  Very well.
9             MR. FOLLY:  Your Honor, just very briefly.  At your
10 Honor's direction, the privilege review team for the
11 government, the filter team, did meet and confer with defense
12 counsel about some of those issues that we were addressing at
13 the last conference.
14            The parties have reached an agreement about the
15 contemplated production and review of documents designated not
16 privileged by the government's filter team.  We're happy to go
17 into the details of that, but we have primarily agreed to among
18 other things restrict the date range as your Honor discussed
19 with the parties at the last conference, and at this stage,
20 unless there are specific disputes that arise in that process
21 after documents are handed over to defense counsel, we do not
22 need the Court to make any rulings with respect to any of those
23 issues that were on the table before.
24            THE COURT:  Excellent.
25            Mr. Garvin?

1    MR. GARVIN:  Yes, that accurately reflects the
2    understanding of the defense, your Honor.
3    THE COURT:  Thank you.  Next.
4    MR. DIMASE:  Yes, your Honor.  So, I think we will
5    turn to the motion to compel last, because that's the only
6    issue I see continued litigation over at this point.
7    On the fourth issue I mentioned earlier, the trial
8    date, I think I raised this with the Court's deputy clerk about
9    there was an e-mail sent I believe it was in April informing
10   the parties that the trial date would be scheduled for October
11   7, and that I think it said something along the lines of an
12   opinion will follow.
13   And if the Court recalls, one of the issues that was
14   connected with that decision was the speedy trial issue, so it
15   wasn't merely a matter of setting the trial date but also an
16   issue of excluding time.
17   We did very briefly address this at the last
18   conference, and I think the Court indicated that it believed
19   such an order had been issued and posted to the docket.  After
20   that conference, I reviewed the docket sheet, and I was not
21   able to find such an order on the docket, so I did notify
22   chambers about that, but I wanted to raise it again today.
23   THE COURT:  But an order has subsequently been issued.
24   MR. DIMASE:  Not that we are aware of, your Honor.
25   I'm not currently aware of an order setting -- an actual

J7R7SCOC

1  written order setting the October 7th date and excluding time
2  for a set of reasons through that date.  I am not aware of
3  that.
4            THE COURT:  I will check.  I do recall signing an
5  order.
6            MR. DIMASE:  It may be that it simply hasn't been
7  docketed and that's why.
8            THE COURT:  I recall signing it because you kept
9  calling.
10           MR. DIMASE:  Fair enough.  And I may be wrong.  We
11 will check our records, but I don't recall seeing it.
12           THE COURT:  We will check also.
13           MR. DIMASE:  Number three was the crime fraud the
14 motion and the Court's order of July 23.  And the only issue
15 the government wished to raise there was, as I informed the
16 clerk with chambers before the conference today, the summary of
17 the three categories in the Court's order differs in some small
18 ways from the request -- the more specific and detailed request
19 made in the government's motion -- and we wanted to confirm
20 that the Court did grant in full the categories laid out in the
21 government's motion.
22           THE COURT:  It was not my intention to limit the
23 categories that were defined by the government in its motion.
24           MR. DIMASE:  OK.
25           THE COURT:  We simply wanted to --

1           MR. DIMASE:  -- to summarize.

2           THE COURT:  Exactly.

3           MR. DIMASE:  So, we will proceed with the

4  understanding the Court has granted the more detailed

5  categories as laid out in the government's motion.

6           THE COURT:  Correct.

7           MR. DIMASE:  Thank you, your Honor.  So unless

8  Mr. Garvin has anything to add on those two issues -- the trial

9  date order and the crime fraud order -- we're prepared to

10 address the motion to compel, so maybe it makes sense to

11 address Mr. Garvin first.

12          THE COURT:  OK.

13          MR. GARVIN:  I have no additional needs to discuss

14 those two points.

15          MR. DIMASE:  Very good.  So, Ms. Lozano is prepared to

16 address the motion to compel issue, with the Court's

17 permission.  Thank you.

18          MS. LOZANO:  Your Honor, to briefly summarize, the

19 parties have all submitted letters to the Court regarding the

20 existing grand jury subpoenas.  We were unable to reach an

21 agreement.  The government and Mr. Scott's attorneys did

22 discuss and negotiate, and the government is willing to reissue

23 the subpoenas in the name of generic records custodians and

24 agree to the timeline offered by defendant Scott with respect

25 to the subpoenas served on Mr. Scott as the custodian of

1  records. However, the government stands firm in its belief and
2  its intention to seek responsive records from Mr. Pike in his
3  capacity as a records custodian.
4          THE COURT: I'm sorry. So you did re-issue the
5  subpoena to Mr. Scott?
6          MS. LOZANO: We did not, because that second part of
7  the proposal, when the government tried to clarify with
8  Mr. Scott that we intended to proceed and seek responsive
9  documents from Mr. Pike, it was clear that Mr. Scott's proposal
10 was no longer offered because part of his proposal envisioned
11 the withdrawal and cancellation of the Pike subpoena.
12         THE COURT: OK.
13         MS. LOZANO: So, the defendant proposes instead to
14 have the entities produce the documents through his attorneys,
15 which is a process that will necessarily entail Mr. Scott
16 reviewing the documents and making determinations about what to
17 produce from the records that Mr. Pike holds as a custodian.
18         And Mr. Pike's attorneys agree with that process and
19 argue that it is a burden for Mr. Pike to look through the
20 records that he had, since Mr. Scott already has them, and that
21 Mr. Pike claims he is not an appropriate records custodian.
22         Initially, first we just note that the legal authority
23 is clear that Mr. Pike serves as a records custodian for MSSI
24 BVI. He is an agent of the corporation as a director with
25 custody and control of documents, because we know he has them;

1    he has produced them to Mr. Scott.

2             THE COURT:  Sorry.  Could I just stop you on that?
3    So, he has them because he produced them to Mr. Scott, but did
4    he keep copies?

5             MS. LOZANO:  He did.  That's what I understand.  He
6    has copies of everything that he produced to Mr. Scott.  And
7    his argument is if Mr. Scott is willing to review and produce
8    them, it would be a burden and duplicative for Mr. Pike to
9    produce them.  And we disagree with that.

10            It's irrelevant under the legal authority that the
11   entity has not designated Mr. Pike as a records custodian.  He
12   serves as one.  And it is OK to have multiple custodians served
13   with subpoenas for records, and that's what we have done here.

14            Second and more important, the government's position
15   that we intend to seek records and continue to seek records
16   from Mr. Pike is based on a serious concern that we have, which
17   is that Mr. Scott's proposal envisions Mr. Scott himself
18   reviewing and making production decisions about records that
19   Mr. Pike possesses as a records custodian.  And the problem
20   there is that Mr. Scott obviously is a charged defendant here
21   and, as such, his incentives and motivations are different, and
22   when he is reviewing records and responding to a subpoena we
23   are concerned that his status as a charged defendant will cause
24   him to make different decisions than Mr. Pike as a records
25   custodian for MSSI BVI would make.  And frankly it's

unrealistic to believe that counsel for Mr. Scott, who also represents the entities, would be making these review and production decisions without Mr. Scott.

We also note --

THE COURT: Why should that be a matter of concern? I mean it's not unusual for LLCs to have one director. And if Mr. Scott were the only director, then you wouldn't be making that argument here, right?

MS. LOZANO: Well, because in this case there is an alternative. There is somebody who is not charged who is a director, who has records, and his incentives when reviewing and deciding what documents are responsive to a grand jury subpoena validly issued are going to be different than a defendant sitting charged with crimes and looking through those records. That's the government's concern.

THE COURT: I understand that that's a concern, but I don't know that it's a concern of any legal significance. Because again if he were the only one, he would by necessity making those determinations, and I don't know that there is any relief that you would be able to seek if there were only one director and that one director was also a defendant.

MS. LOZANO: And I'm not sure that we are arguing that it is a legal concern. It is a concern given the facts that we have here, and given that Mr. Pike has the ability to produce these records, and in fact is the person who is obligated to

1  produce these records under the subpoena.  It was served on
2  him.
3              THE COURT:  OK.
4              MS. LOZANO:  We also note that counsel -- as I said,
5  counsel for Scott also represents the entities, which may raise
6  a potential conflict concern.  We haven't really thought
7  through that issue and reached a determination, but that also
8  may further complicate Scott's counsel's ability to undertake
9  the review of the records that Mr. Pike has produced to them.
10             So, for these reasons the government is requesting at
11 this time -- because we have been unable to reach an agreement
12 with counsel -- that the Court compel production of responsive
13 records pursuant to the existing subpoenas from both Mr. Pike
14 and Mr. Scott in their representative capacities.
15             THE COURT:  OK.  Mr. Garvin?
16             MR. GARVIN:  Yes, your Honor.  First, your Honor, with
17 regard to the portion of the proposal that was accepted by the
18 government, the government agreed to reissue the two subpoenas
19 in question, one to MS International BVI and the other one to
20 MS International Consulting LLC, to the entity comma records
21 custodian and withdraw the ones to Mr. Scott.  We are in
22 agreement with that, and we had --
23             THE COURT:  But that offer is off the table now,
24 correct?
25             MR. GARVIN:  Well, that portion of the agreement has

1    been pending.  They've taken it one step further.

2            So, we are in agreement with that portion, and the
3    reason for that is that obviously had they served a subpoena on
4    Mr. Scott as an individual he would have had Fifth Amendment
5    rights that we are concerned about waiving.

6            Now we take the additional step, and the government
7    says that the portion that we have requested, which was to
8    withdraw the subpoena to Mr. Pike that also purports to be to
9    the entity, since the entity is going to accept service,
10   Mr. Nobles, counsel for the entity, will accept service and the
11   process will endeavor to identify and gather and produce the
12   documents that the government has requested.

13           Our position remains, A, that the entity never
14   authorized Mr. Pike to be a records custodian; B, that what the
15   government really is accomplishing or attempting to accomplish
16   here is to circumvent Mr. Pike's rights to the Fifth Amendment
17   by saying that this subpoena really is to an entity and
18   entities have no Fifth Amendment rights.

19           So, your Honor, we set forth our proposal on July 30
20   in a letter to this honorable court, and we believe that the
21   appropriate way to proceed here is to go through with the first
22   step, which the parties are in agreement with, which is
23   withdrawing the subpoena as to Mr. Scott and reissuing them to
24   the records custodian for which Mr. Jamie Nobles will accept
25   service.

1  THE COURT: I'm sorry, I have to stop you, Mr. Garvin,
2  because I'm getting confused. You're talking about an
3  agreement that as I understand from Ms. Lozano no longer
4  exists.
5  Am I wrong, Ms. Lozano?
6  MS. LOZANO: You are not, your Honor. My
7  understanding is we had preliminary discussions about a
8  proposal, we explored potential avenues for resolution, and at
9  the end of the day the proposal that the defendant offered
10  included something that the government could not agree to,
11  which was withdrawal and cancellation of the subpoena served on
12  Mr. Pike as a records custodian.
13  MR. GARVIN: If it is withdrawn, then I would urge the
14  Court to enter an order stating that the subpoenas should be
15  quashed as we have requested and that the subpoenas should be
16  issued to the individual entities' records custodian, and it is
17  the responsibility and burden of the entities to gather the
18  documents and produce them as required, and that the subpoenas
19  that are issued to both Mr. Scott and Mr. Pike be quashed for
20  the reasons that we have articulated previously.
21  THE COURT: Thank you.
22  Mr. Rankin?
23  MR. RANKIN: Yes, your Honor. As I told the Court
24  last time we discussed this, everything that David Pike
25  possesses was turned over to MSSI Consultants BVI, and we did

1    that as soon as I realized that there were a significant body
2    of privileged materials.  I am not in a position to make that
3    determination.  I spoke with government counsel yesterday.
4    They think that if I simply turn this material over to their
5    filter team that will solve the problem.  I don't.  They are
6    kind of analogizing this to materials seized in a search
7    warrant.  This is material that MSSI counsel is uniquely suited
8    to review and turn over.  We think it serves no purpose for
9    Mr. Pike to have to do the exact same thing.  It will be a
10   burden both financially and certainly insofar as it would
11   require him and me to try to determine attorney/client
12   privilege materials, and we're just not in a position to do
13   that.  We strongly believe that counsel for MSSI should provide
14   whatever documents are requested by the government.

15            THE COURT:  And, again I just want to make sure, Mr.
16   Rankin, as I think I asked before, I understand that you have
17   turned over copies of what you believe to be the universe of
18   documents in the custody of Mr. Pike to counsel for Mr. Scott
19   but that Mr. Pike still has copies of those documents.  Is that
20   correct?

21            MR. RANKIN:  Yes.  I have a hard drive which is a copy
22   of Mr. Pike's hard drive.  Mr. Pike no longer even has a copy.
23   There were two copies, mine and the exact duplicate that I sent
24   to Mr. Garvin.

25            THE COURT:  And why do you think that the taint team

1  would not be a sufficient safeguard here?

2  MR. RANKIN: Well, again, I have seen taint teams used
3  only when something has been seized by the government, never in
4  response to a grand jury subpoena. And there is really no need
5  for a taint team given the fact that Mr. Scott's lawyers --
6  Mr. Garvin and Mr. Nobles -- are in a unique position to make
7  those attorney/client determinations for the corporation. It's
8  just not necessary.

9  THE COURT: Well, I suppose, you know, I appreciate
10  your concern for the Fifth Amendment privilege of others, but
11  why aren't you in a position to determine whether documents are
12  responsive and turn them over, and to the extent there are any
13  privilege issues, they can be litigated by the actual parties
14  to this case.

15  MR. RANKIN: Again, that's your Honor's decision.
16  You're right, it's just not the way I've seen it done before.
17  And all I know is that I am not in a position to make
18  attorney/client privilege determinations. Whether it's Scott's
19  lawyers or the government's filter team, I guess it really
20  doesn't matter to us. We just can't make that determination.

21  THE COURT: OK. So, this is what I'm going to do.

22  I am sorry, Ms. Korologos, you can speak.

23  MS. KOROLOGOS: Your Honor, I just wanted to add that
24  the filter team has in instances done privilege reviews on
25  grand jury subpoena documents. In cases where the parties

subpoenaed cannot on their own do a privilege review, we have stepped in and done it.  And also in cases where perhaps the parties that produced the documents may not have the same interests as the defendants, we will go back in and we will review those to make sure we are protecting all the privileges.  So, there is a number of cases where we do perform a privilege review on subpoenaed documents.

THE COURT:  Very well.

MR. GARVIN:  I wanted to reemphasize and then I will sit down.  But, your Honor, just to be clear, the entities do not recognize Mr. Pike as a records custodian, and what really is happening here is Mr. Pike is being subpoenaed to produce records as an individual but because the subpoena is made out to the entity he is not going to be able to assert his Fifth Amendment rights, and they're being circumvented.  And I think that that really is the gravamen of the issue, that the government is succeeding in having an individual who is not a records custodian turn over records as a records custodian so he cannot assert his Fifth Amendment rights.

THE COURT:  Thank you.  I think I have all of the briefing.

Ms. Lozano?

MS. LOZANO:  Just one additional comment, your Honor.  In response to Mr. Garvin's last point, I note that counsel has provided no legal authority for their position, and the Eighth

1   Circuit case, while not from this Circuit, addresses this issue
2   on all fours, and it's the case of In Re Grand Jury Witnesses,
3   90 F.3d 710, and the quote there is "It is irrelevant that the
4   individual is not the corporation's designated document
5   custodian."
6           So, Mr. Garvin's argument lacks any legal authority,
7   and in fact the legal authority that's out there indicates that
8   it is irrelevant what MSSI BVI designates Mr. Pike as.
9           THE COURT:  I will give Mr. Garvin one last sentence.
10          MR. GARVIN:  Yes, your Honor.  A few moments ago the
11  primary argument of the government was that Mr. Pike would
12  somehow categorizingly respond to a subpoena in a different
13  fashion because Mr. Scott is under indictment.  But this is a
14  grand jury subpoena that the government previously represented
15  that Mr. Pike may well be one of the targets of this grand jury
16  subpoena.  So, there is no distinction between the position
17  that Mr. Pike finds himself in and the position that Mr. Scott
18  finds himself in as to this particular grand jury subpoena.
19  The grand jury subpoena is not supposed to be used to obtain
20  documents for the case that has already been indicted.
21          THE COURT:  I will issue an order before the end of
22  the week.  Anything else, Mr. DiMase?
23          MR. DIMASE:  I just wanted to note that -- I guess ask
24  whether the order will also address the Scott subpoenas.  We
25  seem to have an agreement in principle on those except for the

1  Pike subpoena and the records responsive to that, but since we
2  have not been able to come to a universal agreement, I think
3  unless something changes we are asking the Court to rule on the
4  Pike subpoena and the two Scott subpoenas as well at this
5  stage.  So, I just wanted to put that issue before the Court.
6          THE COURT:  I don't want you to confuse me any
7  further.
8          MR. DIMASE:  The main issue of contention obviously is
9  about the subpoena served on Mr. Pike, but because the
10 withdrawal of the Pike subpoena was part of the proposed
11 agreement from the defense, we have not come to an agreement on
12 all three of them at this stage, and at this stage we're asking
13 the Court to rule on the motion to compel as to all three.
14         THE COURT: OK.  Very well.  We are adjourned.  Thank
15 you.
16         (Adjourned)