```
     J8udscoc
                    Speakerphone Conference
 1  UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
 2  ------------------------------x

 3  UNITED STATES OF AMERICA,              New York, N.Y.

 4             v.                          17 Cr. 00630 (ER)

 5  MARK S. SCOTT,

 6             Defendant.

 7  ------------------------------x

 8
                                           August 30, 2019
 9                                         11:03 a.m.

10
    Before (via speakerphone):
11
                    HON. EDGARDO RAMOS,
12
                                           District Judge
13

14           APPEARANCES (via speakerphone)

15  GEOFFREY S. BERMAN
         United States Attorney for the
16       Southern District of New York
    BY:  NICHOLAS FOLLY
17       CHRISTOPHER J. DIMASE
             Assistant United States Attorneys
18           – and –
    NEW YORK COUNTY DISTRICT ATTORNEY OFFICE
19  BY:  JULIETA VERONICA LOZANO

20  COVINGTON & BURLING LLP
         Attorneys for Defendant
21  BY:  ARLO DEVLIN-BROWN
             – and –
22  DAVID M. GARVIN, P.A.
    BY:  DAVID M. GARVIN
23

24

25

                 SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300
```

J8udscoc
Speakerphone Conference

1              (Speakerphone call established)

2              THE CLERK:  In the matter of the United States of
3     America versus Mark Scott.

4              Counsel, please state your name for the record.

5              MR. FOLLY:  Good morning.  Nicholas Folly, Christopher
6     Dimase and Julieto Lozano on behalf of the government.

7              MR. DEVLIN-BROWN:  And Arlo Devlin-Brown, of Covington
8     & Burling, and David Garvin on behalf of Mark Scott.

9              THE COURT:  All right.  Good morning to you all.

10             I received the government's letter yesterday, and I
11    read the defendant's letter this morning.  So let me begin with
12    the government.  I guess we're currently scheduled to go to
13    trial on October 7, and the government is requesting
14    adjournment of that trial date for the reasons stated in the
15    letter.

16             So let me begin with you, Mr. Folly, Mr. Dimase, Ms.
17    Lozano, you can proceed.

18             MR. FOLLY:  That's correct, your Honor.  We are
19    requesting an adjournment at this stage.  We set forth in
20    detail in our record what has happened over the last several
21    months with respect to the release of nonprivileged documents
22    as well as the release of documents designated under the
23    crime-fraud order that your Honor entered in July.  There were
24    several issues that came up, as your Honor is well aware of, in
25    connection with the release of nonprivileged documents, and I

1    won't recount them all because many of them are already in the
2    letter and also have been addressed by your Honor in court
3    before.
4         But this whole process began back in May, and we
5    released to defense counsel approximately 25,000 documents at
6    that time in early May.  And since that time there has been
7    nothing but consistent delay on behalf of defense counsel in
8    responding to and providing their position on whether they
9    agree with the designations of those documents as being
10   nonprivileged and, therefore, delay in the government actually
11   receiving and being able to review those nonprivileged
12   documents.
13        And just for context, the initial production was
14   25,000 documents.  Since that time there have been tens of tens
15   of thousands of additional documents that have been designated
16   in this nonprivileged bucket.
17        And I just want to clarify one point on the timing of
18   all of this, because defense counsel's letter suggests that it
19   was not until this week that the review and designation of
20   documents within this 67,000 bucket of nonprivileged documents
21   was completed.  As early as June there was a second set of
22   nonprivileged documents that we were prepared -- the Filter
23   Team was prepared to release to defense counsel, and it was at
24   that time that defense counsel essentially challenged the
25   entire privilege review process, which, as your Honor is aware,

J8udscoc                Speakerphone Conference

1   resulted in additional litigation and additional delay in any
2   of these documents being released to the government.
3         It was defense counsel's idea and defense counsel
4   insisted at the beginning of this whole process that they be
5   allowed to review these documents document-by-document
6   themselves before any documents were released to the
7   government.  That is not a normal process.  Typically, our
8   Privilege Review Team reviews them.  They make their
9   designations, and they release the documents directly to the
10  Prosecution Team.
11        We made what we thought was a reasonable accommodation
12  to defense counsel to have them review these documents and give
13  them the opportunity to review them, but because of that, the
14  whole process was prolonged and delayed significantly, and we
15  ended up in the position where it was not until two weeks ago
16  that we got the first set of nonprivileged documents which had
17  been released three months -- more than three months ago to
18  defense counsel.  And then two days ago defense counsel
19  abruptly changed course and said that actually we do not any
20  longer need to review these documents item-by-item, we can
21  release all of the nonprivileged documents as well as the
22  documents designated by the Taint Team to be within the Court's
23  crime-fraud order.
24        The bottom line from all of that is that we now have
25  in the last two weeks received nearly 100,000 documents that

the prosecutors in this case, the trial attorneys, have never seen before, and the bulk of them actually we did not gain access to until yesterday.  And the trial date of October 7th, as it is currently scheduled, is simply not a reasonable amount of time for the government to review those documents, do a responsiveness review, and then effectively make use of them for trial.

And it really bears emphasis, these documents are highly probative for the government's case at trial.  They are the defendant's own emails and other documents extracted from his electronic devices that were seized from his residences.  In the brief period of time we have had access to this material, we have already seen numerous communications with co-conspirators relating to the money laundering scheme, numerous communications in which the defendant is making misrepresentations to banks and other financial institutions.

So, this is not tangential evidence.  There has been a suggestion that everybody needs to turn back and start focusing on the evidence that matters for the trial.  This evidence is that evidence, and the government needs sufficient time to review that evidence, incorporate it with respect to witness preps, and potentially interview additional witnesses.

So in light of all of that, we are not making this request lightly, but we are requesting a period of approximately two months to conduct that review of this

J8udscoc
Speakerphone Conference

1  newly-released evidence to the Prosecution Team.

2  THE COURT:  OK.  Mr. Arlo Brown or Mr. Garvin.

3  MR. DEVLIN-BROWN:  Yes, your Honor.  This is Arlo, and
4  Mr. Garvin may jump in at times as well.

5  I want to really tackle two things that the government
6  said, your Honor.  One, you know, the notion that there really
7  is some grave need to delay things to give the government
8  several months to review documents to prepare for trial, but
9  also really their suggestion that this issue with the Taint
10 Team just now, just yesterday, releasing 70,000 documents has
11 something to do with Mr. Scott or the defense, because it
12 doesn't.  It is a review that the Taint Team has just
13 completed.  Mr. Scott has not gotten those documents from the
14 Taint Team himself yet, if they are on a FedEx on their way
15 today, and has not delayed these in any way, shape or form.

16 So, I don't want to rehash everything in our letter,
17 your Honor, but I do think it is important to go through a
18 couple of the basic points, because, you know, the government
19 sort of goes back to the very beginning of the process and
20 notes times when it was unhappy with the way that Mr. Scott's
21 counsel wanted certain things done in connection with the
22 privilege review, and as I allude to in our letter, there were
23 things that we weren't particularly happy with either,
24 including the fact that it didn't appear that the Taint Team
25 even started thinking about this process until many months

1      after they had obtained the evidence.

2             But I don't think any of that really matters for the
3      Court or for the parties, because the reality is less than a
4      month ago -- actually, exactly a month ago, on July 30th, after
5      much back and forth between the parties -- and no Court
6      orders -- the parties worked it out, and the parties came up
7      with a process where the Taint Team would provide material to
8      Mr. Garvin and Mr. Nobles and they would review it within a
9      very tight deadline -- three days for some of the materials,
10     seven days for certain other material -- and at that point
11     anything that the defense didn't object to would be turned over
12     to the government.  That was the deal that was worked out in
13     the 30 days since that process was established.  That's exactly
14     what the defense has been doing.

15            And there has been no violations of that process at
16     all.  There have been a few instances where the deadlines were
17     extended, with the government's agreement, for a few days here
18     or there for various reasons, including where there is a
19     substantial volume of documents or issues with the way search
20     terms were run.  But the bottom line -- and no process works
21     perfectly, but it worked as contemplated on July 30th, when no
22     one was asking for an adjournment of the trial.

23            The 25,000 or so documents that, you know, the
24     government has just said, you know, they think should have been
25     released back in May, well, it took longer but the process

1  worked, and they have had those documents now for a couple of
2  weeks.  Really, the only documents that we're talking about
3  that are left that would be remotely significant enough in
4  volume to delay trial are these 70,000 documents, and that's a
5  little bit, Judge, where things like no good deed goes
6  unpunished, because the defense was just alerted last Friday,
7  you know, by the way, there's another tranche of documents that
8  the Taint Team is finishing up.  And they hadn't finished them
9  up last Friday, your Honor.  The message we got was they'll be
10 finished in about a week, in other words, by about today.  And
11 there is going to be 70,000 more documents, and we'll expect
12 the defense to do what it's done before and review all of those
13 within seven days, clear some of them within three days, the
14 rest within seven, and then we'll give them to the prosecution
15 team.

16         And, frankly, that number was a little bit alarming to
17 the defense -- 70,000 documents coming at a late time.  The
18 Taint Team thought it was reasonable for us to review them in a
19 week, and maybe we could have pushed hard and done that, but we
20 were cognizant of the trial date.  And as your Honor knows,
21 Mark Scott has been always wanting to go to trial as soon as
22 possible.  So we did the government I think a solid and told
23 the Taint Team you know what, even though the government agreed
24 to give us a chance to review those first, we don't want to
25 hold this up.  And if you have 70,000 more documents that you

J8udscoc
Speakerphone Conference

1  are just now clearing for release, then give them to the
2  government at the same time, give them to the Prosecution Team
3  at the same time.  So, we've tried to make this as easy as
4  possible.  And if the government were to say --
5      THE COURT:  I'm sorry.  Mr. Devlin-Brown, when were
6  those, the recount documents, offered to you?
7      MR. DEVLIN-BROWN:  The 70,000 documents were documents
8  the Taint Team last Friday said that they would have for the
9  defense to review this Friday.  In fact, we got them yesterday.
10     THE COURT:  OK.
11     MR. DEVLIN-BROWN:  So we said with those 70,000, the
12 Prosecution Team should have them at the same time the
13 defense -- the Taint Team, as soon as they're done clearing
14 them for privilege.
15     THE COURT:  OK.
16     MR. FOLLY:  Your Honor, may I just clarify one thing
17 about that universe of documents?
18     THE COURT:  Very quickly.
19     MR. FOLLY:  Those documents were all produced to
20 defense counsel in November and December of 2018.  They have
21 had access to them since that time.  The Prosecution Team
22 obviously has not until yesterday.
23     MR. DEVLIN-BROWN:  That's a good point --sorry.
24     THE COURT:  The government is done.  You can go ahead.
25     MR. DEVLIN-BROWN:  Yes.  That is a good point, your

J8udscoc
Speakerphone Conference

1  Honor, but it is actually one that I would like to clarify in
2  two ways. One is the government can actually say the defense
3  has had access to everything since, you know, a long time ago,
4  because, as you know, the government essentially seized all of
5  the electronic media it could find in Mr. Scott's residences
6  and then eventually sent that stuff back in formats that were
7  not entirely readable. Some of it we can't read at all, which
8  is images of cell phones.
9       So, yes, we had the universe of materials back, but we
10 never had the government do the process it was required to do
11 under the search warrant, which is not just say here is all the
12 stuff back, but to identify -- the Taint Team identify the
13 nonprivileged material in there and then turn it over to the
14 Prosecution Team. That was not done. That specific 70,000 set
15 of documents culled from who knows how many was not done until
16 yesterday, and it is not something Mr. Scott has ever seen
17 these documents or engaged with the Taint Team on these
18 documents. They have only been provided to us yesterday, and
19 that's why we said to the government, to the Taint Team, give
20 them to the Prosecution Team at the same time.
21      So, that's sort of where we are today, and I'm almost
22 ready to wrap up, your Honor. I would add that, you know, the
23 Taint Team's expectation of the defense was when we give you
24 these 70,000, you know, seven days, turn them around in seven
25 days. You know, that would have been -- that would have been

J8udscoc
Speakerphone Conference

1  hard, but I don't particularly see a good reason now for the
2  government to say: Hey, we're getting 70,000 documents. We
3  need two months.
4       If the government was asking for a week or two here,
5  we don't think it is warranted, we think it is not justified,
6  but as a matter of, you know, professional courtesy, if the
7  Court has room in its calendar, we wouldn't fight that. But to
8  put this off several more months for something that Mr. Scott
9  is not responsible for this delay in 70,000 documents is just
10 unjust and really does violate his rights under the Speedy
11 Trial Act.
12      We urge the Court to keep the trial date that the
13 parties have had on the calendar for awhile. It is a date no
14 one objected to on July 30th, when we all agreed on this
15 process and got it underway, and we should go forward on that
16 date.
17      THE COURT: Anything else, Mr. Folly?
18      MR. FOLLY: Yes, your Honor, just a point of
19 clarification, which I think is very important here.
20      June 25th is when we notified defense counsel, the
21 Taint Team did, that they were ready to produce the second set
22 of nonprivileged documents, and at that time we had not
23 received any response as to the first set of 25,000 documents,
24 and we indicated that we were going to release those documents
25 to the Prosecution Team.

Speakerphone Conference

Defense counsel's response to that, to the government, was that they did not have the resources to review those documents. And they then went on, as your Honor knows, to attempt to limit the government's ability to review those documents to search terms to conduct a responsiveness review that was actually through search terms and have the Taint Team conduct a responsiveness review before those documents were even released to the government, and that's what triggered the letters that were submitted to your Honor as well as the conference where the parties appeared.

So, we just want to be very clear that the Taint Team was prepared and ready to continue its release of additional nonprivileged documents to defense counsel when defense counsel basically turned around and said we don't have the resources to do this, we're not going to continue reviewing these documents, we need to instead prepare for trial. And that's what really led us to the situation where it took months and months and months before nonprivileged documents were released to the government. And then at the end of all of that, defense counsel said, actually, this processes that the government originally proposed where the documents were released directly to the prosecutors is working, is effective. That would have been reasonable months and months ago, but with just under --just over five weeks before this trial, that simply does not leave the government in a position to effectively review and

J8udscoc
Speakerphone Conference

1  use those documents.

2  And the distinction between us and defense counsel, as
3  I just mentioned, is they had the documents since November and
4  December of last year, and they were produced with everything
5  that is off of these devices. And I assume -- and if this is
6  not the case, I would be shocked if defense counsel themselves
7  would not want an adjournment, but I assume that they had
8  started reviewing them back then because this is critical
9  evidence and relevant evidence related to the trial. Then
10  the --

11  THE COURT: Except that they told me that it was
12  produced in a manner that largely, or at least in some regard,
13  would was not readable to them.

14  MR. FOLLY: Your Honor, it was produced in a format
15  that is standard in all of these cases. It would simply need
16  to be just uploaded into a review platform. We had offered
17  throughout this entire process to assist in any way we can with
18  helping defense counsel read those documents. We have never
19  been told until this conversation that they were unable to
20  review any specific set of those documents, and if that is the
21  case, I would imagine they would also want an adjournment of
22  this trial.

23  MR. DEVLIN-BROWN: Two things on that, your Honor.
24  One is there was materials that were on cell phones
25  and other electronic media that were produced back to us as

J8udscoc                Speakerphone Conference

1    sort of an image of the cell phones.  Those things are not
2    really usable or workable without forensic software that is
3    also only available to the government.  All that Mr. Garvin has
4    word about, if there is.  But I just want to come back quickly
5    to two other points that I think are important.
6              One is, again, the government talks about the back and
7    forth and things they weren't happy with about the process in
8    May and in June.  The defense has complaints as well.  We don't
9    think that initial set that was released in May was released in
10   good order.  There was a number of privileged materials that we
11   identified even during a sampling.  There was back and forth
12   with the Court.  But I just don't understand how that is
13   germane, because the Court didn't rule on anything.  Instead,
14   the parties worked it out.  We had a deal.  We had an
15   arrangement that we went to the Court on on July 30th, and the
16   government then didn't say, by the way, this arrangement is
17   going to delay the trial.  They said, fine.  And we followed
18   that arrangement.
19             And, again, the government's argument that Mr. Scott
20   has somehow made things worse by abandoning the agreement with
21   the government and saying -- instead of doing what we were
22   entitled to and say give us the 70,000 documents and in one
23   week we will release them to the Prosecution Team, we said just
24   please do it right away.  I'm still not sure how that is held
25   against us.

1    That is all I have unless Mr. Garvin has anything to
2 clarify on of the issues with the original review on some of
3 these materials
4    MR. GARVIN:  I do not.  I think that they've covered
5 it all, your Honor.
6    THE COURT:  Here's where I am on this.  I honestly
7 believed that the October 7 trial date was an aggressive one
8 given the representations that have been made to me regarding
9 the volume of material in this case and the sort of intricate
10 and difficult issues concerning privilege and crime fraud
11 exception.  But I understand that Mr. Scott is very desirous,
12 as is his right, because it is a constitutional right, to
13 proceed to trial as quickly as possible.  And, quite honestly,
14 again, you know, from my perspective, I believe that the
15 parties are playing a game of chicken for last few weeks,
16 knowing that October 7 was a very aggressive date.
17    You know, who is going to play it first?  Well, the
18 government played it first.  The defense has its argument, and
19 I believe they are strong arguments.  The process that the
20 parties agreed to was being followed.  And if -- even if the
21 70,000 documents were given to the defense and they were asked
22 to review them and take their time to review them, it would
23 have been within the agreement that was agreed upon, and I
24 don't believe that the government would have had an opportunity
25 or an argument against pursuing that process.

However, it appears as though the parties agree, at the very least, that some modest adjournment is necessary. I had consult with my staff, and I do have -- I would have to move some things around. However, I do believe that I could accommodate you in early November, and so what I will do is that I will adjourn the trial to a date in early November.

Ms. Rivera, what date do we have?

THE CLERK: Monday, November 4th.

THE COURT: So Monday, November 4th, which is approximately a month adjournment.

The defense has indicated that it agrees that a modest adjournment would be two or three weeks, or one or two weeks would be appropriate. The government has asked for two months. I am coming somewhere in between that. I believe that that amount of adjournment is appropriate given the very difficult issues that we had to deal with in connection not only with the volume of the documents but with the issues concerning privilege and crime fraud exception.

There is still going to be a lot of litigation between now and then, as I'm sure the parties appreciate. So, I do believe that we need this additional time. I do believe that the additional time is appropriate to give so that Mr. Scott, despite his argument, his desire to go to trial as soon as possible, has his lawyers have the appropriate amount of time necessary to prepare as adequately as possible for trial. So,

J8udscoc                    Speakerphone Conference

1    we will begin trial on Monday, November 4th.

2              And, Ms. Rivera, can I ask you, when is Thanksgiving
3    this year?  How much time do we have before the Thanksgiving
4    break?

5              THE CLERK:  Yes.  Thanksgiving falls on Tuesday,
6    November 28th.  So, it gives us three weeks.

7              THE COURT:  So three-and-a-half weeks before
8    Thanksgiving?

9              THE CLERK:  Yes.

10             THE COURT:  So given the representations that have
11   been made to the Court that this case will take approximately
12   three weeks to try, I fully anticipate that choosing a jury on
13   November 4th and telling them that it will take approximately
14   three weeks will complicate our ability to weed a jury, and so,
15   accordingly, we will start on Monday, November 4th.

16             Anything else, Mr. Folly?

17             MR. FOLLY:  Your Honor, the government moves for the
18   exclusion of time between October 7th, 2019 and the new trial
19   date of November 4th, 2019 for many of the reasons that your
20   Honor just articulated as to why the adjournment would be
21   appropriate, given the complex issues of law and fact, some of
22   which pertain to complex legal issues concerning privileged
23   materials.  Such an exclusion of time would be -- would serve
24   the ends of justice and outweigh the interests of the public
25   and the defendant in a speedy trial.

J8udscoc
Speakerphone Conference

1  THE COURT: Mr. Devlin-Brown.

2  MR. DEVLIN-BROWN: Your Honor, obviously you'll make
3  whatever ruling you wish. I think you have already designated
4  this a complex case.

5  THE COURT: Yes.

6  MR. DEVLIN-BROWN: Mr. Scott was willing to adjourn a
7  week or two not because he believes it was required or
8  necessary given the complexity but just because of a
9  professional courtesy. So, you know, we're not going to join
10  the government's application here, but your Honor can obviously
11  rule as your Honor rules.

12  THE COURT: I will -- with respect to the Speedy Trial
13  Act, I will exclude the time between October 7 and November 4
14  for the reasons articulated in my prior order and for the
15  reasons articulated earlier in this conference.

16  And unless there is anything else, we are adjourned.
17  I wish you all a wonderful holiday weekend.

18  ALL COUNSEL: Thank you, your Honor.

19  (Adjourned)