# EXHIBIT D



**DEPARTMENT OF THE TREASURY**
**Internal Revenue Service**
**Criminal Investigation**

## Memorandum of Interview

---

| | | | |
|---|---|---|---|
| **Investigation #:** | ▮▮▮▮▮ | **Location:** | **Bank of Ireland** |
| **Investigation Name:** | MARK SCOTT | | **2 Burlington Plaza, Dublin, Ireland** |
| **Date:** | March 28, 2019 | | |
| **Time:** | Apx 2:40 pm GMT | | |
| **Participant(s):** | Greg Begley, Witness | | |
| | Carol Sinclair, Assurance & Risk, BoI | | |
| | Christopher DiMase, AUSA | | |
| | Nicholas Folly, AUSA | | |
| | Julieta Lozano, SAUSA | | |
| | Ron Shimko, FBI Special Agent | | |
| | John Abram, IRS-CI Special Agent | | |
| | Leo Rovensky, IRS-CI Special Agent | | |

On the above date and approximate time, the above-mentioned parties met to conduct an interview of Greg Begley (hereinafter Begley). The above mentioned parties formally introduced themselves and began the interview. Begley provided the following information:

1. Begley went to college at the National University of Ireland Galway. He earned a master's degree in Corporate Strategy. After graduation, Begley spent some time traveling. After his travels, Begley started working at a local Bank of Ireland (BoI) branch as a financial advisor.
2. Begley worked in the branch for the first 2 years that he was at BoI. Begley then transferred to the corporate side of BoI to work in the Foreign Direct Investment (FDI) group under Derek Collins (Collins). Begley spent 1 ½ years in the FDI group before moving to the audit division of BoI.
3. Begley spent another 1 ½ years in the audit division. He was then recruited by a headhunting company to go work for KBC Bank. Begley is currently working for KBC Bank as a financial analyst.
4. During his time working in the FDI group, Begley's responsibilities were to assist in the opening of bank accounts after a customer joins the bank.
5. Begley reported directly to Chen Tran and Chen Tran reported directly to Collins. Deirdre Ceannt (Ceannt) was senior to Begley and reported to a different supervisor than Begley. Her responsibilities were related to customer relationships.

Begley was presented with 2 binders containing BoI documents and records. The binders were organized by numbered tabs. Begley's memorialized responses during the remainder of the interview are correlated to specific tab numbers as reflected in this memorandum.

6. Tab 1 – This is an introduction from the law firm Mason Hayes. This was the first time that Begley learned of the client MARK SCOTT (SCOTT). Begley is not sure if there was a phone call associated with the email.

7. Tab 2 – SCOTT sent a Certificate of Incorporation, KYC documents, and a filled-out questionnaire. Begley then input the information from the documents into BoI's system called KYC Net.

8. Tab 3 – More KYC documents that SCOTT sent. Begley would upload them into KYC Net.

9. Tab 4 – Additional information for KYC Net. Begley does not remember the name David Pike. Begley recognized David Pike's passport, but the name did not ring a bell.

10. Tab 5 – Begley was not involved in this correspondence, just CC'd.

11. Tab 6 – Additional KYC documents that Begley input into KYC Net. Begley only reviewed the structure of the mission statement and the forms to make sure they are filled out correctly. Begley did not review the documents for substance.

12. Tab 13 – This was correspondence after SCOTT met in person at BoI with Collins and Ceannt. Begley does not know if anyone else was present at that meeting, does not know what was discussed at the meeting, and has not seen any notes from that meeting.

13. Tab 17 – Begley remembered receiving information for two new entities. Begley believes that the account opening process triggered Enhanced Due Diligence (EDD) requirements. Therefore, more records had to be provided for the MLRO. Begley would forward the questions that had to be asked because of EDD. Begley does not know if being a 25% Ultimate Beneficial Owner (UBO) would be classified as a high-risk account. Begley again reviewed the new entity forms for accuracy and not for substance. Begley knows that EDD could be triggered when clients have operations in certain jurisdictions. BVI would be considered a high-risk jurisdiction. FACTA is a form that must be filled out for tax purposes. Begley reviewed the handwritten form for the company Tradenext for accuracy and not for substance.

14. Tab 18 – Begley is not familiar with the name Irina Dilkinska, does not know who she is, and has never spoken with her.

15. Tab 19 – Begley never met SCOTT in person and was referring to BoI in general. Begley is not sure who asked for more documents from SCOTT, but he was just being a middle man.

16. Tab 20 – Begley did not review the documents related to missing signatures for Irina Dilkinska. He just forwarded them.

17. Tab 21 – Begley thinks this correspondence may have been related to asking about SCOTT's source of funds. Begley does not recall understanding what the requests for information were about. He thinks Ceannt may have asked him to reach out to SCOTT and he just did as she asked him. Begley understands source of funds to refer to how SCOTT earned money.

18. Tab 22 – Additional source of funds documents.

19. Tab 23 – Laura Kearney is someone from the Mason Hayes law firm. Laura Kearney is providing more forms for KYC Net to open additional accounts.

20. Tab 24 – Begley does not remember what Form B10 is. Begley thinks that CRO refers to when a company registers with a government.

21. Tab 25 – Begley probably asked for the Fenero chart for KYC Net and did not review it for substance.
22. Tab 26 – Begley asked SCOTT to sign and date the company structure graph because it was a requirement by BoI.
23. Tab 27 – Begley is not sure what the term LOI means.
24. Tab 28 – Self explanatory.
25. Tab 29 – SCOTT says in email that he is the only director but may be adding 1 or 2 more directors at a later date.
26. Tab 30 – SCOTT is answering more questions for KYC Net that may have been requested to be asked by the MLRO.
27. Tab 31 - SCOTT providing bond.
28. Tab 32 – There was a mistake in the organizational chart and Begley sent an email request for the correction.
29. Tab 33 – Self explanatory.
30. Tab 34 – Self explanatory questions regarding a surety bond.
31. Tab 35 – This was a compliance matter, but Begley does not remember who asked the question.
32. Tab 36 – This was a re-sent request to a different email address.  There are ways to ask questions through KYC Net and there is a way to generate a due diligence report on KYC Net.  In order to see a message from KYC Net, you must log into KYC Net.  Begley forwarded seed investor information to Ceannt.
33. Tab 37 – Previously reviewed.
34. Tab 38 – Begley writes in this email that SCOTT is the initial and sole investor.  Begley could not recall how he learned that.  It is possible that SCOTT provided this information to Ceannt and Ceannt verbally told him because they all sat close to each other in the office.  Begley did not have personal knowledge that SCOTT was the initial and sole investor.
35.  Tab 39 – SCOTT responds to a request for AML control.  Begley provided that response to BoI compliance.
36. Tab 40 – Begley said that someone from BoI compliance would have asked him for this information based on EDD.  Begley shared SCOTT's response back to compliance.  Begley did not always CC Ceannt on emails because she also has access to KYC Net.  Begley said that Collins does not know how to access KYC Net.
37. Tab 41 – SCOTT attached account opening paperwork.  Begley would usually bring down the account opening paperwork to the account opening team.  The email shows that SCOTT most likely passed KYC requirements.  Begley did not carefully review these documents.
38. Tab 42 – Self explanatory.
39. Tab 43 – Begley asks SCOTT for some missing documents, such as the online account form and FATCA.
40. Tab 44 – SCOTT attaches the missing documents.
41. Tab 45 – Self explanatory.  Ultimately, SCOTT opened 2 Euro accounts and 1 British Pound account.
42. Tab 46 – This refers to a TIN, which Begley believes to be a U.S. Tax Identification Number.  Ireland rules require that to be provided.
43. Tab 47 – Confirmation that accounts opened.
44. Tab 48 – Begley is communicating with David Pike.  Begley does not recall

David Pike's role in SCOTT's company.

45. Tab 49 – This is an international payment transfer.  SCOTT filled out this form.  Begley reviewed it for accuracy and not substance.  Begley would not be the one to clear these payments.  They require the signatures of 2 senior BoI employees.  Begley believes that 2 people at Ceannt's level or above could sign off on an international payment transfer using a 4-digit signature.  Once signed off on, the form would then be provided to the bank's CRM division.  Begley would not know if this transfer was for a business purpose.
46. Tab 50 – Self explanatory.
47. Tab 51 – Someone else decided the 10,000 Euro charge.  Begley said that in this case it was Collins.
48. Tab 52 – Email to Jennifer Finnigan, a BoI employee, to debit accounts for the fees.
49. Tab 53 – Same as 52.
50. Tab 54 – Begley is saying that another FX account was opened and that means more income for the bank.
51. Tab 55 – Begley did not know what Special Purpose Vehicles were for.
52. Begley stated that he did not notice any red flags or have any concerns while dealing with SCOTT.  Begley added that he was not a relationship manager.

The interview concluded at approximately 4:20 p.m.


Leo Rovensky
Special Agent