UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>  - v. -<br><br>MARK S. SCOTT,<br><br>                    Defendant. | No. S10 17 Cr. 630 (ER) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENSE MOTIONS *IN LIMINE***

Arlo Devlin-Brown
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 841-1046

David M. Garvin
Law Offices of David M. Garvin, P.A.
200 South Biscayne Boulevard
Suite 3150
Miami, FL 33131
(305) 371-8101

*Counsel for Mr. Scott*

## **TABLE OF CONTENTS**

Introduction ................................................................................................................................. 1

Applicable Law ........................................................................................................................... 1

Argument .................................................................................................................................... 2

    I.      The Government Should Not Be Permitted To Refer To OneCoin
           Investors As "Victims" ............................................................................................... 2

    II.     The Government Should Not Be Permitted To Introduce Evidence As To
           The Particular Amount Of Money An Individual Invested In OneCoin Or
           Any Resulting Hardship .............................................................................................. 3

    III.    The Government Should Not Be Permitted To Call A Witness Who
           Decided Not To Invest In OneCoin ............................................................................ 4

    IV.    The Government Should Not Be Permitted To Introduce Evidence With
           Respect To How Mr. Scott Used Fees He Received From The Fenero
           Funds ........................................................................................................................... 6

    V.      The Government Should Not Be Permitted To Call A Money Laundering
           Expert ......................................................................................................................... 7

**Introduction**

Mark Scott moves *in limine* against the admission of certain evidence and testimony by the Government.  As the Government has not yet identified its exhibits or witnesses (both are due on Monday, October 21st), the defense will likely need to raise further issues relating to the admissibility of evidence and testimony as the trial approaches and proceeds, but has endeavored to now raise issues that appear to be ripe for resolution.  In particular, the defense makes the following requests:

1. The Government should not be permitted to refer to OneCoin investors as "victims" because they are not legally cognizable victims of any offense charged against Mr. Scott.

2. The Government should not be permitted to introduce evidence of the particular amount of money an individual invested in OneCoin or any resulting hardship, as such details have no relevance and may be highly prejudicial.

3. The Government should not be permitted to call a planned witness who will testify he decided not to invest in OneCoin after reading articles it was a scam on the Internet, as such evidence is based on hearsay, has no relevance, and is prejudicial.

4. The Government should not be permitted to introduce evidence of how Mr. Scott spent the money he received as fees from operating the Fenero Funds.

5. The Government should not be permitted to call an expert as to what "money laundering" is because such expert testimony is not necessary to assist the jury and risks communicating a different meaning of "money laundering" than the Court will in its instructions.

**Applicable Law**

This Court "ha[s] discretion in deciding whether a pretrial ruling on evidence may be made in advance of trial."  *United States v. Valencia*, 826 F.2d 169, 172 (2d Cir. 1987); *see also United States v. Dupree,* 706 F.3d 131, 135 (2d. Cir. 2013)*; Henry v. Wyeth Pharm., Inc.,* 616 F.3d 134, 149 (2d Cir. 2010).  This discretion includes the authority to preclude irrelevant and unduly prejudicial evidence, arguments, or references at trial.  *See, e.g.*, *Drake v. Woods*, 547 F. Supp. 2d

253, 265 (S.D.N.Y. 2008) ("[J]udges have broad discretion to limit evidence that they consider to be prejudicial, irrelevant, or collateral."). Even evidence that is otherwise relevant and admissible may be excluded under Fed. R. Evid. 403 if it is more prejudicial than probative. Evidence is unfairly prejudicial when "it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence," *United States v. Massino*, 546 F.3d 123, 132 (2d Cir. 2008), including "excit[ing] emotions against the defendant," *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980); *see also, e.g.*, Rule 403, Advisory Committee Notes, 1972 Proposed Rules ("'Unfair prejudice' . . . means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."). "The fear is that the evidence will prejudice the defendant by reason of proving an adverse *immaterial* fact, or by simply exciting the emotions of the jurors against the defendant." *United States v. Ozsusamlar*, 428 F. Supp. 2d 161, 170 (S.D.N.Y. 2006).

## Argument

I.  **The Government Should Not Be Permitted To Refer To OneCoin Investors As "Victims"**

At various points, the Government has referred to individuals who invested in OneCoin as "victims." It should not be permitted to do so in front of the jury. A OneCoin investor is only a "victim" if the Government can establish that OneCoin did in fact perpetrate a wire fraud scheme and that the particular investor was a victim of the fraud. The term thus builds in the assumption that the Government has proven a key element of the charges and runs counter to the presumption of innocence. This is particularly unfair because even if OneCoin was a scam and a particular investor was in fact a "victim," the investor is not a victim of Mr. Scott's, who has not been charged with the OneCoin wire fraud. The only crime which the Government has charged Mr. Scott which has legally cognizable victims is the bank fraud charge, where the alleged

potential victims are FDIC-insured banks (the Government has identified three such banks in a letter providing particulars with respect to the Superseding Indictment).  Referring to OneCoin investors as "victims" is therefore not only particularly inflammatory, but has the potential to mislead or confuse the jury as to the crimes with which Mr. Scott is and is not being charged. *See, e.g.*, *United States v. Harding*, No. 08-10061-JTM, 2009 WL 982106, at *4 (D. Kan. Apr. 13, 2009) (ordering the government to refrain from calling Medicare beneficiaries "victims" in a Medicare fraud case because the charged defrauded Medicare and not the beneficiaries).

   II.   **The Government Should Not Be Permitted To Introduce Evidence As To The Particular Amount Of Money An Individual Invested In OneCoin Or Any Resulting Hardship**

Given that the Government has charged Mr. Scott with laundering the proceeds of an alleged wire fraud, the Government is of course required to prove that OneCoin in fact operated as a wire fraud.  The Government appears to have significant evidence to introduce on this point, including e-mails between and among the leadership of OneCoin, testimony from at least one senior OneCoin cooperating witness, and extensive financial records.   The Government is also expected to introduce evidence such as videos of OneCoin events and OneCoin promotional material that will leave little doubt as to what OneCoin represented to its investors.

Against this backdrop, the need for actual investor testimony is limited at best.  A wire fraud scheme does not require that anyone invest as a result of misrepresentations.  However, recognizing the Government has substantial leeway in proving its case, the defense does not object to limited witness testimony from individuals who invested in OneCoin based on representations that the Government is alleging are fraudulent.

There is real potential danger to such testimony, however, because it can play on juror sympathies for those harmed as a result of OneCoin's activities. That will create particularly

undue prejudice for Mr. Scott, who is not charged with participating in the wire fraud scheme that the Government has alleged harmed these investors. The Court should therefore police such investor testimony carefully to ensure it is relevant, non-cumulative, and not unduly prejudicial. While it is impossible *ex ante* to identify all such danger areas, Mr. Scott suggests that two prophylactic rules can be imposed: the Government should not be permitted to elicit (1) the amount of the investment or any information about the person's broader financial situation including net worth and total assets or savings; or (2) any hardship the person suffered as a result of making such an investment. The amount invested relative to financial means and hardship suffered have *zero* relevance to whether or not OneCoin operated a wire fraud. Any such evidence elicited by the Government would only be designed to secure sympathy for the investor in question, and would be extraordinarily prejudicial to Mr. Scott. Accordingly, Mr. Scott requests that the Court adopt these prophylactic rules and be attentive to the relevance and prejudice of investor testimony generally.

### III.   The Government Should Not Be Permitted To Call A Witness Who Decided *Not* To Invest In OneCoin

The Government has represented that it will likely call a witness who decided *not* to invest in OneCoin after reading Internet postings suggesting it was a scam. Such testimony is entirely irrelevant and is clearly offered for the improper purpose of suggesting that because this one individual decided that OneCoin was a scam after Internet research, that Mr. Scott did or could have done such research, and therefore potentially came to a similar conclusion.

The Government's planned witness to this effect will be referred to here as TH. According to § 3500 material, the Government first interviewed TH, a pharmacist, on October

19, 2016. *See* 3526-004, attached hereto as Exhibit A.[1] TH recounted that in August 2015 his boss "tried to induce him to invest in OneCoin" but that after "15 minutes of research" TH figured out "it was a Ponzi scheme," apparently through reading "blogs about OneCoin, like the blog on behindmlm.com, which focuses on pyramid schemes." *Id.* TH did not invest. There is no conceivable relevance to this testimony, which is likewise rife with hearsay. TH did not attend OneCoin presentations or pitches but heard of it indirectly through his boss and declined to invest. His opinion that it was a scam was based on unspecified Internet research criticizing OneCoin, which is likewise pure hearsay. Nor could this be non-hearsay evidence offered purely for TH's state of mind because TH's state of mind is entirely irrelevant to any issue at trial.[2]

As noted above, the defense understands that the Government is permitted to prove at trial that OneCoin engaged in wire fraud by making alleged misrepresentations to investors about OneCoin to induce investment. Accordingly, the defense will *not* object to reasonable, non-cumulative evidence about the representations OneCoin made to investors (such as videos of OneCoin events or promotional materials) or to some testimony by investors who themselves directly heard OneCoin pitches and elected to invest money. But there can be no relevance or proper purpose with respect to testimony from a member of the public who heard about OneCoin indirectly, read negative posts on the Internet suggesting it was a scam, and did not invest as a

---

[1] At the request of the Government, the defense will not publicly file § 3500 material referred to in this or other filings but will send these exhibits separately to Chambers.

[2] Such testimony would also violate Rule 701 of the Federal Rules of Evidence, which provides that lay witnesses may offer opinions only if they are "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." The purpose of the third requirement "is to prevent a party from conflating expert and lay opinion testimony thereby conferring an aura of expertise on a witness without satisfying the reliability standard for expert testimony set forth in Rule 702 and the pre-trial disclosure requirements set forth in ... [Federal Rule of Civil Procedure] 26." *United States v. Garcia*, 413 F.3d 201, 215 (2d Cir. 2005)

result.  Such evidence has no probative value whatsoever, is extraordinarily prejudicial, and should not be permitted.

    **IV.    The Government Should Not Be Permitted To Introduce Evidence With Respect To How Mr. Scott Used Fees He Received From The Fenero Funds**

Mr. Scott understands that in a money laundering trial, the Government is entitled to prove the flow of funds into and out of the Fenero Funds and that some of the funds (management fees) went to Mr. Scott and his companies.  There is no reason, however, to introduce evidence as to what Mr. Scott did with the funds once they had been transferred to him.  Evidence of particular purchases Mr. Scott made with the funds is not only irrelevant but is also highly prejudicial.

For example, the fact that Mr. Scott purchased a boat, property, sports cars, watches or luxury goods during or after the period of the charged offense is entirely irrelevant to the issue at trial: whether he knowingly laundered the proceeds of a wire fraud perpetrated by OneCoin.  Mr. Scott bought expensive cars before the charged crime as he did after.  Such purchases say nothing about whether he committed the crime. *See United States v. Ewings*, 936 F.2d 903, 906 (7th Cir. 1991) ("[W]e are reluctant to subscribe to the government's theory that criminal intent may be inferred from the items on [the defendant's] shopping list.").  Indeed, as "the problem with a general rule of permitting evidence of an affluent lifestyle to show 'motive' for committing a crime is that it ignores the real possibility that the extreme or extravagant wealth or spending was made possible by legitimate means and, if so, the introduction of such evidence would appeal solely to class prejudice." *United States v. Jackson Randolph*, 282 F.3d 369, 378 (6th Cir. 2002).

Moreover, such purchases, well beyond the means of most jurors, may be viewed as ostentatious and lead to resentment against Mr. Scott simply based on how much money he made

or how he decided to spend it. *See United States v. Hatfield*, 685 F. Supp. 2d 320, 326 (E.D.N.Y. 2010) ("[I]t is irrelevant if Mr. Brooks spent his fortune on lavish parties, instead of donating it to starving Malawian orphans."); *see also Blumberg v. United States*, 222 F.2d 496, 500 (7th Cir. 1955) (evidence of lavish wedding provided to daughter and cash given to groom irrelevant and prejudicial in tax evasion case). "Appeals to class prejudice are highly improper and cannot be condoned and trial courts should ever be alert to prevent them." *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 239 (1940); *see also Loussier v. Universal Music Grp., Inc.*, No. 02-cv-2447 (KMW), 2005 WL 5644421, at *2 (S.D.N.Y. Jul. 14, 2005) (excluding evidence of defendants' "wealth" and "financial condition" as "substantially outweighed by the danger of unfair prejudice that might result from jurors basing their conclusions on the relative wealth of the parties"). Such arguments and supporting evidence do not belong here.

## V. The Government Should Not Be Permitted To Call A Money Laundering Expert

The Government seeks to call an expert money laundering witness, identified last week as Donald Semesky, to testify to "the means and methods of money laundering and evasion/obstruction of policies and procedures employed by banks and other financial institutions to combat money laundering activities." *See* October 7, 2019 Expert Notice, attached hereto as Exhibit B.[3] Mr. Semesky should not be permitted to testify both because his testimony will not be necessary in a case in which the Government's fact witnesses will be able to discuss

---

[3] The Government's brief expert notice as to what its then-unidentified money laundering expert would testify to is "among other means and methods of laundering funds and evading/obstructing banks' anti-money laundering procedures—the use of shell companies; the use of nominee directors, principals, and ultimate beneficial owners ("UBOs"); the layering of funds through a series of financial accounts; the so-called "papering" of otherwise illegal transactions to make the transactions appear legitimate; and other ways in which false representations may be made to financial institutions to facilitate money laundering activities."

7

similar subject matter inasmuch as it relates to their dealings with Mr. Scott and because such expert testimony risks substantial juror confusion and prejudice to Mr. Scott.

Applicable Law

Rule 702 of the Federal Rules of Evidence provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based upon sufficient facts or data; (c) the testimony is the product of reliable principles and methods, and (d) the expert has reliably applied the principles and methods to the facts of the case.

The party seeking admission of expert testimony must demonstrate that the testimony is based on the witness's specialized knowledge. *See United States* v. *Mejia*, 545 F.3d 179, 196 (2d Cir. 2008) (concluding that the district court erred in allowing expert testimony "about matters that required no specialized knowledge"). Expert testimony is plainly inadmissible when it merely addresses "lay matters [that] the jury is capable of understanding and deciding without the expert's help." *Andrews* v. *Metro N. Commuter Railroad Co.*, 882 F.2d 705, 708 (2d Cir. 1989). The fact that an expert may generally possess "specialized knowledge" does not automatically render his opinions in this case reliable. *See SEC* v. *Lipson*, 46 F. Supp. 2d 758, 762 (N.D. Ill. 1998) ("[T]he fact that [the witness] is a certified public accountant -- and thus generally possesses the 'specialized knowledge' to qualify as an expert witness . . . does not automatically render his opinions reliable.").

Rule 704(b) of the Federal Rules of Evidence states that "an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone." Moreover, a district court must exclude expert testimony that "expresses a legal

conclusion." *Hygh* v. *Jacobs*, 961 F.2d 359, 363 (2d Cir. 1992).  As the Second Circuit explained, "[e]ven if a jury were not misled into adopting outright a legal conclusion proffered by an expert witness, the testimony would remain objectionable by communicating a legal standard—explicit or implicit—to the jury." *Id*. at 364.  Further, an expert "is not qualified to compete with the judge in the function of instructing the jury." *Id*.

Discussion

Mr. Semesky's testimony as to the means and methods of money laundering is not necessary to assist the jury in understanding the case and poses substantial risk of prejudice to Mr. Scott.

As an initial matter, the Government should be able to present the relevant concepts through other evidence and lay witnesses.  The financial transactions at issue will be clearly set out by a law enforcement summary witness already designated by the Government.  There will be a clear record from emails and witness testimony of the source of funds flowing into the Fenero Funds from various corporate entities and what happened to the funds once there.  And the bank and financial institution witnesses called by the Government – who the Government has taken the precaution of identifying as experts in their functions (*see* Government Expert Notice Letter dated September 30, 2019, attached as Exhibit C) – will testify as to what they did to evaluate such transactions consistent with anti-money laundering policies within their own organizations.[4]  Indeed, a central witness for the Government is Paul Spendiff, formerly of Apex Fund Management, who was *hired* by the Fenero Funds operated by Mr. Scott to perform fund

---

[4] The defense has advised the Government that it has no objection to its financial institutions discussing their areas of expertise inasmuch as it pertains to their otherwise relevant fact testimony about their involvement with the Fenero Funds and financial transactions at issue in the case.

9

administration services, including performing anti-money laundering ("AML") checks. Mr. Spendiff will not only testify to diligence processes employed in reviewing Fenero Fund investors and investments; he will testify as to concerns that emerged and his discussions with Mr. Scott concerning the same. As for the meaning of "money laundering," the Court of course will provide guidance in in its jury instructions, explaining money laundering as the law defines it.

In view of the above, Mr. Semesky's testimony adds nothing of value and presents real risk of confusing the jury. The term "money laundering" as used in 18 U.S.C. § 1956 is not coextensive with what an expert may consider to be laundering. For example, 18 U.S.C. § 1956 does not cover transactions designed to disguise proceeds of any crime, but only proceeds of certain specified unlawful activity. Disguising proceeds of other sorts of legal violations is simply not a violation of U.S. law, even if an expert (or lay person for that matter) would likely view the conduct as laundering. Most critically, only a person or institution that acts with actual knowledge that funds involved are crime proceeds can be held responsible for "laundering" money, whereas an expert may use the term to describe a course of conduct or activity without regard to intent. While the defense acknowledges the authority cited by the Government in its notice that there is no bar to admitting, where appropriate, testimony from a money laundering expert, that does not mean that such testimony is appropriate in every case, and the Court should preclude it here as it is both unnecessary and risks juror confusion.

In the event the Court permits some testimony by Mr. Semesky it should be tightly limited. As an initial matter, Mr. Semesky should not be permitted to use the term "money laundering" and it is not necessary that he do so in order to describe techniques that criminal enterprises may employ to hide illegal funds. He can speak of techniques without using a label

that risks the jury associating Mr. Semesky's understanding of the phrase with the legal definition of the crime.[5] Nor should he be permitted to opine on whether various "hypothetical" scenarios do or do not constitute money laundering that parallel in any meaningful way the charged offense.  Finally,  many of the techniques Mr. Semesky may describe, such as the use of "shell companies" and nominee directors are not *per se* illegal and are routinely used to protect assets in ways that may be entirely legitimate or, even where distasteful, non-criminal.  The Court should therefore give an instruction at the time of any permitted expert testimony by Mr. Semesky making clear that the use of such corporate structures is lawful, and that the jury should be guided by the Court's final instructions as to what is and is not money laundering as defined in the charges against Mr. Scott.

Respectfully submitted,

/s/ Arlo Devlin-Brown

Arlo Devlin-Brown
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 841-1046

David M. Garvin
Law Offices of David M. Garvin, P.A.
200 South Biscayne Boulevard
Suite 3150
Miami, FL 33131
(305) 371-8101

---

[5] Of course, lay witnesses should also be forbidden from describing any of the financial transactions Mr. Scott engaged in as "money laundering," as that determination is wholly within the province of the jury following instructions from the Court as to what proof of the crime of money laundering requires.