UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

  UNITED STATES OF AMERICA       :
                                  :
         - v. -              :
                                  :   S10 17 Cr. 630 (ER)
  MARK S. SCOTT,           :
                                  :
               Defendant.     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## THE GOVERNMENT'S MOTIONS *IN LIMINE*

GEOFFREY S. BERMAN
United States Attorney
Southern District of New York

Christopher J. DiMase
Nicholas Folly
Assistant United States Attorneys
Julieta V. Lozano
Special Assistant United States Attorney

*- Of Counsel -*

## <u>TABLE OF CONTENTS</u>

THE GOVERNMENT'S MOTIONS *IN LIMINE* ........................................................................ 1

BACKGROUND ........................................................................................................................ 2

ARGUMENT ............................................................................................................................. 3

I.       CO-CONSPIRATOR STATEMENTS ARE ADMISSIBLE ............................................ 3

         A.  Relevant Facts ................................................................................................... 3

         B.  Applicable Law .................................................................................................. 7

         C.  Discussion ........................................................................................................ 11

II.      THE COURT SHOULD PRECLUDE EVIDENCE NOT PROBATIVE OF THE

         DEFENDANT'S STATE OF MIND, AND ADMIT HIGHLY PROBATIVE

         EVIDENCE REGARDING HIS KNOWLEDGE ............................................................ 13

         A.  Relevant Facts ................................................................................................. 14

         B.  Applicable Law ................................................................................................ 15

         C.  Discussion ........................................................................................................ 16

III.    THE COURT SHOULD PRECLUDE THE DEFENDANT'S PROPOSED EXPERT

         TESTIMONY ON THE GROUNDS THAT THE EXPERT NOTICE PROVIDED

         IS INSUFFICIENT UNDER RULE 16, AND BECAUSE THE PROFFERED

         EXPERT TESTIMONY IS IRRELEVANT, IMPROPER AND INVADES THE

         PROVINCE OF THE JURY ........................................................................................... 20

         A.  Relevant Facts ................................................................................................. 20

         B.  Applicable Law ................................................................................................ 22

         C.  Discussion ........................................................................................................ 25

IV.    THE GOVERNMENT SHOULD BE PERMITTED TO INTRODUCE EVIDENCE

THAT SCOTT POSSESSED A LOADED SEMI-AUTOMATIC HANDGUN AT

THE TIME OF HIS ARREST ........................................................................ 28

   A. Relevant Facts ............................................................................ 28

   B. Applicable Law ........................................................................... 29

   C. Discussion .................................................................................. 32

V.   FOREIGN BUSINESS RECORDS ARE ADMISSIBLE PURSUANT TO TITLE

   18, UNITED STATES CODE, SECTION 3505 ............................................ 33

   A. Relevant Facts ............................................................................ 34

   B. Applicable Law ........................................................................... 34

   C. Discussion .................................................................................. 35

VI.  EVIDENCE OR ARGUMENT CONCERNING THE DEFENDANT'S FAMILY

   BACKGROUNDS, HEALTH CONDITIONS, AGES, OR ANY OTHER

   PERSONAL FACTORS UNCONNECTED TO GUILT SHOULD BE

   PRECLUDED, AS SHOULD DISCUSSION OF PUNISHMENT ................................ 36

VII. EVIDENCE OR ARGUMENT CONCERNING THE DEFENDANT'S PRIOR

   COMMISSION OF "GOOD ACTS" OR NON-COMMISSION OF OTHER BAD

   ACTS SHOULD BE PRECLUDED ............................................................. 37

CONCLUSION ....................................................................................... 38

## **Table of Authorities**

*Amorgianos* v. *Romano Enters*, 303 F.3d 256 (2d Cir. 2002) ...................................................... 23

*Boucher* v. *U.S. Suzuki Motor Corp.*, 73 F.3d 18 (2d Cir. 1996) ................................................. 23

*Bourjaily v. United States*, 483 U.S. 171 (1987) ....................................................................... 7, 8

*Cameron v. City of New York*, 598 F.3d 50 (2d Cir. 2010) .......................................................... 23

*Costantino v. Herzog*, 203 F.3d 164 (2d Cir. 2000) ................................................................... 31

*Daubert* v. *Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993) ................................... 23, 24, 27

*Hamling* v. *United States*, 418 U.S. 87 (1974) ......................................................................... 23

*Hogan v. Am. Tel. & Tel. Co.*, 812 F.2d 409 (2d Cir. 1987) ....................................................... 24

*Huddleston v. United States*, 485 U.S. 681 (1988) .................................................................... 30

*Kumho Tire Co.* v. *Carmichael*, 526 U.S. 137 (1999) ............................................................... 23

*Lombardo v. Stone*, No. 2002 WL 113913 (S.D.N.Y. 2002) ...................................................... 15

*Melendez–Diaz v. Massachusetts*, 557 U.S. 305 (2009) ............................................................. 35

*Parker v. Randolph*, 442 U.S. 62 (1979) ................................................................................... 32

*Rogers v. United States*, 422 U.S. 35 (1975) ............................................................................. 36

*Shannon v. United States*, 512 U.S. 573 (1994) ........................................................................ 36

*Smith v. United States*, 568 U.S. 106 (2013) ............................................................................. 11

*United States v. Anekwu*, 695 F.3d 967 (9th Cir. 2012) ............................................................. 34

*United States v. Ansaldi*, 372 F.3d 118 (2d Cir. 2004) .............................................................. 16

*United States v. Apodaca*, 275 F. Supp. 3d 123 (D.D.C. 2017) ............................................ 10, 12

*United States v. Ascarrunz*, 838 F.2d 759 (5th Cir. 1988) .................................................... 11, 12

*United States v. Baez*, 349 F.3d 90 (2d Cir. 2003 ..................................................................... 30

*United States v. Banki*, 2010 WL 1875690 (S.D.N.Y. May 10, 2010) ................................... 24, 28

*United States v. Battaglia*, 2008 WL 144826 (S.D.N.Y. Jan. 15, 2008) ...................................... 36

*United States v. Beech-Nut Nutrition Corp.,* 871 F.2d 1181 (2d Cir. 1989)......................... 10

*United States v. Benedetto*, 571 F.2d 1246 (2d Cir. 1978) ........................................... 37

*United States v. Berger*, 224 F.3d 107 (2d Cir. 2000) ................................................. 12

*United States v. Carboni*, 204 F.3d 39 (2d Cir. 2000) ................................................. 29

*United States v. Collins*, 581 Fed. Appx. 59 (2d Cir. 2014) ...................................... 25

*United States* v. *Concessi*, 38 F. App'x 866 (4th Cir. 2002) ...................................... 26

*United States* v. *Cooney*, 938 F.2d 1553 (2d Cir. 1991)............................................ 30

*United States* v. *Day*, 524 F.3d 1361 (D.C. Cir. 2008)............................................. 26

*United States v. Desena*, 260 F.3d 150 (2d Cir. 2001) ................................................ 9

*United States v. Detrich*, 865 F.2d 17 (2d Cir. 1988 ................................................. 19

*United States v. DeVillio*, 983 F.2d 1185 (2d Cir. 1993).......................................... 8

*United States v. Diaz*, 176 F.3d 52 (2d Cir. 1999)................................................. 9, 11

*United States v. DiDomenico*, 985 F.2d 1159 (2d Cir. 1993)...................................... 23

*United States v. Edwards*, 342 F.3d 168 (2d Cir. 2003) ........................................... 30

*United States v. Eisen*, 974 F.2d 246 (2d Cir. 1992) .............................................. 9, 11

*United States v. Eppolito*, 543 F.3d 25 (2d Cir. 2008)............................................. 10

*United States v. Farhane*, 634 F.3d 127 (2d Cir. 2011)........................................... 13

*United States v. Fazio,* 2012 WL 1203943 (S.D.N.Y. 2012) ...................................... 37

*United States v. Figueroa*, 618 F.2d 934 (2d Cir. 1980) .......................................... 31

*United States v. Flaharty*, 295 F.3d 182 (2d Cir. 2002) ........................................... 9

*United States v. Flom*, 256 F. Supp. 3d 253 (E.D.N.Y. 2017)..................................... 16

*United States v. Fowler*, 932 F.2d 306 (4th Cir. 1991)............................................. 28

*United States v. Gelzer*, 50 F.3d 1133 (2d Cir. 1995) .................................................. 31

*United States v. Gigante*, 166 F.3d 75 (2d Cir. 1999 ................................................. 7, 8

*United States v. Harris*, 491 F.3d 440 (D.C. Cir. 2007) ............................................ 36

*United States v. Harvey*, 959 F.2d 1371 (7th Cir. 1992) ......................................... 15, 17

*United States* v. *Hoffecker*, 530 F.3d 137 (3d Cir. 2008) ........................................... 26

*United States v. Hsu*, 669 F.3d 112 (2d Cir. 2011) .................................................. 29

*United States v. Jefferson*, 215 F.3d 820 (8th Cir. 2000) ............................................ 9

*United States v. Kail*, 804 F.2d 441 (8th Cir. 1986) .............................................. 15, 17

*United States v. Kaplan*, 490 F.3d 110 (2d Cir. 2007) ....................................... 16, 18, 19

*United States v. Kendall*, 665 F.2d 126 (7th Cir. 1981) ............................................ 8

*United States v. Kozeny*, 643 F. Supp. 2d 415 (S.D.N.Y. 2009) .................................... 19

*United States v. LaFlam*, 369 F.3d 153 (2d Cir. 2004) ............................................ 30

*United States v. Lyles*, 593 F.2d 182 (2d. Cir. 1979) ............................................... 8

*United States v. Maher*, 108 F.3d 1513 (2d Cir. 1997) ........................................... 17

*United States v. Maldonado-Rivera*, 922 F.2d 934 (2d Cir. 1990) ................................... 9

*United States v. Nerlinger*, 862 F.2d 967 (2d Cir. 1988) .......................................... 10

*United States v. Newkirk*, 684 Fed. Appx. 95 (2d Cir. 2017) ..................................... 25

*United States v. Paccione*, 949 F.2d 1183 (2d Cir. 1991) ......................................... 36

*United States v. Padilla*, 203 F.3d 156 (2d Cir. 2000) ............................................. 8

*United States v. Pascarella*, 84 F.3d 61 (2d Cir. 1996 ............................................ 30

*United States v. Pedroza*, 750 F.2d 187 (2d Cir. 1984) ........................................... 12

*United States v. Pitre*, 960 F.2d 1112 (2d Cir. 1992) .......................................... 31, 33

*United States v. Qualls*, 613 F. App'x 25 (2d Cir. 2015) ......................................... 35

*United States v. Quinones*, 511 F.3d 289 (2d Cir. 2007) .............................................. 29

*United States v. Rahme*, 813 F.2d 31 (2d Cir. 1987) ..................................................... 9

*United States v. Ramirez*, 894 F.2d 565 (2d Cir. 1990) ................................................ 30

*United States v. Rastelli*, 870 F.2d 822 (2d Cir. 1989) .............................................. 9, 11

*United States v. Rea,* 958 F.2d 1206 (2d Cir. 1992) ..................................................... 24

*United States v. Reyes*, 302 F.3d 48 (2d Cir. 2002) ..................................................... 16

*United States v. Rivera*, 2015 WL 1725991 (E.D.N.Y. 2015) ...................................... 37

*United States v. Rivera*, 22 F.3d 430 (2d Cir. 1994) ..................................................... 8

*United States v. Roldan-Zapata*, 916 F.2d 795 (2d Cir. 1990) ................................. 9, 31

*United States v. Salameh*, 152 F.3d 88 (2d Cir. 1988) .................................................. 19

*United States v. Salmonese*, 352 F.3d 608 (2d Cir. 2003) ........................................... 10

*United States v. Scarpa*, 897 F.2d 63 (2d Cir. 1990) ................................................... 37

*United States v. Simmons*, 923 F.2d 934 (2d Cir. 1991) ................................................ 9

*United States v. Stratton*, 779 F.2d 820 (2d Cir. 1985) ................................................. 8

*United States v. Svoboda*, 347 F.3d 471 (2d Cir. 2003).............................................. 16

*United States v. Tarantino*, 846 F.2d 1384 (D.C. Cir. 1988)......................................... 8

*United States v. Taylor*, 802 F.2d 1108 (9th Cir.1986)................................................ 11

*United States v. Thai*, 29 F.3d 785 (2d Cir. 1994) ........................................................ 9

*United States v. Townes*, 870 F.2d 880 (2d Cir. 1989) ................................................ 29

*United States v. Tussa*, 816 F.2d 58 (2d Cir. 1987) ...................................................... 32

*United States v. Ulbricht*, 79 F. Supp. 3d 466 (S.D.N.Y. 2015)......................... 8, 22, 23

*United States v. Wexler*, 522 F.3d 194 (2d Cir. 2008)................................................ 23

*United States v. Williams*, 205 F.3d 23 (2d Cir. 2000) ................................................ 31

*United States* v. *Young*, 745 F.2d 733 (2d Cir. 1984 ....................................................... 24, 27, 28

*United States v. Zackson*, 12 F.3d 1178 (2d Cir. 1993) ............................................................... 30

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA      :
     :
     - v. -      :
     :    S10 17 Cr. 630 (ER)
MARK S. SCOTT,      :
     :
     Defendant.      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## THE GOVERNMENT'S MOTIONS *IN LIMINE*

    The Government respectfully seeks rulings *in limine* on several issues prior to trial against

Mark Scott, which is scheduled to begin on November 4, 2019.

    *First*, the Government moves for the following pretrial rulings:

(1)    Certain out-of-court statements made by the defendants and their co-conspirators are either non-hearsay or fall within an established exception to the bar against hearsay;

(2)(a)    The defendant should be precluded from offering any evidence for the purpose of establishing his state of mind absent proof he was aware of such evidence during the relevant time period;

(2)(b)    evidence bearing on the defendant's knowing participation in the charged conspiracies, including evidence that was widely available in the public domain, is admissible;

(3)    The Court should preclude the defendant's proposed expert testimony on the grounds that the expert notice provided is insufficient under Rule 16, and because the proffered expert testimony is irrelevant, improper, and invades the province of the jury;

(4)    Evidence of the defendant's possession of a loaded semi-automatic handgun at the time of his arrest is admissible; and

(5)    Foreign business records are admissible pursuant to Title 18, United States Code, Section 3505.

*Second*, the Government seeks to preclude certain evidence or argument that is wholly irrelevant to the issues at trial, and/or for which any conceivable probative value is substantially outweighed by the risk of juror confusion, distraction from the evidence, unnecessary lengthening of the trial, and/or unfair prejudice to the Government.  Specifically, the Government moves to preclude (1) evidence or argument concerning the defendant's family backgrounds, health conditions, ages, or any other personal factors unconnected to his guilt or innocence, and the potential punishment he faces if convicted; and (2) evidence or argument concerning the defendant's prior commission of good acts or lack of bad acts.

## BACKGROUND

Scott is charged in a two-count Superseding Indictment, S10 17 Cr. 630 (ER) (the "Indictment"), with conspiracy to commit money laundering in violation of Title 18, United States Code, Section 1956(h), and conspiracy to commit bank fraud in violation of Title 18, United States Code, Section 1349.  The Indictment alleges that from at least in or about September 2015 through 2018, the defendant conspired to conceal the nature, location, source, ownership, or control of "approximately $400 million in proceeds of a wire fraud scheme involving a purported cryptocurrency known as 'OneCoin' (the "OneCoin Scheme")."  Further, the defendant and other co-conspirators lied to banks and other financial institutions worldwide—including within the United States—to cause those banks to transfer funds that were derived from OneCoin fraud proceeds into and out of the accounts.  Specifically, the defendant—a U.S. citizen and attorney, employed for a portion of the relevant time period as a partner at an international law firm— organized and operated a series of investment funds known as the "Fenero Funds," which he used for the purpose of laundering OneCoin fraud proceeds.

In or about September 2015, Scott was introduced to Ruja Ignatova—one of the co-founders of OneCoin—by another member of OneCoin Scheme ███████████████  Shortly

2

thereafter, Scott joined the charged conspiracies, and began to launder OneCoin proceeds on Ignatova's behalf through the Fenero Funds and related entities.  Between approximately 2016 and 2018, Scott laundered approximately $400 million of OneCoin fraud proceeds.  Ultimately, Scott transferred millions of dollars of OneCoin proceeds into the United States for his own personal use, including to purchase multi-million dollar homes, a yacht, and luxury cars.

## ARGUMENT

## I.    CO-CONSPIRATOR STATEMENTS ARE ADMISSIBLE

The Government expects to elicit and offer certain statements as co-conspirator statements made in furtherance of the OneCoin Scheme, which are admissible under Federal Rule of Evidence 801(d)(2)(E).  Those statements fall into several broad categories: (1) statements made by co-conspirators to a cooperating witness (the "CW"), who was a leader in the OneCoin fraud scheme; (2) statements made to the CW immediately following Scott's arrest to protect and continue the charged conspiracies; and (3) statements related to the uncharged wire fraud scheme.

### A.    Relevant Facts

At trial, the Government intends to introduce evidence, such as text messages, emails, and recorded phone conversations that were with the defendant and/or co-conspirators and were made in furtherance of the OneCoin Scheme.  The Government also expects to call the CW to testify at trial.  During the CW's testimony, the Government expects that the CW will testify about conversations with co-conspirators that were made in furtherance of the OneCoin Scheme.  As set forth below, these statements are admissible, non-hearsay evidence because they are statements made by co-conspirators made in furtherance of the OneCoin Scheme.

The Government expects the trial evidence will establish the following facts, among others, in substance and in part.

Beginning in 2014, co-conspirators Ruja Ignatova and Sebastian Greenwood founded

3

OneCoin.  As noted above, OneCoin markets a purported digital cryptocurrency called "OneCoin" through a multi-level-marketing network.  In reality, since its inception, OneCoin has been a fraud scheme that has defrauded millions of OneCoin members out of billions of dollars.  For example, emails sent between co-founders Ignatova and Greenwood demonstrate, among other things, that, contrary to public representations, the value of OneCoin has never been set by supply and demand, and is instead set internally by OneCoin.  OneCoins are therefore valueless.

In order to successfully perpetrate the OneCoin fraud scheme, individuals such as Ruja Ignatova, Sebastian Greenwood, and other co-conspirators were dependent on a sophisticated international network of money launderers (the "Money Launderers").  Specifically, once banks became suspicious that OneCoin was potentially involved in criminal activity, banks began to shut down accounts that were associated with OneCoin (and/or associated co-conspirators, such as Ruja Ignatova).  The Money Launderers helped to solve this problem by providing a network of bank accounts around the world that were opened in the names of shell companies and used to receive and transfer OneCoin fraud proceeds.  To make the scheme succeed, the Money Launderers hid the source of funds from the banks, and lied to the banks about the reasons for wire transfers into and out of the bank accounts.  Furthermore, OneCoin customers were instructed not to mention "OneCoin" in the wire details when they purchased OneCoin's so called "trader packages."

The Government expects that the evidence at trial will demonstrate that the following individuals, among *many* others, were all co-conspirators, and frequently communicated through emails, phone conversations, text messages, and in person conversations in furtherance of the conspiracies:

- Mark Scott, the defendant: helped to launder $400 million in OneCoin fraud proceeds.  Scott worked closely with Ruja Ignatova, ███████████████████, and numerous other members of the OneCoin Scheme to help launder OneCoin fraud proceeds. ██████████████████████████

4



- Ruja Ignatova and Sebastian Greenwood: as noted above, Ignatova and Greenwood founded OneCoin, and were two of the top leaders in the OneCoin Scheme.

In addition to the above-mentioned individuals, the CW was also a key member of the OneCoin Scheme.  The CW communicated with all of the above-mentioned individuals through emails, text messages, phone conversations, and in-person conversations, most of which were directly in furtherance of the conspiracies.

### 1.    Statements to the CW About Scott and Other Co-Conspirators



████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████

2.      **Scott's Arrest**

On September 5, 2018, approximately three months after Scott had offered to assist in laundering additional OneCoin fraud proceeds, Scott was arrested.  On the day of his arrest, Scott was interviewed by law enforcement agents, and obstructed justice by telling a series of lies about his laundering of OneCoin fraud proceeds.  Scott's lies included, among others, that OneCoin and Ruja Ignatova had nothing to do with the Fenero Funds.  As noted above, contrary to Scott's statements to the agents, all of the money invested into the Fenero Funds was derived from the OneCoin fraud scheme and was invested into the Fenero Funds on behalf of Ignatova.

### 3. Co-Conspirator Statements Made to the CW Immediately After Scott's Arrest

[REDACTED]

### B. Applicable Law

#### 1. Admissibility of Co-Conspirator Statements Under Rule 801(d)(2)(E)

The Federal Rules of Evidence define "hearsay" as an out-of-court statement "offer[ed] in evidence to prove the truth of the matter asserted."  Fed. R. Evid. 801(c).  Rule 801(d)(2)(E) provides in relevant part that "[a] statement is not hearsay if . . . the statement is offered against an opposing party and was made by the party's co-conspirator during and in furtherance of the conspiracy."  To admit a statement under this rule, the court must find two facts by a preponderance of the evidence: first, that a conspiracy that included the defendant and the declarant existed; and, second, that the statement was made during the course and in furtherance of that conspiracy. *Bourjaily v. United States*, 483 U.S. 171, 175 (1987); *United States v. Gigante*, 166 F.3d 75, 82 (2d Cir. 1999).

Under this exception to the hearsay rule, "[t]he conspiracy between the declarant and the defendant need not be identical to any conspiracy that is specifically charged in the indictment."

*Gigante*, 166 F.3d at 82; *see also United States v. Lyles*, 593 F.2d 182, 194 (2d. Cir. 1979) ("It is settled law that the conspiracy which serves as the vehicle for the introduction of a vicarious admission by a co-conspirator need not be charged in the indictment."); *United States v. Kendall*, 665 F.2d 126, 130 (7th Cir. 1981) ("conspiracy as an evidentiary concept, embodied in rule 801(d)(2)(E), and conspiracy as a concept of substantive criminal law are not coterminous"). "The Government merely needs to demonstrate that the declarant and the defendant[ ] against whom the statements are offered are members of a conspiracy in furtherance of which the statements are made . . . and that this conspiracy is factually intertwined with the offenses being tried." *United States v. Stratton*, 779 F.2d 820, 829 (2d Cir. 1985) (internal citations and quotations omitted). "In fact, the Second Circuit has held that it is not even necessary that the Government charge a conspiracy to take advantage of Rule 801(d)(2)(E)." *United States v. Ulbricht*, 79 F. Supp. 3d 466, 483-84 (S.D.N.Y. 2015) (citing *United States v. DeVillio*, 983 F.2d 1185, 1193 (2d Cir. 1993)). Moreover, when determining whether the predicate conspiracy has been established, the court is not bound by the rules of evidence, *see* Fed. R. Evid. 104(a), and "the district court may consider the hearsay statement itself" as evidence of "the existence of a conspiracy." *United States v. Padilla*, 203 F.3d 156, 161 (2d Cir. 2000) (citing *Bourjaily*, 483 U.S. at 181).

To be in furtherance of a conspiracy, a statement "must in some way have been designed to promote or facilitate achievement of a goal of the ongoing conspiracy." *United States v. Rivera*, 22 F.3d 430, 436 (2d Cir. 1994). Under this standard, a co-conspirator statement is admissible if it "reasonably [can] be interpreted as encouraging a co-conspirator or other person to advance the conspiracy, or as enhancing a co-conspirator or other person's usefulness to the conspiracy." *United States v. Tarantino*, 846 F.2d 1384, 1412 (D.C. Cir. 1988). Thus, statements are in furtherance of the conspiracy if they, among other things: (1) inform or provide an update as to the

8

status or progress of the conspiracy, *see United States v. Desena*, 260 F.3d 150, 158 (2d Cir. 2001); (2) "prompt the listener . . . to respond in a way that promotes or facilitates the carrying out of a criminal activity," *United States v. Maldonado-Rivera*, 922 F.2d 934, 958 (2d Cir. 1990); (3) "seek to induce a co-conspirator's assistance," *Desena*, 260 F.3d at 158 (internal quotations omitted); (4) "provide reassurance," *id.*; (5) "serve to foster trust and cohesiveness," *id.*; *United States v. Simmons*, 923 F.2d 934, 945 (2d Cir. 1991); (6) "facilitate and protect" the conspiratorial activities, *United States v. Diaz*, 176 F.3d 52, 87 (2d Cir. 1999); or (7) inform a co-conspirator of "the identity and activities of his coconspirators," *United States v. Rastelli*, 870 F.2d 822, 837 (2d Cir. 1989); *United States v. Rahme*, 813 F.2d 31, 36 (2d Cir. 1987).  A narrative description of a past event is admissible as long as it serves "some current purpose in the conspiracy."  *United States v. Thai*, 29 F.3d 785, 813 (2d Cir. 1994); *see also Desena*, 260 F.3d at 159; *Maldonado-Rivera*, 922 F.2d at 958; *United States v. Flaharty*, 295 F.3d 182, 199-200 (2d Cir. 2002).[1]

Furthermore, "[c]o-conspirator statements [under Rule 801(d)(2)(E)] may include attempts to cover up an ongoing conspiracy after the participants have been arrested."  *United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990) (citing *United States v. Arrington*, 867 F.2d 122, 130 (2d Cir. 1989)); *see also United States v. Eisen*, 974 F.2d 246, 269 n.8 (2d Cir. 1992) ("acts or statements designed [by co-conspirators] to conceal an ongoing conspiracy are in furtherance of that conspiracy"); *United States v. Beech-Nut Nutrition Corp.,* 871 F.2d 1181, 1198-99 (2d Cir.

---

[1]  Indeed, "[s]tatements that describe past events are in furtherance of the conspiracy if they are made . . . simply to keep coconspirators abreast of current developments and problems facing the group."  *United States v. Jefferson*, 215 F.3d 820, 824 (8th Cir. 2000) (internal quotations omitted).  For example, in *United States v. Lozano-Reyes*, the Second Circuit affirmed the trial court's admission of co-conspirator statements relating to past events because the statements served a current purpose in the conspiracy, namely, "to engender trust, to increase [the witness's] familiarity with the conspiracy's modus operandi, and to outline future conspiratorial actions and the anticipated profits."  101 F.3d 686, at *2 (2d Cir. 1996).

1989) (co-conspirator statements admissible because they were designed to "cover up" the conspiracy and encourage the listener "to not to reveal incriminating information").

### 2.      Burden to Show Withdrawal from Conspiracy is on Defendant

"Where the government has presented sufficient evidence to show a conspiracy that has continuing purposes or goals, the burden is on the defendant to prove that the conspiracy was terminated or that he took affirmative steps to withdraw.  To show that the conspiracy was terminated, the defendant needs to present evidence from which the jury could find that the goals of the conspiracy were accomplished in some final manner.  For a defendant to show that he withdrew from the conspiracy, proof merely that he ceased conspiratorial activity is not enough. He must also show that he performed some act that affirmatively established that he disavowed his criminal association with the conspiracy, either the making of a clean breast to the authorities, or communication of the abandonment in a manner reasonably calculated to reach co-conspirators." *United States v. Eppolito*, 543 F.3d 25, 49 (2d Cir. 2008) (internal quotations and citations omitted).  Withdrawal "requires affirmative action ... to disavow or defeat the purpose of the conspiracy." *United States v. Nerlinger*, 862 F.2d 967, 974 (2d Cir. 1988) (internal quotation marks omitted).  "[A]bsent withdrawal, a conspirator's participation in a conspiracy is presumed to continue until the last overt act by any of the conspirators." *United States v. Salmonese*, 352 F.3d 608, 615 (2d Cir. 2003) (internal quotation marks omitted).

For these very reasons, a defendant's arrest does not automatically terminate his membership in an ongoing conspiracy. *See United States v. Apodaca*, 275 F. Supp. 3d 123, 135 (D.D.C. 2017) ("the mere fact that [the defendant] was arrested does not amount to withdrawal. As the Supreme Court has observed, '[p]assive nonparticipation in the continuing scheme is not enough to sever the meeting of minds that constitutes the conspiracy.'") (quoting *Smith v. United*

*States*, 568 U.S. 106, 109 (2013)).  "'[S]tatements made by an *unarrested* co-conspirator who is still operating in furtherance of the ongoing conspiracy may be introduced against the arrested conspirator.'"  *United States v. Ascarrunz*, 838 F.2d 759, 762 (5th Cir. 1988) (quoting *United States v. Taylor*, 802 F.2d 1108, 1117 (9th Cir.1986) (emphasis in original)); *cf. United States v. Eisen*, 974 F.2d 246, 269 n. 8 (2d Cir. 1992) ("Because the District Court found that [the defendant] did not effectively withdraw from the conspiracy when he resigned from the . . . firm, [the defendant] was still a member of the conspiracy . . . .").  "An unarrested conspirator . . . may make statements in furtherance of the conspiracy and be considered an agent of the defendant . . . Allowing such statements against an already arrested coconspirator declines to recognize that an arrest operates as a withdrawal as a matter of law."  *Ascarrunz*, 838 F.2d at 763.

### C. Discussion

#### 1. Statements Made by Co-Conspirators in Furtherance of the Charged Conspiracies are Admissible

Statements such as those described above, and other similar statements of co-conspirators to the CW, are admissible under Rule 801(d)(2)(E).  For example, the statements made to the CW by other co-conspirators about Mark Scott's role as a Money Launderer served to inform the CW, who was a co-conspirator, of "the identity and activities of his coconspirators."  *Rastelli*, 870 F.2d at 837. ████████████████████████████████████████████ helped to "facilitate and protect" the conspiratorial activities by ████████████████████ ████████████████████ *Diaz*, 176 F.3d at 87.

Furthermore, ████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

11

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

Further, at the time of his arrest, Scott lied to federal agents, and attempted to cover up for himself and his coconspirators.  These actions are just the opposite of an "affirmative action," such as "making of a clean breast to the authorities, or communication of the abandonment in a manner reasonably calculated to reach co-conspirators."  *United States v. Berger*, 224 F.3d 107, 118 (2d Cir. 2000).  As noted above, a defendant's arrest does not automatically terminate his membership in an ongoing conspiracy.  *See Apodaca*, 275 F. Supp. 3d at 135.  In particular, "[S]tatements made by an unarrested co-conspirator who is still operating in furtherance of the ongoing conspiracy may be introduced against the arrested conspirator.'"  *United States v. Ascarrunz*, 838 F.2d at 762. Here, █████████ the CW were clearly still operating in furtherance of the conspiracies, and the expected trial evidence shows that Scott had not withdrawn from the conspiracies. ████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████      Accordingly, all of the statements described above, and other similar statements made in furtherance of the conspiracies, are admissible at trial.

### 2.     Statements Made in Furtherance of the Uncharged Wire Fraud Conspiracy Are Admissible against the Defendant Because He Was a Member of That Conspiracy

The Court should admit at trial statements made by the defendant's co-conspirators in an uncharged wire fraud conspiracy involving the OneCoin scheme.[2]  Those statements—such as

---

[2]  It bears noting that many statements made in furtherance of the wire fraud conspiracy are not hearsay in the first instance, because they will not be offered for their truth.  *See, e.g.*, *United States v. Pedroza*, 750 F.2d 187, 203 (2d Cir. 1984) (testimony about statements "was not hearsay since it plainly was not offered to prove the truth of the matter asserted.  Rather, the statement was

email communications between the founders of OneCoin establishing that it was designed from the start as a fraud scheme—are properly admitted against the defendant as co-conspirator statements pursuant Rule 801(d)(2)(E).[3]  While the Indictment does not charge the defendant with conspiracy to commit wire fraud in connection with the OneCoin Scheme, the Government will establish by a preponderance of the evidence that the defendant was a member of that conspiracy. In particular, the evidence will demonstrate that OneCoin had great difficultly banking its criminal proceeds.  The evidence will show that Money Launderers like the defendant were critical to successfully moving OneCoin-derived funds through the international financial system, both to permit the scheme to continue functioning and to transmit criminal earnings to its principals.  Thus, while the Government does not intend to argue the defendant's culpability in the underlying wire fraud conspiracy to the jury, the evidence presented at trial will easily satisfy the preponderance standard for admissibility of co-conspirator statements under Rule 801(d)(2)(E).  The Court should therefore admit at trial statements made by the defendant's wire fraud co-conspirators.

## II.    THE COURT SHOULD PRECLUDE EVIDENCE NOT PROBATIVE OF THE DEFENDANT'S STATE OF MIND, AND ADMIT HIGHLY PROBATIVE EVIDENCE REGARDING HIS KNOWLEDGE

The Court should preclude evidence purporting to show the defendant's state of mind regarding OneCoin's legality, absent a showing that he was personally aware of such evidence.

---

offered for its patent falsity.").  For example, the Government will offer statements made by various OneCoin principals and promotors in the form of misrepresentations communicated to OneCoin investors to cause them to purchase OneCoin packages.

[3]  It is of no moment that Scott joined the conspiracy after the date of some of the email communications between Ignatova and Greenwood.  *See United States v. Farhane*, 634 F.3d 127, 161 n.35 (2d Cir. 2011) ("Where statements are made in the course of an existing conspiracy in which the defendant later joins, those statements may be admitted against him, even though he was not a member of the conspiracy at the time the statements were made, on the theory that he 'assumes the risk for what has already happened' in the scheme.") (quoting 5 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 801.34[4][a], at 801–84 (Joseph M. McLaughlin ed., 2d ed. 2007)).

The evidence at issue includes due diligence inquiries made by third parties in which the defendant did not directly participate. This evidence simply does not bear on the defendant's state of mind with respect to the legitimacy of OneCoin, particularly given the defendant's close ties with OneCoin leadership, which distinguish his knowledge from that possessed by arms-length third parties. Moreover, the evidence should be precluded under Rule 403. To the extent that the evidence has any probative value at all, it is vastly outweighed by the risk of confusing the jury by creating the misimpression that jury should analyze the states of mind of individuals other than the defendant.

Conversely, the Court should admit evidence showing that the defendant himself received information or maintained deliberate ignorance with respect to various indicia of fraud concerning OneCoin, including publicly-available reporting regarding its fraudulent nature. Such proof is highly probative evidence supporting the knowledge element of the charged money laundering conspiracy, and is therefore both relevant and admissible.

A.      Relevant Facts

Direct and circumstantial evidence presented at trial will show that the defendant was aware of the fraudulent nature of OneCoin, or that at a minimum, he was aware of a high probability that OneCoin represented a fraud scheme, but deliberately avoided confirming that fact. For example, the evidence adduced at trial will demonstrate that derogatory information regarding OneCoin—for example, reports identifying OneCoin as a Ponzi scheme—was widely available in the public realm during the period that the defendant engaged in charged money laundering conspiracy, and that the defendant himself was aware of that publicly-available information. Moreover, the evidence will demonstrate that the defendant had direct and frequent contact with the founder and leader of OneCoin, Ruja Ignatova, and other key players in the

OneCoin scheme, and was therefore privy to significant non-public information about OneCoin's operation and finances.

The defendant has repeatedly suggested that he intends to argue at trial that he was unaware that the OneCoin fraud scheme represented unlawful activity.  In prior court filings and letters to the Government, the defendant has maintained that any evidence that other entities or individuals did business with OneCoin after conducting due diligence on OneCoin bears on the defendant's personal knowledge regarding OneCoin's fraudulent nature.  The defendant has also alluded to legal opinions and other documents that might bear on his knowledge.[4]

## B.   Applicable Law

### 1.   Admissibility of State of Mind Evidence

Evidence is irrelevant to a party's state of mind, and therefore inadmissible under Rule 401, absent a showing that the party was aware or should have been aware of the evidence.  *See, e.g., United States v. Kail*, 804 F.2d 441, 446 (8th Cir. 1986) (upholding preclusion under Rule 401 of written opinion offered to support defendant's claim of good faith, absent evidence that the defendant was aware of the opinion at the relevant time); *United States v. Harvey*, 959 F.2d 1371, 1375-76 (7th Cir. 1992) (affirming exclusion of evidence not relevant to defendant's state of mind at the time of the charged offenses); *Lombardo v. Stone*, No. 99 CIV. 4603 (SAS), 2002 WL 113913, at *5 (S.D.N.Y. Jan. 29, 2002) (holding, in excessive force case, that "previous assaults

---

[4]   By letter dated October 11, 2019, the Government sought from the defendant "evidence concerning legal opinions, audit reports, or any other material that Scott intends to rely on at trial to show that he did not know or believe that OneCoin was a fraud scheme . . . and any corresponding evidence that shows when and how the particular legal opinion, audit, [or other material], was shared with . . .  Scott, such as by email transmission or otherwise."  In an email dated October 14, 2019, defense counsel declined to provide any such documents, stating, in part: "As to specific documents we may rely on, as you know our exhibits are due on October 28 and we have not yet identified exhibits we may offer for this purpose."

are not admissible to show defendants' state of mind because defendants have not claimed that they were aware of these assaults"); *cf. United States v. Ansaldi*, 372 F.3d 118, 130-31 (2d Cir. 2004) ("Because there was evidence . . . that [the defendant] learned the contents of the [FDA Talk Paper]—the contents of the paper were relevant to [the defendant's] knowledge"). Similarly, "evidence regarding the knowledge of individuals other than the defendant should be admitted only if there is some other evidence in the record . . . from which to conclude that the defendant would have the same knowledge" *United States v. Kaplan*, 490 F.3d 110, 120 (2d Cir. 2007).

It is well-settled that a "defendant's knowledge of a fact required to prove the defendant's guilt" may be established through evidence of conscious avoidance. *United States v. Svoboda*, 347 F.3d 471, 477, 480 (2d Cir. 2003) ("a defendant's involvement in the criminal offense may have been so overwhelmingly suspicious that the defendant's failure to question the suspicious circumstances establishes the defendant's purposeful contrivance to avoid guilty knowledge" (internal quotations and brackets omitted; emphasis in original)). "Conscious avoidance occurs when a person deliberately closes his eyes to avoid having knowledge of what would otherwise be obvious to him." *United States v. Reyes*, 302 F.3d 48, 49-50 (2d Cir. 2002). Thus, a defendant engages in conscious avoidance where he is aware of a high probability that a crime is being committed, but deliberately and consciously avoids confirming this fact—such as by purposely closing his eyes to it, or intentionally failing to investigate it. *See United States v. Flom*, 256 F. Supp. 3d 253, 270 (E.D.N.Y. 2017), *aff'd*, 763 F. App'x 27 (2d Cir. 2019), *cert. denied sub nom.*, No. 19-5857, 2019 WL 5150698 (U.S. Oct. 15, 2019).[5]

### C.   Discussion

---

[5]  Importantly, "where the defendant asserts a lack of actual knowledge, the Government need not choose between an actual knowledge and a conscious avoidance theory." *United States v. Lange*, 834 F.3d 58, 78 (2d Cir. 2016).

### 1.     Evidence Not Admissible to Establish the Defendant's State of Mind

As a threshold matter, the Court should preclude any evidence offered by the defendant for the purpose of establishing his state of mind regarding OneCoin's legality, absent proof that he was aware of such evidence.  The defendant should not be permitted to supplant his own state of mind and degree of knowledge about OneCoin with that of other individuals and entities.  The issue at trial is not whether some other person or entity knew or should have known that OneCoin was a fraud scheme; rather, the question is whether the defendant himself was aware that the monies passing through his purported investment funds were the proceeds of illegal activity.  *See United States v. Maher*, 108 F.3d 1513, 1526 (2d Cir. 1997) (Section 1956(a)(1) includes element that defendant  "knew that the property . . . represented the proceeds of some form of unlawful activity").  The Government is not presently aware of any particular legal opinion or document that the defendant might seek to admit bearing on the defendant's state of mind of knowledge; however, the law is clear that such evidence would not be relevant and admissible, absent a showing that the defendant had seen or was otherwise aware of the contents of the document at the time of the alleged criminal conduct.  *See, e.g., Kail*, 804 F.2d at 446; *Harvey*, 959 F.2d at 1375-76.

Likewise, the Court should preclude evidence that third parties conducted business with OneCoin or its affiliates after conducting some level of diligence, absent proof that the defendant directly participated in such due diligence efforts.  Critically, in the absence of evidence establishing the defendant's involvement, there is no basis to conclude that the information gathered as a result of those efforts affected his personal knowledge regarding the nature of OneCoin's business.  In particular, the type and quality of due diligence efforts conducted by private parties is a matter within their own discretion, as is the party's level of acceptable risk, and

17

any resulting determinations are therefore highly subjective.[6]  Moreover, the evidence will show that the defendant was in regular and direct contact with Ruja Ignatova, a founder and leader of the OneCoin scheme, and therefore had access to substantially more information than outside third parties.  *See Kaplan*, 490 F.3d at 120 ("evidence regarding the knowledge of individuals other than the defendant should be admitted only if there is some other evidence in the record . . . from which to conclude that the defendant would have the same knowledge").

Finally, the admission of evidence regarding the knowledge or willingness of *others* to do business with OneCoin inappropriately shifts the proper focus of the jury's inquiry—which is the defendant and *his* knowledge, or lack thereof—and will cause the case to devolve into a series of confusing and needless mini-trials, and should therefore be precluded under Rule 403.  Such litigation surrounding the exact contours of knowledge possessed by third parties will result in confusion of the issues, misleading of the jury, and wasted time.  *See* Fed. R. Evid. 403 (permitting court to exclude evidence "if its probative value is substantially outweighed by a danger of . . . confusing the issues, misleading the jury . . . [and] wasting time . . . .").

For these reasons, the Court should preclude any state of mind evidence offered by the defendant of the sort described above under both Rule 401 and Rule 403.

## 2.      Evidence Admissible to Prove the Defendant's Knowledge

On the other hand, the Court should admit evidence of which the defendant was or should have been aware, establishing the defendant's relevant knowledge.  For example, the Government intends to introduce communications sent *directly* to the defendant by service providers of his

---

[6]  Notably, such diligence inquires frequently rely on information provided by the counterparty to the transaction, which may not be reliable, particularly in the case of a criminal organization.  Indeed, the evidence presented at trial will clearly establish that OneCoin and its principals frequently utilized intermediary business entities, such as the defendant's own purported investment funds, to mask their involvement in financial transactions and thereby frustrate diligence efforts.

purported investment funds, informing the defendant that the providers were no longer comfortable working with the defendant in light of his failure to provide requested information regarding the funds' investors and source of wealth, among other reasons.[7]

In addition, the Government will offer evidence that derogatory information reflecting that OneCoin operated as a pyramid or Ponzi scheme was widely available in the public domain when the defendant engaged in the charged conspiracy.  The Government also expects to show that the defendant was aware of such publicly-available information suggesting that OneCoin was defrauding its investors.  The Government intends to offer such evidence not for its truth, but to establish the defendant's state of mind and knowledge regarding the OneCoin scheme, and more specifically, to demonstrate that the defendant knew or consciously avoided learning about OneCoin's fraudulent nature.  *See United States v. Kozeny*, 643 F. Supp. 2d 415, 417–23 (S.D.N.Y. 2009) ("Unlike the facts of *Kaplan* in which the Government sought to prove Kaplan's knowledge solely through the knowledge of others, evidence of [the defendant's] knowledge or the knowledge of others is only one part of the proof the Government will introduce.  The Government has also stated its intention to present direct evidence that will support its conscious avoidance theory.").  In short, this evidence is highly probative and the Court should admit it.

---

[7]  The Government will offer such communications not for the truth of their contents, but rather to show that the defendant was aware that his service providers harbored significant concerns regarding the operation of the funds and the defendant's compliance with anti-money laundering requirements.  *See United States v. Detrich*, 865 F.2d 17, 21 (2d Cir. 1988) ("Where . . . the statement is offered as circumstantial evidence of a defendant's state of mind, it does not fall within the definition given by Rule 801(c)." (internal brackets omitted)); *United States v. Salameh*, 152 F.3d 88, 112 (2d Cir. 1988) (out of court statements offered to prove defendant's state of mind are non-hearsay under rule 801 (c)), cert. denied, 526 U.S. 1028 (1999).  Furthermore, the evidence is relevant because it shows a pattern of conduct through which Scott repeatedly concealed information about his "investors" from third-parties who were attempting to conduct due diligence.

III.   **THE COURT SHOULD PRECLUDE THE DEFENDANT'S PROPOSED EXPERT TESTIMONY ON THE GROUNDS THAT THE EXPERT NOTICE PROVIDED IS INSUFFICIENT UNDER RULE 16, AND BECAUSE THE PROFFERED EXPERT TESTIMONY IS IRRELEVANT, IMPROPER AND INVADES THE PROVINCE OF THE JURY**

A.   **Relevant Facts**

1.   **Government's Expert Notice**

On September 30, 2019, the Government provided the defendant with notice that it intended to call (i) a witness to testify as to standard practices in the banking industry regarding the maintenance of correspondent banking relationships, the operation of wire transfers and the interpretation of wire transfer instructions (i.e. SWIFT messages), the settlement of foreign currency transactions, and policies and procedures designed to combat money laundering; and (ii) Paul Spendiff, former Managing Director of Apex Fund Services (UK) Ltd. ("Apex"), to testify about the specifics relating to Apex's administration of the defendant's purported private equity investment funds, including diligence inquiries, as well as the characteristics, attributes, and customary functioning of private equity funds ("Government September 30 Letter").  While the Government does not believe that this testimony constitutes expert testimony, it provided notice pursuant to Rule 16(a)(1)(G) out of an abundance of caution.  The Government September 30 Letter also attached Spendiff's curriculum vitae and demanded reciprocal expert notice from the defendant pursuant to Rule 16(b)(1)(C).[8]

On October 7, 2019, the Government provided the defendant with supplemental expert notice that it intended to call as a witness at trial an expert in the means and methods of money

---

[8]  The Government subsequently identified the banking industry expert witness as David Wildner of the Bank of New York Mellon, and provided the defense with biographical information for Mr. Wildner, as well as notes containing information that will be the subject of his trial testimony.  The Government has also disclosed to the defense numerous sets of notes of interviews with Mr. Spendiff.

laundering and the evasion/obstruction of policies and procedures employed by banks and other financial institutions to combat money laundering activities.  On October 12, 2019, the Government identified that witness as Donald Semesky, and provided the defense with a copy of Mr. Semesky's biography, curriculum vitae, and copies of eight transcripts of Mr. Semesky's prior testimony.

### 2.  Defendant's Expert Notice

In an October 14, 2019 letter, the defendant provided notice to the Government of the defense's expert witnesses, none of which were named ("Defense Notice").  Specifically, the defendant noticed that he intended to call (i) a cryptocurrency expert witness; (ii) a legal ethics expert witness; (iii) a private equity expert witness, dependent on and in response to Paul Spendiff's testimony; and (iv) a money laundering expert witness, dependent on and in response to Donald Semesky's testimony.  The Defense October 14 Letter described the cryptocurrency expert's testimony in the following manner:

The expert would provide crucial background information regarding cryptocurrency so the jury can understand the non-intuitive concept.  We expect such testimony would cover among other things the following:

1.  Explain what a cryptocurrency is and the function it can serve.

2.  Describe the proliferation of cryptocurrencies during the relevant time period (2015-2017).

3.  Explain the challenges in the relevant time period in identifying which cryptocurrencies are legitimate and which are not.

The expert will not testify about OneCoin specifically or the legitimacy of that or any other cryptocurrency. *Defense Notice at 1.*

21

The Defense Notice proposed that the legal ethics expert would "testify to the duties owed by an attorney to his clients in response to inquiries made to him by third parties, including financial institutions seeking information about such clients. The expert would testify to the scope of duties owed by the attorney to clients even when the attorney acts for the client in a business or non-legal role." *Defense Notice at 1-2.*

On October 17, 2019, in response to the Government's request for the names and curriculum vitae of expert witnesses, the defendant identified Jason Gottlieb as one of his cryptocurrency experts and provided Mr. Gottlieb's curriculum vitae. The defense indicated that it was also in discussion with a second cryptocurrency expert, who was not identified, but that it did not expect to call both cryptocurrency experts. To date, the defense has not identified any additional experts.

### B.     Applicable Law

Under Federal Rule of Criminal Procedure 16, a defendant must provide an expert disclosure to the Government when the defendant requests the same and the Government complies. Fed. R. Crim. P. 16(b)(1)(C)(i). Such disclosure must be provided by way of a written summary of the witness's testimony that describes "the witness's opinions, the bases and reasons for these opinions, and the witness's qualifications." Fed. R. Crim. P. 16(b)(1)(C). Expert notice provided under Rule 16(b)(1)(C) is insufficient where it merely lists general broad areas of expert opinion, fails to summarize the expert's thoughts on a topic area, and does not explain methods used to reach a conclusion. *United States v. Ulbricht*, 858 F.3d 71, 115 (2d Cir. 2017).

"The purpose of the expert disclosure requirement is to 'minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused

22

cross-examination.'"  *United States* v. *Ulbricht*, 858 F.3d 71, 114 (2d Cir. 2017) (quoting Fed. R. Crim. P. 16, advisory committee's note to 1993 amendment).

In light of district courts' established "gatekeeping" role with regard to expert testimony based on scientific, technical, or "other specialized" knowledge, *see Kumho Tire Co.* v. *Carmichael*, 526 U.S. 137, 141 (1999); *Daubert* v. *Merrell Dow Pharmaceuticals*, 509 U.S. 579, 597 (1993), the admission or exclusion of expert testimony is committed to the broad discretion of the trial court, *see Hamling* v. *United States*, 418 U.S. 87, 108 (1974); *Boucher* v. *U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996); *United States* v. *DiDomenico*, 985 F.2d 1159, 1163 (2d Cir. 1993).  The Court must make a preliminary assessment of whether the reasoning and methodology underlying the expert testimony is scientifically valid and can be applied to the facts at issue, and a Court cannot perform complex evaluations without the awareness of the proffered expert opinions and the bases for those opinions.  *See, Ulbricht,* 858 F.3d at 115.

District courts are responsible for ensuring that expert testimony "rests on a reliable foundation and is relevant to the task at hand," *Amorgianos* v. *Romano Enters.*, 303 F.3d 256, 265 (2d Cir. 2002) (citation and internal quotation marks omitted), and would assist the jury by "shed[ding] light on activities not within the common knowledge of the average juror," *see United States* v. *Wexler*, 522 F.3d 194, 204 (2d Cir. 2008) (citation and internal quotation marks omitted).  Thus, compliance with Rule 16 facilitates the district court's assessment of whether expertise is helpful, whether the expert is qualified, and whether the expert's testimony is relevant and reliable.

Expert testimony is improper where a witness is not in any better position than the jury to determine the facts, and his or her opinion usurps the jury's fact-finding function.  *See Cameron v. City of New York*, 598 F.3d 50, 62 n.5 (2d Cir. 2010) (opinion testimony is improper where it "undertakes to tell the jury what result to reach, and thus attempts to substitute the [witness's]

23

judgment for the jury's" (internal quotation marks omitted)); *United States* v. *Rea,* 958 F.2d 1206, 1216 (2d Cir. 1992) (noting that lay opinion testimony is unhelpful where the jury is in as good a position to assess the facts as the testifying witness); *see also Hogan v. Am. Tel. & Tel. Co.*, 812 F.2d 409, 411 (2d Cir. 1987) (Rule 701 "[o]pinion testimony is not helpful to the fact finder if it is couched as a legal conclusion").

Moreover, even if expert testimony would otherwise be admissible, it may be excluded under Rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Fed. R. Evid. 403. As the Supreme Court noted in *Daubert*, "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it." 509 U.S. at 595 (internal quotation marks omitted); *see also United States* v. *Young*, 745 F.2d 733, 766 (2d Cir. 1984) (danger of confusion stems from the "aura of special reliability and trustworthiness surrounding expert testimony" (internal quotation marks omitted)).

Additionally, expert testimony is inadmissible where, standing alone, "there is no basis on which the jury could properly infer anything about Defendant's state of mind from the opinion of this third party expert witness who likely has never communicated with the Defendant." *United States v. Banki*, No. S1 10 CR. 08 (JFK), 2010 WL 1875690, at *2 (S.D.N.Y. May 10, 2010). In order for the jury to infer anything about the defendant's state of mind, the expert's testimony must be relevant to some issue at trial. *Id.*

As with other expert testimony, legal expert testimony is admissible only insofar as it would assist the jury by "shed[ding] light on activities not within the common knowledge of the average juror," *see United States v. Wexler*, 522 F.3d 194, 204 (2d Cir. 2008) (citation and internal quotation marks omitted). Likewise, legal expert opinion is improper where it is

24

unhelpful to the jury, has no bearing on the issues to be determined by the jury, or is conclusory in nature. *See United States v. Newkirk*, 684 Fed. Appx. 95, 97 (2d Cir. 2017) (summary order) (defendant-attorney's legal expert precluded from testifying because "[t]he fact that attorneys do not generally check every fact communicated by a client before conveying the fact to third parties has little if any bearing on attorney obligations not to convey information they actually know, or consciously avoid knowing, is false"); *United States v. Collins*, 581 Fed. Appx. 59, 60 (2d Cir. 2014) (summary order) (court excluded testimony of two lawyers on materiality of corporate agreement, on the grounds that the issue was within the competence of a jury unassisted by opinion testimony and the testimony would be conclusory in nature.)

### C.  Discussion

#### 1.  The Defendant's Expert Notice is Insufficient Under Rule 16(b)(1)(C)

The defendant has failed to produce adequate expert notice under Rule 16(b)(1)(C). At the outset, it should be noted that the defense has identified by name only one of its possible five experts.  Moreover, the broad descriptions of the testimony to be provided by the cryptocurrency expert and legal ethics expert fall short of providing "a written summary of" that testimony, including any "opinions" and the "bases and reasons for" those opinions, as Rule 16(b)(1)(C) requires..").  Because the defense did not describe what the witnesses would actually testify to, there is no way for the Court to assess whether the testimony would "help the trier of fact to understand the evidence or to determine a fact in issue," whether the witness was qualified to offer such testimony, or whether the testimony was based on sufficient information and otherwise reliable.  Fed. R. Evid. 702.

For example, while the defendant has identified one cryptocurrency expert, the

defense has notified the Government that it may in fact call a different, unidentified cryptocurrency expert.   The defendant's vague expert disclosures do not satisfy the requirements under Fed. R. Crim. P. 16.

The defense proposes that the legal ethics expert would "testify to the duties owed by an attorney to his clients in response to inquiries made to him by third parties, including financial institutions seeking information about such clients.  The expert would testify to the scope of duties owed by the attorney to clients even when the attorney acts for the client in a business or non-legal role."   The defendant has proffered the topics of testimony for this unidentified expert witness, not a "summary" of the testimony, much less the "bases and reasons" for any opinions.  Nor does the defendant even try to explain the relevance of this purported testimony.

In sum, the defendant's generalized disclosures do not provide the Government with any real information about the testimony these experts will offer at trial, making it impossible for the Court to assess admissibility.  *United States* v. *Hoffecker*, 530 F.3d 137, 187 (3d Cir. 2008) (affirming preclusion because defense notice "did not include the experts' opinions and the bases and reasons for those opinions"); *see also United States* v. *Day*, 524 F.3d 1361, 1371-72 (D.C. Cir. 2008) (affirming preclusion where a doctor listed the tests he had performed but "failed to state what [he] had concluded"); *United States* v. *Concessi*, 38 F. App'x 866, 868 (4th Cir. 2002) (expert designations properly excluded where they "included only the general topics concerning which each proposed expert would testify" but "failed to describe the witnesses opinions or provide the bases and reasons for the witnesses' opinions"). While some of the general topic areas of testimony disclosed in the defendant's notice overlap with issues in this case, the defendant has failed to provide sufficient and particularized notice

26

about how that testimony is relevant to the issues to be determined by the jury.

>2. **The Defendant's Proposed Expert Testimony is Improper as it is Unnecessary and Unhelpful to the Jury, and Will Invade the Province of the Jury**

Even assuming that the defendant's expert disclosures met the requirements of Fed. R. Crim. P. 16, the expert testimony is inadmissible.  The defendant's expert testimony is unnecessary, unhelpful, possibly misleading, and it will invade the fact-finding province of the jury by offering an improper opinion about the defendant's state of mind.  For example, the defendant proffers that the cryptocurrency expert will "explain the challenges in the relevant time period in identifying which cryptocurrencies are legitimate and which are not." Such testimony would be improper at this trial because the broader legitimacy of cryptocurrencies during the applicable time period bears no relevance to the defendant's state of mind in this case.

Moreover, testimony from a cryptocurrency expert risks confusion of the issues, or misleading the jury.  *See Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. at 595; *see also United States v. Young,* 745 F.2d 733, 766 (2d Cir. 1984) (danger of confusion stems from the "aura of special reliability and trustworthiness surrounding expert testimony" (internal quotation marks omitted)).  The defendant's proffered testimony includes broad topic areas involving immaterial and confusing information in the context of this case.

The defendant's legal ethics expert's proffered testimony is similarly improper; the testimony is irrelevant, possibly misleading, and will usurp the jury's fact-finding function. The proffered expert testimony is irrelevant as it provides no basis on which the jury could infer anything about the defendant's state of mind, including the reasons underlying his multiple misrepresentations to financial institutions.  *U.S. v. Banki*, No. S1 10 CR. 08 (JFK),

2010 WL 1875690, at *2 (S.D.N.Y. May 10, 2010).  And if the expert were to offer testimony of the defendant's state of mind, such testimony would be pure speculation and inadmissible. *Id.; see also United States v. Fowler*, 932 F.2d 306, 314 (4th Cir. 1991) (evidence regarding confusion about the rules governing the dissemination of classified documents not relevant because the confusion of others had no tendency to prove whether the defendant was confused).  Here, there is no factual basis to suggest that customary legal professional responsibilities have any bearing on the defendant's conduct in this case.

Moreover, there is no basis in law to suggest that duties owed by attorneys to their clients, including that of maintaining confidentiality, permit attorneys to violate the law and commit crimes.  Indeed, privileges protecting attorney-client communications are not absolute and protections do not apply in the context of criminal conduct.

Because the proffered testimony is untethered to any factual basis, and lacks any relevance to the defendant's state of mind, testimony from a legal ethics expert risks confusing or misleading the jury.  *See United States v. Young*, 745 F.2d 733, 766 (2d Cir. 1984) (danger of confusion stems from the "aura of special reliability and trustworthiness surrounding expert testimony" (internal quotation marks omitted)).  Such testimony will inject irrelevant issues of client confidentiality and attorneys' professional responsibilities, in the form of legal conclusions, into a case where the defendant was not acting as an attorney, and where he deliberately made misrepresentations to financial institutions.

## IV.  THE GOVERNMENT SHOULD BE PERMITTED TO INTRODUCE EVIDENCE THAT SCOTT POSSESSED A LOADED SEMI-AUTOMATIC HANDGUN AT THE TIME OF HIS ARREST

### A.  Relevant Facts

The defendant was arrested on September 5, 2018, in Barnstable, Massachusetts, after being stopped while driving a 2018 BMW SUV.  At the time of his arrest, law enforcement

officers recovered a Heckler and Koch HKP30 40 caliber S&W semiautomatic handgun loaded with thirteen rounds of ammunition (the "Firearm") from the center console of the BMW.   The defendant possessed both a Massachusetts and a Florida license to carry a firearm.   On the day the defendant was arrested, search warrants were executed at his residences located in Barnstable, Massachusetts ("Barnstable Residence"), and Coral Gables, Florida.   During the searches, law enforcement agents seized numerous items, including documents and records.   One of the documents was a receipt from Cape Gun Works, dated August 15, 2017, reflecting the defendant's purchase of the Firearm for $999.99.   Evidence that the defendant possessed a loaded handgun in his car at the time of his arrest, which he had purchased in August 2017, is admissible as direct evidence of the charged offenses.   In the alternative, the evidence is admissible pursuant to Federal Rule of Evidence 404(b).

### B.      Applicable Law

#### 1.      Direct Evidence

While the admissibility of "other acts" evidence is generally governed by Fed. R. Evid. 404(b), evidence of other acts is admissible when it constitutes intrinsic or direct proof of the charged crimes, and is "appropriately treated as part of the very act charged, or, at least, proof of that act."   *See United States v. Quinones*, 511 F.3d 289, 309 (2d Cir. 2007) (internal citations and quotations omitted); *United States v. Townes*, 870 F.2d 880, 886 (2d Cir. 1989). This evidence is admissible "'if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial.'"   *United States v. Hsu*, 669 F.3d 112, 118 (2d Cir. 2011) (quoting *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000)); *see also United States v. Quinones*, 511 F.3d 289, 309 (2d Cir. 2007); *United States*

29

*v. Baez*, 349 F.3d 90, 93-94 (2d Cir. 2003). Even if the evidence does not directly establish an element of the offense charged, it can be admitted "in order to provide background for the events involved in the case . . . for example, the circumstances surrounding the events." *United States* v. *Cooney*, 938 F.2d 1553, 1561 (2d Cir. 1991).

### 2.       Federal Rule of Evidence 404(b)

To the extent evidence of prior acts is not direct evidence of the charged crimes, it remains admissible under Rule 404(b) if it is: (1) advanced for a proper purpose, such as proving "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident," Fed. R. Evid. 404(b)(2); (2) relevant to the crimes for which the defendant is on trial; (3) more probative than prejudicial; and (4) admitted subject to a limiting instruction, if such an instruction is requested. *See United States v. Zackson*, 12 F.3d 1178, 1182 (2d Cir. 1993); *United States v. LaFlam*, 369 F.3d 153, 156 (2d Cir. 2004); *United States v. Ramirez*, 894 F.2d 565, 568 (2d Cir. 1990) (citing *Huddleston v. United States*, 485 U.S. 681, 691-92 (1988)).

> Federal Rule of Evidence 404(b) provides, in pertinent part:
>
> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The Second Circuit "ha[s] adopted an inclusionary approach to evaluating Rule 404(b) evidence, which allows evidence to be received at trial for any purpose other than to attempt to demonstrate the defendant's criminal propensity." *United States v. Edwards*, 342 F.3d 168 (2d Cir. 2003) (internal quotation marks and citations omitted); *see also United States v. Pascarella*, 84 F.3d 61, 69 (2d Cir. 1996) (evidence of other crimes, wrongs, or acts is

admissible "unless it is introduced for the sole purpose of showing the defendant's bad character, or unless it is overly prejudicial under Fed. R. Evid. 403 or not relevant under Fed. R. Evid. 402" (internal citation omitted)).   Any "other act" evidence that is neither "more sensational" nor "more disturbing" than the charged crimes will not be deemed unfairly prejudicial.   *United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990); *United States v. Williams*, 205 F.3d 23, 33-34 (2d Cir. 2000); *cf. Costantino v. Herzog*, 203 F.3d 164, 174 (2d Cir. 2000) ("Because virtually all evidence is prejudicial to one party or another, to justify exclusion under Rule 403 the prejudice must be unfair.").

### 3.        Federal Rule of Evidence 403

Whether admitted as direct evidence or pursuant to Rule 404(b), the offered evidence remains subject to Federal Rule of Evidence 403.   The Court must therefore determine whether the probative value of the offered evidence is "substantially outweighed" by a danger of "unfair prejudice" or confusion.   Fed. R. Evid. 403.   The Second Circuit has found admission appropriate where the offered evidence "'did not involve conduct any more sensational or disturbing than the crimes with which [the defendants were] charged.'"   *United States v. Pitre*, 960 F.2d 1112, 1120 (2d Cir. 1992) (quoting *United States v. Roldan-Zapata*, 916 F.2d at 804).   Generally speaking, "any proof highly probative of guilt is prejudicial to the interests of that defendant.   The prejudice that Rule 403 is concerned with involves 'some adverse effect . . . beyond tending to prove the fact or issue that justified its admission into evidence.'"   *United States v. Gelzer*, 50 F.3d 1133, 1139 (2d Cir. 1995) (quoting *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980)).   To the extent there is any risk of unfair prejudice from otherwise probative evidence, the Court may provide limiting instructions to remind the jury that the defendants are not on trial for any offense other than the crimes

charged.  *See United States v. Tussa*, 816 F.2d 58, 68 (2d Cir. 1987) (limiting instruction sufficient to preclude prejudice to defendant); *see generally Parker v. Randolph*, 442 U.S. 62, 75 n.7 (1979) ("The 'rule' – indeed, the premise upon which the system of jury trials functions under the American judicial system – is that juries can be trusted to follow the trial court's instructions.").

### C.    Discussion

Here, evidence of Scott's possession of a loaded handgun at the time of his arrest is admissible at trial.  First, the evidence is admissible as it is inextricably intertwined with the evidence regarding the charged offenses and necessary to complete the story of the crimes on trial. Second, this evidence is admissible under Federal Rule of Evidence 404(b) for a number of purposes, such as "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b).

The evidence of the defendant's possession of the Firearm at the time of his arrest will provide the jury with necessary context to understand the conspiracies charged and the defendant's participation in those conspiracies.  Specifically, the jury will hear that the participants in these conspiracies were extremely concerned for their physical safety, and took measures, including hiring bodyguards, and driving in armored vehicles, to protect themselves in response to threats of violence, and actual violence.  These threats and violence were directly connected to the conspirators' involvement in the OneCoin Scheme, including the handling and movement of large amounts of criminal proceeds, often in cash.  The evidence at trial will also show that because the conspirators were engaged in a criminal scheme, they were unable or unwilling to report these threats or incidents of violence to law enforcement authorities, and chose instead to protect themselves through other means, such as by hiring

32

bodyguards.  The fact that Scott was arrested in possession of the Firearm early in the morning while driving his car in a beachfront residential community on Cape Cod is probative evidence suggesting that he was aware of the threats and physical violence surrounding OneCoin, shared the concerns of his co-conspirators, and felt the need to protect himself as a result of his involvement in the scheme, including his access to and laundering of approximately $400 million of OneCoin proceeds.

Furthermore, the defendant will not be unfairly prejudiced by the admission of such evidence.  The evidence will show that the defendant possessed the requisite license for the loaded handgun.  Given this fact, admission of the evidence would not result in any unfair prejudice, let alone unfair prejudice that substantially outweighs the probative value of the evidence.  Indeed, this evidence is no more sensational that the charged crimes – in fact, it is significantly less sensational because the defendant was licensed to carry a handgun in both Florida and Massachusetts.   Therefore, there is no danger that the admission of this evidence would inflame the jury.  *See United States* v. *Pitre*, 960 F.2d 1112, 1120 (2d Cir. 1992) (quoting *United States* v. *Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990)).

## V.    FOREIGN BUSINESS RECORDS ARE ADMISSIBLE PURSUANT TO TITLE 18, UNITED STATES CODE, SECTION 3505

The Government respectfully moves this Court *in limine* to admit foreign business records from various countries pursuant to 18 U.S.C. § 3505, through the use of foreign certifications and without the calling of a custodian of records to testify at trial.  These records are admissible under well-settled precedent because they meet all the requirements of Section 3505.  Further, their admission without a live witness does not violate the Confrontation Clause of the Sixth Amendment since the business records themselves are not testimonial and the foreign certification will only be examined by the Court pre-trial.

33

## A.  Relevant Facts

At trial, the Government intends to offer records from multiple foreign financial institutions, including banks located in Bulgaria, the Cayman Islands, Hong Kong, Ireland, Germany, Singapore, and Switzerland, and a fund administrator located in the United Kingdom. These records include various bank records and communications involving the defendant and others, obtained from the financial institutions.  The Government has produced the relevant records to the defendant.  The Government has also provided a number of custodian certifications relating to these records to the defendant, and is in the process of obtaining several additional custodian certifications.[9]

## B.  Applicable Law

Section 3505(a)(1) of Title 18 exempts foreign business records from the prohibition against admission of hearsay evidence if a foreign certification attests that: (A) the record was made at or near the time of the occurrence of the matters set forth by a person with knowledge of the matters; (B) the "record was kept in the course of regularly conducted business activity"; (C) the business made such a record as a regular practice; (D) the record is the original or a duplicate of the original.  Section 3505(a)(2) provides that the foreign certification also authenticates the record.  The test here is essentially the same as the test governing the admission of business records under Federal Rules of Evidence 803(6)(A) and 902(11).  *See United States v. Anekwu*, 695 F.3d 967, 976 (9th Cir. 2012).

---

[9]  The Government has engaged in several discussions with defense counsel regarding its intention to admit such records pursuant to Section 3505.  Counsel have indicated a potential willingness to stipulate to the admission of such records, to the extent that they are otherwise admissible under Section 3505.  The Government intends to continue to pursue a stipulation regarding the records, and will promptly inform the Court if this aspect of the Government's motions *in limine* is mooted.

34

The admission of business records based on the foreign certification without testimony from a live witness satisfies the Confrontation Clause.  This is because business records, like the bank records here, are not testimonial because they were "created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial."  *Id. at 90* (quoting *Melendez–Diaz v. Massachusetts*, 557 U.S. 305, 324 (2009)).  Likewise, the use of a foreign certification to authenticate and admit the records pre-trial also does not violate the Confrontation Clause.  The Confrontation Clause applies to an out-of-court testimonial statement that the Government introduces against the defendant at trial.  *See United States v. Qualls*, 613 F. App'x 25, 28 (2d Cir. 2015).  The Second Circuit has stated that this Court can rely on the foreign certifications to admit the foreign bank records pursuant to Section 3505 pre-trial as long as the certifications are not offered into evidence, described to the jury, or viewed by the jury.  *See id.* at 28-29.

### C.      Discussion

The Court should admit the foreign business records without live testimony pursuant to 18 U.S.C. § 3505 because: (1) the business records and the foreign certifications meet the requirements set forth in the statute, and (2) the admission of the foreign business records without a live witness does not violate the Confrontation Clause, since the business records themselves are not testimonial and the foreign certification will be examined by the Court pre-trial and will not be introduced into evidence, described or viewed by the jury.

Moreover, the proffered records are highly probative of the defendant's guilt, and therefore relevant under Rule 401.  The records contain numerous misrepresentations made by the defendant and his co-conspirators to financial intuitions worldwide in furtherance of the charged money laundering and bank fraud conspiracy offenses, and also evidence the defendant's involvement in

layering OneCoin fraud proceeds through a sophisticated network of international bank accounts in order to disguise the nature, location, source, ownership, and control of the funds.

In sum, the proffered foreign business records are relevant and admissible, and the Court should permit their introduction pursuant to Section 3505.

## VI.    EVIDENCE OR ARGUMENT CONCERNING THE DEFENDANT'S FAMILY BACKGROUNDS, HEALTH CONDITIONS, AGES, OR ANY OTHER PERSONAL FACTORS UNCONNECTED TO GUILT SHOULD BE PRECLUDED, AS SHOULD DISCUSSION OF PUNISHMENT

The Government is unaware of any lawful basis for the defendant to offer evidence or argument concerning his family background, health, age, or any other similar factors. He should be precluded from doing so, and from mentioning such subjects in their opening statement, absent a showing that such factors bear on guilt. *See, e.g.*, *United States v. Paccione*, 949 F.2d 1183, 1201 (2d Cir. 1991) (affirming preclusion of evidence that defendant had son with cerebral palsy whom defendant had devoted his life to care for); *United States v. Battaglia*, No. S9 05 Cr. 774, 2008 WL 144826, at *3 (S.D.N.Y. Jan. 15, 2008) (precluding "evidence of Defendant's family and personal status" as not "relevant to the issue of whether Defendant committed the crimes charged"); *United States v. Harris*, 491 F.3d 440, 447 (D.C. Cir. 2007) (affirming preclusion of evidence designed "mainly to cast [the defendant] in the sympathetic light of a dedicated family man").

The defendant should similarly be precluded from offering evidence or argument concerning the punishment or consequences he faces if convicted. Where the jury has no role at sentencing—such as in this case—it "should be admonished to 'reach its verdict without regard to what sentence might be imposed.'" *Shannon v. United States*, 512 U.S. 573, 579 (1994) (quoting *Rogers v. United States*, 422 U.S. 35, 40 (1975)). This is so for good reason: argument concerning punishment "invites [jurors] to ponder matters that are not within their province, distracts them

36

from their fact finding responsibilities, and creates a strong possibility of confusion." *Id.*

## VII.   EVIDENCE OR ARGUMENT CONCERNING THE DEFENDANT'S PRIOR COMMISSION OF "GOOD ACTS" OR NON-COMMISSION OF OTHER BAD ACTS SHOULD BE PRECLUDED

To the extent that the defendant may seek to present evidence or argument concerning his commission of "good acts," including any philanthropic giving or other similar deeds, or to offer evidence of non-criminal activities to seek to disprove his guilt, he should be precluded from doing so.  Specific-act propensity evidence is no more admissible to refute a criminal charge than it is to establish one.

It is settled law that "[a] defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on [other] specific occasions." *United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990).  Similarly, while a defendant may offer general testimony from a character witness about his reputation for a "pertinent trait of character," or the witness's opinion of the defendant as regards that trait, *see* Fed. R. Evid. 404(a)(2)(A) & 405(a), a defendant can neither testify nor offer other proof to establish specific acts in conformity with that trait that are not an element of the offense. *See, e.g.*, *United States v. Benedetto*, 571 F.2d 1246, 1249-1250 (2d Cir. 1978) (evidence of defendant's specific acts improperly admitted because "character evidence has long been admissible only in the form of reputation and not in the form of a recitation of good or bad acts"); *United States v. Fazio*, No. S2 11 CR 873, 2012 WL 1203943, at *5 (S.D.N.Y. Apr. 11, 2012), ("a defendant may not affirmatively try to prove his innocence by reference to specific instances of good conduct; character is to be proven by reputation or opinion evidence."), *aff'd*, 770 F.3d 160 (2d Cir. 2014); *United States v. Rivera*, No. 13 Cr. 149, 2015 WL 1725991, at *2 (E.D.N.Y. Apr. 15, 2015) (precluding evidence of charitable giving).  The defendants should accordingly be precluded from offering evidence or argument, including in their opening statements, concerning any charity, philanthropy, or any other specific instance or instances of

37

prior good acts, or the lack of commission of other bad acts.

## **CONCLUSION**

For the foregoing reasons, the Government's motions *in limine* should be granted.

Dated:  New York, New York
        October 18, 2019

                                        Respectfully submitted,

                                        GEOFFREY S. BERMAN
                                        United States Attorney

                                By:    s/
                                        Nicholas Folly /Christopher J. DiMase
                                        Assistant United States Attorneys
                                        (212) 637-1060 / 2433

                                        Julieta V. Lozano
                                        Special Assistant United States Attorney
                                        (212) 335-4025