UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

  UNITED STATES OF AMERICA            :

                                     :

          - v. -                    :

                                       :   S10 17 Cr. 630 (ER)

  MARK S. SCOTT,                  :

                                       :

                Defendant.         :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

### THE GOVERNMENT'S RESPONSE TO THE DEFENDANT'S MOTIONS *IN LIMINE*

GEOFFREY S. BERMAN
United States Attorney
Southern District of New York

Christopher J. DiMase
Nicholas Folly
Assistant United States Attorneys
Julieta V. Lozano
Special Assistant United States Attorney

*- Of Counsel -*

## TABLE OF CONTENTS

I.     **THE GOVERNMENT SHOULD NOT BE PRECLUDED FROM REFERRING TO INDIVIDUALS HARMED BY THE ONECOIN SCHEME AS "VICTIMS"** ................................................................................................ 1

       A.   Relevant Facts ................................................................................................ 2

       B.   Applicable Law ............................................................................................. 2

       C.   Discussion ...................................................................................................... 3

II.     **TESTIMONY FROM ONECOIN VICTIMS, INCLUDING THE DETAILS OF THEIR PURPORTED INVESTMENTS, IS NECESSARY TO PROVE THE WIRE FRAUD SCHEME UNDERLYING COUNT ONE AND TO COMPLETE THE STORY ON TRIAL, AND SHOULD THEREFORE BE ADMITTED** ................................................................................................ 4

III.    **TESTIMONY FROM AN INTENDED VICTIM OF THE ONECOIN SCHEME WHO CHOSE NOT TO INVEST IS RELEVANT AND ADMISSIBLE EVIDENCE, INCLUDING AS TO THE UNDERLYING WIRE FRAUD SCHEME** ................................................................................. 7

       A.   Relevant Facts ................................................................................................ 7

       B.   Discussion ...................................................................................................... 7

IV.    **THE DEFENDANT'S USE OF ONECOIN PROCEEDS IS ADMISSIBLE** ............. 8

       A.   Relevant Facts ................................................................................................ 9

       B.   Applicable Law ........................................................................................... 11

       C.   Discussion .................................................................................................... 13

V.     **THE PROPOSED MONEY LAUNDERING EXPERT TESTIMONY IS RELEVANT AND ADMISSIBLE** ............................................................... 17

       A.   Applicable Law ........................................................................................... 17

       B.   Discussion .................................................................................................... 18

**CONCLUSION** ................................................................................................... 21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

UNITED STATES OF AMERICA       :
      :
     - v. -       :
      :     S10 17 Cr. 630 (ER)
MARK S. SCOTT,       :
      :
       Defendant.       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

## THE GOVERNMENT'S RESPONSE TO THE DEFENDANT'S MOTIONS *IN LIMINE*

The Government respectfully submits this filing in response to the defendant's October 18, 2019 Motions in Limine ("Def.'s Mot."), which seek to preclude the Government from introducing relevant and admissible evidence. (Dkt. Nos. 153-154). Scott's motions are a transparent attempt to whitewash the trial of the defendant's criminal conduct and curtail significantly the Government's ability to introduce relevant evidence—none of which is unfairly prejudicial— that is necessary to prove discrete elements of the crimes charged. The defendant's motions should be denied.

## I.     THE GOVERNMENT SHOULD NOT BE PRECLUDED FROM REFERRING TO INDIVIDUALS HARMED BY THE ONECOIN SCHEME AS "VICTIMS"

The defense has moved *in limine* to preclude the Government from referring to individuals who invested in OneCoin as victims. The defense claims that the use of the term "victim" undermines the presumption of innocence, is inflammatory, and risks misleading or confusing the jury. *See* Defense Motion in Limine at 2-3. The defense's motion lacks merit and should be denied.

A.     **Relevant Facts**

The defendant is charged in a two-count superseding indictment with conspiracy to commit money laundering, in violation of Title 18, United States Code, Section 1956(h), and conspiracy to commit bank fraud, in violation of Title 18, United States Code, Section 1349 (the "Superseding Indictment").   Under Count One of the Superseding Indictment, the proceeds of the specified unlawful activity are described as "approximately $400 million in proceeds of a wire fraud scheme involving a purported cryptocurrency known as "OneCoin," in violation of Title 18, United States Code, Section 1343"  (Dkt. No. 143).   Thus, at trial, one of the elements that the Government will be required to prove beyond a reasonable doubt is that the financial transactions conducted by the defendant involved proceeds of the OneCoin wire fraud scheme.   Consequently, the Government intends to call at trial a small number of victims of the OneCoin wire fraud scheme (likely two or three) who invested in OneCoin based on OneCoin's misrepresentations, and who ultimately lost those investments.

B.     **Applicable Law**

Use of the term "victim" at trial has been widely approved.   *See, e.g., United States v. Gasperini*, 2017 WL 3140366 at *7 (E.D.N.Y. July 21, 2017), aff'd 729 F. App'x 112 (2d Cir. 2018) (Government's use of the term "victim" permitted and not unduly prejudicial in light of the issues being tried); *United States v. Huynh*, No. 4-CR-14-275, 2016 WL 7411529, at *7 (M.D. Pa. Dec. 22, 2016) (denying motion in limine seeking to preclude Government from referring to fraud victims as "victims"); *In re Homestore.com, Inc.*, No. CV 01-11115 RSWL CWX, 2011 WL 291176, at *12 (C.D. Cal. Jan. 25, 2011) (denying defendant's motion to prevent references to plaintiffs as "victims"); *see also Tollefson v. Stephens*, No. SA:14-CV-144-DAE, 2014 WL 7339119, at *6 (W.D. Tex. Dec. 23, 2014) (noting that the term "victim" is "commonly used at

trial in a neutral manner to describe the events in question").

Indeed, referring to complainants as victims is permissible, even in the context of the Court's jury instructions. This is because "use of the term 'victim' in jury instructions is not prejudicial to a defendant's rights when, as is the case here, the instructions taken as a whole clarify the government's burden of proving all elements of the crime." *United States v. Washburn*, 444 F.3d 1007, 1013 (8th Cir. 2006) (collecting cases).

### C. Discussion

The defendant argues that the Court should preclude the Government from referring to the victims in this case as "victims" in front of the jury. The Superseding Indictment charges that the defendant engaged in a conspiracy to commit money laundering of proceeds from the OneCoin wire fraud scheme. The Government is entitled to prove these allegations at trial and, in so doing, to use the term "victim" to refer to an individual who invested money in OneCoin based on multiple misrepresentations and falsehoods. *See Gasperini*, 2017 WL 3140366 at *7; *Huynh*, 2016 WL 7411529, at *7. The term "victim" is an appropriate and neutral way to identify for the jury the collection of individuals—both those who will testify at trial and those who will not—in the context of a case involving a tremendous number of fraud victims located all over the world. *See Tollefson*, 2014 WL 7339119, at *6.

Nor is the use of the term "victim" prejudicial to the defendant. *See Cueva v. State*, 339 S.W.3d 839, 864 (Tex. App. 2011) (victim is "relatively mild and non-prejudicial" term) (citations omitted). There is no risk that the jury will be confused or misled, or that the defendant will be prejudiced, by this non-pejorative and commonly used term, especially in the context of the Court's instructions articulating the Government's burden of proof of all elements of the crimes charged in the Superseding Indictment. *See Washburn*, 444 F.3d at 1013.

For the above-described reasons, the defendant's motion *in limine* to preclude use of the term "victim" at trial should be denied.

## II.    TESTIMONY FROM ONECOIN VICTIMS, INCLUDING THE DETAILS OF THEIR PURPORTED INVESTMENTS, IS NECESSARY TO PROVE THE WIRE FRAUD SCHEME UNDERLYING COUNT ONE AND TO COMPLETE THE STORY ON TRIAL, AND SHOULD THEREFORE BE ADMITTED

The defendant contends that the Court should limit testimony from victims of the OneCoin scheme—the very scheme that the Government must prove was the source of the criminal proceeds laundered by Scott to meet the elements of the charged money laundering offense—so that there is no mention of the financial harm resulting from their victimization at trial. Such testimony represents direct evidence of the underlying wire fraud scheme. Moreover, the defendant's motion, which fails to cite a single case in support of his position, is unsupported by the law. Accordingly, the Court should deny the motion.

As an initial matter, the defendant's assertion that the "need for actual investor testimony is limited at best" is nonsensical. Unless the defendant is prepared to stipulate that OneCoin was in fact a fraud scheme, the Government must prove its fraudulent nature to the jury beyond a reasonable doubt. The principal element of wire fraud is a scheme to defraud another out of money. The most fundamental evidence of any such scheme is testimony from victims demonstrating that they were defrauded. *See United States v. Heimann*, 705 F.2d 662, 669 (2d Cir. 1983) ("While technically the success or failure of a scheme to defraud is irrelevant in a mail fraud case, realistically, when the contested issue is intent, whether or not victims lost money can be a substantial factor in a jury's determination of guilt or innocence." (internal citation omitted)). Such is the case here. Notably, at present, the Government anticipates calling just two OneCoin victims, and a third individual who researched the scheme and decided not to invest, as discussed further below. When these OneCoin victims testify, they may properly discuss who they are, how

4

they were persuaded to invest in OneCoin packages at various prices, which packages they purchased, how and when they became aware that their investment was lost, and, at a high level, the effect that loss had on them financially.  *See United States v. Weaver*, 860 F.3d 90, 97 (2d Cir. 2017) (admitting evidence of investor harm to establish defendant's fraudulent intent)

It is important to note that the millions of dollars that the defendant "earned" for laundering OneCoin fraud proceeds were sourced directly from the purported investments of OneCoin victims.  Indeed, one of the victims will testify that he wired thousands of dollars for a OneCoin package purchase to a German entity, which in turn sent millions of euros directly into the defendant's fraudulent investment funds.  Thus, there is a very direct connection between victim's purported investments and the defendant's money laundering operation.  The monetary amounts invested by individual investors is relevant and admissible evidence, bearing on the scope of the fraud scheme that funded approximately $400 million into the defendant's network of alleged "investment fund" bank accounts.

The defendant's proposed limitations on victim testimony are not supported by the law and should be rejected.  As a legal matter, evidence of victims' losses is plainly relevant and admissible evidence, as it represents direct proof of the element of intent to defraud.  Federal courts therefore recognize "a liberal policy" of admitting "[p]roof that someone was victimized by the fraud . . . as some evidence of the schemer's intent," *United States v. Copple*, 24 F.3d 535, 545 (3d Cir. 1994), and such testimony is routinely admitted for that purpose.  *See, e.g., United States v. Guadagna*, 183 F.3d 122, 130 (2d Cir. 1999) ("[W]hen the necessary result of the . . . scheme is to injure others, fraudulent intent may be inferred from the scheme itself.") (internal quotation marks omitted); *United States v. McDonough*, 56 F.3d 381, 391 (2d Cir. 1995) (same); *United States v. Forbes*, 249 F. App'x 233, 236-37 (2d Cir. 2007) ("[t]he District Court correctly ruled that

5

references to the decline in Cendant's stock price or investor losses were probative on the issue of materiality and permissible under Federal Rule of Evidence 403); *Rice v. United States*, 35 F.2d 689, 695 (2d Cir. 1929) (affirming admission of "testimony of victims as to what they paid for stock and at what price they sold it, thus establishing their loss"); *United States v. Rasheed*, 663 F.2d 843, 850 (9th Cir. 1981) ("[s]uch evidence may be relevant to show that a scheme to defraud existed").

Nor would testimony from OneCoin victims regarding the investment amounts or the harms causes by the OneCoin scheme amount to unfair prejudice under Rule 403. *See Costantino v. Herzog*, 203 F.3d 164, 174 (2d Cir. 2000) ("Because virtually all evidence is prejudicial to one party or another, to justify exclusion under Rule 403 the prejudice must be unfair."). Evidence of harms far more severe than those caused by the loss of funds invested in a fraud scheme has properly been admitted at trials. *See, e.g.*, *United States* v. *Velazquez*, 246 F.3d 204, 211 (2d Cir. 2001) (autopsy photos admissible despite defendant's willingness to stipulate that beating of victim occurred and defendant's claim that photos invited jury to convict based on revulsion at beating; details of victim's injuries were "legally and morally relevant to the conduct constituting the offenses committed"); *United States* v. *Salameh*, 152 F.3d 88, 122-23 (2d Cir. 1998) (upholding introduction of victim testimony and "significant" number of "graphic" and "disturbing" photographs of World Trade Center bombing victims, including corpse of pregnant woman, despite defendants' offer to stipulate that the bombing caused harm).

In sum, the defendant's effort to constrain evidence regarding a fundamental aspect of the underlying wire fraud should be rejected. The nature and scope of the fraud scheme that funded the $400 million deposits into the defendant's purported investment funds is a relevant question of fact for the jury. The Government does not intend to introduce a great volume of evidence on

this issue.  But it must be permitted "to place its evidence before the jurors," *Old Chief v. United States*, 519 U.S. 172, 188 (1997), including through witness accounts relating to the underlying fraud scheme that the Government is required to prove at trial.  Accordingly, the defendant's motion should be denied.

### III.    TESTIMONY FROM AN INTENDED VICTIM OF THE ONECOIN SCHEME WHO CHOSE NOT TO INVEST IS RELEVANT AND ADMISSIBLE EVIDENCE, INCLUDING AS TO THE UNDERLYING WIRE FRAUD SCHEME

#### A.    Relevant Facts

At trial, the Government intends to introduce witness testimony from a witness (the "Witness") who was recruited by his boss to invest in OneCoin in the fall of 2015.  The Witness was told, among other things, that OneCoin was an opportunity to get rich, similar to Bitcoin, a digital currency.  The witness's boss also recruited a large number of additional victims to invest in OneCoin.  After spending approximately ten to fifteen minutes conducting online research on OneCoin, the Witness decided not to invest in OneCoin.  Among other things, the witness saw evidence online indicating that OneCoin was a Ponzi scheme.  The defendant joined the charged conspiracies during the same time that the Witness conducted the Witness's online research on OneCoin.

#### B.    Discussion

The Witness's testimony is admissible as direct evidence of the wire fraud scheme, which is an element of the charged money laundering conspiracy.  The Witness's testimony that OneCoin was presented to him as an investment opportunity where he could get rich like investors who had invested in Bitcoin shows the wire fraud scheme in action.  The Government's proof at trial will show, among other things, OneCoin used the success story of Bitcoin to induce victims to invest in OneCoin under the guise that they too could get rich through their investment.  This was of course completely false, because the price of OneCoin was a fiction and

not based on supply and demand.  The fact that the Witness ultimately decided not to invest, is of no moment.  *United States v. Reifler,* 446 F.3d 65, 96 (2d Cir. 2006) (noting that to violate wire fraud scheme participants need not have succeeded in their scheme to defraud, and the scheme need not have resulted in actual injury to any victims).  The Witness's testimony is therefore direct evidence of the wire fraud scheme, which the Government must establish as an element of the money laundering conspiracy charged in Count One.

The Witness's testimony is also probative of whether Scott consciously avoided learning about OneCoin's fraudulent nature.  Through this testimony, the Government intends to show the jury that Scott, who was a sophisticated lawyer, and who took $400 million in funds from OneCoin, would have found similar derogatory information about OneCoin online if he had taken steps to investigate it.  The Government intends to offer such evidence not for its truth (*i.e.*, not to prove that OneCoin was a Ponzi scheme), but rather to establish the defendant's state of mind and knowledge regarding the OneCoin scheme, and more specifically, to demonstrate that the defendant knew or *consciously avoided* learning about OneCoin's fraudulent nature.  *See United States v. Kozeny*, 643 F. Supp. 2d 415, 417–23 (S.D.N.Y. 2009) ("Unlike the facts of *Kaplan* in which the Government sought to prove Kaplan's knowledge solely through the knowledge of others, evidence of [the defendant's] knowledge or the knowledge of others is only one part of the proof the Government will introduce.  The Government has also stated its intention to present direct evidence that will support its conscious avoidance theory.").  Accordingly, the Court should admit this evidence.


## IV.   THE DEFENDANT'S USE OF ONECOIN PROCEEDS IS ADMISSIBLE

Scott moves to preclude evidence of how "how [he] used fees he received from the Fenero Funds" on the grounds that such evidence is "irrelevant" and "highly prejudicial."

(Def.'s Mot. at 6).  Scott's motion should be denied.  Evidence of the ways in which Scott laundered and spent millions of dollars in fraud scheme proceeds is admissible on at least three independent grounds: (1) it is direct evidence of the charged conspiracies; (2) it is necessary to show that Scott owned and controlled certain funds that he received as his cut for participating in the charged conspiracies; and (3) it is relevant to establishing the Scott's intent to commit the charged crimes.

      **A.**      **Relevant Facts**

The Government expects that the evidence at trial will show that at the time Scott joined the charged conspiracies, he was employed as a partner for a prominent top-ranked law firm in the United States.  In that role, Scott earned an annual salary of hundreds of thousands of dollars per year.  Scott had been employed as a lawyer for nearly twenty years when he joined the charged conspiracies, and had been a partner/shareholder at several law firms for over a decade.

While the income Scott earned as a partner was substantial, it was a fraction of the money he was paid to launder OneCoin fraud scheme proceeds.  As charged in the Superseding Indictment, Scott laundered approximately $400 million in OneCoin fraud scheme proceeds.  In doing so, Scott disguised the proceeds of the OneCoin fraud scheme by misrepresenting to banks and financial institutions that the proceeds were "investments" into the "Fenero Funds," and by hiding the source of the funds and the true beneficial owner of the funds.  The Fenero Funds were purportedly a series of investment funds being used for the purpose of investing the money of a select group of European based families in investments in the financial services industry in Europe.

Scott employed the same money laundering concealment tactics in order to successfully transfer money on his own behalf out of the Fenero Funds, *i.e.,* to pay himself his cut of the

OneCoin fraud scheme proceeds that he received for laundering the $400 million ("Scott's

Funds").  For example, Scott made the following purchases, among others, during the time

period of the charged conspiracies and through the use of OneCoin fraud scheme proceeds:

- **October 2016:** Scott purchased a $2,850,000 home located at █████████ ████████.  In making the purchase, Scott routed the majority of the money from an account of one of the Fenero Funds, to his lawyer, who in turn routed the money to the seller.

- **November 8, 2016:** Scott purchased a $245,269 Ferrari car.  In doing so, Scott routed the money from the bank account of one of the Fenero Funds, to his attorney's bank account, to a Cayman Island bank account, and then directly to the seller of the Ferrari.

- **February 2017:** Scott routed $850,000, in two separate wires, from Fenero Fund bank accounts, to his lawyer, for the purchase of another property in ████████ ██.  The purchase fell through and was not completed.

- **March 21, 2017:** Scott purchased a $1,310,000 Sunseeker yacht, and routed all of the funds from the bank account of one of the Fenero Funds, to his attorney's bank account, and on to the seller.

- **September 2017:**  Scott purchased a $3,765,000 residence located at ██████ ████████████████ in September 2017.  In making that purchase he again routed a portion of the money directly from one of the Fenero Funds, through his lawyer's bank account, and then into a client trust account for the seller.  Scott routed an additional portion of the money for the purchase directly from the Cayman Island bank account of the general partner of the Fenero Funds, "MSS International Consultants BVI Ltd." ("MSSI BVI"), through his lawyer's bank account, and on to the seller.

- **November 2017**: Scott purchased (along with a third-party) another residence located at ████████████████████.  In doing so, Scott routed his share of the purchase price through a MSSI BVI Cayman Island bank account, to his lawyer, and then on to the seller.

The evidence at trial will show that each of the purchases described above, and other

similar purchases, was paid for with OneCoin fraud-scheme proceeds.

### B.     Applicable Law

#### 1.     Rules 401 and 403

Evidence is relevant under Rule 401 if "(a) it has any tendency to make a fact more or

less probable than it would be without the evidence; and the fact is of consequence in

determining the action."  Fed. R. Evid. 401.  To meet the minimal standard of relevance,

"'evidence need not be sufficient by itself to prove a fact in issue, much less to prove it beyond a

reasonable doubt.'"  *United States v. Litvak*, 808 F.3d 160, 179–80 (2d Cir. 2015) (*quoting

United States* v. *Abu–Jihaad,* 630 F.3d 102, 132 (2d Cir. 2010), *cert. denied,* 564 U.S. 1040

(2011)); *see also United States v. Certified Envtl. Servs., Inc.,* 753 F.3d 72, 90 (2d Cir. 2014)

("[T]he definition of relevance under Fed. R. Evid. 401 is very broad," and "[E]vidence need not

be conclusive in order to be relevant" (internal quotation marks omitted)); *United States v. White,*

692 F.3d 235, 246 (2d Cir. 2012) (explaining that Rule 401 prescribes a "very low standard"

(internal quotation marks omitted)).

To warrant preclusion under Rule 403, the issue is not whether a particular piece of

evidence is "highly prejudicial," as the defense mistakenly argues.  (Def.'s Mot. at 6).  Rather,

the issue is whether "its probative value is substantially outweighed by a danger of one or more

of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay,

wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  Indeed, much

of the evidence that comes in during trial is prejudicial in the sense that it is relevant in tending

to show guilt.  Absent *unfair* prejudice, such evidence is admissible.

#### 2.     Criminal Intent

Evidence showing how a defendant spent the proceeds of his crime is routinely admitted

in this Circuit as relevant evidence to establish a defendant's motive and intent for committing

the crime. *See United States v. Addario*, 662 Fed Appx 61, 63 (2d Cir. 2016) (summary order) (admitting evidence of defendant's "spending habits," including "information about his substantial gambling activity" and "records of his personal expenditures, such as expensive automobiles, trips, and country club fees" on the ground that "the spending and gambling activity could explain [the defendant's] motive for committing the fraud"); *cf. also United States v. Federick*, 242 F.3d 368, at *1 (2d Cir. 2000) (summary order) (holding that district court did not commit plain error in admitting evidence of defendant's personal expenditures "because evidence of unexplained wealth is admissible where the ordinary motive for a crime is financial gain"); *United States v. Falley*, 489 F.2d 33, 39 (2d Cir. 1983) (upholding admission of evidence of defendant's personal expenditures because "proof that a defendant is living far above the means provided by his disclosed income is of great probative value in a case involving a crime where the motive is financial gain"); *United States v. Levy*, No. S5 11 CR 62 PAC, 2013 WL 815915, at *2 (S.D.N.Y. Mar. 5, 2013) (finding that evidence of how defendants spent their money was admissible to show, among other things, their motive for engaging in criminal conduct); *United States v. Mahmoud Thiam*, 17 Cr. 47 (S.D.N.Y., April 27, 2017) (DLC) (Tr. 392-93) (finding that evidence that defendant used bribe money to buy and renovate a home "in a luxurious manner," was "highly relevant," and would not cause unfair prejudice under Rule 403).

Evidence concerning a defendant's movement of funds (*i.e.*, through multiple bank accounts in a short period of time), is also evidence of the defendant's consciousness of guilt and is therefore also probative of his criminal intent. *United States v. Silver*, 117 F. Supp. 3d 461, 473 (S.D.N.Y. 2015), *vacated on other grounds by* 864 F.3d 102 (2d Cir. 2017) ("Evidence that Silver went to lengths to conceal his allegedly ill-gotten gains is . . . evidence of Silver's consciousness of guilt regarding his allegedly fraudulent and extortionate activities."); *see also*

*United States v. Schultz,* 333 F.3d 393, 416 (2d Cir. 2003) (reasoning that "effort to conceal property" can "indicate[] a consciousness that [defendant's] actions were illegal in some way").

### C.    Discussion

As noted above, evidence of the ways in which Scott spent millions of dollars in fraud scheme proceeds is admissible on at least three independent grounds, as: (1) direct evidence of the charged conspiracies; (2) necessary to show that Scott owned and controlled certain funds that he received as his cut from the charged conspiracies; and (3) relevant to establishing Scott's intent commit the charged crimes.

### 1.    Direct Evidence of Scott's Money Laundering

As described above, Scott used an elaborate series of financial transactions (sometimes referred to as "layering"), including purported "loans" that were in fact never repaid, and transfers through attorney trust accounts, to hide the source of money that directly funded the purchases of real property, cars, and other luxury items (the "Property").  When viewed alongside all of the other evidence in the case, these transactions demonstrate Scott's attempt to conceal and hide the source of the proceeds (*i.e.*, OneCoin fraud scheme proceeds) that Scott used to purchase the Property.  These transactions are therefore *direct* evidence of the charged crimes and plainly relevant.

The evidence of *how* Scott purchased the Property is also relevant because it demonstrates that the Fenero Funds were not in fact legitimate investment funds.  Rather than investing in the financial services industry in Europe, which was the purported strategy of the Fenero Funds, on several occasions the Fenero Funds sent money directly to accounts that were controlled by Scott, and were used to purchase Property on behalf of Scott.  It is therefore essential that the Government is able to introduce evidence of Scott's purchases of Property in

13

order to show that the Fenero Funds were not being used as legitimate investment vehicles, but were instead used by Scott as a pass-through to hide the source of the funds, and the true beneficial owner of the funds.  The proffered evidence is therefore relevant for this purpose as well.

### 2.      Ownership and Control of the Funds

Evidence of Scott's use of the Funds is also admissible to show that it was Scott who owned and controlled Scott's Funds.  As noted above, Scott engaged in a complex series of financial transactions with the OneCoin fraud scheme proceeds that he laundered, and some of which he eventually used to purchase the Property.  Oftentimes, there were several intermediary transfers before Scott's Funds were transferred to the seller of the Property.  For example, Scott frequently routed money through several layers of bank accounts, as well as his lawyer's account.  Absent the ability to show the jury that Scott's Funds were ultimately used to purchase Property on behalf of Scott, the jury would have a completely misleading picture and understanding of the amount of money Scott received for his participation in the charged conspiracies.  The fact that Scott was paid such an enormous sum of money, despite not earning any profit for his supposed "investors," is highly probative of whether the purported investment funds were legitimate, or were instead being used to facilitate money laundering.  The evidence is therefore admissible to show Scott's ownership and control over the Funds and to show the jury how much money Scott in fact earned from his participation in the charged conspiracies.

### 3.      Scott's Intent

As noted above, Scott engaged in a complex series of transactions with the OneCoin fraud scheme proceeds he laundered and some of which he used to purchase the Property.  The transactions often served no apparent purpose other than to deliberately hide the origin of the

money.  The defendant's movement of funds, through multiple bank accounts in a short period of

time, including offshore accounts and attorney trust accounts, is evidence of the defendant's

consciousness of guilt and is therefore probative of his criminal intent.  *United States v. Silver*,

117 F. Supp. 3d 461, 473 (S.D.N.Y. 2015), *vacated on other grounds by* 864 F.3d 102 (2d Cir.

2017) ("Evidence that Silver went to lengths to conceal his allegedly ill-gotten gains is . . .

evidence of Silver's consciousness of guilt regarding his allegedly fraudulent and extortionate

activities."); *see also United States v. Schultz,* 333 F.3d 393, 416 (2d Cir. 2003) (reasoning that

"effort to conceal property" can "indicate[] a consciousness that [defendant's] actions were

illegal in some way")

        Scott's use of OneCoin fraud scheme proceeds is independently admissible to establish

his motive and intent to commit the charged crimes.  As noted above, similar evidence has been

routinely admitted in this Circuit as relevant evidence to establish a defendant's motive and

intent for committing the charged offenses.  Here, the Government expects that the issue of

motive is going to be particularly contentious at trial.  At the time the defendant joined the

charged conspiracies, he was a successful partner at a prominent law firm.  The Government

therefore intends to rely on evidence pertaining to Scott's purchases of the Property to help

explain to the jury *why* the defendant would be willing to risk his reputation and livelihood,

when he was already financially successful, by engaging in criminal activity.  Showing that the

defendant earned a substantial sum of money would only be half the story, and would provide

the jury with an incomplete view of why the defendant would engage in criminal activity.

Rather, showing the jury how the defendant used the very money he got from his participation in

the charged conspiracies, would provide the jury with a complete understanding of why he

would commit such serious crimes despite his prior financial success.  Such evidence would also

be relevant to rebut any argument by the defense that Scott had no reason to commit the charged crimes given his education, job status, and prior wealth.

Finally, the probative value of the proffered evidence is not substantially outweighed by any danger of unfair prejudice pursuant to Rule 403.  The Government seeks to admit, for example, evidence of Scott's purchases of houses, cars, and a yacht with OneCoin fraud scheme proceeds.  The Government does not seek to admit evidence of purchases the defendant made that were not derived from fraud proceeds.  Such evidence is far less "sensational" than the crimes with which Scott is charged, which involve allegations that he participated in a scheme to launder *$400 million* that he knew were the proceeds of a massive global fraud scheme.  *See United States v. Pitre*, 960 F.2d 1112, 1120 (2d Cir. 1992) (affirming admission of evidence that "'did not involve conduct any more sensational or disturbing than the crimes with which [the appellants were] charged'") (internal quotation marks and citation omitted); *United States* v. *Peters*, 791 F.2d 1270, 1294 (7th Cir. 1986) (evidence is unfairly prejudicial under Rule 403 if it arouses a sense of horror or otherwise produces an emotional response that would cause the jury to base its decision on something other than the evidence).  Notably, none of the expenditures in question were for illegal goods or services.  To the extent that the Court believes there is any risk of unfair prejudice to the defendant, the Court can easily fashion an appropriate limiting instruction that sets forth the purposes for which the jury can properly consider this evidence (*i.e.*, as direct evidence of:  the charged conspiracies; Scott's ownership and control of Scott's Funds and the amount of money he was therefore paid; and consciousness of guilt, motive, and intent).  *See United States v. Downing*, 297 F.3d 52, 59 (2d Cir. 2002) (noting that courts "generally presume that juries understand and abide by a district court's limiting instructions").

## V.       THE PROPOSED MONEY LAUNDERING EXPERT TESTIMONY IS RELEVANT AND ADMISSIBLE

The defendant moves to preclude the Government from offering expert testimony as to the means and methods of money laundering, arguing that it is not necessary to assist the jury in understanding the case and carries a risk of unfair prejudice.  He is incorrect.  Mr. Semesky's testimony will be critical to the jury's ability to interpret and understand the evidence presented at trial regarding the defendant's sophisticated money laundering operation.  Accordingly, the defendant's arguments are meritless, and should be rejected.

### A.       Applicable Law

Rule 702 of the Federal Rules of Evidence provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  Under this standard, expert testimony is generally admissible if it will assist the trier of fact to understand the evidence or to determine a fact in issue.  *See United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994).  As the Second Circuit has observed, "Rule 702 itself refers to 'other specialized knowledge,' . . . and 'there are many different kinds of experts, and many different kinds of expertise . . . .'"  *United States v. Romano*, 794 F.3d 317, 330 (2d Cir. 2015) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999)).

Importantly, the Second Circuit and trial courts in this district have repeatedly held money laundering operations are a proper subject of expert testimony.  *See, e.g., United States v. Muzaffar*, 714 F. App'x 52, 55 (2d Cir. 2017) (affirming admission of testimony from Government's money laundering expert, and dismissing the defendant's claim that the expert

17

"improperly testif[ied] to the ultimate issue, in violation of Federal Rule of Evidence 704");

*United States v. Bermudez*, 138 F. App'x 339, 342 (2d Cir. 2005) ("expert testimony has been

admitted in money-laundering cases in this Circuit before") (citing *United States v. Daccarett*,

6 F.3d 37 (2d Cir. 1993)); *United States v. All Funds on Deposit*, 801 F.Supp. 984, 997

(E.D.N.Y. 1992); *United States v. Nektalov*, No. S203CR.828 (PKL), 2004 WL 1469487, at

*5 (S.D.N.Y. June 30, 2004) (denying defendant's motion to preclude expert testimony from

an IRS agent regarding "money laundering techniques and background"); *United States v.*

*Dinero Express, Inc.*, 57 F. App'x 456, 460 (2d Cir. 2002) (upholding admission of expert

testimony from an FBI agent relating to money laundering and illegal money remitters);

*United States v. Monaco*, 199 F.3d 1324 (2d Cir. 1999) (upholding admission of expert

testimony from an IRS agent regarding typical money laundering techniques); *United States*

*v. Ortiz*, 112 F.3d 506 (2d Cir. 1997) (upholding admission of expert testimony from an IRS

agent relating to, among other topic areas, "the common methods of money laundering");

*Daccarett*, 6 F.3d at 58; *United States v. Ortiz*, 906 F. Supp. 140, 141 (E.D.N.Y. 1995)

(denying defendant's Rule 29 motion, based in part on expert testimony provided by a case

agent regarding the means and methods of money laundering).

      **B.**    **Discussion**

      Mr. Semesky's anticipated expert testimony regarding the means and methods of money

laundering will undoubtedly assist the jury to understand the evidence and to determine important

facts in issue.  As a threshold matter, while the term "money laundering" is familiar to the average

person, the methods and means of money laundering in practice are beyond the ken of any jury,

particularly in the context of white collar crime (as opposed to the laundering of narcotics

proceeds).  That is doubly true in this particular case, given the sophisticated methods employed

by the defendant to launder criminal proceeds. The Government expects the evidence at trial to establish that the defendant set up and operated an international web of bank accounts into which he accepted approximately $400 million worth of OneCoin fraud proceeds. The structure devised by Scott to conceal the true origin of the funds involved the establishment of purported private equity funds, into which OneCoin employees and associates of Ruja Ignatova, disguised as purported investors into the funds, deposited fraud proceeds. Scott documented the inbound transfers with false investment subscription agreements, and outbound transfers back to Ignatova and other OneCoin money launderers with false loan agreements, asset management agreements, and other similar paperwork. Scott routed the fraud proceeds through multiple foreign jurisdictions, often through a series of different bank accounts, and employed fund administrators, incorporation services, auditors, and lawyers in an effort to optimize and legitimize the purported investment fund structure. In short, Scott operated a highly sophisticated and complex money laundering enterprise.

Mr. Semesky is a former law enforcement agent with decades of training and experience in the money laundering field, who has who has testified as an expert/modus operandi witness in 53 trials in 23 different federal judicial districts. A copy of Mr. Semesky's C.V. is attached as Exhibit __. His expert testimony has been upheld or otherwise approved by four different circuits, including the Second Circuit. *See United States v. Ortiz*, 112 F.3d 506, 1997 WL 225108, at *5 (2d Cir. May 5, 1997) (holding that Donald Semesky's expert testimony regarding, among other areas, "the common methods of money laundering . . . covered topics . . . having 'esoteric aspects reasonably perceived as beyond the ken of the jury,'" as was therefore "property admitted by the district court) (quoting *United States v. Cruz,* 981 F.2d 659, 664 (2d Cir. 1992)); *United States v. Barber*, 80 F.3d 964, 971 (4th Cir. 1996) (holding that "the district court did not abuse its discretion

in admitting Agent Semesky's expert opinion testimony" regarding concealment money laundering); *United States v. Saccoccia*, 58 F.3d 754, 775 (1st Cir. 1995) (noting that "Agent Semesky's [expert] testimony was relevant and appropriate in several respects"—including that his testimony explained "the nature of money laundering"); *United States v. Posters N Things Ltd*, 969 F.2d 652, 661 (8th Cir. 1992), *aff'd sub nom. Posters 'N' Things, Ltd. v. United States*, 511 U.S. 513, 114 S. Ct. 1747, 128 L. Ed. 2d 539 (1994) (upholding trial court's admission of Donald Semesky's expert testimony regarding concealment money laundering).

In this case, Mr. Semesky's expert testimony will address, among other matters, the various stages of money laundering, the use of shell companies and associated bank accounts, the layering of funds through a series of bank accounts and financial institutions, including through offshore banks, and the use of falsified documentation to disguise the true purpose of transactions. That testimony is critical to assist the jury in placing evidence regarding the purported investment funds at issue in this case in context, and assessing whether or not those investment funds were legitimate (as the Government expects Scott will argue) or merely vehicles to launder OneCoin fraud proceeds.

The defendant's suggestion that such expertise will be offered through other Government witnesses is entirely inaccurate. While Mr. Spendiff and various bank witnesses are competent to testify about anti-money laundering policies and procedures in place and fund administration firms and financial institutions, they cannot and will not testify about the broader purpose and means and methods of money laundering, and therefore are entirely inadequate substitutes for Mr. Semesky's expert testimony. Nor is there any danger of unfair prejudice or the sort of jury confusion alluded to in the defendant's motion. As the Government noted in its expert notice to the defendant, Mr. Semesky will not be testifying about the defendant's particular conduct in this

case, let alone offering any expert opinion regarding whether the defendant's conduct would constitute a violation of Title 18, United States Code, Section 1956.  Instead, he will simply provide the jury with necessary context—based on his training and experience in an area beyond the jury's ken—for evaluating the other evidence presented in the case.[1]

For all of the above reasons, Mr. Semesky's expert testimony is both relevant and admissible under Rules 401 and 702, and the defendant's motion to preclude that testimony should be denied.

## CONCLUSION

For the foregoing reasons, the defendant's motions *in limine* should be denied in their entirety.

Dated: New York, New York
       October 25, 2019

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By:      s/_____
         Nicholas Folly /Christopher J. DiMase
         Assistant United States Attorneys
         (212) 637-1060 / 2433

         Julieta V. Lozano
         Special Assistant United States Attorney
         (212) 335-4025

---

[1]  The defendant's suggestion that Mr. Semesky not be allowed to use the term "money launder-ing" borders on the absurd, given that his expertise is in the particular area of money laundering. The defendant is free to request—and the Government would not oppose—an appropriate jury instruction to the effect that the Court's legal instructions with respect to the elements of Section 1956 are controlling.