**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 11, 2019

**BY ECF & ELECTRONIC MAIL**

Honorable Edgardo Ramos
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    *United States* v. *Mark S. Scott*
             S10 17 Cr. 630 (ER)

Dear Judge Ramos:

      The Government writes regarding Government Exhibits 1333 and 1334, which were admitted at the conclusion of Paul Spendiff's testimony this past Friday, and other similar exhibits that the Government seeks to introduce at trial. These exhibits are highly probative evidence of the defendant's state of mind at the time that he was involved in alleged conspiracies to launder OneCoin fraud proceeds and to commit bank fraud—an issue in dispute in this case. The exhibits should be admitted for the limited purpose of establishing the defendant's knowledge and intent, with appropriate limiting instructions where warranted.

**A.    Background**

      Prior to trial, as part of its motions *in limine*, the Government indicated that it intended to introduce various emails sent to the defendant, not for the truth of their contents, but as relevant evidence of the defendant's state of mind during the period of the charged conspiracies. Specifically, the Government argued:

> [T]he Court should admit evidence of which the defendant was or should have been aware, establishing the defendant's relevant knowledge. For example, the Government intends to introduce communications sent directly to the defendant by service providers of his purported investment funds, informing the defendant that the providers were no longer comfortable working with the defendant in light of his failure to provide requested information regarding the funds' investors and source of wealth, among other reasons . . . The Government also expects to show that the defendant was aware of . . . publicly-available information suggesting that OneCoin was defrauding its investors.

(Doc. No. 158 at 18-19).  In his response to the Government's motions *in limine*, the defendant conceded that such evidence would be admissible.  In particular the defendant stated:

> Turning to the state of mind evidence that the Government wishes to introduce, however, it would appear that such evidence would fall into three categories.  The first such category is "communications sent directly to the defendant by service providers of his purported investment funds, informing the defendant that the providers were no longer comfortable working with the defendant in light of his failure to provide requested information regarding the funds' investors and source of wealth."   Defense counsel does not anticipate objecting to the introduction of such evidence, as it was reviewed by Mr. Scott.  On the same grounds, the defense does not anticipate objections to the Government's third category of anticipated state-of-mind evidence, "publicly-available information suggesting that OneCoin was a defrauding its investors" "that the defendant was aware of."

(Def.'s Opp. at 13) (citations and emphasis omitted).

On Friday, the Government offered and the Court admitted two communications constituting such state of mind evidence—Government Exhibits 1333 and 1334—between the defendant and representatives at Mason Hayes and Curran, an Irish law firm that Scott retained in connection with his operation of the Fenero Funds.[1]  The Government anticipates offering a number of additional communications of this nature, falling into three broad categories: (1) communications sent to the defendant showing that the defendant was aware that OneCoin-related bank accounts, including certain bank accounts of co-conspirator Gilbert Armenta, were being closed by banks (*see, e.g.*, Exhibits A and B); (2) communications, including Government Exhibits 1333 and 1334, that service providers sent to the defendant informing him that the providers were terminating their relationships with the defendant due to concerns about the Fenero Funds (*see, e.g.*, Exhibits C, D, E, F, G, and H); and (3) communications sent to the defendant containing or otherwise referencing derogatory information about the OneCoin scheme (*see, e.g.*, Exhibit I).

## B.     Applicable Law

"A statement is only hearsay if it is offered 'to prove the truth of the matter asserted.'" *United States v. Scully*, 877 F.3d 464, 474 (2d Cir. 2017) (quoting Fed. R. Evid. 801(c)(2)).  Where a statement is "offered as circumstantial evidence of the defendant's state of mind, it does not fall within the definition given by Rule 801(c)," because it is "not offered to prove the truth of the matter asserted."  *Id.* (internal brackets omitted) (quoting *United States v. Detrich*, 865 F.2d 17, 21 (2d Cir. 1988)); *see also United States v. Thompson*, 279 F.3d 1043, 1047 (D.C. Cir. 2002) ("An out-of-court statement that is offered to show its effect on the hearer's state of mind is not

---

[1]  The Government identified Government Exhibits 1333 and 1334—attached hereto as Exhibits E and F, respectively—as emails that the Government intended to introduce at trial approximately two weeks prior to trial, on or about October 28, 2019.

hearsay under Rule 801(c)."); *United States v. Salameh*, 152 F.3d 88, 112 (2d Cir. 1988) (admitting defendants' possession of "terrorist materials" as non-hearsay evidence of defendants' state of mind).  "[A] state of mind can be proved circumstantially by statements which are not intended to assert the truth of the fact being proved."  *United States v. Quinones*, 511 F.3d 289, 312 (2d Cir. 2007) (quoting *United States v. Southland Corp.*, 760 F.2d 1366, 1376 (2d Cir. 1985).

**C.    Discussion**

The three categories of communications described above (collectively, the "Communications")—including Government Exhibits 1333 and 1334—are highly probative of the defendant's state of mind at the time of the charged conspiracies and constitute relevant, non-hearsay evidence. The Communications represent critical circumstantial proof that the defendant was aware that OneCoin was illegal, and therefore go directly to a key issue at this trial, the defendant's knowledge.  The Communications should be admitted, with appropriate limiting instructions to the effect that they should be considered for evaluating the defendant's state of mind and knowledge, and not for the truth of their contents.

With respect to the first and second categories of Communications—including Exhibits A through H attached hereto—those letters and emails show that banks and other providers became suspicious of both OneCoin and the Fenero Funds, and chose to terminate customer relationships with the defendant and his co-conspirators in light of those concerns.  The closure of bank accounts that transacted OneCoin proceeds establishes the defendant's direct knowledge of OneCoin's banking troubles, one of the very reasons OneCoin required the defendant's money laundering services.  *See, e.g.,* Exs. A and B.  In one such communication, provided to the defendant by Gilbert Armenta in January 2016, TD Bank explicitly linked the closure of several Armenta bank accounts to online information suggesting that OneCoin had used one or more of the accounts to conduct business.  *See* Ex. A ("It has come to our attention that a company called OneCoin is falsely representing on its website in communications with customers that it has a banking relationship with TD Bank.  OneCoin is providing information regarding one or more of your TD Bank accounts a proof of this relationship.").

Likewise, letters and emails in which the defendant's own service providers repeatedly fired him and the Fenero Funds based concerns around money laundering, source of wealth, and related issues—even as the defendant continued to work with OneCoin associates well into 2018— show that the defendant knowingly engaged in the charged crimes.  *See, e.g.,* Exs. C, D, E, F, G, and H.  It bears noting that the defendant first received such communications as early as April 2016, before any funds were deposited into the Fenero Fund accounts.  *See* Ex. C (April 6, 2016 email from Appleby Corporate Services Managing Director informing the defendant that: "Our concern remains that we have not been able to provide anything material to explain, and evidence, how Irina Dilkinska has accumulated sufficient wealth in order for her company to make the level of contribution that is intended as a limited partner to Fenero LP . . . Accordingly, at this stage, we will not be able to go on as authorized representative to the approved manager or approved fund."). The communications sent by Mason Hayes and Curran to the defendant over a year later in fall 2017, admitted as Government Exhibits 1333 and 1334, reflect similar concerns.  Notably, the defendant continued to participate in the charged conspiracies after receiving these communications.  *See* Ex. F ("Given your failure to provide both the information and documents required by us to identify the beneficial owners of the Companies for our anti-money laundering

and counter terrorism purposes and the information required by us to understand the nature of the activities of the Companies, in addition to resigning as company secretary, we are resigning as lawyers to the remaining Companies with immediate effect.").  Not long thereafter, in November 2017, a Cayman company named Intertrust notified the defendant that it would no longer "provide registered office services" to the Fenero entities "as they no longer fit [Intertrust's] Group Risk Profile."  *See* Ex. G.  Indeed, the pattern of such emails over time, when coupled with the defendant's continued involvement in the charged offenses, is highly probative evidence of his criminal knowledge and intent.

Finally, the third category of Communications—including Exhibit I—represent direct evidence of the defendant's knowledge regarding the fraudulent nature of the OneCoin scheme itself.  Exhibit I shows that on April 26, 2016, co-conspirator Irina Dilkinska forwarded the defendant a link to a website in which a certified public accountant ("CPA") details the various reasons that OneCoin is a "scam."  *See* Ex. I-1 at 3, 4 ("OneCoin shows many of the hallmarks of at least two types of common frauds—the pyramid scheme and the Ponzi scheme . . . In my professional opinion, OneCoin is a sophisticated example of a classic pyramid and/or Ponzi scheme with just enough of the sheen of respectability and legitimacy to make it a long-ish con.").[2] Such evidence establishes that very early on, the defendant knew or should have known that OneCoin was a fraud scheme, and is especially probative given the defendant's assertions at trial— in opening and through his cross-examinations of Government witnesses—that he was unaware that the OneCoin-derived monies transferred into the Fenero Funds were criminal proceeds.

---

[2]  The Government intends to introduce the content associated with the website link contained in the email through an agent who has viewed a preserved version of the website as of December 30, 2015—the same day that it was posted, according to the date line at the top of the website post. The December 30, 2015 preservation of the website is attached as Exhibit I-1.  The website was preserved again as of April 29, 2016, only three days after the defendant received the email from Irina Dilkinska containing the link.  The April 29, 2016 preservation of the website is attached as Exhibit I-2.  The December 30, 2015 preserved version of the website (Ex. I-1) differs from the April 29, 2016 preserved version of the website (Ex. I-2) only insofar as the addition of a Mirror article in the "Other Sites that Discuss OneCoin" section on page five of Exhibit I-2, and the presence of five comments from various other individuals on page six of Exhibit I-2.  While the Government does not intend to introduce the additional material contained in Exhibit I-2, the consistency of all other content in the December 30, 2015 and April 29, 2016 preservations establishes what was available to the defendant on April 26, 2016, the day that he received the email from Irina Dilkinska.

**D.     Conclusion**

In sum, the Communications are highly probative evidence of the defendant's state of mind, in a case where his level of knowledge is a central issue at trial.  The Communications are therefore relevant, non-hearsay evidence, and the Court should admit them.  *See Quinones*, 511 F.3d at 312 ("[A] state of mind can be proved circumstantially by statements which are not intended to assert the truth of the fact being proved.").  The Court should instruct the jury as appropriate that the Communications are properly considered not for the truth of their contents, but as evidence of the defendant's state of mind and/or knowledge at the time that he received them.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

by: ____*/s/*_____
Julieta V. Lozano/Christopher J. DiMase/
Nicholas S. Folly
Special Assistant United States Attorney/
Assistant United States Attorneys
(212) 637-2438 / 2433 / 1060

cc:     Arlo Devlin-Brown, Esq. (by electronic mail)
        David Garvin, Esq. (by electronic mail)

# **EXHIBIT A**

GOVERNMENT
EXHIBIT
**1013**
17 Cr. 630 (ER)

| | |
|---|---|
| **From**: | gvalentin@zala-group.com [gvalentin@zala-group.com] |
| **Sent**: | 1/4/2016 3:14:13 PM |
| **To**: | Mark Scott [Mark.Scott@lockelord.com] |
| **CC**: | gilbert armenta [mio6303@gmail.com] |
| **Subject**: | Letter from TD |
| **Attachments**: | TD Letter regarding One Coin.pdf |
| | |
| **Importance**: | High |

Hello Mark,

Happy New Year! Please see the letter attached hereto and contact Gilbert as soon as possible.

Thanking you in advance,
Giselle

**TD Bank**

America's Most Convenient Bank®

December 14, 2015

**TD Bank, N.A.**
5900 North Andrews Avenue
2nd Floor
Fort Lauderdale, FL 33309
**T: 888-751-9000**
www.tdbank.com
**Office: 954-233-2034**

Gilbert R. Armenta, Sr.
1460 S Ocean Blvd, Apt 301
Pompano Beach, FL 33062

Dear Mr. Armenta,

As you know, on or about December 9, 2015, TD Bank, N.A. ("TD Bank") notified you that it was closing your accounts, including accounts numbered 4319589622 and 4325434431.

It has come to our attention that a company called OneCoin is falsely representing on its website and in communications with customers that it has a banking relationship with TD Bank. OneCoin is providing information regarding one or more of your TD Bank accounts as proof of this relationship. These representations are false, as TD Bank has never had a banking relationship with OneCoin and has no involvement in its business. It appears that you may be affiliated with OneCoin, made misrepresentations or omissions to TD Bank in opening your accounts, and are participating in this unlawful use of TD Bank's name. This may be in breach of your account agreement and may subject TD Bank to harm.

TD Bank hereby demands that you cease and desist all uses of TD Bank's name and account information, including in any communications concerning OneCoin. This includes any sales, marketing, or business communications, whether public or private. TD Bank also demands that both OneCoin and you provide TD Bank with prompt written assurance within four (4) days that you have complied with this demand and have removed all references from TD Bank from OneCoin's website and from any public or private communications.

TD Bank is entitled to seek monetary damages and equitable relief for the unlawful use of its name. If you do not comply with this cease and desist demand within this time period, please be advised that TD Bank will pursue all available legal remedies, including seeking monetary damages, injunctive relief, and an order that you pay court costs and attorney's fees.

In order to preserve TD Bank's legal rights to defend against any liabilities arising from your and OneCoin's unlawful conduct, and to pay for the costs of enforcing this cease and desist demand, TD Bank will withhold the balance of your accounts until you and OneCoin have provided proof and assurance of your compliance.

We look forward to your timely assurances and thank you in advance for your cooperation in this matter.

Best regards,

Val Perez
South Florida Market President – Retail

Via Courier & Certified mail

Confidential

GA_USAO_00248797


**Bank**
America's Most Convenient Bank®

December 14, 2015

**TD Bank, N.A.**
5900 North Andrews Avenue
2nd Floor
Fort Lauderdale, FL 33309
**T: 888-751-9000**
www.tdbank.com
**Office: 954-233-2034**

Gilbert R. Armenta, Sr.
1460 S Ocean Blvd, Apt 301
Pompano Beach, FL 33062

Dear Mr. Armenta,

As you know, on or about December 9, 2015, TD Bank, N.A. ("TD Bank") notified you that it was closing your accounts, including accounts numbered 4319589622 and 4325434431.

It has come to our attention that a company called OneCoin is falsely representing on its website and in communications with customers that it has a banking relationship with TD Bank. OneCoin is providing information regarding one or more of your TD Bank accounts as proof of this relationship. These representations are false, as TD Bank has never had a banking relationship with OneCoin and has no involvement in its business. It appears that you may be affiliated with OneCoin, made misrepresentations or omissions to TD Bank in opening your accounts, and are participating in this unlawful use of TD Bank's name. This may be in breach of your account agreement and may subject TD Bank to harm.

TD Bank hereby demands that you cease and desist all uses of TD Bank's name and account information, including in any communications concerning OneCoin. This includes any sales, marketing, or business communications, whether public or private. TD Bank also demands that both OneCoin and you provide TD Bank with prompt written assurance within four (4) days that you have complied with this demand and have removed all references from TD Bank from OneCoin's website and from any public or private communications.

TD Bank is entitled to seek monetary damages and equitable relief for the unlawful use of its name. If you do not comply with this cease and desist demand within this time period, please be advised that TD Bank will pursue all available legal remedies, including seeking monetary damages, injunctive relief, and an order that you pay court costs and attorney's fees.

In order to preserve TD Bank's legal rights to defend against any liabilities arising from your and OneCoin's unlawful conduct, and to pay for the costs of enforcing this cease and desist demand, TD Bank will withhold the balance of your accounts until you and OneCoin have provided proof and assurance of your compliance.

We look forward to your timely assurances and thank you in advance for your cooperation in this matter.

Best regards,

Val Perez
South Florida Market President – Retail

Via Courier & Certified mail

# **EXHIBIT B**

**From:**     "Diane Cook" <dcook@zala-group.com>
**To:**       <msscottlaw@gmail.com>
**Subject:**  PRIVILEGED & CONFIDENTIAL; PLEASE DO NOT DISTRIBUTE
**Sent:**     Wed, 17 Aug 2016 15:07:29 -0700

Sabadell Bank Letter 08-17-2016.pdf

EXTREMELY PRIVATE; FOR YOUR EYES ONLY; PLEASE DO NOT DISTRIBUTE;  PRIVILEGED & CONFIDENTIAL.

Mark,
Please find attached a scan of a letter that is being sent to you at the instruction of Gilbert. He will call you later to discuss.
Thanks
D



| Plantation | 150 South Pine Island Road | Plantation | T (954) 476-7090 |
| Banking Center | Suite 100 | FL 33324-7807 | F (954) 476-8070 |

## **Sabadell** United Bank

08/17/2016

Zala Group LLC
Fates Group LLC
Shureden Services LTD
Soleymew Management LTD
Water-Tidal Services LTD
110 E Broward Blvd Ste 1900
Fort Lauderdale FL, 33301

Re:  Global account closing

Dear Gilbert Armenta:

Pursuant to our Depository Account Agreement, Sabadell United Bank has elected to
close the above referenced named accounts effective September 17, 2016.
We encourage you not to write any additional checks or make any external transfers
pertaining to these accounts.  Any checks presented will be returned, "account closed",
and any external transfers presently held, pending, or in transit shall be returned and
credited to accounts in due course.  Any balance remaining will be sent to your address
of record.

Sincerely,

Moshe Kishore
Vice President

# **EXHIBIT C**

**To:**       Jeffrey Kirk[jkirk@applebyglobal.com]; Gareth Thomas[Gareth.Thomas@estera.com]
**Cc:**       Nadia Menezes[nmenezes@applebyglobal.com]; Chloe Harris[charris@applebyglobal.com]; Estera - BVI - All Users[BVI-AllUsers@estera.com]
**From:**   Mark S. Scott
**Sent:**     Wed 4/6/2016 10:33:50 PM (UTC)
**Subject:**  Re: New Entity [APPLEBY-VG_FID.FID157151]

Jeff,

I will respond offline. I tried for weeks. Never a response. I received no e-mail on Friday by the way. Furthermore, I asked for a call more than two weeks ago the first time after receiving the first strange e-mail from Gareth.

You disappeared after our initial call for the engagement. Hope you made it back safely to the island after weeks of travel.

Let's discuss the fees paid and due and move on. I clearly did not receive the service and value I expected. Nadia and Chloe worked hard and I do not want put them in the same category.

Best,

Mark

Mark S. Scott
Managing Member

Mark S. Scott, P.L.
Attorneys at Law


Sent from my BlackBerry Priv - the most secure mobile device - via the AT&T Network

> **From:**jkirk@applebyglobal.com
> **Sent:**April 6, 2016 22:58
> **To:**msscottlaw@gmail.com; gthomas@applebyglobal.com
> **Cc:**nmenezes@applebyglobal.com; charris@applebyglobal.com; AFB-BVI-AllUsers@applebyglobal.com
> **Subject:**RE: New Entity [APPLEBY-VG_FID.FID157151]


Mark,

As you would have seen from my out of office email notifications, I have been travelling recently.

I got back into the office on Monday and per my email to you on Friday (attached), I was expecting a call from you on Monday. I am available for a call either on my direct office or cell numbers (see signature block below).

**Jeffrey Kirk**   | Managing Partner | Group Head BVI, Corporate
Appleby BVI

Tel (Direct):          + 1 284 393 5318
Tel (Switchboard):     + 1 284 393 4742
Tel (Mobile):          + 1 284 340 5318
Fax:                   + 1 284 494 7279

jkirk@applebyglobal.com     www.applebyglobal.com





VCARD  |  LINKEDIN  |  TWITTER

MS_USAO_FT_285753

**From:** Mark S. Scott [mailto:msscottlaw@gmail.com]
**Sent:** Wednesday, April 06, 2016 3:40 PM
**To:** Gareth Thomas
**Cc:** Nadia Menezes; Jeffrey Kirk; Chloe Harris; AFB - BVI - All Users
**Subject:** Re: New Entity [APPLEBY-VG_FID.FID157151]

Gareth,

I am traveling and will respond in length when I return. In the meanwhile I am working on a transition. You are asking far more than most banks I am currently communicating with.

I am also at a loss that the Managing Partner of your legal division has failed to respond to my many requests for a call to discuss the current situation.

There should be some professional courtesy. I am an equity partner in the 35th largest US law firm and I feel I have been treated like a walk-in. You guys contacted us for business and I took the chance.

You should take the time to ask more questions and better understand the business wed are initiating before taking a position that is more extreme than any regulatory body. Also, I would expect advice more so than constant questioning.

We will sort this out quickly, including the fees and funds I already have paid.

Best regards,

Mark

Mark S. Scott
Managing Member

Mark S. Scott, P.L.
Attorneys at Law


Sent from my BlackBerry Priv - the most secure mobile device - via the AT&T Network

**From:** gthomas@applebyglobal.com
**Sent:** April 6, 2016 20:32
**To:** msscottlaw@gmail.com
**Cc:** nmenezes@applebyglobal.com; jkirk@applebyglobal.com; charris@applebyglobal.com; AFB-BVI-AllUsers@applebyglobal.com
**Subject:** RE: New Entity [APPLEBY-VG_FID.FID157151]



Mark

As mentioned to you on several occasions now, Appleby Corporate Services (BVI) Limited's requirements grew in line with our understanding of the size of investments that you were looking to attract (and had lined up), and the type of vehicle formed.

As a regulated entity we need to have complete transparency on how the limited partner and her family came to accumulate such wealth as to be able to warrant such a level of investment in a new fund.

Our concern remains that we have not been provided anything material to explain, and evidence, how Irina Dilkinska has accumulated sufficient wealth in order for her company to make the level of contribution that is intended as a limited partner to Fenero LP.

In your letter on Locke Lord letterhead, you have indicated that the investors for the various Fenero funds will be 4 HNW

MS_USAO_FT_285754

European families. We have not been able to corroborate by our internet checks which HNW family Irina Dilkinska is part of, and you have not provided any information on this.

We would require significantly more detail to evidence Irina Dilkinska's source of wealth and which European family she is a party of.

As mentioned previously, we believe you will find that any bank offshore or onshore would also be asking the same type of questions in relation to the UBO's source of funds.

Accordingly, at this stage we will not be able to go on as authorised representative to the approved manager or approved fund. Further, if our compliance requirements are not satisfied by 29 April 2016 we will need to take steps to resign as registered agent to the approved manager and approved fund and you will need to find a new agent for the entities to be transferred to.

Regards

Gareth

**Gareth Thomas**   | Managing Director | Appleby Corporate Services (BVI) Limited
Appleby BVI
Tel: +1 284 393 5341

applebyglobal.com

 

**VCARD  |  LINKEDIN  |  TWITTER**

Bermuda ▪ BVI ▪ Cayman Islands ▪ Guernsey ▪ Hong Kong ▪ Isle of Man ▪ Jersey ▪ Mauritius ▪ Seychelles ▪ Shanghai

---

**From:** Mark S. Scott [mailto:msscottlaw@gmail.com]
**Sent:** Monday, April 04, 2016 6:05 PM
**To:** Gareth Thomas
**Cc:** Nadia Menezes; Jeffrey Kirk; Chloe Harris; AFB - BVI - All Users
**Subject:** Re: New Entity [APPLEBY-VG_FID.FID157151]

Gareth,

Please excuse my surprise, I have never had to struggle so much with service providers and certainly have never been terminated.  While I respect your position to a certain degree, at this point no funds have flown or accounts are opened and we haved provided more than reasonable KYC. As far as i know you are only missing an affidavit from me, but have a declaration on my firm's letterhead instead.

I am asking you for a simple request to form a holding company that is immensly important for our business so that we can close on two transactions through Ireland. This has nothing to do with KYC on other people, just with me. I think I have been transparant enough for you to know who I am.

It is a bit confusing how your legal side applies for our licenses with the BVI Government and your fiduciary side wants nothing to do with us???

I will look for someone else to assist us once we jump the next hurdle of the licensing to make you more comfortable and advise my legal partners of my bizarre experience.

Thanks and best,

Mark

Mark S. Scott
Managing Member

MS_USAO_FT_285755

Sent from my BlackBerry Priv- the most secure mobile device - via the AT&T Network

**From:** gthomas@applebyglobal.com
**Sent:** April 4, 2016 5:21 PM
**To:** msscottlaw@gmail.com
**Cc:** jkirk@applebyglobal.com; charris@applebyglobal.com; AFB-BVI-AllUsers@applebyglobal.com; nmenezes@applebyglobal.com
**Subject:** RE: New Entity [APPLEBY-VG_FID.FID157151]


Mark

We are not able to assist you with the setup of any new vehicle whilst we still have outstanding compliance requests for Fenero Equity Investments LP, as per my email dated 31 March 2016 (attached for ease of reference).

At this juncture it would be advisable for you to look at another regulated service provider if you are not able to provide us with the compliance documentation that we require.

Regards

Gareth


**Gareth Thomas**   | Managing Director | Appleby Corporate Services (BVI) Limited
Appleby BVI
Tel: +1 284 393 5341

applebyglobal.com



VCARD |  LINKEDIN  |  TWITTER
Bermuda ▪ BVI ▪ Cayman Islands ▪ Guernsey ▪ Hong Kong ▪ Isle of Man ▪ Jersey ▪ Mauritius ▪ Seychelles ▪ Shanghai

**From:** MSSLAW [mailto:msscottlaw@gmail.com]
**Sent:** Monday, April 04, 2016 2:02 PM
**To:** Nadia Menezes; Gareth Thomas
**Cc:** Jeffrey Kirk; Chloe Harris
**Subject:** New Entity

Folks,

We were just informed of a Regulatory change in Ireland.  BVI LPs can no longer be Shareholders of an Irish Limited.  In order to sustain the structure we already built and relied on for transactions, I would urgently require another BVI LTD to be formed as the administrative arm  of Fenero.  It would be 99% owned by the existing LP and 1% by MSS.  It should be called "Fenero Administrative Services Limited"

Please advise how quickly this can be done.

Thanks and best,

Mark

Mark S. Scott, P.L.
Managing Member

MS_USAO_FT_285756

Sent from my iPad. Please excuse typos.

The information in this e-mail is confidential and is intended solely for the addressee. Access by any other person to this e-mail is not authorised. If you are not the intended recipient, please delete this e-mail. Any disclosure of this e-mail or of the parties to it, any copying, distribution or any action taken or omitted to be taken in reliance on it is prohibited, and may be unlawful.

Appleby BVI Corporate Services is licensed to conduct Trust Business by the British Virgin Islands Financial Services Commission.

The information in this e-mail is confidential and is intended solely for the addressee. Access by any other person to this e-mail is not authorised. If you are not the intended recipient, please delete this e-mail. Any disclosure of this e-mail or of the parties to it, any copying, distribution or any action taken or omitted to be taken in reliance on it is prohibited, and may be unlawful.

Appleby BVI Corporate Services is licensed to conduct Trust Business by the British Virgin Islands Financial Services Commission.

The information in this e-mail is confidential and may be legally privileged. It is intended solely for the addressee. Access by any other person to this e-mail is not authorised. If you are not the intended recipient, please delete this e-mail. Any disclosure of this e-mail or of the parties to it, any copying, distribution or any action taken or omitted to be taken in reliance on it is prohibited, and may be unlawful.

The term "Partner" is a title referring to a partner, employee or consultant of equivalent standing and qualifications of Appleby BVI which is an Appleby legal practice and a general partnership. A list of the partners of any Appleby partnership, or of the members, shareholders and directors of any Appleby limited company and of any other non-shareholders who are termed "Partners" of any legal practice is available for inspection upon request from your relationship partner. Appleby is an organisation of separate entities and legal practices comprising both corporate and partnership form, each established to provide legal, fiduciary and administration services under the Appleby name from the numerous jurisdictions in which it is based.

# **<u>EXHIBIT D</u>**

**To:** Angela Nightingale[angela.nightingale@trinityadmin.com]; David R. Pike[drpike@msicbvi.com]
**Cc:** Frank Farrell[Frank@trinityfundadmin.ie]; Colm O'Driscoll[codriscoll@dmsbank.com]; John McCann[John@trinityfundadmin.ie]
**From:** Mark S. Scott
**Sent:** Wed 3/8/2017 2:15:02 PM
**Subject:** Re: next steps - Fenero

Dear Angela,

I am sorry to hear that. We would like to pay you for any of the efforts you made on our behalf. Unfortunately the fund you were to administer was restructured due to to lack of product to acquire.

Hopefully we get a chance to try again in the future.

Best regards,

Mark

Mark S. Scott
Chief Executive Officer

MSS International Consultants (BVI), Ltd.
BVI Registered and Approved Fund Manager

Email Address: msscott@msicbvi.com
Tel. +1-305-587-4030
Fax +1 786-513-7770

Sent from my BlackBerry Priv - the most secure mobile device

**From:** angela.nightingale@trinityadmin.com
**Sent:** March 8, 2017 09:10
**To:** drpike@msicbvi.com; msscott@msicbvi.com
**Cc:** John@trinityfundadmin.ie; Frank@trinityfundadmin.ie; codriscoll@dmsbank.com
**Subject:** RE: next steps - Fenero

Dear David, Mark,

Further to our email dated February 10th 2017 we note that no progress has been made in providing the information necessary for the onboarding the Fenero funds.

After due consideration, it has been decided not to continue with the Fenero engagement.



GOVERNMENT
EXHIBIT
1305
17 Cr. 630 (ER)

With kind regards,

Please note Trinity has relocated, please update your address on record to 3ʳᵈ Floor Citrus Grove, Goring Ave, PO Box 10364, Grand Cayman, KY1-1104 Cayman Islands.

Angela Nightingale, General Manager
Tel: (345) 743 6621





www.trinitycayman.com



---

**From:** David R. Pike [mailto:drpike@msicbvi.com]
**Sent:** February 10, 2017 3:53 PM
**To:** Angela Nightingale <angela.nightingale@trinityadmin.com>; Mark S. Scott <msscott@msicbvi.com>
**Cc:** John McCann <John@trinityfundadmin.ie>; Frank Farrell <Frank@trinityfundadmin.ie>; Colm O'Driscoll (codriscoll@dmsbank.com) <codriscoll@dmsbank.com>
**Subject:** RE: next steps - Fenero

Angela,

Thank you, I will address this list directly.

**David R. Pike**
Director



**MSS INTERNATIONAL CONSULTANTS (BVI), LTD.**
BVI Registered and Approved Fund Manager

Ritter House, Wickhams Cay II
P.O. Box 4041, Road Town
VG1110 Tortola, British Virgin Islands

Email Address: mailto:drpike@msicbvi.com

Tel. +1-786-261-8160

Fax +1-786-513-7770

CONFIDENTIALITY NOTICE:
This e-mail and any attached files from MSS International Consultants (BVI), Ltd. may contain information that is privileged, confidential and/or exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you received this e-mail by accident, please notify the sender immediately and destroy this e-mail and all copies of it. We may scan and or monitor emails sent to and from our servers to ensure regulatory compliance to protect our clients and business.

---

**From:** Angela Nightingale [mailto:angela.nightingale@trinityadmin.com]

**Sent:** Friday, February 10, 2017 3:11 PM
**To:** David R. Pike <drpike@msicbvi.com>; Mark S. Scott <msscott@msicbvi.com>
**Cc:** John McCann <John@trinityfundadmin.ie>; Frank Farrell <Frank@trinityfundadmin.ie>
**Subject:** next steps - Fenero

Dear Mark, David,

Further to our missed call this morning the below bullet points outlining the next steps and the information required to move forward;

- Kindly returned the signed LOE;
- Kindly sent payment of the onboarding fee;
- Kindly send the outstanding due diligence items on yourselves per the attached email;
- Kindly send ALL documentation pertaining to the funds investments or deals;
- Kindly send ALL shareholder information, including subscription information and due diligence;
- Confirmation of work done to date, including the number of drawdowns;
- Copies of communications sent to the investors regarding subscriptions, drawdowns or the investments status;
- Confirmation of the date of the first NAV;
- ALL bank, trading or custody statements from each funds inception, including support for all payments made and funds received;
- Contact information for any bank, brokerage or custody account;
- Any and all agreements the funds have entered into;
- Any other documents relating to the funds that are not covered by the above.

Please note that ALL this information is required for us to complete our onboarding review process. Insufficient information on any of the above items means we will be unable to accept appointment as administrator. We look forward to receiving the above information by the end of February for us to enable us to move forward, further delay will force us to decline the engagement.

Further please note that our original quotation was built on the understanding we had of the funds operations at that time. Should the documents provided indicate a significant difference from our understanding we will revise our fees accordingly.

Thank you

Angela Nightingale, CAMS   General Manager
Tel: (345) 743 6621
Main Tel Number 1 345 743 6620
Direct Tel Number 1 345 743 6621



Citrus Grove, 106 Goring Ave, PO Box 10364
Grand Cayman, Cayman Islands KY1-1004



MS_USAO_FT_033963

Winner- 2015 Global Custodian Fund Survey

Trinity is a global hedge fund solutions company that is committed to exceeding client expectations with over two decades of experience.
For more information on our company, our thoughts on the industry and our products and services, please visit www.trinitycayman.com

Disclaimer

This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. If you are not the intended recipient any disclosure, copying, distribution or any action taken or omitted to be taken in reliance on it is prohibited and may be unlawful. If you have received this email in error please notify the sender by reply and delete this message from your computer.

Please note that the reliability of this method of communication cannot be guaranteed. It can be intercepted, corrupted, delayed, may arrive incomplete, contain viruses or be affected by other interference. We have taken reasonable steps to reduce risks against viruses but cannot accept liability for any damage sustained as a result of transmission.

Please consider the environment - do you really need to print this email?

# **EXHIBIT E**

**To:**      David R. Pike[drpike@msicbvi.com]; Nicole Huesmann[NHuesmann@msicbvi.com]
**From:**   Mark S. Scott
**Sent:**    Sat 9/30/2017 2:11:22 PM (UTC)
**Subject:**  Fw: MSSi and subsidiaries

Let's discuss transferring files either to Arthur Cox or maybe Ogier has a partner firm we could hire?

David, let's discuss approach to Ogier.


Mark S. Scott
Chief Executive Officer

MSS International Consultants (BVI), Ltd.
BVI Registered and Approved Fund Manager

Email Address: msscott@msicbvi.com
Tel. +1-305-587-4030
Fax +1 786-513-7770

Sent from my BlackBerry KeyOne device - the most secure mobile device. Please excuse short responses and typos.

---

**From:** dblack@MHC.ie
**Sent:** September 30, 2017 9:40 AM
**To:** msscott@msicbvi.com
**Cc:** lkearney@MHC.ie; jgulliver@MHC.ie; drpike@msicbvi.com
**Subject:** Re: MSSi and subsidiaries


Mark

We will of course facilitate an orderly transition and we will also comply with all our professional duties, including confidentiality.

We will not however act in any new matter or on any instruction other than in relation to the transfer to your new advisers.

We will let you know the point person on Monday.

Sincerely

Declan Black

On 30 Sep 2017, at 12:04, Mark S. Scott <msscott@msicbvi.com> wrote:

**GOVERNMENT EXHIBIT 1333**
17 Cr. 630 (ER)

> Dear Declan,
>
> I have received your voicemail and am outraged by your decision to terminate us as a client due to money laundering concerns.  You claim that your firm has not been adequately informed about our transactions, although we provided explanations of our transactions every time we would ask your firm to form a new subsidiary for us. Further, we requested tax advice on several matters. We also had meetings with the designated team and explained our business and provided organizational charts.
>
> If you have not received any updates on transactions for a long period of time it is merely for the fact that we have not entered into any.
>
> As to your stipulation of your money laundering requirements, I can't imagine that a law firm is under

MSCF_USAO_00007304

greater scrutiny than a commercial bank. Our firm has active accounts in several countries with major banks, including in Ireland, of which none of them treats my company as a risk for money laundering or any related activities. I am somewhat offended by the tenor of your voicemail in that regard.

In any event, I expect your firm to prepare and a clean transition of our entities to another advisor and to close those entities we no longer have any use for. Please let me know whom in your firm will be our point person for that task.

Again, I expect your law firm to handle this matter discretely and professionally. I will not accept any negative fallout from your actions.

Regards,

Mark S. Scott
Chief Executive Officer

MSS International Consultants (BVI), Ltd.
BVI Registered and Approved Fund Manager

Email Address: msscott@msicbvi.com
Tel. +1-305-587-4030
Fax +1 786-513-7770

Sent from my BlackBerry KeyOne device - the most secure mobile device. Please excuse short responses and typos.

For information please visit http://www.mhc.ie or refer to your usual MH&C contact. The information contained in this e-mail may be confidential and privileged. It is intended only for the addressee(s) stated above. If you are not an addressee, any use, dissemination, distribution, publication, or copying of the information contained in this e-mail is strictly prohibited. If you have received this e-mail in error, please immediately notify us by e-mail at mail@mhc.ie and delete this e-mail from your system.

Please consider the environment before printing this email

MSCF_USAO_00007305

# <u>EXHIBIT F</u>

**To:** Mark S. Scott[msscott@msicbvi.com]
**Cc:** Laura Kearney[Laura.Kearney@MHC.ie]; John Guilfoyle[john.guilfoyle@MHC.ie]
**From:** Claire Lord
**Sent:** Mon 10/2/2017 4:48:08 PM (UTC)
**Subject:** Fenero companies

Letter to Mark Scott.pdf
20171002 Ltr re Fenero Equity Investment (Ireland) Limited.pdf
20171002 Ltr re Fenero Equity Acquisition 2 Limited.pdf
20171002 Ltr re Fenero Equity Acquisition 3 Limited.pdf

Mark

I refer to your recent correspondence with our Managing Partner, Declan Black.

I now attach the following documents:

1.  Letter to you in respect of the resignation of MHC as your lawyers;

2.  Letters to Fenero Equity Investment (Ireland) Limited, Fenero Equity Acquisition 2 Limited and Fenero Equity Acquisition 3 Limited in respect of the resignation of MHC Corporate Services Limited as the company secretary of these companies.  You will recall that we resigned as company secretary for each of these companies with effect from 01 August 2018 but the required Forms B10 have yet to be filed duly notifying our Companies Registration Office.  Each of the attached letters notifies the relevant entity that if the required Forms B10 are not filed in our CRO within 21 days we will arrange for a Form B69 to be filed to confirm our resignation

Regarding the handover of the files that we hold for these companies, please noted the following:

-  **Fenero Equity Investments Ireland, Limited**:  This company has an annual return date of 07 October 2017. If this company is going to have a 31 December year end, it will need to bring its annual return date forward to 30 September 2017 and file an annual return online on or prior to 28 October. The signature page for the online filing along with financial statements for the period ended 31 December 2016 (which may need to be audited) will need to be filed on or prior to 25 November (assuming the online filing is made on 28 October).  If the company has a different financial year end it should be possible for the company to extend its annual return date (again these filings should be made on or prior to 28 October 2017).  Your new service providers should be able to assist with these processes.

-  **Fenero Equity Acquisition 2 Limited:**  This company has an annual return date of 30 November 2017.
-  **Fenero Equity Acquisition 3 Limited:**  This company has an annual return date of 01 December 2017.
   We understand from previous correspondence that both of these companies may not be required going forward. Assuming that a voluntary strike-off is the preferred option, your new service provider should arrange for the required documents to be filed on or prior to the next filing deadline (28 December 2017 and 29 December respectively 2017).

We note that each of Fenero TradeNext Holdings Limited, Fenero Securities Trading Limited and Fenero PCT Holdings limited were dissolved as of 27 September 2017, 29 September 2017 and 29 September 2017 respectively.

Once you confirm to us details of your new service provider, we can arrange for the required information and files to be handed over to them.

Regards

Claire Lord
Partner
**MASON HAYES & CURRAN**
South Bank House, Barrow Street, Dublin 4, Ireland.
*t* +353 1 614 5000 *f* +353 1 614 5001
*d* +353 1 614 5204 *m* +353 86 8051354
*e* clord@mhc.ie *w* MHC.ie



GOVERNMENT
EXHIBIT
1334
17 Cr. 630 (ER)



Barrow Street
Dublin 4, Ireland
D04 TR29
DX11 Dublin
+353 1 614 5000
dublin@mhc.ie

Mark S. Scott
MSS International Consultants (BVI), Ltd.

msscott@msicbvi.com

**BY EMAIL**

2 October 2017          **Your ref:**          **Our ref:**   44882.1

MHC–16373542-1

**Matter:**   Fenero Equity Investments (Ireland), Limited
Fenero PCT Holdings Limited
Fenero Securities Trading Limited
Fenero TradeNext Holdings Limited
Fenero Equity Acquisition 2 Limited
Fenero Equity Acquisition 3 Limited
(each a **"Company"** and together the **"Companies"**)

Dear Mark

I refer to your recent correspondence with Laura Kearney and to previous correspondence and discussions with myself, Ms Kearney and our colleague John Gulliver. I refer also to our resignation as company secretary of each of Fenero Equity Investments (Ireland), Limited, Fenero Equity Acquisition 2 Limited and Fenero Equity Acquisition 3 Limited on 1 August 2017.

As you are aware, in April 2016 you engaged Mason Hayes & Curran to act as lawyers for, and appointed MHC Corporate Services Limited as company secretary of, Fenero Equity Investments (Ireland) Limited.  Similar appointments followed in respect of the five Irish subsidiary companies of Fenero Equity Investments (Ireland) Limited on various dates during 2016.

Due to issues that have arisen we are not in a position to continue to provide these services.  I summarise these issues in this letter.

1.   Anti-money laundering and counter-terrorism requirements

As we have repeatedly advised you, we are required to obtain details of the ownership and control structure of every client entity as well as details of the ultimate beneficial owners of such entity with greater than 25% of the shares or voting rights of the entity or who otherwise exercise control of

Dublin       London       New York       San Francisco                                    M H C.ie

Partners · Declan Black (Managing) | Emer Gilvarry (Chair) | Mark Adair | Jenny Ahern | Catherine Allen | Ronan Armstrong | James Bardon | Graeme Bell | Daragh Bohan | Liam Brazil
Fíonán Breathnach | Susan Bryson | Nicola Byrne | Vanessa Byrne | Niamh Callaghan | Neil Campbell | William Carmody | Rachel Carney | Eóin Cassidy | Gemma Coady | Tanya Colbert
Niall Collins | Ger Connolly | Keelin Cowhey | Melanie Crowley | Tom Gray | Maura Dineen | Shane Dolan | Michael Doran | Conor Durkin | Rowena Fitzgerald | Jamie Fitzmaurice | Frank Flanagan
Conor Fottrell | Stephen Gillick | Ailbhe Gilvarry | Edward Gleeson | John Gleeson | Micheal Grace | Liam Guidera | Jason Harte | Edel Hartog | Wendy Hederman | Adam Hogg | Brian Horkan
Kevin Hoy | Margaret Hughes | Peter Johnston | Rachel Kavanagh | Martin Kelleher | Gerard Kelly | Daniel Kiely | Rory Kirrane | Nora Larkin | Adrian Lennon | Claire Lord | David Mangan
Robert McDonagh | Justin McKenna | Natasha McKenna | Peter McLay | Niall Michel | Ronald Neville | Philip Nolan | David O'Donnell | Christine O'Donovan | Frank O'Flynn | Ian O'Herlihy
Maurice Phelan | Jane Pilkington | Kevin Power | Elizabeth Quinn | Judith Riordan | Liam Riordan | Elizabeth Ryan | Gareth Steen | Oisín Tobin | Barry Walsh | Richard Woulfe | Amanda Zahringer
Of Counsel · Paul Egan | Niamh Keogh | Consultant · Declan Curran                                                                                                                         v8

MS_USAO_FT_237074



the entity to comply with applicable anti-money laundering and counter terrorism laws and we are regulated by both the Law Society of Ireland and the Irish Department of Justice in this regard.

At the commencement of our engagement and on subsequent occasions prior to December 2016, you advised us that you were the sole beneficial owner of Fenero Equity Investments LP (the sole shareholder of the Companies) ("Fenero LP") and you provided us with documents to confirm this. We then proceeded to arrange for the Companies to be incorporated and MHC Corporate Services Limited was appointed as company secretary to each of these Companies and we provided a registered office address for each of the Companies. Three of the Companies have subsequently applied to be voluntarily struck-off the Irish register of companies..

You indicated at an early stage of our engagement that, in due course, there were likely to be other investors in Fenero LP. We explained to you that such investors would be likely to be considered to be the ultimate beneficial owners of the Irish Companies and that, therefore, we would need to understand at all times who the investors were and their percentage ownership or voting interest in Fenero LP (and indirectly in the Irish entities). We also explained to you that as soon as there were additional investors we would require information about the identity of these investors and their percentage ownership or voting interest in Fenero LP and, at a minimum, we would require documents to satisfy our anti-money laundering and counter-terrorism requirements for any investor holding in excess of 25% of the ownership or voting interest in Fenero LP.

Prior to our meeting in December 2016, you were asked by us if any investors had come on board and you confirmed that none had. When asked by us at our meeting in December 2016 if this position had changed, you advised that there were at that time other investors in Fenero LP and you confirmed that we would be provided with the documents that we needed for these investors and that your service providers in the British Virgin Islands, Intertrust and Ogier, would assist us in gathering the documents and information that we required. We also advised you at our meeting in December 2016 that we would need these documents in order to continue to provide services.

Following this meeting we had regular correspondence with your colleague David Pike in relation to the documents and information required by us in respect of the investors in Fenero LP. As you will be aware from our subsequent correspondence on this matter, the information that we have received to date in relation to the beneficial ownership of Fenero LP has not been adequate for our purposes and we have advised on several occasions that we require further details.

On 15 February 2017, you advised that you wished us to resign as company secretary of the Companies. We did not receive confirmation of details of a replacement company secretary and you subsequently requested that we remain as company secretary while certain matters were being finalised. On a conference call in early March discussing future options for the Companies, we advised again that details of the ultimate beneficial ownership of the Companies would need to be provided to us in order for us to continue to act. We note that we did not receive a response to the request that we made on 20 July 2017 which was our last request prior to our resignation as company secretary of each of the remaining Companies on 1 August 2017.

Since our resignation as company secretary of each of the remaining Companies, we were advised by David Pike that all required information and documents in relation to the beneficial ownership of the Companies had been provided. In addition, we were separately advised by you that nobody other than MSSi (being the general partner of Fenero LP) owns the Companies. This information is not consistent with the information previously provided by you, nor does it provide any detail as to the source of the funds being utilised by the Companies.

MHC-16373542-1

MS_USAO_FT_237075



2.    Information on Irish activities and transactions

From the outset of our relationship we have requested information on the transactions that Fenero Equity investments (Ireland) Limited and its subsidiary entities have entered into given that MHC Corporate Services Limited, as company secretary, is an officer of the Company and in order to assist us, as company secretary, in compiling the appropriate corporate approval records for transactions entered into by, and funds flowing to and from, the Companies.

We made it clear in an email from John Gulliver on 02 November 2016 that we would resign as company secretary of these entities unless we were provided with information in relation to these transactions. Certain transaction documents were provided to us in respect of one subsidiary entity and when you attended our office for a meeting in December 2016 you verbally provided further details on the proposed activities of the subsidiary entities generally.  At that meeting, we again explained in some detail the requirement to have all transactions and significant funds flow documented at the Irish company level so that appropriate corporate governance standards were being met and so that we could continue to act as company secretary. You then committed to providing us with documents in respect of transactions entered into.

However, despite various requests, we have not received adequate details of transactions entered into by any of the Companies and the only board meetings that have been held by the Companies have been to approve initial post-incorporation matters.

Given your failure to provide both the information and documents required by us to identify the beneficial owners of the Companies for our anti-money laundering and counter terrorism purposes and the information required by us to understand the nature of the activities of the Companies, in addition to resigning as company secretary, we are resigning as lawyers to the remaining Companies with immediate effect.

By way of follow-up to our letters of resignation as company secretary of each of Fenero Equity Investments (Ireland), Limited, Fenero Equity Acquisition 2 Limited and Fenero Equity Acquisition 3 Limit, please find attached notices to each of these companies requesting that the relevant filings be made in relation to the resignation of MHC Corporate Services Limited as company secretary and outlining the steps that we will have to take if this is not attended to.

Yours sincerely


Sent by email, no signature


Claire Lord
MASON HAYES & CURRAN

MHC-16373542-1

MS_USAO_FT_237076

**MHC Corporate Services Limited**
**6th Floor, South Bank House, Barrow Street, Dublin 4**

Fenero Equity Investment (Ireland) Limited
6th Floor
South Bank House
Barrow Street
Dublin 4

Dated: 02 October 2017

**Re: Notice pursuant to section 152 of the Companies Act 2014 (the "2014 Act")**

Dear Sirs,

We refer to the above and to our letter of resignation dated 01 August 2017.

We note that the Company has failed to send, in accordance with section 149(8) of the 2014 Act, a notification, in the prescribed form, to the registrar of companies (the "**Registrar**"), of the fact of MHC Corporate Services Limited having ceased to be secretary of Fenero Equity Investment (Ireland) Limited (the "**Company**").

This letter is to request that the Company send the required notification of that resignation in the prescribed form to the Registrar of the Companies in accordance with section 149 (8) of the 2014 Act.

Please note that if the Company fails to comply with this request within 21 days from the date of service of this notice on the Company, we will forward to the Registrar and to the officers of the Company a copy the notice of resignation together with:

(i)     in the case of the Registrar, such additional information as may be required by the Registrar (which may include a declaration stating the names of the persons who, to our knowledge, are officers of the Company); and

(ii)    in the case of every other person forwarded as mentioned above, a written request of the person that he or she take such steps as will ensure that the failure of the Company to comply with the notice continues no further.

Yours faithfully,

_____

**For and on behalf of**
**MHC Corporate Services Limited**

Registered in Ireland, Company Number 290552
Registered Office: 6th Floor, South Bank House, Barrow Street, Dublin 4
Directors: Liam Brazil, Fionán Breathnach, Martin Kelleher, Justin McKenna and Christine O'Donovan
MHC-16395966-1

MS_USAO_FT_237077

**MHC Corporate Services Limited**
**6th Floor, South Bank House, Barrow Street, Dublin 4**

Fenero Equity Acquisition 2 Limited
6th Floor
South Bank House
Barrow Street
Dublin 4

Dated: 02 October 2017

**Re: Notice pursuant to section 152 of the Companies Act 2014 (the "2014 Act")**

Dear Sirs,

We refer to the above and to our letter of resignation dated 01 August 2017.

We note that the Company has failed to send, in accordance with section 149(8) of the 2014 Act, a notification, in the prescribed form, to the registrar of companies (the "**Registrar**"), of the fact of MHC Corporate Services Limited having ceased to be secretary of Fenero Equity Acquisition 2 Limited (the "**Company**").

This letter is to request that the Company send the required notification of that resignation in the prescribed form to the Registrar of the Companies in accordance with section 149 (8) of the 2014 Act.

Please note that if the Company fails to comply with this request within 21 days from the date of service of this notice on the Company, we will forward to the Registrar and to the officers of the Company a copy the notice of resignation together with:

(i)     in the case of the Registrar, such additional information as may be required by the Registrar (which may include a declaration stating the names of the persons who, to our knowledge, are officers of the Company); and

(ii)    in the case of every other person forwarded as mentioned above, a written request of the person that he or she take such steps as will ensure that the failure of the Company to comply with the notice continues no further.

Yours faithfully,

**For and on behalf of**
**MHC Corporate Services Limited**

Registered in Ireland, Company Number 290552
Registered Office: 6th Floor, South Bank House, Barrow Street, Dublin 4
Directors: Liam Brazil, Fionán Breathnach, Martin Kelleher, Justin McKenna and Christine O'Donovan

MHC-16396024-1

MS_USAO_FT_237078

**MHC Corporate Services Limited**
**6th Floor, South Bank House, Barrow Street, Dublin 4**


Fenero Equity Acquisition 3 Limited
6th Floor
South Bank House
Barrow Street
Dublin 4


Dated: 02 October 2017


**Re: Notice pursuant to section 152 of the Companies Act 2014 (the "2014 Act")**


Dear Sirs,

We refer to the above and to our letter of resignation dated 01 August 2017.

We note that the Company has failed to send, in accordance with section 149(8) of the 2014 Act, a notification, in the prescribed form, to the registrar of companies (the "**Registrar**"), of the fact of MHC Corporate Services Limited having ceased to be secretary of Fenero Equity Acquisition 3 Limited (the "**Company**").

This letter is to request that the Company send the required notification of that resignation in the prescribed form to the Registrar of the Companies in accordance with section 149 (8) of the 2014 Act.

Please note that if the Company fails to comply with this request within 21 days from the date of service of this notice on the Company, we will forward to the Registrar and to the officers of the Company a copy the notice of resignation together with:

(i)      in the case of the Registrar, such additional information as may be required by the Registrar (which may include a declaration stating the names of the persons who, to our knowledge, are officers of the Company); and

(ii)     in the case of every other person forwarded as mentioned above, a written request of the person that he or she take such steps as will ensure that the failure of the Company to comply with the notice continues no further.

Yours faithfully,


**For and on behalf of**
**MHC Corporate Services Limited**


Registered in Ireland, Company Number 290552
Registered Office: 6th Floor, South Bank House, Barrow Street, Dublin 4
Directors: Liam Brazil, Fionán Breathnach, Martin Kelleher, Justin McKenna and Christine O'Donovan

MHC-16396043-1

MS_USAO_FT_237079

# **<u>EXHIBIT G</u>**

**To:**      Jodi Brown[Jodi.Brown@Intertrustgroup.com]; Chad Gibbs[Chad.Gibbs@Intertrustgroup.com]; Sabinah
Clement[Sabinah.Clement@intertrustgroup.com]
**Cc:**      David R. Pike[drpike@msicbvi.com]; Nicole Huesmann[NHuesmann@msicbvi.com]; Michelle
Gibbs[Michelle.Gibbs@Intertrustgroup.com]
**From:**    Mark S. Scott
**Sent:**    Fri 11/17/2017 6:51:00 PM (UTC)
**Subject:** Re: MSS/ Fenero

Hi Jody,

The new RO has already sent us forms to be completed. It may take until Monday when I arrive on the island to sign
documents.

You gave us basically one day notice. If we have ANY reputable damages from your actions, I will take action against you.
You firm billed me for 2018 services a week ago and until two days ago worked on our matters.

What type of company are you running?

Your BVI office informed me of the issue that arose that led to your compliance raising a flag. It's laughable and Sabinah
from your BVI office agreed to look at more data that I am compiling. Then you say something different.

We have nothing to hide and are shocked by the unprofessional manner in which you are handling this. Obviously we will
not work with each anymore, but for you to not allow for a professional transition is not acceptable.


Regards,

Mark


Mark S. Scott
Chief Executive Officer

MSS International Consultants (BVI), Ltd.
BVI Registered and Approved Fund Manager

Email Address: msscott@msicbvi.com
Tel. +1-305-587-4030
Fax +1 786-513-7770

Sent from my BlackBerry KeyOne device - the most secure mobile device. Please excuse short responses and typos.

**From:** Jodi.Brown@Intertrustgroup.com
**Sent:** November 17, 2017 12:27 PM
**To:** msscott@msicbvi.com; Chad.Gibbs@Intertrustgroup.com; Sabinah.Clement@intertrustgroup.com
**Cc:** drpike@msicbvi.com; NHuesmann@msicbvi.com; Michelle.Gibbs@Intertrustgroup.com
**Subject:** RE: MSS/ Fenero


Dear Mark,

If you can arrange for the new RO to come on board today please let us know, otherwise, we will have to exit as advised.

The email is attached and was sent to you on May 1st 2017.

Regards,

Jodi Brown
Assistant Vice President
Corporate Services
**tel** +1 345 815 1429



**GOVERNMENT
EXHIBIT
1364**
17 Cr. 630 (ER)

MS_USAO_FT_097529

**From:** Mark S. Scott [mailto:msscott@msicbvi.com]
**Sent:** 17 November 2017 12:23
**To:** Chad Gibbs; Sabinah Clement
**Cc:** David R. Pike; Nicole Huesmann; Jodi Brown; Michelle Gibbs
**Subject:** Re: MSS/ Fenero

Hi Chad,

I do not have the E-mail you are referring to. Where was it sent?

Obviously your organization has been going through some internal turmoil as we are getting many mixed messages. We have a new registered in your life agent to take over all companies and will have the transfers completed as early as next week with your cooperation.

Again, I demand that you do not inform the Registrar of your resignation, but rather let our new partner inform the Registrar of the change.

All this goes back to a dispute with an employee at Appleby that you now inherited. As you may know, we have worked with third party Administrators on our investment funds and their opinion differed from Appleby.

I believe it is better for everyone to keep this off the table and split amicably.

Best,

Mark

Mark S. Scott
Chief Executive Officer

MSS International Consultants (BVI), Ltd.
BVI Registered and Approved Fund Manager

Email Address: msscott@msicbvi.com
Tel. +1-305-587-4030
Fax +1 786-513-7770

Sent from my BlackBerry KeyOne device - the most secure mobile device. Please excuse short responses and typos.

**From:** Chad.Gibbs@Intertrustgroup.com
**Sent:** November 17, 2017 11:31 AM
**To:** msscott@msicbvi.com; Sabinah.Clement@intertrustgroup.com
**Cc:** drpike@msicbvi.com; NHuesmann@msicbvi.com; Jodi.Brown@Intertrustgroup.com; Michelle.Gibbs@Intertrustgroup.com
**Subject:** RE: MSS/ Fenero


Dear Mark,

Thank you for your e-mail.

I regret to inform you that in line with our email on May 1st, 2017 our resignation was to be filed in August 2017 but was delayed due to an oversight and will proceed today. Do note that we have reversed the invoices for the entities, and will be refunded back to you. Can you please provide the banking details so that we may do so?

Kindest Regards,
Chad Gibbs
Client Relationship Officer
tel + 1 345 815 1418

MS_USAO_FT_097530

# Intertrust

**Cayman** 190 Elgin Avenue, George Town
Grand Cayman KY1-9007, Cayman Islands

tel +1 345 943 3100
fax +1 345 945 4757

cayman@intertrustgroup.com
www.**intertrust**group.com

**Intertrust Group**
Bahamas • Bahrain • Belgium • Brazil • British Virgin Islands • Canada • Cayman Islands
China • Curaçao • Cyprus • Denmark • Finland • Germany • Guernsey • Hong Kong • Ireland
Japan • Jersey • Luxembourg • The Netherlands • Norway • Portugal • Singapore • Spain
Sweden • Switzerland • Turkey • United Arab Emirates • United Kingdom • United States

This email is confidential and is subject to disclaimers. Details can be found
at: http://www.intertrustgroup.com/disclaimer.html. E-mail may be stored
in encrypted format in an offshore location outside of the Cayman Islands.

---

**From:** Mark S. Scott [mailto:msscott@msicbvi.com]
**Sent:** 16 November 2017 17:53
**To:** Chad Gibbs; Sabinah Clement
**Cc:** David R. Pike; Nicole Huesmann
**Subject:** Re: MSS/ Fenero

Chad,

Please coordinate with your BVI office. We are trying to resolve the minor compliance issue that is causing this standard process and are compiling information.

I would also like to remind you that we just made payment for 2018 to you on basically entities you are listing.

I direct you not to send any notices to the Registrar until we have resolved the open issues. And if we couldn't, we would have our new administrator contact the Registrar and inform it of the change in our resident agent.

**Again, do not notify anyone until this issue is resolved shortly.**

Best,

Mark

Mark S. Scott
Chief Executive Officer

MSS International Consultants (BVI), Ltd.
BVI Registered and Approved Fund Manager

Email Address: msscott@msicbvi.com
Tel. +1-305-587-4030
Fax +1 786-513-7770

Sent from my BlackBerry KeyOne device - the most secure mobile device. Please excuse short responses and typos.
**From:** Chad.Gibbs@Intertrustgroup.com
**Sent:** November 16, 2017 4:54 PM
**To:** msscott@msicbvi.com; mark@msscottlaw.com
**Subject:** MSS/ Fenero

Dear Mark,

MS_USAO_FT_097531

Please be advised that Elian Fiduciary Services (Cayman) Limited has resigned as Register Office to the above-referenced entity effective 17 November 2017.

Following the closing of the deal to purchase Elian and a review of the book of business, regrettably we will not be able to provide registered office services to the below list of entities as they no longer fit our Group Risk Profile.

- MSS International Consultants (BVI), Ltd.

- Fenero Equity Investments (Cayman) I, LP

- MedSytech Equities LP I

- MSS International Consultants (Cayman), Ltd.

- Mumbelli Group Holding (Cayman), Ltd.

Further, please note that according to Section 50 of the Companies Law (2013 Revision), *"Every company shall have a registered office to which all communications and notices may be addressed. Any company who carries on business without having such an office, shall incur a penalty of ten dollars for every day during which business is so carried on."*

It should be noted that with our resignation, the Registrar will give each entity a status of "Registered Office Resigned" and has the authority to strike the entities from the register for failing to comply with Section 50 of the Cayman Islands Companies Law. Once struck off, the entities will not be in the position to conduct business and it should be noted that all of its assets will fall by operation of law to the ownership of the Government of the Cayman Islands. Please note further that if at any point the entities wish to reinstate with the Registrar here in Cayman, all outstanding government fees (including the penalties) must be paid plus any other reinstatement fees that the government shall impose.

Kindest Regards,
Chad Gibbs
Client Relationship Officer
tel + 1 345 815 1418

Intertrust

**Cayman** 190 Elgin Avenue, George Town
Grand Cayman KY1-9007, Cayman Islands

tel +1 345 943 3100
fax +1 345 945 4757

cayman@intertrustgroup.com
www.intertrustgroup.com

**Intertrust Group**
Bahamas • Bahrain • Belgium • Brazil • British Virgin Islands • Canada • Cayman Islands
China • Curaçao • Cyprus • Denmark • Finland • Germany • Guernsey • Hong Kong • Ireland
Japan • Jersey • Luxembourg • The Netherlands • Norway • Portugal • Singapore • Spain
Sweden • Switzerland • Turkey • United Arab Emirates • United Kingdom • United States

This email is confidential and is subject to disclaimers. Details can be found
at: http://www.intertrustgroup.com/disclaimer.html. E-mail may be stored
in encrypted format in an offshore location outside of the Cayman Islands.

This e-mail message has been scanned for Viruses and Content and cleared by Mimecast. Plain text email is unsecure. This email is confidential and is subject to disclaimers. Details can be found at: http://www.intertrustgroup.com/disclaimer.aspx

This e-mail message has been scanned for Viruses and Content and cleared by Mimecast. Plain text email is unsecure. This email is confidential and is subject to disclaimers. Details can be found at: http://www.intertrustgroup.com/disclaimer.aspx

MS_USAO_FT_097532

This e-mail message has been scanned for Viruses and Content and cleared by Mimecast. Plain text email is unsecure. This email is confidential and is subject to disclaimers. Details can be found at: http://www.intertrustgroup.com/disclaimer.aspx

MS_USAO_FT_097533

# **EXHIBIT H**

**To:** Mark S. Scott[msscott@msicbvi.com]
**From:** Colm O'Driscoll | DMS Bank & Trust Ltd
**Sent:** Mon 2/5/2018 7:44:17 PM (UTC)
**Subject:** RE: DMS Bank & Trust Ltd - MSS International Consultants BVI Ltd

Hi Mark,

Apologies for the manner in which this was handled and I do appreciate your frustrations. Unfortunately, due to increasing compliance and regulatory scope the industry is becoming very constrained in its client parameters.

For the little it is worth, it was a pleasure dealing with you and I do genuinely wish you every success with your future endeavours.

Kind regards,
Colm



**COLM O'DRISCOLL**
MANAGING DIRECTOR · BIO

📞 +1.345.749.2795 · 📱 +1.345.929.0229 · ✉ codriscoll@dmsbank.com · 🌐 dmsbank.com  in

DMS House, P.O. Box 2587, 20 Genesis Close · George Town · Grand Cayman · KY1 · Cayman Islands -1103

**From:** Mark S. Scott [mailto:msscott@msicbvi.com]
**Sent:** Wednesday, January 31, 2018 8:05 AM
**To:** Colm O'Driscoll | DMS Bank & Trust Ltd <codriscoll@dmsbank.com>
**Cc:** Albert Chin | DMS Bank & Trust Ltd <achin@dmsbank.com>; David R. Pike <drpike@msicbvi.com>
**Subject:** FW: DMS Bank & Trust Ltd - MSS International Consultants BVI Ltd
**Importance:** High

Dear Colm,

I am in receipt of the attached Suspension Letter and I am aware once these are issued, there is no turning back.  However, I wanted to express to you my utter surprise and deep disappointment in how this situation was handled.

We have always been completely forthcoming with you and were never hesitant to share whatever information you requested. Having been a material client of DMS for some time now and having helped your organization in hard times financially, and waiving many of my rights upon default of our loan to you in expectation of a long fruitful relationship, should have at least afforded me a friendly preliminary telephone call before simply sending me one of those end of the day terminations.

Please wire all of our remaining funds to the following account in US-$ at your earliest convenience:

City National Bank of Florida, 25 W. Flagler Street, Miami, FL
Acct: 1754927951
ABA: 066004367
Swift: CNBFUS3M
Beneficiary: MSS International Consultants, LLC

Thank you for the past services to us.  We wish you the best of luck with your future endeavors.

Best regards,

Mark

**Mark S. Scott**
Chief Executive Officer



GOVERNMENT EXHIBIT 1340
17 Cr. 630 (ER)

MS_USAO_FT_164828



Floor 2, Romasco Place
Waterfront Drive PO Box 4541 Road Town, Tortola
VG1110, British Virgin Islands
Tel +1-305-587-4030
Fax +1-786-513-7770

CONFIDENTIALITY NOTICE:
This e-mail and any attached files from MSS International Consultants (BVI), Ltd. may contain information that is privileged, confidential and/or exempt from disclosure under applicable law. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you received this e-mail by accident, please notify the sender immediately and destroy this e-mail and all copies of it. We may scan and or monitor emails sent to and from our servers to ensure regulatory compliance to protect our clients and business.

**From:** DMS Bank - MB - Inquiries [mailto:Inquiries@dmsbank.com]
**Sent:** Tuesday, January 30, 2018 5:25 PM
**To:** Mark S. Scott <msscott@msicbvi.com>; David R. Pike <drpike@msicbvi.com>
**Subject:** DMS Bank & Trust Ltd - MSS International Consultants BVI Ltd

Dear Client,

Please see the attached suspension letter for your attention.

Regards,

**DMS BANK  INQUIRIES**



📞 +1.345.949.2777 · ✉ Inquiries@dmsbank.com · 🌐 dmsbank.com  in

DMS House, P.O. Box 2587, 20 Genesis Close · George Town · Grand Cayman · KY1-1103 · Cayman Islands

MS_USAO_FT_164829

# EXHIBIT I

**From:** "Irina Dilkinska" <irina@onecoin.eu>
**To:** <msscottlaw@gmail.com>
**Subject:** media and false accusations
**Sent:** Tue, 26 Apr 2016 09:25:26 +0300



https://www.tyracpa.com/onecoin-is-a-scam/

Morning Mark, in the light of our conference call yesterday and further discussions, please see the link above. Let's discuss at your earliest convenience because this guy is writing such stupid things for a second time. He is based in US.

As per the other aspect of our previous conversations – regarding the "template" letter as answer of such allegations I will send you some materials we have prepared for EU as regulations are mostly similar in definitions for your assessment.

Thank you very much!
Kind Regards
Irina

# EXHIBIT I-1

OneCoin is a Scam! | Jason M. Tyra, CPA, PLLC | Killeen, TX





254.449.7995

GOVERNMENT
EXHIBIT
4109-A
17 Cr. 630 (ER)

ABOUT   ACCOUNTING   TAX SERVICES   CONSULTING   PAYMENTS   CONTACT

# ONECOIN IS A SCAM

December 30, 2015 by Jason Tyra — Leave a Comment

UPDATE: If OneCoin is still participating in "voluntary monthly audits," Semper Fortis isn't doing them. According to Georgi Kaloyanov, the firm's managing partner, Semper Fortis performed just two monthly audits "regarding the consistency of the block regarding OneCoin" [sic] and hasn't worked with the company since August of 2015.

---

I had an unusually long conversation recently with a potential client regarding the tax consequences of virtual currency mining and trading. This particular individual was heavily invested in OneCoin, which I had not heard of prior to her call. I am always excited to learn about something new, so I asked for more details. However, as this person told me more about OneCoin, my auditor's fraud warning antennae began to twitch.

I have been working in the virtual currency space for several years, which is about three lifetimes for the virtual currency ecosystem. I have seen many virtual currency startups come and go for a variety of reasons, but very often due to theft and fraud. Before that, I worked in public accounting, consulting, and retail banking. In my experience, no one likes to be told that they have been suckered- even less so by someone they don't know and trust. I think I will not get any new business from the potential client who explained OneCoin to me. Nevertheless, I wanted to offer my current impression of OneCoin and point out a few things to potential investors.

## WHAT IS ONECOIN?

OneCoin is a proprietary digital currency created by One Coin Limited, a Gibraltar based company. Unlike Bitcoin, which is based on an open-source, non-proprietary platform and mining network in which anyone can (theoretically) participate, OneCoin is currently owned and controlled by just one organization of related party affiliates. Users who want to invest in OneCoin must first purchase a

"package" that claims to show them how to make money trading assets such as gold and cryptocurrencies online. The lower packages also include books such as Napoleon Hill's "Think and Grow Rich" that are either in the public domain or can be obtained at very low cost from other sources.

Users who want to participate in mining must be inducted by another user who is already a member of the network and then purchase tokens that are exchanged for mining activity. Earlier users share in the "profits" earned by users they recruit.

OneCoin is not actively traded on any known exchange or trading platform that handles digital currencies. The only place it appears to be listed at all (besides OneCoin's own website and its affiliates) is xcoinx, a seemingly defunct or perpetually incomplete website. The xcoinx website contains several "coming soon" sections and content referencing a hack that appears to be lifted straight from another well-known trading platform's website. In fact, all of the sites pushing or promoting OneCoin have the same anonymous, amateurish feel to them, as if they were thrown together quickly/cheaply and have not been well maintained.

US participants in OneCoin's program received a note by e-mail last fall explaining that US trading and withdrawals to US customers had been suspended pending registration with the relevant regulators. OneCoin balances remain inaccessible with no clear timeline as to when they will be available to US users. It isn't clear what regulators OneCoin (a non-US company) believes itself beholden to or why, but the Securities and Exchange Commission and the Commodities Futures Trading Commission were both cited in the e-mail as regulators with whom the company may need to register before reopening to US persons.

## WHAT DO SCAMS LOOK LIKE?

The Association of Certified Fraud Examiners, of which I am a member, has identified the following indicators of common scams:

- The investment opportunity promises "guaranteed" returns.
- The opportunity is described as "once-in-a-lifetime," or pressures you to buy immediately "before it is too late."
- The deal sounds too good to be true. Compare any promised return with the returns on well-known stock indexes.
- The investment offer was unsolicited.
- You are unable to find any public information about the investment opportunity. Often, this is explained away as the investment being "by invitation only" and a "secret that is best kept, lest too many people get involved."
- The opportunities or people touting them are located outside of the United States. This particular point gives the scam an exotic feel and includes the idea (real or implied) that profits can be squirreled away offshore and away from the taxing authorities.
- You do not know the person who is contacting you, or they are just an acquaintance.

What about OneCoin? According to OneCoin's website:

*"OneCoin provides a once in a lifetime opportunity, revolutionizing the business world of todays digital economy. The OneCoin concept is born out of the success of the pioneering cryptocurrency, Bitcoin. It all started back in 2009 when a new digital currency was introduced to the internet and financial world. Only in 2013 this currency has seen a 75 times increase in its starting price. It started at a price of only 0.10 USD per coin and has been traded for over 1.100 USD per coin. Through its success Bitcoin popularized cryptocurrency paved the way for more innovative and better concept. The opportunity has now opened for you to be part of the next big winner in digital currency, OneCoin. OneCoin has the ambition to become the next big cryptocurrency as it uses the latest technology, provides long term value to its investors and has a well thought through concept. This opportunity is only available through a strict by invitation basis, providing you the knowledge you need to succeed in the world of crypto-currency."* [sic]

Notice any similarities between the ACFE's list and OneCoin's model and marketing materials?

Also, note the numerous references to Bitcoin, which is not affiliated with or even terribly similar to OneCoin. You may have noticed that OneCoin associates itself with Bitcoin at every possible opportunity in its marketing materials and on its website.

## THE VERDICT

Unfortunately, frauds are often difficult to prove, even when losses start to add up. There is a fine line between a bad investment or bad management and an operation whose intent was to dupe unsuspecting investors all along. However, OneCoin shows many of the hallmarks of at least two types of common frauds- the pyramid scheme and the Ponzi scheme.

If you've made it this far, then you've likely done a little research on your own and are looking for confirmation for your own conclusion (either for or against).  With an operation as vague and opaque as OneCoin, we may not know for sure for many months, or even years, but I think it will likely be sooner than that.

For what it's worth, here are my thoughts on OneCoin:

▶ Assuming for a moment that you could withdraw or trade them, which at least US users are unable to do for the moment, with whom would you trade? Where would you send them? They aren't accepted anywhere as payment. No known entity makes a market for OneCoin or offers the ability to cash out to fiat currency, which will be a requirement in order to implement the payment card functionality promised by the company's marketing materials. Today, it looks like your only potential counter parties are other OneCoin users. This is a great deal for early adopters who are in a position to sell their appreciated holdings, but not so much for later ones who buy in as an investment.

▶ OneCoin's recruitment model clearly meets the definition of a multilevel marketing program. The problem with multilevel marketing schemes is that they are mathematically unsustainable- there aren't enough potential recruits for the pyramid to go more than few levels deep. Once again, this is a great setup for early adopters, but few others should expect to earn much, if anything, from downstream recruits.

- OneCoin's materials are heavy on jargon and rhetorical hand waving, but light on substantive technical or financial details. The company heavily promotes itself by citing the distinguished, but uncorroborated resume of its founder, and association with others rather than standing on its own history or accomplishments.

- The company proudly points out that an independent auditor reviews its blockchain and issues a report on a monthly basis, but this is hardly conclusive evidence for or against OneCoin as a scam. Semper Fortis appears to be a reputable firm actually in operation in Bulgaria. They probably do quality work, but their work doesn't prove what OneCoin says it does. Even if it did, OneCoin has deliberately misrepresented the existence and frequency of Semper Fortis' attest work. The report addresses only the claims made by the company in reference to the OneCoin blockchain, which was created by and is controlled by One Coin Limited. It does not address the solvency, financial structure or business model of the company specifically or OneCoin more generally. It is not an auditor's report within the legally accepted meaning in the United States or as generally understood with respect to financial statement audits. The auditor was not engaged and makes no attempt to evaluate anything about OneCoin except whether the technical representations made by the company are an accurate reflection of the way its blockchain works. This is important because the report can be true and correct in every respect and OneCoin can still be a scam.

## THE BIG PICTURE

In my professional opinion, OneCoin is a sophisticated example of a classic pyramid and/or Ponzi scheme with just enough of the sheen of respectability and legitimacy to make it a long-ish con. Here is how I think it works:

- The first phase of the con is the sale of basically worthless self-help type investor education materials while building hype around OneCoin and perhaps seeking outside investment in the company itself. The perpetrators also use this period to build up OneCoin's legend with public appearances (see the conference talk given by OneCoin's founder at the link below), paid advertising (the fake profile in Forbes cited by CoinTelegraph), and fake or massively overstated trading and price appreciation history (the whole xcoinx website). The user pyramid fills out during this phase with early adopters aggressively recruiting downstream users. If investors are involved, they are likely of the small, non-accredited type. Venture capitalists and institutions will be put off by opaque or incomplete business plans or by due diligence work that says that the founders have checkered histories and will stay away.

- In phase two, the cash taken in by some parts of OneCoin's operations will likely be used to fund limited withdrawals by early adopters. This fuels the hype, since early users who make money (and don't know they are the beneficiaries of a Ponzi scheme) become OneCoin's most vocal supporters. The most important aspect of this phase is to control withdrawals through a combination of greed ("you'll miss out on future gains!") and lies ("regulators / hackers / banks have disrupted withdrawals at present") to ensure that the scam isn't brought down early by a run. Exposure driven by people unaffiliated with the scam will bring in new money and also encourage ambivalent or dubious investors to stick around in the fear that they might miss out on "the next Bitcoin."

▸ In the final phase, OneCoin will collapse as the founders take their profits and disappear. With no one supporting the scam, OneCoin will begin to crumble. The percentage of trading activity that wasn't fabricated may continue on its own momentum for some time before users realize that something has changed. Trading volumes will fall and withdrawals will slow down before stopping altogether. Tech support and customer service will become unresponsive. If the founders don't disappear outright, then the company may falsely claim that an outside influence is preventing them from making good and pledge to work diligently to restore operations. However, normal operations will never be restored. The key aspect of the final phase is that it must occur before users start to realize that OneCoins can't be used anywhere, are illiquid, and actually kinda suck as an investment. That is why I believe the lifecycle of this operation is likely to be measured in months, rather than years.

I believe that OneCoin is somewhere between late phase two and early phase three.

## WHAT CAN YOU DO?

The IRS has special rules for victims of Ponzi-type schemes. Generally speaking, Ponzi losses get ordinary loss treatment rather than capital loss treatment, which increases the amount that can be deducted in the year of the loss. If I'm right and you've lost on OneCoin, you may be able to lessen the blow by deducting those losses at tax time. You may also be able to obtain some measure of relief by contacting the Federal Trade Commission or another regulator charged with protection of consumers. Contact us for more information.

If you have something to add to the discussion surrounding OneCoin, please comment below.

## OTHER SITES THAT DISCUSS ONECOIN

▸ Here is an article published by CoinTelegraph that provides a few (mostly incidental) details suggesting that OneCoin is not what it seems.
▸ Here is another article from InsideBitcoins that expands on some of the CoinTelegraph points.
▸ Here is a blog that discusses OneCoin's business model in more detail and provides links to numerous videos and presentations.
▸ Here is a video in which OneCoin's "owner and founder" makes some generic comments about the role that cryptocurrencies have to play at a payments conference sponsored in part by OneCoin in Europe.  OneCoin is barely mentioned.
▸ Here is a post on BehindMLM, a multi-level marketing watchdog site, that discusses the US pullback.

---

SHARE THIS:

 ▸ ☐ More

---

Filed Under: Investing, Scams
Tagged With: OneCoin, Ponzi Scheme, Scam, Pyramid scheme

 ABOUT JASON TYRA

# LEAVE A COMMENT

Comment

Name*

Email*

Website

POST

☐ Notify me of follow-up comments by email.

☐ Notify me of new posts by email.

REQUEST A
CONSULTATION

OR call us at **254.449.7995**



name

email

comment

SUBMIT

## EMPLOYMENT OPPORTUNITIES

Jason M. Tyra, CPA, PLLC periodically has employment opportunities for experienced bookkeepers, tax …

Learn More >

## CATEGORIES

Accounting

Business

General

How To

Investing

Payroll

Product Reviews

Regulation

Retirement

OneCoin is a Scam! - Jason M. Tyra, CPA, PLLC | Killeen, TX

Scams

Taxes

## JOIN OUR MAILING LIST

First Name *

Last Name *

E-Mail Address *

Captcha

SUBMIT



Copyright © 2015 Jason Tyra CPA | 254.449.7995 | PO Box 690161 | Killeen, TX 7

Website by Web Savvy Marketing





# **EXHIBIT I-2**



GOVERNMENT
EXHIBIT
4109-B
17 Cr. 630 (ER)

ABOUT    ACCOUNTING    TAX SERVICES    CONSULTING    PAYMENTS    CONTACT

# ONECOIN IS A SCAM

December 30, 2015 by Jason Tyra — 5 Comments

UPDATE: If OneCoin is still participating in "voluntary monthly audits," Semper Fortis isn't doing them. According to Georgi Kaloyanov, the firm's managing partner, Semper Fortis performed just two monthly audits "regarding the consistency of the block regarding OneCoin" [sic] and hasn't worked with the company since August of 2015.

---

I had an unusually long conversation recently with a potential client regarding the tax consequences of virtual currency mining and trading. This particular individual was heavily invested in OneCoin, which I had not heard of prior to her call. I am always excited to learn about something new, so I asked for more details. However, as this person told me more about OneCoin, my auditor's fraud warning antennae began to twitch.

I have been working in the virtual currency space for several years, which is about three lifetimes for the virtual currency ecosystem. I have seen many virtual currency startups come and go for a variety of reasons, but very often due to theft and fraud. Before that, I worked in public accounting, consulting, and retail banking. In my experience, no one likes to be told that they have been suckered- even less so by someone they don't know and trust. I think I will not get any new business from the potential client who explained OneCoin to me. Nevertheless, I wanted to offer my current impression of OneCoin and point out a few things to potential investors.

## WHAT IS ONECOIN?

OneCoin is a proprietary digital currency created by One Coin Limited, a Gibraltar based company. Unlike Bitcoin, which is based on an open-source, non-proprietary platform and mining network in which anyone can (theoretically) participate, OneCoin is currently owned and controlled by just one organization of related party affiliates. Users who want to invest in OneCoin must first purchase a

"package" that claims to show them how to make money trading assets such as gold and cryptocurrencies online. The lower packages also include books such as Napoleon Hill's "Think and Grow Rich" that are either in the public domain or can be obtained at very low cost from other sources.

Users who want to participate in mining must be inducted by another user who is already a member of the network and then purchase tokens that are exchanged for mining activity. Earlier users share in the "profits" earned by users they recruit.

OneCoin is not actively traded on any known exchange or trading platform that handles digital currencies. The only place it appears to be listed at all (besides OneCoin's own website and its affiliates) is xcoinx, a seemingly defunct or perpetually incomplete website. The xcoinx website contains several "coming soon" sections and content referencing a hack that appears to be lifted straight from another well-known trading platform's website. In fact, all of the sites pushing or promoting OneCoin have the same anonymous, amateurish feel to them, as if they were thrown together quickly/cheaply and have not been well maintained.

US participants in OneCoin's program received a note by e-mail last fall explaining that US trading and withdrawals to US customers had been suspended pending registration with the relevant regulators. OneCoin balances remain inaccessible with no clear timeline as to when they will be available to US users. It isn't clear what regulators OneCoin (a non-US company) believes itself beholden to or why, but the Securities and Exchange Commission and the Commodities Futures Trading Commission were both cited in the e-mail as regulators with whom the company may need to register before reopening to US persons.

## WHAT DO SCAMS LOOK LIKE?

The Association of Certified Fraud Examiners, of which I am a member, has identified the following indicators of common scams:

- The investment opportunity promises "guaranteed" returns.
- The opportunity is described as "once-in-a-lifetime," or pressures you to buy immediately "before it is too late."
- The deal sounds too good to be true. Compare any promised return with the returns on well-known stock indexes.
- The investment offer was unsolicited.
- You are unable to find any public information about the investment opportunity. Often, this is explained away as the investment being "by invitation only" and a "secret that is best kept, lest too many people get involved."
- The opportunities or people touting them are located outside of the United States. This particular point gives the scam an exotic feel and includes the idea (real or implied) that profits can be squirreled away offshore and away from the taxing authorities.
- You do not know the person who is contacting you, or they are just an acquaintance.

What about OneCoin? According to OneCoin's website:

*"OneCoin provides a once in a lifetime opportunity, revolutionizing the business world of todays digital economy. The OneCoin concept is born out of the success of the pioneering cryptocurrency, Bitcoin. It all started back in 2009 when a new digital currency was introduced to the internet and financial world. Only in 2013 this currency has seen a 75 times increase in its starting price. It started at a price of only 0.10 USD per coin and has been traded for over 1.100 USD per coin. Through its success Bitcoin popularized cryptocurrency paved the way for more innovative and better concept. The opportunity has now opened for you to be part of the next big winner in digital currency, OneCoin. OneCoin has the ambition to become the next big cryptocurrency as it uses the latest technology, provides long term value to its investors and has a well thought through concept. This opportunity is only available through a strict by invitation basis, providing you the knowledge you need to succeed in the world of crypto-currency."* [sic]

Notice any similarities between the ACFE's list and OneCoin's model and marketing materials?

Also, note the numerous references to Bitcoin, which is not affiliated with or even terribly similar to OneCoin. You may have noticed that OneCoin associates itself with Bitcoin at every possible opportunity in its marketing materials and on its website.

## THE VERDICT

Unfortunately, frauds are often difficult to prove, even when losses start to add up. There is a fine line between a bad investment or bad management and an operation whose intent was to dupe unsuspecting investors all along. However, OneCoin shows many of the hallmarks of at least two types of common frauds- the pyramid scheme and the Ponzi scheme.

If you've made it this far, then you've likely done a little research on your own and are looking for confirmation for your own conclusion (either for or against).  With an operation as vague and opaque as OneCoin, we may not know for sure for many months, or even years, but I think it will likely be sooner than that.

For what it's worth, here are my thoughts on OneCoin:

- Assuming for a moment that you could withdraw or trade them, which at least US users are unable to do for the moment, with whom would you trade? Where would you send them? They aren't accepted anywhere as payment. No known entity makes a market for OneCoin or offers the ability to cash out to fiat currency, which will be a requirement in order to implement the payment card functionality promised by the company's marketing materials. Today, it looks like your only potential counter parties are other OneCoin users. This is a great deal for early adopters who are in a position to sell their appreciated holdings, but not so much for later ones who buy in as an investment.
- OneCoin's recruitment model clearly meets the definition of a multilevel marketing program. The problem with multilevel marketing schemes is that they are mathematically unsustainable- there aren't enough potential recruits for the pyramid to go more than few levels deep. Once again, this is a great setup for early adopters, but few others should expect to earn much, if anything, from downstream recruits.

- OneCoin's materials are heavy on jargon and rhetorical hand waving, but light on substantive technical or financial details. The company aggressively promotes itself by citing the distinguished, but uncorroborated resume of its founder, and association with others rather than standing on its own history or accomplishments.

- The company proudly points out that an independent auditor reviews its blockchain and issues a report on a monthly basis, but this is hardly conclusive evidence for or against OneCoin as a scam. Semper Fortis appears to be a reputable firm actually in operation in Bulgaria. They probably do quality work, but their work doesn't prove what OneCoin says it does. Even if it did, OneCoin has deliberately misrepresented the existence and frequency of Semper Fortis' attest work. The report addresses only the claims made by the company in reference to the OneCoin blockchain, which was created by and is controlled by One Coin Limited. It does not address the solvency, financial structure or business model of the company specifically or OneCoin more generally. It is not an auditor's report within the legally accepted meaning in the United States or as generally understood with respect to financial statement audits. The auditor was not engaged and makes no attempt to evaluate anything about OneCoin except whether the technical representations made by the company are an accurate reflection of the way its blockchain works. This is important because the report can be true and correct in every respect and OneCoin can still be a scam.

## THE BIG PICTURE

In my professional opinion, OneCoin is a sophisticated example of a classic pyramid and/or Ponzi scheme with just enough of the sheen of respectability and legitimacy to make it a long-ish con. Here is how I think it works:

- The first phase of the con is the sale of basically worthless self-help type investor education materials while building hype around OneCoin and perhaps seeking outside investment in the company itself. The perpetrators also use this period to build up OneCoin's legend with public appearances (see the conference talk given by OneCoin's founder at the link below), paid advertising (the fake profile in Forbes cited by CoinTelegraph), and fake or massively overstated trading and price appreciation history (OneCoin's back office for insiders and the whole xcoinx website for others). The user pyramid fills out during this phase with early adopters aggressively recruiting downstream users. If investors are involved, they are likely of the small, non-accredited type. Venture capitalists and institutions will be put off by opaque or incomplete business plans or by due diligence work that says that the founders have checkered histories and will stay away.

- In phase two, the cash taken in by some parts of OneCoin's operations will likely be used to fund limited withdrawals by early adopters. This fuels the hype, since early users who make money (and don't know they are the beneficiaries of a Ponzi scheme) become OneCoin's most vocal supporters. The most important aspect of this phase is to control withdrawals through a combination of greed ("you'll miss out on future gains!") and lies ("regulators / hackers / banks have disrupted withdrawals at present") to ensure that the scam isn't brought down early by a run. Exposure driven by people unaffiliated with the scam will bring in new money and also encourage ambivalent or dubious investors to stick around in the fear that they might miss out on "the next Bitcoin."

▸ In the final phase, OneCoin will collapse as the founders take their profits and disappear. With no one supporting the scam, OneCoin will begin to crumble. The percentage of trading activity that wasn't fabricated may continue on its own momentum for some time before users realize that something has changed. Trading volumes will fall and withdrawals will slow down before stopping altogether. Tech support and customer service will become unresponsive. If the founders don't disappear outright, then the company may falsely claim that an outside influence is preventing them from making good and pledge to work diligently to restore operations. However, normal operations will never be restored. The key aspect of the final phase is that it must occur before users start to realize that OneCoins can't be used anywhere, are illiquid, and actually kinda suck as an investment. That is why I believe the lifecycle of this operation is likely to be measured in months, rather than years.

I believe that OneCoin is somewhere between late phase two and early phase three.

## WHAT CAN YOU DO?

The IRS has special rules for victims of Ponzi-type schemes. Generally speaking, Ponzi losses get ordinary loss treatment rather than capital loss treatment, which increases the amount that can be deducted in the year of the loss. If I'm right and you've lost on OneCoin, you may be able to lessen the blow by deducting those losses at tax time. You may also be able to obtain some measure of relief by contacting the Federal Trade Commission or another regulator charged with protection of consumers. Contact us for more information.

If you have something to add to the discussion surrounding OneCoin, please comment below.

## OTHER SITES THAT DISCUSS ONECOIN

▸ Here is an article published by CoinTelegraph that provides a few (mostly incidental) details suggesting that OneCoin is not what it seems.
▸ Here is another article from InsideBitcoins that expands on some of the CoinTelegraph points.
▸ Here is a blog that discusses OneCoin's business model in more detail and provides links to numerous videos and presentations.
▸ Here is a video in which OneCoin's "owner and founder" makes some generic comments about the role that cryptocurrencies have to play at a payments conference sponsored in part by OneCoin in Europe.  OneCoin is barely mentioned.
▸ Here is a post on BehindMLM, a multi-level marketing watchdog site, that discusses the US pullback.
▸ Here is an article in the Mirror, a UK newspaper, that describes a OneCoin event in that country and the author's impressions.

**SHARE THIS:**



Filed Under: Investing, Scams

OneCoin is a Scam - Jason M. Tyra, CPA, PLLC - Dallas, TX

Tagged With: OneCoin, Ponzi Scheme, Pyramid scheme, Scam

 ABOUT JASON TYRA

*Robert Ulvberget*

I'm just curious , do you think network marketing is a scam?

*Jason Tyra*

Though I think it unlikely that most people will do well with network marketing, there are a number of reputable companies that sell quality products (Mary Kay, for example) that include network marketing as part of their business model. Nevertheless, there is a fine line between illegal pyramid schemes and legitimate MLM operations. If you are interested in a borderline / controversial case, look up Bill Ackman's report on Herbalife from 2012.

*John*

Curious, you criticized the education (which is the product) that comes with free tokens but the only way to access the education is to become a member of OneCoin, I believe. So how did you access and make it through all of the education courses in order to be able to criticize it?

*Jason Tyra*

I did not review the materials, though others have (see the links at tbe bottom of the post) and their comments informed mine. I probably would not review the investor education curriculum, even if given the opportunity, because I see it as incidental to OneCoin's model. These materials have as their only purpose generating interest in mining and trading OneCoin, an "asset" that has literally no other application and was created expressly for the purpose.

*Gold Trust*

ONECOIN is a high level scam model. When looking for a scam model, people often think "when the time is come, the founder will take all the money and disappear". Which Onecoin, they don't need to do that.

Right now, which all the cash flow to the system, the founder 's already WIN. When the money flow to the system slowly (no more new anticipated people, no more new members). They just FIX the Onecoin price to "very low" price (how about 0.1 usd per onecoin) and steal all the money of the system. When the members blame them for the money they lost (because of very low exchange price), they said :"Bitcoin drop and rise, we are the same. New members, come on…We will rise again".



REQUEST A
CONSULTATION

OR call us at **972.201.9008**

name

email

comment

SUBMIT

## EMPLOYMENT OPPORTUNITIES

Jason M. Tyra, CPA, PLLC periodically has employment opportunities for experienced bookkeepers, tax …

Learn More >

## CATEGORIES

Accounting

Business

Crowdfunding

General

How To

Investing

Payroll

OneCoin is a Scam! - Jason Tyra, CPA, PLLC | Dallas, TX

Product Reviews

Regulation

Retirement

Scams

Taxes



JOIN OUR MAILING LIST

First Name*

Last Name*

E-Mail Address*

Captcha

reCAPTCHA challenge image

Privacy & Terms

SUBM[IT]





Copyright © 2016 Jason Tyra CPA | 972.201.9008| 1341 West Mockingbird Lane, S... ...X 7...

CERTIFIED FRAUD
EXAMINER

Member of
AICPA®