**COVINGTON**

BEIJING   BRUSSELS   DUBAI   FRANKFURT   JOHANNESBURG
LONDON   LOS ANGELES   NEW YORK   PALO ALTO
SAN FRANCISCO   SEOUL   SHANGHAI   WASHINGTON

Arlo Devlin-Brown

Covington & Burling LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
T   +1 212 841 1046
adevlin-brown@cov.com

November 11, 2019

By ECF and E-Mail
Honorable Edgardo Ramos
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

Re:   *United States v. Mark S. Scott*,   S10 17 Cr. 630(ER)

Dear Judge Ramos:

We write to reiterate our request that the Court strike the redirect "testimony" of Paul Spendiff with respect to his in-court reading of Government Exhibits 1333 and 1334, emails of which he had no personal knowledge and which should be withdrawn from evidence. A review of the November 8, 2019 transcript makes clear that the Government's redirect examination was entirely improper as it was beyond the scope of direct and unfairly prejudicial. The defense requests that (1) the testimony be struck, (2) the related exhibits be withdrawn from evidence, and (3) that the jury be instructed to disregard these exhibits and related testimony.

This letter also addresses the Government's own application filed earlier today seeking the admission of not just 1333 and 1334 but a wide range of other e-mails sent to Mr. Scott from banks and other entities who will not be called as witnesses. Each of these requests must be considered individually and the defense requests an opportunity to object to the admission of these documents at the appropriate time.

Background

In its direct examination of Paul Spendiff on November 7, 2019 the Government introduced into evidence GX 2201, a package of information Mr. Scott sent to Apex in connection with its effort to engage Apex the administer the Fenero Funds. Tr. 161. The Government then asked as series of questions about the Fenero Funds mission statement, appearing on page 6 of that exhibit.

On cross-examination, the defense asked follow-up questions as to language in the mission statement, which include a reference by Mr. Scott to having engaged the "the premier law firms Ogier and both Mason Hayes & Curran and Arthur Cox." GX 2201 at 6. With respect to that portion of GX 6, the following exchange took place:

COVINGTON

> Q. You had some dealings in fund administration work with Mason Hayes, right?
> A. I think Apex may have done. Not from my office.

Tr. 677. There was no follow-up. *That was the only reference to Mason Hayes in the entire cross-examination.*

After cross-examination, the Government requested "approximately five minutes for redirect" which it claimed would be "very focused on questions that were raised on cross-examination," stating that the witness would otherwise have to "fly back here to testify for five to 10 minutes on Tuesday morning." Tr. 749. After very brief questions of Mr. Spendiff (Tr. 750-51), the Government stated that it was "now offering into evidence Government Exhibit 1333 and 1334 that are contained on the stipulation," without identifying the stipulation in question. Tr. 752. After asking two further questions, the Government repeated that it had "offered them into evidence" and "didn't know that there's been a ruling," to which the Court responded "Are they in evidence? You said that they were on the stipulation?" *Id.* The Government responded "[t]hey were on the stipulation" to which the Court replied "so they're in evidence."

The "stipulation" to which Ms. Lozano was referring was an electronic data stipulation as to the authenticity – *but not the admissibility* of certain documents, including GX 1333 and 1334. The defense was not immediately aware of what the documents in question were or which stipulation they were on, as the Government had not specifically identified these exhibits as exhibits for use with Mr. Spendiff.

At that point, Ms. Lozano published GX 1333. It immediately became apparent that the exhibit was an e-mail dated September 30, 2017 – more than a year after Mr. Scott severed his relationship with Apex – and that the document was an e-mail that neither Mr. Spendiff nor anyone associated with Apex was on. The defense then twice objected that redirect about this document was beyond the scope of the examination. Tr. at 753. Each objection was overruled. The defense then determined and pointed out that GX 1333 was not in evidence but declined the Government's offer (in front of the jury) to now object as the jury had already seen much of the document, Mr. Spendiff had read portions allowed, and the redirect examination was near its end. Tr. 755.

Government Exhibits 1333 and 1334 are communications from September and October 2017 in which Mark Scott reacts with "outrage[]" over an apparent decision by Mason Hayes & Curran to terminate its relationship with Mark Scott, purportedly due to unspecified anti-money laundering issues. The documents were obtained by the Government from electronic devices belonging to Mr. Scott and the Government does not appear to have obtained or produced documents from Mason Hayes itself or interviewed / planned to call Mason Hayes witnesses who could explain the basis for the termination and their related interactions with Mr. Scott.

COVINGTON

Discussion

The Government's redirect examination on Government Exhibits 1333 and 1334 was improper and unfairly prejudicial, planting a seed in the jury's mind heading into a long weekend that a law firm had found Mr. Scott to have failed to respond to requests from the firm for anti-money laundering materials.

As an initial matter, the purported "redirect" on these documents was not redirect at all. But what the Government did instead was not redirect at all.  The Government did not ask Mr. Spendiff a single question about Mason Hayes.  It simply put on the screen documents having nothing to do with Apex, post-dating the relationship by a year, and took turns with Mr. Spendiff in reading inflammatory portions aloud. This may be rebuttal, but it is not redirect.  Mr. Spendiff had no personal knowledge – or any other sort, for that matter – with the subject GX 1333 and 1334.  To permit the Government to follow cross-examination by using whoever is on the stand as a convenient mouthpiece to read some of the Government's favorite documents that a witness has nothing to do with fails to serve the purpose of a re-direct examination: ascertaining the truth from a witness on matters the witness actually has personal knowledge about.  *See* Fed. Rule of Ev. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").

The purported redirect on these documents likewise far exceeded the scope of the direct examination.  *See United States v. Diaz*, 176 F.3d 52, 80 (2d Cir.1999) (finding that the trial court has substantial discretion to restrict redirect examination to scope of cross-examination). The *only* statement Mr. Spendiff made about Mason Hayes & Curran on direct examination was that he "th[ought]" that "Apex may have" had "some dealings in fund administration worth with Mason Hayes" but "[n]ot from [his] office." (Tr. at 677).  He did not say he was impressed with Mason Hayes.  He did not say Mason Hayes was a factor in Apex's approval of the Fenero Funds.  He did not say anything that would remotely warrant the introduction into evidence of e-mails regarding a decision by Mason Hayes to terminate the Fenero Funds over a year later.

Government Exhibits 1333 and 1334 are likewise hearsay, purporting to convey statements from Mason Hayes to the effect that it was terminating Fenero for failure to provide information necessary for Fenero to fulfill its AML obligations.  The Government's claim in Court that this evidence is not offered for the truth but to prove Mr. Scott's "state of mind" likewise does not hold water.[1]  Mr. Scott terminated his relationship with Apex on August 10, 2016 (Tr. at 633, referencing GX-2288).  Thus, communications occurring over a year later, with entirely different parties, have absolutely nothing to do with Mr. Scott's state of mind during the

---

[1] Furthermore, the Government's contention that these Exhibits 1333 and 1334 "represented critical circumstantial proof that the defendant was aware that OneCoin was illegal" (Ltr. at 3) is demonstrably false.  Far from in any way agreeing with the concerns raised by MH&C, Mr. Scott responds indignantly, replying "I…am outraged by your decision to terminate us as a client due to money laundering concerns.  You claim that your firm has not been adequately informed about our transactions, although we provided explanations of our transactions every time we would ask your firm to form a new subsidiary for us….If you have not received any updates on transactions for a long period of time it is merely for the fact that we have not entered into any."

COVINGTON

time period he was working with Apex.  The Government has offered no explanation as to what act or acts Mr. Scott took in October 2017 or thereafter – months *after* he had returned money in the Fenero Funds – for which such state of mind testimony would be relevant.
The documents likewise have little if anything to do with the events on trial: Mason Hayes employees will not be witnesses, and the relationship between Mr. Scott and this firm is tangential at best.

Furthermore, this evidence should disallowed under Rule 403 of the Federal Rules of Evidence, which provides for the exclusion of evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." As the Court observed on Friday, the evidence admitted is "fairly dramatic evidence of Mr. Scott being fired by a law firm…But, we don't know what the facts are…We're getting a very limited part of what happened…So, it does appear that he is being prejudiced to that extent." Tr. at 760. Mason Hayes's purported concerns relate to three Irish corporate entities that MHC set-up that were in the process of being closed.  The Government does not appear to have obtained or produced any relevant documents from MHC, interviewed MHC witnesses, or arranged for such witnesses to testify.[2]  Introducing such highly prejudicial material relating to a relationship (Scott-MHC) that is of no moment to the case and without any context is entirely improper.

Accordingly, the appropriate remedy is to have the Court strike the testimony and withdraw Government exhibits 1333 and 1334.  The defense also requests the following instructions to the jury:

> On the redirect examination of Mr. Spendiff on Friday afternoon, Mr. Spendiff was shown and asked to read from certain documents not relating to Apex.  I am striking that testimony from the record and those documents are no longer part of the evidence.  Neither that that testimony or those documents should play any role in your deliberations.

The Government should likewise be barred from making any arguments based on these documents or testimony.

***

With respect to the Government's proposal in its letter dated today concerning categories of other "state of mind" evidence it intends to offer, the appropriate course of action – as the discussion of GX 1333 and 1334 has demonstrated – is to assess documents on a case-by-case basis.  While the Government is correct that the parties appeared to be in general agreement in the in limine motions that only documents Mr. Scott possessed or saw (whether positive or negative) could be admitted to prove state of mind, that does not mean that all such documents are admissible regardless of other Rules of Evidence.  That depends on the circumstances, including when the document was sent to Mr. Scott, whether its content is relevant to a state of mind issue in the case, and whether there will be sufficient other evidence to give the document

---

[2] Mr. Scott, who in any event has no burden of proof, has no corresponding ability to obtain such documents or witnesses from MHC, which is based in Ireland.

4

**COVINGTON**

context.  The defense is prepared to discuss each of the documents identified by the Government in Court in the morning or at any appropriate time before they are moved into evidence.

                                                                 Respectfully Submitted,

                                                                 /s Arlo Devlin-Brown
                                                                 Arlo Devlin-Brown