

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 17, 2019

**BY ECF & ELECTRONIC MAIL**

Honorable Edgardo Ramos
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

>    Re:    *United States* v. *Mark S. Scott*
>           **S10 17 Cr. 630 (ER)**

Dear Judge Ramos:

The Government writes to respectfully request that the Court: (1) preclude the defendant from eliciting testimony from defense character witnesses regarding specific instances of the defendant's conduct; and (2) instruct the jury that (a) the duty of client confidentiality cannot serve as a defense to criminal conduct; and (b) none of the email communications admitted by the Government at trial—including communications between the defendant and Ruja Ignatova—are privileged.

**A.    Preclusion of Character Witness Testimony Regarding Specific Instances of Conduct**

The Court should prelude the defendant from eliciting testimony from character witnesses regarding specific acts of the defendant on direct examination, pursuant to the clear dictates of Federal Rule of Evidence 405.

> *1.    Applicable Law*

Federal Rule of Evidence 405(a) allows a party to introduce character evidence in the form of "testimony about the person's reputation or by testimony in the form of an opinion."  Fed. R. Evid. 405(a).  "Unless character is an essential element of the crime charged, on direct examination only reputation and opinion evidence may be used to prove the defendant's character, and specific instances of conduct may not be admitted."  *United States v. Chan*, No. S1197CR.1053(PKL), 2002 WL 109528, at *1 (S.D.N.Y. Jan. 25, 2002) (citing Fed. R. Evid. 405(b); *United States v. Doyle*, 130 F.3d 523, 542 (2d Cir. 1997); *United States v. Benedetto*, 571 F.2d 1246, 1249-50 (2d Cir. 1978)).

"Once a defendant offers character testimony, the prosecution is afforded substantial latitude to rebut such evidence."  *United States v. Russo*, 110 F.3d 948, 952 (2d Cir. 1997).  Under Rule 405(a), on cross-examination, the prosecution is allowed to ask the witness about specific instances of the conduct of the accused.  *See* Fed. R. Evid. 405(a); *Russo*, 110 F.3d at 952;

*Benedetto*, 571 F.2d at 1250.  Such cross-examination "is permitted to evaluate the character witness's credibility and knowledge of the defendant." *United States v. Reich*, 420 F. Supp. 2d 75, 89 (E.D.N.Y. 2006), *aff'd*, 479 F.3d 179 (2d Cir. 2007) (citing *United States v. Birney*, 686 F.2d 102, 108 (2d Cir. 1982)).  "Indeed, the prosecution may inquire about misconduct that did not lead to a conviction, or even an arrest." *Chan*, 2002 WL 109528, at *1 (citing *Birney*, 686 F.2d at 107-08).

The Second Circuit reviews "a trial court's ruling on the admissibility of character evidence for an abuse of discretion." *United States v. Damblu*, 134 F.3d 490, 494 (2d Cir. 1998).

### 2.     *Discussion*

The defendant has indicated that he anticipates calling several character witnesses as part of his defense case in this matter.  Under Rule 405(a), on direct examination, the defendant may seek to prove his good character only through "testimony about the [defendant's] reputation or by testimony in the form of an opinion."  Character is not an "essential element" of the money laundering and bank fraud conspiracy offenses alleged in this case.  *See, e.g.*, *United States v. Nektalov*, No. S203CR.828PKL, 2004 WL 1637010, at *2 (S.D.N.Y. July 21, 2004) (**"**Character is not 'in issue' when the defendant is charged with money laundering."); *United States v. Kosinski*, No. 3:16-CR-00148 (VLB), 2017 WL 4953902, at *4 (D. Conn. Oct. 31, 2017) ("Defendant's character is not an 'essential element' of the insider trading crimes for which he was indicted."); Mueller & Kirkpatrick, 2 *Federal Evidence* § 4.44 (4th ed. 2013) ("Almost *never* is character an 'element' of a charge or defense in criminal cases—a point that is made graphic by the obscurity of the illustrative example cited by the Advisory Committee.") (emphasis in original). Accordingly, the defendant may not admit specific instances of conduct through the character witnesses, and the Court should specifically preclude the defendant from attempting to do so.[1]

**B.     The Court Should Instruct the Jury That Client Confidentiality Is Not a Defense to Criminal Conduct and That Email Communications in Evidence Are Not Privileged**

The Court should instruct the jury, consistent with the crime-fraud orders entered in this case, that client confidentiality is not a defense to criminal conduct, and that none of the email communications admitted into evidence by the Government are privileged.

### 1.     *Background*

The defendant has made reference to client confidentiality at various points during the trial—specifically, Mark Scott's duty of confidentiality to Ruja Ignatova as her purported attorney—in an apparent effort to show that the defendant acted properly when lying or failing to disclose certain material information to banks and other parties.  For example, in his opening statement, counsel stated:

---

[1]  On the other hand, on cross-examination of any character witness called by the defendant, the Government should be permitted to ask the witness about specific instances of the defendant's conduct, consistent with the dictates of Rule 405(a).  *See* Fed. R. Evid. 405(a); *Russo*, 110 F.3d at 952; *Benedetto*, 571 F.2d at 1250.

Now, the government says that Mark Scott never told the fund administrators or the banks that the money was coming, really, behind the companies, that there was really some connection with Ruja and OneCoin.  You know what, ladies and gentlemen?  The government is right.  The government is right about that.  Mark Scott provided the information about the legal entities that were sending him funds.  He did not go out of his way and volunteer that, by the way, these funds have connections to Ruja and OneCoin.  The evidence is going to show *Ruja demanded confidentiality*.  She was a private person.  *Mark Scott was an attorney.  And he did not reveal information about OneCoin as a matter of practice*.

(Tr. at 56-57) (emphasis added).

The defendant has also raised the specter that certain emails admitted into evidence between the defendant and Ruja Ignatova are protected by the attorney-client privilege.  For example, counsel posed the following series of questions to Special Agent Nicholas Kroll on cross-examination:

Q.      Now, let's look at the subject.   It says "Re: Attorney/Client Privileged Communication."  Do you see that?
A.      Yes.
Q.      So does that indicate to you that Mark Scott writing this has designated it as a legal document between a lawyer and his client?
A.      How he designates it I can't assume, but it is in fact the subject of the e-mail.
Q.      I'm sorry?
A.      It is in fact the subject of the e-mail.
Q.      Right, the attorney/client privileged communication.
A.      Yes.

(Tr. at 1322-23).  Later in the same cross-examination, counsel asked Agent Kroll the following series on questions on the same topic:

Q.      Can you take that down and please go to Government Exhibit 1055, and if we could please enlarge the top.  All right, we're in March 2016.  Again the subject is listed as attorney/client privileged communication.  Do you see that, sir?
A.      Yes.
Q.      And Mr. Scott says, "Hi Ruja.  For your information, Gilbert asked me about your new structure."  Now, we have seen through other documents that Mr. Scott—or someone at Locke Lord—is working on her structure; is that correct?
A.      It would appear so.
Q.      "I gave nothing away, but stating that you will be operating through Ireland mainly. I am not sharing that you will be banking off-shore and where.  He still thinks that you need to make changes.  Trust me, you don't.  What I am creating is best for you."  Is it fair to say that this would show—or tends to show—that Mark Scott is keeping the information of his client confidential from Gilbert Armenta even though Gilbert Armenta was the one who introduced Ruja Ignatova?

A.      If you say so, yes.

Q.      And that would be the proper thing for a lawyer to do, isn't it?

A.      Yes.

(Tr. at 1328-29).

### 2.      *Discussion*

The Court should instruct the jury that any obligation of client confidentiality owed by an attorney, such as the defendant, to a client is not a legal defense to criminal charges against the attorney.  It is notable that while the New York Rules of Professional Conduct provide that "a lawyer shall not knowingly reveal confidential information" of a client, the Rules also provide that "[a] lawyer shall not . . . assist a client . . . in conduct that the lawyer knows is illegal or fraudulent" and that "[i]n the course of representing a client, a lawyer shall not knowingly make a false statement of fact or law to a third person."  *See* N.Y. Rules of Professional Conduct 1.6(a), 1.2(d), and 4.1.  Indeed, even the New York client confidentially rule provides that an attorney "may reveal or use confidential information to the extent that the lawyer reasonably believes necessary . . . to prevent the client from committing a crime."  *See* N.Y. Rules of Professional Conduct 1.6(b)(2).[2]  Accordingly the Court should instruct the jury that any duty of confidentiality an attorney may owe to a client cannot serve as a defense to criminal conduct.[3]

The Court should also instruct the jury regarding the non-privileged nature of email communications admitted into evidence at trial.  As the Court is well aware, the Court has issued several crime-fraud orders in this case.  (*See* Doc. Nos. 133 and 142).  Under the terms of those Orders, the email communications in evidence between the defendant and Ruja Ignatova were determined to be non-privileged under the crime-fraud exception to the attorney-client privilege.  In order to prevent the jury from drawing an improper conclusion based on the line of cross-examination described above, the Government further requests that the Court instruct the jury that none of the email communications introduced into evidence by the Government—including email communications with subject line "Attorney Client Privileged Communication"—are privileged.

---

[2]  During the time period alleged in the operative Indictment, the defendant was admitted to the New York and Florida Bars.  The Florida Rules of Professional Conduct contain language nearly identical to the New York Rules of Professional Conduct described above.  *See* Florida Rules of Professional Conduct 4-1.2(d), 4-1.6(a), 4-1.6(b)(1), and 4-4.1(a).

[3]  For the same reasons, the Court should preclude the defendant from making arguments in summation to the effect that the duty of client confidentiality represents a defense to the charged crimes.

## C.      Conclusion

For the reasons set forth above, the Court should: (1) preclude the defendant from eliciting testimony from defense character witnesses regarding specific instances of the defendant's conduct; and (2) instruct the jury that (a) the duty of client confidentiality cannot serve as a defense to criminal conduct; and (b) none of the email communications admitted by the Government at trial are privileged.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

by: ___/s/_____

Julieta V. Lozano/Christopher J. DiMase/
Nicholas S. Folly
Special Assistant United States Attorney/
Assistant United States Attorneys
(212) 637-2438 / 2433 / 1060

cc:     Arlo Devlin-Brown, Esq. (by electronic mail)
        David Garvin, Esq. (by electronic mail)