# EXHIBIT D

**J.J. Delaney, Inc.**
**20 Rascally Rabbit Road**
**Unit #2**
**Marston Mills, MA 02648**

March 20, 2020

Honorable Edgardo Ramos
40 Foley Square
New York, New York

Re: United States v. Mark Scott
    Case No. 17-cr-00630-ER

Dear Judge Ramos:

I am the general contractor that was hired by Mark Scott in September 2017, to restore the property located at 31 Dale Avenue, Hyannis Port, Mass. The structure on the property is considered a historic structure that adds to the historic character of Hyannis Port. This was the decision of the Hyannis Port Historic Preservation committee. The home on the property had deteriorated and was badly in need of repair. It was determined that the structure was situated below the current flood plain. As part of any major repairs the issue of the flood plain had to be addressed. I led a team of engineers and architects to obtain the permitting for this complex project.

To restore the property the structure had to be raised above the flood plain. The home is in the shape of an "L". It is 94 feet long and 40 feet wide to form an "L" shape. Our crew had to raise the house 6 feet straight up in to the air to meet the flood plain requirements. This was accomplished, but the floor remained behind on the ground because it had rotted to the point that it could not be used.

The house was held by cribbing and steel "I" beams. This work was accomplished during the month of August, 2018. On September 5, 2018, Mr. Scott was arrested and I had no contact with him for approximately two weeks. At that point, I had not constructed a foundation for the house to sit on and winter was approaching.

It is my understanding that Mr. Scott purchased this home on or about September 20, 2017 for the sum of $3,765,000. I reached an agreement with Mr. Scott to do the construction to make the property habitable. During the period of time commencing in September 2017, through September 1, 2018, Mr. Scott paid my construction company $218,322.65 for building and remodeling the 31 Dale Avenue property.

Letter to the Honorable Edgardo Ramos
March 20, 2020
Page –2–

On September 19, 2018, I email an invoice to Mr. Scott's real estate lawyer Nicole Hussmann for work my company had performed at 31 Dale Avenue but had not been paid. Shortly thereafter, Mr. Scott wanted to know what it would cost to get the earth work, foundation and framing done to make the property weather tight. This was necessary to protect the investment. I told him that I estimated the cost to be $1,024,626. Mr. Scott stated that he had to put the work on hold. I was deeply concerned that the weather could cause the house to fall. This would have likely caused a complete loss of the structure. The rear of the house is situated a mere 25 feet from Nantucket Sound (Atlantic Ocean).

During the months of September, October, and November the house remained cradled in the air. I routinely sent crews to restore washouts to reduce the likelihood of the structure falling. I also continued to pay the $5,750 monthly invoice for the rental of the cribbing and steel. I told Mr. Scott that this situation could not continue. The building was deteriorating because it was not weather tight. It was exposed to the elements hanging 5 feet in the air with no floor whatsoever. In November 2018, Mr. Scott finally told us to do what was necessary to protect the investment from the elements.

On November 19, 2018, I received a wire from MSS International Consultants LLC in the amount of $350,000. These funds were earmarked for the foundation and the framing for the entire first floor. This included rebuilding the first floor walls. This work occurred during December, 2018 and January, 2019. The house was lowered onto the foundation and first floor frame on January 31, 2019. The $350,000 paid in November 2018, was exhausted by March 2019.

I requested additional funds to complete the job. On March 26, 2019, I received a check for $50,000. On April 8, 2019, I received another check $50,000. This check was from Northern Trust. On April 26, 2019, I received a wire in the amount of $300,000 from MSS International Consultants BVI. These funds were used to replace all of the windows and doors in the house because they were in failure and leaking. This was causing damage to the interior of the structure. These funds were exhausted approximately on July 1, 2019.

At that time, I asked Mr. Scott for additional money to replace the roof and the walls on the second floor. Mr. Scott told me that he had no more funds to give. I told him that if we stop the construction work at this point all of the work and money that had been invested during the past 18 months would be lost. The salt ocean air would deteriorate the structure.

Mr. Scott repeated that he had no more funds to pay. He said that if he was found innocent in his case he would be able to pay me to finish the project. If he did not win his case, the government would likely want to sell the property. I decided, as a builder, that not

Letter to the Honorable Edgardo Ramos
March 20, 2020
Page –3–

finishing the job of making the house weather tight would result in a great loss for whoever ultimately got the house and that the job should be completed. I continued on with the work pursuant to our original agreement without any additional promise to be paid by Mr. Scott, in part, because I have a reputation in the Hyannis Port community for my good integrity. Therefore, I intended to complete our original agreement.

By the middle of October 2019, I got the second floor weather tight. I had advanced approximately $290,000 of work. This was a lot of money to me. In December 2019, I approached Mr. Scott for the $290,000. Mr. Scott told me that he could not pay me. I knew that he had lost his trial and was filing a motion for a new trial and possibly an appeal. I made a proposal to Mr. Scott. I did not want to start a lawsuit. My work not only protected the property but greatly increased the value of the property. I offered to take a mortgage for the $290,000. Mr. Scott ultimately agreed to sign a mortgage because he believed that it was the right thing to do under these unique facts.

I have been asked what the fair market value of the 31 Dale Avenue property is in its present condition. I requested Broker Stephen O'Neil to render his opinion. A copy of his written report is attached hereto. Mr. O'Neil states that the present value is $5,800,000.

You Honor, I hope that this letter clarifies what occurred during the past two years with regard to the construction and preservation project at 31 Dale Avenue.

Respectfully submitted,

John J. Delaney

## BROKERS OPINION OF VALUE

**Requested By: Jack Delaney**
**Contact Person: Jack Delaney**
**Date of Request: MARCH 15, 2020**

### BROKER ASSIGNED

Name:        Stephen O'Neil

Address:     PO BOX 5
             Hyannis Port, MA 02647

             **Contact Person:** Stephen O'Neil
             **Telephone No.:** 508-320-0447

### PROPERTY FOR OPINION

**Name**        MSSI 31 DALE
                AVE PROPERTY GROUP LLC
**Address:**    **31 Dale Avenue**
                Hyannis Port, MA

### NEIGHBORHOOD DESCRIPTION

Location:          **Residential X_**          Suburban___ Urban

Property Values:   **Increasing_**     **Stable__X_**      **Declining_**

Marketing Time:    **Under 6 months_**  **6-12 months_X**   **Over 12 months___**

### GIVE BRIEF DESCRIPTION OF THE SURROUNDING AREA:

Property is in the unique village of Hyannis Port that was identified in 1986 by the National Historic Register for being one of the first cottage colonies on Cape Cod. The Village has its own Civic Association with a deep water docking facility that has direct access to Nantucket Sound. The community has a private beach club, yacht club and golf course. Properties in the subject's area neighborhood are in good to excellent condition and are adequately maintained and landscaped. Houses are of a variety of styles (capes, colonials and contemporary). Subject is within walking distance of the beach and other amenities in the village. Property values have increased gradually over the past year. Area brokers reported a selling time of generally 2-6 months. The Market Sales Data has led me to believe that it has stabilized.

### SITE

Lot Size: 1.15 acre   50,094 sq. ft.
Zoning Classification: Res
Is this property in a flood plain: Y_x_N_

### TYPE OF STRUCTURE

__ Brick___ Wood X
Number of Units: 6 bedrooms
 5 full Baths and 2 Half
Total Unit Sq. Ft. 5720 living area

| UTILITIES | PUBLIC | PRIVATE | Parking:     Yes X        No ___ |
|---|---|---|---|
| | | | Total No of |
| Electricity | X | | Parking Spaces:  On Street |
| Gas | X | | |
| Water | X | | |
| Sewer | | X | |

**COMMENTS ON MARKET DATA APPROACH:**

Property Opinion of Value is made "as is", in its unfinished condition.  Broker assumes clean and marketable title and compliance with Title V and the zoning requirements and regulations. Broker has viewed sales in the area and finds that there are sales that are **like** and **similar**. It is my opinion that the properties **uniqueness** makes it hard to fairly compare with others.   It is also my opinion that the assessed value is not a true bearing on the value of these properties. This potential offering has not been tested on the open market which will give it absolute value. Therefore without testing the **Market** place by exposing it to the potential buyers I have concluded the following value;

**BROKER'S OPINION OF VALUE:**   $5,800,000.00
                                             (Five Million Eight Hundred Thousand Dollars)

**DATE OF VALUATION:**        March 17th 2020

**BROKER'S SIGNATURE:**

STEPHEN O'NEIL