# COVINGTON

BEIJING   BRUSSELS   DUBAI   FRANKFURT   JOHANNESBURG
LONDON   LOS ANGELES   NEW YORK   PALO ALTO
SAN FRANCISCO   SEOUL   SHANGHAI   WASHINGTON

Arlo Devlin-Brown

Covington & Burling LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
T +1 212 841 1046
adevlin-brown@cov.com

March 30, 2020

By ECF and E-Mail
Honorable Edgardo Ramos
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

      Re:    *United States v. Mark S. Scott*, S10 17 Cr. 630(ER)
               Mark Scott Bail Application (reply to Govt letter of 3/27/20)

Dear Judge Ramos:

      We write further with respect to our client Mark Scott's bail application of March 24, 2020 (the "Bail Application") to address several points in Government's opposition submitted on Friday, March 27, 2020.

      *First*, the Government's argument that Mr. Scott and his wife should not be permitted to post their Florida primary residence (the "Florida Property") as security because OneCoin money can allegedly be traced to the mortgage payoff is based on incomplete math. The Government, in its letter opposition, asserts that "the Florida Property was paid off on October 15, 2016 through the use of $1,000,794.66 in OneCoin Fraud scheme proceeds." Gov. Letter at 3. However, the Government ignores that the appraisal report dated March 21, 2020 (attached to Mr. Scott's March 24th Application as Exhibit H, and reattached here as Exhibit A) values the property at $1,605,000. Accordingly, *there is $604,205.34 in equity in the Florida Property above and beyond the amount the Government alleges to be linked to OneCoin*. This provides far better security than the $750,000 in cash posted by Mr. Scott's former friend and business partner Ms. Halle. If Mr. Scott were to flee, his wife and son would lose their home.

      *Second*, the Government's repeated rehashing of its criticism of transactions involving the 2016 Porsche and 31 Dale Avenue Property[1] misses the key point of the Bail Application: objectionable or not, these transactions actually *undermine* the Government's argument for flight risk. A defendant planning to abscond does not, as Mr. Scott did, transfer $300,000 from a

---

[1] Notably, the Government neither explains why it did not include these assets in the Post-Indictment Restraining Order nor why it did not disclose this obviously highly relevant fact in its original *ex parte* submission to the Court or in the oral argument that followed.

COVINGTON

Cayman Islands Bank into the United States to protect a property that the U.S. intends to seize from potential destruction during a Cape Cod winter.[2]

*Third*, the Government's assurance that Mr. Scott will do just fine in jail as COVID-19 spreads rings hollow. The Government's boilerplate about how prepared the BOP is for the pandemic is simply implausible. The BOP has challenges providing adequate medical treatment in the best of times, and "social distancing" is even less possible in prison than in the college dorms that have been emptied due to this vulnerability. Already, 19 inmates and 19 staff members within the BOP have tested positive for the virus, including one inmate at MDC Brooklyn and three at MCC New York.[3] And, the BOP announced late on Saturday that the first federal BOP inmate has died from COVID-19.[4] Furthermore, the BOP already appears ill-equipped to follow its own advice, to which the Government cites in its March 27th Opposition Letter. *See* Gov. Letter at 4. For example, the BOP's Pandemic Influenza Plan states that "Because of the close contact between people in BOP facilities, face masks have been stockpiled for distribution to employees and inmates in the event of pandemic influenza." (Module 1, p. 7)[5] And yet, Reuters reports that Federal prison guards have asked for permission to wear masks on duty, but the BOP has so far declined.[6]

The Government is likewise unduly dismissive of Mr. Scott's medical concerns. The letters from his doctors may be brief, but their conclusion is



On May 26th, this Court may in fact sentence Mr. Scott to a period of incarceration.

---

[2] Photos documenting the precarious state of the property at the time of Mr. Scott's arrest were attached to the Bail Application as Exhibit E.

[3] Federal Bureau of Prisons, COVID-19 Coronavirus: COVID-19 Tested Positive Cases, available: https://www.bop.gov/coronavirus/index.jsp

[4] "Prisoner Serving Time for Drug Charge Is First U.S. Inmate to Die from COVID-19," *New York Times*, Mar. 29, 2020, available: https://www.nytimes.com/reuters/2020/03/29/us/29reuters-heath-coronavirus-prison-death.html

[5] Federal Bureau of Prisons, Pandemic Influenza Plan, Module 1: Surveillance and Infection Control, October 2012, p. 7, available: https://www.bop.gov/resources/pdfs/pan_flu_module_1.pdf

[6] "Spread of coronavirus accelerates in U.S. jails and prisons," Ned Parker et. al, Reuters, Mar. 28, 2020, available: https://www.reuters.com/article/us-health-coronavirus-usa-inmates-insigh/spread-of-coronavirus-accelerates-in-us-jails-and-prisons-idUSKBN21F0TM

**COVINGTON**

███████████████████████████████████████████
█████████████████████████████████ Incarcerating him now in a Florida facility with a transient inmate population (where counsel cannot visit him) and then sending him to a New York prison for sentencing is unnecessary, and poses potentially grievous risk to his health. In light of the above considerations, Mr. Scott should be granted continued release on the existing bond until sentencing, with a mortgage posted on the Florida Property as security.

                                                   Respectfully Submitted,

                                                   /s Arlo Devlin-Brown
                                                   Arlo Devlin-Brown

                                                 David M. Garvin
                                               200 South Biscayne Boulevard
                                               Suite 3150
                                               Miami, FL 33131
                                               (305) 371-8101