

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 11, 2020

*Ex Parte Request to be Filed Under Seal*

**BY EMAIL**

Honorable Edgardo Ramos
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

     Re:    *United States v. Mark S. Scott*, S10 17 Cr. 630 (ER)

Dear Judge Ramos:

     The Government submits this *ex parte*, sealed letter in advance of the bail hearing scheduled on March 12, 2020, at 4:15 p.m. in the above-captioned matter.

     Notwithstanding the very serious charges in this case and the defendant's conviction following trial on two counts carrying a total statutory maximum sentence of 50 years, the defendant has continued to brazenly engage in a series of significant violations of his bail conditions, some of which constitute separate criminal offenses. As described below, *before* trial, the defendant: (1) sold a Porsche that he bought with OneCoin victim money and that he knew was subject to seizure and forfeiture, and used the $250,000 in sale proceeds for himself; and (2) took out a $500,000 personal loan from his bond suretor based on the false promise that he would repay that loan within six months, which he has entirely failed to do. *After* trial, the defendant offered to mortgage two properties that he bought using OneCoin victim money (as proven at trial) and that he knew were subject to forfeiture in this case, and he actually mortgaged one of those two properties. Moreover, he blatantly violated the home incarceration bail condition imposed by this Court after trial, using a visit to his defense attorney as cover for an unauthorized dinner at a restaurant in Coral Gables, Florida.

     Given these egregious violations of his bail conditions, and in light of the heightened standard for bail pending sentence, the defendant's access to offshore funds, and the inability of the Government to extradite the defendant from Germany should he flee there, the Government

Honorable Edgardo Ramos
March 11, 2020

intends to seek the defendant's remand at the bail hearing tomorrow, on both risk of flight and financial danger grounds.

The Government further requests that—rather than traveling from his residence in Coral Gables, Florida to his attorney's office in Miami to appear by phone for the scheduled bail hearing—the Court direct the defendant to appear at the Pretrial Services Office in the Wilkie D. Ferguson, Jr. U.S. Courthouse, located at 400 North Miami Avenue, Miami, FL 33128, in order to conduct the call from that location.   Should the Court order the defendant detained following the bail hearing, Deputy U.S. Marshals can be summoned to take the defendant into custody at the courthouse.[1]

## A.      Legal Standard

"Post-conviction, a defendant no longer has a substantive constitutional right to bail pending sentencing," because "the defendant is no longer entitled to the presumption of innocence."   *United States v. Madoff*, 316 F. App'x 58, 59 (2d Cir. 2009) (internal quotations omitted).   "In general, following a guilty verdict, there is 'a presumption in favor of detention.'" *United States v. Nouri*, No. 07 CR. 1029DC, 2009 WL 2924334, at *2 (S.D.N.Y. Sept. 8, 2009) (quoting *United States v. Abuhamra*, 389 F.3d 309, 319 (2d Cir. 2004)).   "Unless the applicable Guidelines would not call for a term of imprisonment, the court "shall order that a person who has been found guilty of an offense and who is awaiting imposition . . . of sentence . . . be detained." *Nouri*, 2009 WL 2924334, at *2 (quoting 18 U.S.C. § 3143(a)(1)).   "Accordingly, § 3143(a) places the burden on a defendant to demonstrate by clear and convincing evidence that he is not likely to flee or pose a danger to the safety of others or the community."   *Madoff*, 316 F. App'x at 59.

## B.      Scott's Current Bail Conditions

Following a bail hearing on September 13, 2018, the Court ordered the defendant's release—pursuant to 18 U.S.C. § 3142, which unlike 18 U.S.C. § 3143(a)(1), does not place any burden on the defendant and instead places any burden on the Government to demonstrate risk of flight or danger to the community—on the following conditions:

(1) $2.5 million personal recognizance bond, to be signed by two financially responsible persons;
(2) Bond secured by $750,000 in cash or secured property;
(3) Surrender of all travel documents;
(4) Travel restricted to S.D.N.Y., E.D.N.Y., the Sothern District of Florida and the District of Massachusetts;
(5) Home detention with electronic monitoring;
(6) Pretrial supervision, as directed by Pretrial Services, with drug treatment if warranted by a positive drug test;
(7) Defendant not to possess any firearm, destructive device, or other weapon; and

---

[1]   The Miami federal courthouse is approximately one mile away from Mr. Garvin's office in downtown Miami, Florida.

Honorable Edgardo Ramos
March 11, 2020

(8) Defendant to be detained until all conditions met.

Notably, at the September 13, 2018 hearing, the Court made clear that the cash security was an important component of the bail package, needed to mitigate the risk of flight.   (*See* Sept. 13, 2018 Tr., Dkt. Entry 19, at 28 ("Because of Mr. Scott's apparent significant assets, I do think that a million dollars and $200,000 cash or property is low.   So what I would do is increase the amount to $2.5 million secured by $500,000 of cash or property and two financially responsible persons to sign for him and that he not be released until those conditions are met . . . ."))[2]   The Court ordered that the defendant remain detained until the bond was secured by the $750,000 and Scott's co-signers signed the bond.

Within several days, a woman named ████████ transmitted $750,000 to Covington & Burling, LLP ("Covington"), which represents the defendant in these proceedings.   On September 19, 2019, Covington posted that amount as security for Scott's bond.   The same day, Scott and two co-signers executed the bond, and Scott was released from custody.

## C.   Procedural Posture

On November 21, 2019, following a three-week trial, Scott was convicted of conspiracy to commit money laundering and conspiracy to commit bank fraud, in violation of 18 U.S.C. §§ 1956(h) and 1349, respectively.   The counts carry a statutory maximum term of imprisonment of 50 years.   Based in part on the massive amount of criminal proceeds laundered by Scott—approximately $400 million—the Government has calculated the applicable Guidelines sentence for Scott to be the statutory maximum sentence of 50 years' imprisonment.[3]

Immediately after the jury verdict, the Government sought Scott's detention.   The Court denied that request, and instead altered Scott's bail condition of home detention to home incarceration.   (*See* Nov. 21, 2013 Tr. at 2082 ("MR. DiMASE: He would obviously be allowed to attend required court appearances. But home incarceration is a more strict version of [home detention].   Is that what the Court is ordering?   THE COURT: Yes. Whatever the strictest level of home detention is, that's what I am ordering.")).

On February 6, 2020, Ms. ████, through counsel, filed an *ex parte* application under seal requesting that she be exonerated from her obligation on Scott's bond, and that the $750,000 she posted in cash security be returned to her.   The application stated that "Ms. ████ [had] lost confidence in Mr. Scott and [was] no longer willing to act as a Surety."   The application also

---

[2]   The Court subsequently increased the security amount to $750,000, based on defense counsel's representation that doing so could give potential co-signers more comfort in signing a $2.5 million bond.   (*See* Sept. 13, 2018 Tr., Dkt. Entry 19, at 30-31).
[3]   Specifically, the Government has calculated total offense level of 47 and a Criminal History Category of I, resulting in a Guidelines sentence of life imprisonment.   However, pursuant to Section 5G1.1(a) and Application Note 3(B) to Section 5G1.2, because the statutory maximum sentence on Counts One and Two is 50 years' imprisonment, the applicable Guidelines sentence becomes 50 years' imprisonment.

Honorable Edgardo Ramos
March 11, 2020

attached as an exhibit, a three-page affidavit sworn to by Ms. ███ detailing the bases for her request to be relieved as a suretor on Scott's bond.

By letter dated February 12, 2020, filed *ex parte* and under seal, the Government informed the Court that it had no objection to Ms. ███ 's request, and requested that the Court schedule a conference to address Scott's bail.   That conference is now scheduled to proceed on March 12, 2020 at 4:15 p.m.   The Court has not yet exonerated Ms. ███ 's cash surety.   Sentencing in the case is currently scheduled on May 26, 2020 at 3:30 p.m.

## D.   Prior Restraining Orders and Forfeiture Filings

On September 4, 2018, the Government sought and obtained a number of seizure warrants against Scott, including a seizure warrant for a 2016 Porsche 911 GTS RS (the "2016 Porsche"), with VIN number WP0AF2A92GS195089 (the "2016 Porsche Warrant").   The Government produced that seizure warrant to Scott in discovery, on or about October 18, 2018.   (*See* Bates-stamped 2016 Porsche Warrant, attached hereto as Ex. A).

On February 22, 2019, the Government filed, on the public ECF docket sheet in this case, a Forfeiture Bill of Particulars (the "Forfeiture BOP"), which provided notice to Scott of certain "property subject to forfeiture as a result of the offense described in Count One of the Superseding Indictment, and as alleged in the Forfeiture Allegation therein."   (*See* Dkt. Entry 46).   Among other property identified in the Forfeiture BOP, the following property was listed:

(1) The 2016 Porsche;
(2) All right, title and interest in real Properties located at 31 Dale Avenue, Hyannis Port, Massachusetts owned by MSSI 31 Dale Ave Property Group LLC, with all improvements, appurtenances, and attachments thereon (the "31 Dale Property"); and
(3) All right, title and interest in real Properties located at 105 Sunset Lane, Barnstable, Massachusetts 02630 owned by MSSI 105 Sunset Ln Property Group LLC, with all improvements, appurtenances, attachments thereon (the "105 Sunset Property").

## E.   In Light of Scott's Commission of New Crimes While on Bail, Scott Should be Remanded

Given Ms. ███ 's desire to be relieved as a surety, the fact that Scott now stands convicted of crimes carrying an applicable Guidelines sentence of 50 years' imprisonment, the litany of violations of his bail conditions—including the commission of new crimes—and the very real risk that as a German citizen, Scott will flee to Germany, a place from which he cannot be extradited, to avoid sentencing in this case, the Government respectfully requests that the Court remand the defendant pending sentence in this case.

### 1.   Scott's Money Laundering While on Bail and His Obstructive Sale of the 2016 Porsche

As described above, the Government obtained a seizure warrant for the 2016 Porsche on September 4, 2018, and produced that seizure warrant to Scott in discovery on or about October

Honorable Edgardo Ramos
March 11, 2020

10, 2016.   In February 2019, the Government provided further notice of its intent to seize and forfeit the 2016 Porsche by including it in the Forfeiture BOP.   Moreover, the evidence presented at trial clearly demonstrated that Scott was aware that approximately $330,000 in OneCoin fraud proceeds were used to purchase the 2016 Porsche. (*See* GX 2619-C, attached hereto as Ex. B).

Notwithstanding that the vehicle was subject to both a seizure warrant and the Forfeiture BOP, and with full knowledge that he had purchased the car with OneCoin victim money, on June 5, 2019, Scott entered into a contact to sell the 2016 Porsche for $250,000.   (*See* June 5, 2019 Agreement, attached hereto as Ex. C).   He sold the car the following day, and received a wire for $250,000.   About a month later, Scott provided a $25,000 down-payment on a new Porsche to a different car dealership.   The dealership subsequently refunded that down-payment, and Scott did not ultimately purchase a replacement Porsche.   However, bank records show that that starting immediately after the receipt of the 2016 Porsche sale proceeds, Scott used the funds to, among other things, make substantial payments to several credit card companies.[4]

The defendant's sale of the 2016 Porsche represents brazen obstruction of justice, in light of his knowledge of the seizure warrant, and new criminal activity in violation of 18 U.S.C. § 1957 (engaging in monetary transaction in property derived from specified unlawful activity),[5] given that he knew the Porsche was purchased with OneCoin fraud proceeds.   (*See* Ex. B).

### 2.  Scott's Fraud Against Ms. ▮

Following its receipt of the aforementioned affidavit from Ms. ▮, the Government arranged to interview Ms. ▮ telephonically; her counsel, ▮, Esq., also participated in the call.   During that interview, Ms. ▮ informed the Government, among other things, that in or about August 2019, the defendant sought and obtained a personal loan of $500,000 from Ms. ▮, which he promised to pay back on or before February 29, 2020.   As set forth in Exhibit C, Ms. ▮'s statements are corroborated by emails between Ms. ▮ and Scott.   In seeking the loan from Ms. ▮, Scott claimed that she was taking on "**NO** financial risk" (emphasis in original).   (*See* Scott email dated August 11, 2019, attached hereto as Ex. D).   Scott also promised to pay back Ms. ▮ the funds within six months.   Notwithstanding the defendant's promise of repayment by February 29, 2020, as of today, Ms. ▮ has not received *any* of her money back.

Moreover, in December 2019, Scott offered to grant Ms. ▮ a $150,000 mortgage on the 105 Sunset Property to support a promissory note in the same amount in connection with her prior $1 million investment in the 105 Sunset property—an investment upon which Ms. ▮ has yet

---

[4]  Notably, the Government has learned that, on or about February 27, 2019, Scott applied for a credit card from USAA, and falsely claimed in the credit card application that he earned approximately $2 million annually.

[5]  Similar to the standard for bail pending sentence set forth in 18 U.S.C. § 3143(a)(1), 18 U.S.C. § 3148(b) provides that "[i]f there is probable cause to believe that, while on release, the person committed a Federal, State, or local felony, a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community."

Honorable Edgardo Ramos
March 11, 2020

to realize any gain.   (*See* Proposed 105 Sunset Mortgage, attached hereto as Ex. E-1; Proposed ███ Promissory Note, attached hereto as Ex. E-2).   As described above, long before offering to mortgage the property to Ms. ███, Scott was made aware through the Forfeiture BOP that the 105 Sunset Property is subject to forfeiture in this case.   Moreover, the evidence presented at trial clearly demonstrated that Scott was aware that over $2 million in OneCoin fraud proceeds were used to purchase the 105 Sunset Property.   (*See* GX 2617-E, attached hereto as Ex. F).

### 3.  Scott's Mortgage of the 31 Dale Property

In or about December 2019, Scott mortgaged another property that he purchased with OneCoin proceeds to a creditor, specifically, a contracting business performing work on the 31 Dale Property (the "Contractor").   Specifically, on or about December 27, 2019, Scott executed a mortgage for $289,775.32 against the 31 Dale Property in favor of the Contractor, to support a promissory note to the Contractor in that amount.   (*See* December 27, 2019 Mortgage, attached hereto as Ex. G).   According to the Contractor, the Contractor does not recall Scott ever informing the Contractor that the 31 Dale Property was subject to forfeiture.   As described above, long before mortgaging the property to the Contractor, Scott was made aware through the Forfeiture BOP that the 31 Dale Property is subject to forfeiture in this case.   Moreover, the evidence presented at trial clearly demonstrated that Scott was aware that nearly $4 million in OneCoin fraud proceeds were used to purchase the 31 Dale Property.   (*See* GX 2617-D, attached hereto as Ex. H).

### 4.  Scott's Violation of His Home Incarceration Condition

While not nearly as serious as the violations described above, the Government has also discovered at least one violation of the home incarceration condition imposed immediately after Scott's trial conviction.   The Government first became aware of the violation based on a blog post made on December 1, 2019, which reported, among other things, that: "Mark Scott, ostensibly under home incarceration, was spotted on November 27, with bodyguards, in Seasons 52 restaurant in Coral Gables, Florida."   (*See* http://www.innercitypress.com/sdnylive8onecoinarmentaicp120119.html).   Thereafter, the Government contacted Pretrial Services, and learned that on November 27, 2019, Scott requested permission to visit his attorney, David Garvin, Esq., at Mr. Garvin's office.   After an hour-long visit with Mr. Garvin, according to GPS data, Scott made an unauthorized two-hour detour to Seasons 52 restaurant in Coral Gables, Florida, where he resides.

### 5.  Scott's Access to Offshore Funds

Scott also has continued to access to substantial offshore funds.   For example, the Government has learned that, in or about April 2019, Scott transmitted a wire of approximately $300,000 from an account held in the name of MSS International Consultants BVI, held at First Caribbean International Bank in the Cayman Islands, to the Contractor, presumably to pay for work on the 31 Dale Property.   (*See* April 26, 2019 Wire Detail, attached here at Ex. I).

Honorable Edgardo Ramos
March 11, 2020

**F.      Conclusion**

In short, Scott has defrauded his own suretor, mortgaged properties purchased with victim money and subject to forfeiture, sold a luxury car purchased with victim money and subject to a seizure warrant and forfeiture—thereby obstructing justice and committing a new criminal offense while on bail—used the proceeds from the car sale to benefit himself, and blatantly violated the terms of his release.   Given his access to offshore funds and the inability to extradite him from Germany, and particularly in light of all of the violations described above, Scott simply cannot meet his burden to show by clear and convincing evidence any conditions that he is not likely to flee or pose a financial danger to the community.   *See* 18 U.S.C. § 3143(a)(1).   This is particularly true in light of his suretor's withdrawal of $750,000 in cash security, which was a critical component to the Court's bail package under which he was originally released, pursuant to the much less stringent standard for pre-trial bail set forth in 18 U.S.C. 3142.

Accordingly, the Government intends to seek Scott's detention pending sentence at the bail proceeding scheduled tomorrow.   The Government respectfully requests that the Court direct that the defendant and his attorney appear at the Pretrial Services Office at the federal courthouse in Miami to participate in the bail hearing by telephone conference.   Furthermore, due to the concerns raised by Ms. ███ in her motion and the issues described herein regarding Scott's risk of flight, the Government has submitted this letter *ex parte* and under seal.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By:      _____/s/_____
Christopher J. DiMase / Nicholas Folly/
Julieta V. Lozano
Assistant United States Attorneys /
Special Assistant United States Attorney
(212) 637-2433 / (212) 637-1060/
(212) 335-4025

# **EXHIBIT A**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA          :

        - v. -                  :

ONE 2016 PORSCHE 911 GT3 RS,      :
VIN ID WP0AF2A92GS195089,
REGISTRATION PLATE ID DVADER3,    :
CURRENTLY BELIEVED TO BE LOCATED
IN THE VICINITY OF MIAMI DADE     :
COUNTY, FLORIDA,                  :

        Defendant-*in-rem*.   :

- - - - - - - - - - - - - - - - - -x

## WARRANT OF SEIZURE PURSUANT TO
## 18 U.S.C. §§ 981 and 984

TO:  ANY DESIGNATED AGENT OF THE UNITED STATES ATTORNEY'S OFFICE
     AND/OR ANY LAW ENFORCEMENT OFFICER AUTHORIZED BY LAW

      Affidavit having been made before me by Special Agent

KURT HAFER with the UNITED STATES ATTORNEY'S OFFICE FOR THE

SOUTHERN DISTRICT OF NEW YORK, that he has reason to believe

that the above-captioned vehicle is subject to seizure and civil

forfeiture pursuant to 18 U.S.C. §§ 981 and 984, and as I am

satisfied that there is probable cause to believe that the

property so described is subject to civil forfeiture pursuant to

18 U.S.C. §§ 981 and 984;

      YOU ARE HEREBY COMMANDED AND AUTHORIZED to seize,

within ten (10) days of the issuance of this warrant, the

vehicle described as follows:

```
ONE 2016 WHITE PORSCHE 911 GT3 RS,
REGISTRATION ID WP0AF2A92GS195089,
REGISTRATION PLATE ID DVADER3,
CURRENTLY BELIEVED TO BE LOCATED
IN THE VICINITY OF MIAMI DADE
COUNTY, FLORIDA
```

YOU ARE FURTHER COMMANDED AND AUTHORIZED to give a copy of this warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave a copy of the warrant and receipt at the place where you took the property.

YOU ARE FURTHER COMMANDED AND AUTHORIZED to prepare a written inventory of the property seized and promptly return this warrant and inventory before this Court as required by law.

Dated: New York, New York
       SEPTEMBER 4 , 2018


THE HONORABLE HENRY B. PITMAN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

# EXHIBIT B

Mark Scott purchase of Porsche, 911R 2016
Date: June 15, 2017
Price: $332,248.41

**GOVERNMENT EXHIBIT**
**2619-C**
17 Cr. 630 (ER)



Porsche, 911R 2016, VIN #WP0AF2A92GS195089


xxxx7102
DMS Cayman
MSS International Consultants BVI Ltd

$500,000.00
06/14/17


xxxx3236
CNB FL
MSS International Consultants, LLC

$340,000.00
06/15/17


xxxx0295
CNB FL
Mark Scott

$332,248.41
06/15/17


Suntrust Bank
Braman Motorcars

Sourced from exhibits: GX-815A-GX-815H, GX-705A-GX-705G, and GX-702A-GX-702E

# **EXHIBIT C**



t is entered the last date set forth above between Mark
Way Apt 12 Coral Gables, FL 33134 and Velocity Motorcars
erby agrees to sell to Velocity Motorcars (1) 2016 Porsche
2GS195089 for the sum of $250,000 with the current
Motorcars LLC agrees to purchase the vehicle for said
make effort to include with vehicle all keys they received,
any other received items associated with the vehicle.  Mr.
d hold Velocity Motorcars LLC harmless from any and all
hip of said vehicle and Velocity Motorcars LLC is the sole,
r of such vehicle.  Mark Scott, prior to signing of this
eived all corporate authority necessary to enter same so as
erms of this Agreement. A faxed or electronically
Agreement shall be deemed an original for all purposes.

otorcars Nashville, LLC will hold sales tax credit open for 1
da sales tax rules to be used towards a purchase of future
hased or pass thru Velocity Motorcars.

otorcars

720 Airpark center Dr., Nashville, TN 37217 • 615.540.1675 • www.velocitymc.com









**Signature:** *Mark Scott*
Mark Scott (Jun 6, 2019)

**Email:**  mark@msscottlaw.com

# Scott 911RPurschase Ageement 2018 (002)

**Final Audit Report** 2019-06-06

| | |
|---|---|
| Created: | 2019-06-06 |
| By: | ▮▮▮▮▮▮▮▮▮▮▮▮ |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAzvoK6cbTi5XBMIJnwt42xuXLoGLLPS-z |

## "Scott 911RPurschase Ageement 2018 (002)" History

📄 Document created by ▮▮▮▮▮▮▮▮▮ )
  2019-06-06 - 1:53:34 AM GMT- IP address: ▮▮▮▮▮

✉ Document emailed to Mark Scott (mark@msscottlaw.com) for signature
  2019-06-06 - 1:54:15 AM GMT

📄 Email viewed by Mark Scott (mark@msscottlaw.com)
  2019-06-06 - 2:33:49 AM GMT- IP address: 99.60.4.56

🔏 Document e-signed by Mark Scott (mark@msscottlaw.com)
  Signature Date: 2019-06-06 - 4:24:20 AM GMT - Time Source: server- IP address: 73.46.62.149

✅ Signed document emailed to Mark Scott (mark@msscottlaw.com) and ▮▮▮▮▮▮▮▮▮▮▮▮▮
  2019-06-06 - 4:24:20 AM GMT

Adobe Sign

# **EXHIBIT D**



**From:** mark Scott <mark@msscottlaw.com>
**Date:** August 11, 2019 at 2:13:43 AM EDT
**To:** ███████████████████████████
**Subject: Funding for Counsel and Trial expenses**

Good morning ████████

I am very sorry to write to you once more in desperation at this late hour as you have done so much for me already. However, I am finding it impossible to raise the funding for my legal dream team and giving priority to every need of the future Cannabis business, by having used my reserves and now my financial favors. And I need to ask as there is a simple solution that ensures you carry **NO** financial risk.

So far, I have spent more than $1.4 Mio on this process. Last week I raised some funds from sale of assets and can get a small personal loan since we last talked, but I am still $450,000 short the fee and trial expenses I require.

There are two accounts at UBS totaling about $275,000 that remain unseized, but can't be accessed by me until after trial. The Government confirmed that it has no claim, but UBS wants to wait and I have no time to compel them in court.

I have a GBP 300,000 (US-$ 350,000) Promissory Note payable to me upon ████████ divorce from ████ ██████ which should not be later than in February 2020.

My friend and former business Partner ████████ still owes me $450,000 he simply can't free it up fast enough and needs to sell a property. The debt is not due.

We also have personal assets in watches, bags and jewelry totaling another minimum $200,000.

And of course I have the Lion share of future interests in all cannabis business that I can offer as collateral as well.

Please remember that the $750,000 bond will come back to you no matter what and is simply on hold.

Again, it is with great hesitancy, but out of desperation, that I ask if there is anyway you could provide me with a **secured** loan to get my legal dream team. At the end I think I will be fine either way, but the addition of the specific attorney and his team will make everyone sleep much better.

I promise none of your money will be at risk and will be paid back either way within 6 months from now the latest. If all goes well in 2.  Your funds at 105 are safe, no matter what, and have actually increasing in value and Cannabis doing great as you know.

Never would I shift my risk to you. I am only asking for you to help me quickly monetize existing assets that cannot be challenged by the goverment as they have already cleared. They also cleared you as a source of funding. And I am providing full short term collateral to completely cover your risk and make some money on interest.

Please consider my proposal. It makes my chances of acquittal almost perfect. Ask me anything, as always. I would need the funds by early next week.

All the best,

Mark


Mark S. Scott, Esq.
Managing Member

MARK S. SCOTT, P.L.
   Attorneys at Law

2525 Ponce de Leon Blvd
Suite 300
Coral Gables, FL 33134

mark@msscottlaw.com

 Sent from my BlackBerry Key-2 device
Anything

# EXHIBIT E-1

# MORTGAGE

Mark S. Scott, individually, of 600 Coral Way, Suite 12, Coral Gables, FL 33134 (hereinafter referred to as the "Mortgagor")

For consideration paid

grants to ▮▮▮▮▮▮▮ (hereinafter referred to as the Mortgagee), with MORTGAGE COVENANTS, to secure payment of  ONE HUNDRED FIFTY THOUSAND DOLLARS ($150,000.00) Dollars, payable as provided in my Note of even date (hereinafter referred to as the "Note"), that certain property described on "Exhibit A" attached hereto together with all the improvements now or hereafter erected on the property, and all easements appurtenances, and fixtures now or hereafter a part of the property.  All replacements and additions shall also be covered by this Mortgage.  All of the foregoing is referred to in this Mortgage as the "Property."

This mortgage secures to the Mortgagee (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced by the Mortgagee to protect the Mortgagee's interest hereunder; and (c) the performance of all of the Mortgagor's covenants and agreements under this Mortgage and the Note.

The Mortgagor covenants that he is lawfully seized of the estate hereby conveyed and that he has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.  The Mortgagor warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

In the event of a default in the payment as required by the terms of the Note secured by this Mortgage, which default continues to exist for a period of thirty (30) days after the date on which said default occurs, said default shall constitute a breach of this Mortgage and the whole unpaid balance shall automatically become due and payable, at the election of the Mortgagee.

The Mortgagor shall pay when due all taxes, assessments, and governmental charges to whomever laid or assessed on the Property or on any interest therein or on the debt secured hereby.

The Mortgagor agrees to keep the Property and all improvements thereon in good condition and repair.  Mortgagor will not commit or suffer any waste, nor any impairment or deterioration of the property or improvements.

The Mortgagor shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire and any hazards included within the term "extended

1

coverage" and such other hazards as the Mortgagee may require, but the Mortgagee may not require that the amount of coverage be greater than the amount still owing on the obligation secured by this Mortgage together with all amounts still owing on obligations secured by instruments superior in priority or the replacement value of the insurable improvements constructed on the Property, whichever is less.  The Mortgagee shall be named as a loss payee in any such policy.  All such policies of insurance shall include a standard mortgage clause requiring the carrier to notify the Mortgagee of any changes or lapses in coverage.  In the event that the Mortgagor fails to maintain coverage as provided hereinabove, the Mortgagee may, at the Mortgagee's option, obtain coverage to protect the Mortgagee's rights in the Property.

The Mortgagee shall have the right to make reasonable entries upon and inspections of the Property, provided that the Mortgagee gives the Mortgagor notice thereof at least forty-eight hours in advance specifying reasonable cause for the inspection.

The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to the Mortgagee.

If all of the Property which is the subject of this Mortgage is sold or transferred by the Mortgagor, without the prior written consent of the Mortgagee, the Mortgagee may, at the Mortgagee's option, declare all the sums secured by this Mortgage to be immediately due and payable.  Sale or transfer for the purposes of this paragraph shall not include (a) the creation of a lien or encumbrance subordinate to this Mortgage or (b) the grant of any leasehold interest of two (2) years or less.

In the event the ownership of the mortgaged Property or any part thereof becomes vested in a person other than the Mortgagor, the Mortgagee may, without notice to the Mortgagor, deal with the successor or successors in interest with reference to the Mortgage and the debt hereby secured, in the same manner as with the Mortgagor, without in any way vitiating or discharging the Mortgagor's liability hereunder upon the debt hereby secured.  Except as provided hereinabove and in the Note, no sale of the Property hereby mortgaged and no forbearance on the part of the Mortgagee and no extension of the time for the payment of this debt hereby secured given by the Mortgagee shall operate to release, discharge, modify, change or affect the original liability of the Mortgagor herein, either in whole or in part.

Upon the breach by the Mortgagor of any covenant or agreement in this Mortgage or the Note which it secures, the Mortgagee shall have the right to collect and receive all rents or other income generated by the Property and to apply them (less any costs associated with the operation of the Property) toward any sums due under this Mortgage or any Note secured hereby.

Upon the breach by the Mortgagor of any covenant or agreement in this Mortgage, the Note which it secures or any mortgage superior in priority to this Mortgage, the Mortgagee, may, at the Mortgagee's option, declare all the sums secured by this Mortgage to be immediately due and payable.

If foreclosure proceedings have been begun hereunder, the Mortgagee shall be entitled to collect all costs, attorney's fees, charges and expenses incurred up to the time of payment.

This Mortgage, in addition to the other conditions herein set forth, is upon the STATUTORY CONDITION, for any breach of which the Mortgagee or those claiming by, through or under said Mortgagee, shall have the STATUTORY POWER OF SALE.

The subject property is known as 105 Sunset Ln, Barnstable, Massachusetts.

For Title, see deed recorded with the Barnstable Division of the Land Court as Certificate of Title No. _____ .

WITNESS the execution hereof under seal this    day of December, 2019.


_____
Mark S. Scott, individually



STATE OF FLORIDA

 Miami-Dade, ss.                                                  December        , 2019

Then personally appeared the above-named Mark H. Scott, an individual personally known to me and acknowledged that he signed the foregoing instrument voluntarily as his free act before me.


_____
Notary Public

My commission expires:

<u>EXHIBIT A</u>

the land with the buildings thereon situated in Barnstable, Barnstable County and
described as follows:

LAND WITH THE BUILDINGS THEREON SHOWN ON
PLAN XXXXXXX

PROPERTY ADDRESS:  105 Sunset Ln
                   Barnstable, MA

# EXHIBIT E-2

# TERM PROMISSORY NOTE

**$150,000.00**                                                        December    , 2019

***FOR VALUE RECEIVED***, the undersigned, Mark S. Scott, individually and on behalf of any entities owned by him (the "undersigned" or "Maker"), of 600 Coral Way, 12th Floor, Coral Gables, FL 33134 promise to pay to the order of ███████████████████████ (with her successors and assigns, the "Lender"), at the Lender's address as the Lender shall specify from time to time, (i)   **ONE HUNDRED FIFTY THOUSAND ($150,000.00) DOLLARS**, (the "Original Debt") with interest thereon from the date of this note with interest from the date hereof at the annual rate of five (5.00%) percent with interest only to be paid on the anniversary date as herein after set forth and with the entire amount of unpaid principal and any unpaid interest hereunder being and payable in full in twelve (12) months from the date hereof and (ii) any other debt created or Damages (as defined below) of any kind  incurred by Lender (the "Additional Debt") going forward as per the same terms and conditions, except that any Additional Debt shall be payable twelve (12) months from the date the Additional Debt is created. Any Damages shall be payable no later than the last payment due under this Note. "Damages" shall mean any damages for lost wages and profits, debts to vendors incurred on incurred by virtue of construction delays or loss of the development all together.

The Original Debt was created due to construction measures necessary to (i) preserve the structure, (ii) pay for repairs and (iii) municipal invoices and (iv) real estate taxes of 105 Sunset Ln, Barnstable, MA 02630 (the "Property") while Maker's assets are frozen by the U.S. Government.  Not making these payments would have caused material financial harm and have put Lender's financial interest in the Property at risk.

         With respect to any payment due hereunder which is not received by the Note Holder within ten (10) days after the date it is due, the Maker shall pay to the Note Holder late charges in an amount equal to five (5%) percent of each said payment.

         If pursuant to the terms of this Note, the undersigned is at any time obligated to pay interest on the principal balance at a rate in excess of the maximum interest rate permitted by applicable law for the loan evidence by this Note, the applicable interest rate shall be immediately reduced to such maximum rate and all previous payments in excess of the maximum rate shall be deemed to have been payments in reduction of principal and not on account of the interest due hereunder.

         The undersigned shall have the right to make a prepayment of principal, in whole only; provided, however, that the entire amount of interest due hereunder pursuant to the terms of the first paragraph hereof shall be paid at such time, without a credit or reduction for the balance of the term of this note, except as set forth in said first paragraph.

         As security for the performance hereof, the undersigned has granted to the Lender a first mortgage, on all property and improvements located at 31 Dale Avenue, Hyannis Port.

         The Lender may at its option, after an Event of Default, demand, sue for, collect, or make

any compromise or settlement it deems desirable with reference to any Collateral.

Upon the occurrence of any one or more of the following ("Events of Default"), at the Lender's option and without demand, notice or protest (which are hereby waived), the entire unpaid balance of the within Note and all unpaid accrued interest hereunder shall become immediately due and payable and such Event of Default shall also constitute a default under all agreements between the Lender and the undersigned and all instruments and papers given the Lender by the undersigned, and without altering the demand nature of this Note if principal is due on demand: (a) The failure by the undersigned to pay when due (or upon demand, if payable on demand) any amount due hereunder or any other amount then owing by the undersigned to the Lender; (b) (the granting by the undersigned of any trust mortgage, assignment for the benefit of its creditors; or failure by the undersigned to pay its debts as they mature; or if the undersigned shall become insolvent; or any complaint, application, or petition is filed by or against the undersigned pursuant to the Bankruptcy Code as amended from time to time or pursuant to any other insolvency statute or procedure; the calling or sufferance of a meeting of creditors of the undersigned; or the initiation of any other judicial or non-judicial proceeding or agreement by or against the undersigned which seeks or intends to accomplish a reorganization or arrangement with the undersigned's creditors.

The terms and conditions of this Note and any agreement relating to collateral constitute the entire agreement, and supersede all prior agreements and understandings, both written and oral, of the Lender and the undersigned with respect to the subject matter hereof and of any such agreement, and may not be modified or amended except in writing and signed by the Lender.

No delay or omission on the part of the Lender in exercising any right hereunder shall operate as a waiver of such right or of any other right under this Note.  No waiver of any right shall be effective unless in writing and signed by the Lender nor shall a waiver on one occasion be construed as a bar to or waiver of any such right on any future occasion.

Each Obligor waives presentment, demand, notice, protest, and all other demands and notices in connection with the delivery, acceptance, performance, default or enforcement of this Note or of any Collateral, and assents to any extension or postponement of the time of payment or any other indulgence under this Note or with respect to any Collateral, to any substitution, exchange or release of any Collateral, and/or to the addition or release of any other party or person primarily or secondarily liable hereunder.

The undersigned will pay on demand all costs of collection and reasonable attorney's fees paid or incurred by the Lender in enforcing the Obligations of any Obligor.

Witness the execution hereof under seal on this        day of December, 2019.

WITNESSES:

_____          _____

                                         Mark S. Scott

3

# **EXHIBIT F**

Purchase of 105 Sunset Lane, Barnstable, MA
Date: November 13, 2017
Price: $2,310,000,00 / Scott contributed $1,310,000.00



**GOVERNMENT
EXHIBIT
2619-E**
17 Cr. 630 (ER)

Sourced from exhibits:

GX-814A-GX-814H, GX-716A-
GX-716E, GX-717A-GX-717G,

GX-3102, GX-3108, GX-3109,
GX-3110

Attorney's bank account



xxxx7100
DMS Cayman
MSS International Consultants BVI Ltd

$1,310,000.00
10/30/17

xxxx2901
LES FILS DREYFUS AND CIE S.A., SWITZERLAND
Marietta Halle

$999,970.00
10/31/17



xxxx9788
Sabadell / IberiaBank
Nicole J. Huesmann PA

$2,211,380.00
11/12/17



John W Kenney Client Trust

# **EXHIBIT G**

Doc:1,387,964 01-09-2020 1:54
BARNSTABLE LAND COURT REGISTRY

## MORTGAGE

MSSI 31 DALE AVE PROPERTY GROUP LLC, a Massachusetts limited (hereinafter referred to as the "Mortgagor") and Mark S. Scott, individually, of 600 Coral Way, Suite 12, Coral Gables, FL 33134

For consideration paid

grant to                    a Massachusetts corporation with an usual place of business at
                            (hereinafter referred to as the Mortgagee),
with MORTGAGE COVENANTS, to secure payment of at least Two Hundred Eighty-Nine Thousand Seven Hundred Seventy-five and 32/100 ($289,775.32) Dollars, payable as provided in my Note of even date (hereinafter referred to as the "Note"), that certain property described on "Exhibit A" attached hereto together with all the improvements now or hereafter erected on the property, and all easements appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Mortgage. All of the foregoing is referred to in this Mortgage as the "Property."

This mortgage secures to the Mortgagee (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced by the Mortgagee to protect the Mortgagee's interest hereunder; and (c) the performance of all of the Mortgagor's covenants and agreements under this Mortgage and the Note.

The Mortgagor covenants that he is lawfully seized of the estate hereby conveyed and that he has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. The Mortgagor warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

In the event of a default in the payment as required by the terms of the Note secured by this Mortgage, which default continues to exist for a period of thirty (30) days after the date on which said default occurs, said default shall constitute a breach of this Mortgage and the whole unpaid balance shall automatically become due and payable, at the election of the Mortgagee.

The Mortgagor shall pay when due all taxes, assessments, and governmental charges to whomever laid or assessed on the Property or on any interest therein or on the debt secured hereby.

The Mortgagor agrees to keep the Property and all improvements thereon in good condition and repair. Mortgagor will not commit or suffer any waste, nor any impairment or deterioration of the property or improvements.

The Mortgagor shall keep the improvements now existing or hereafter erected on the

1

/15/

Property insured against loss by fire and any hazards included within the term "extended coverage" and such other hazards as the Mortgagee may require, but the Mortgagee may not require that the amount of coverage be greater than the amount still owing on the obligation secured by this Mortgage together with all amounts still owing on obligations secured by instruments superior in priority or the replacement value of the insurable improvements constructed on the Property, whichever is less. The Mortgagee shall be named as a loss payee in any such policy. All such policies of insurance shall include a standard mortgage clause requiring the carrier to notify the Mortgagee of any changes or lapses in coverage. In the event that the Mortgagor fails to maintain coverage as provided hereinabove, the Mortgagee may, at the Mortgagee's option, obtain coverage to protect the Mortgagee's rights in the Property.

The Mortgagee shall have the right to make reasonable entries upon and inspections of the Property, provided that the Mortgagee gives the Mortgagor notice thereof at least forty-eight hours in advance specifying reasonable cause for the inspection.

The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to the Mortgagee.

If all of the Property which is the subject of this Mortgage is sold or transferred by the Mortgagor, without the prior written consent of the Mortgagee, the Mortgagee may, at the Mortgagee's option, declare all the sums secured by this Mortgage to be immediately due and payable. Sale or transfer for the purposes of this paragraph shall not include (a) the creation of a lien or encumbrance subordinate to this Mortgage or (b) the grant of any leasehold interest of two (2) years or less.

In the event the ownership of the mortgaged Property or any part thereof becomes vested in a person other than the Mortgagor, the Mortgagee may, without notice to the Mortgagor, deal with the successor or successors in interest with reference to the Mortgage and the debt hereby secured, in the same manner as with the Mortgagor, without in any way vitiating or discharging the Mortgagor's liability hereunder upon the debt hereby secured. Except as provided hereinabove and in the Note, no sale of the Property hereby mortgaged and no forbearance on the part of the Mortgagee and no extension of the time for the payment of this debt hereby secured given by the Mortgagee shall operate to release, discharge, modify, change or affect the original liability of the Mortgagor herein, either in whole or in part.

Upon the breach by the Mortgagor of any covenant or agreement in this Mortgage or the Note which it secures, the Mortgagee shall have the right to collect and receive all rents or other income generated by the Property and to apply them (less any costs associated with the operation of the Property) toward any sums due under this Mortgage or any Note secured hereby.
Upon the breach by the Mortgagor of any covenant or agreement in this Mortgage, the Note which it secures or any mortgage superior in priority to this Mortgage, the Mortgagee, may, at the Mortgagee's option, declare all the sums secured by this Mortgage to be immediately due and payable.

2

If foreclosure proceedings have been begun hereunder, the Mortgagee shall be entitled to collect all costs, attorney's fees, charges and expenses incurred up to the time of payment.

This Mortgage, in addition to the other conditions herein set forth, is upon the STATUTORY CONDITION, for any breach of which the Mortgagee on those claiming by, through or under said Mortgagee, shall have the STATUTORY POWER OF SALE.

The subject property is known as 31 Dale Avenue, Hyannis Port, Massachusetts.

For Title, see deed recorded with the Barnstable Division of the Land Court as Certificate of Title No. 214095.

WITNESS the execution hereof under seal this 7 day of December, 2019.

_____
Mark S. Scott, Manager

_____
Mark S. Scott, individually

STATE OF FLORIDA

Miami-Dade, ss.                                        December 27, 2019

Then personally appeared the above-named Mark S. Scott, an individual personally known to me and acknowledged that he signed the foregoing instrument voluntarily as his free act and deed as Manager of MSSI Dale Ave Property Group LLC, before me.

_____
Notary Public

My commission expires:

JASON GARCIA
Commission # GG 102265
Expires July 30, 2021
Bonded Thru Budget Notary Services

3

## EXHIBIT A

the land with the buildings thereon situated in Barnstable (Hyannis Port), Barnstable
County and described as follows:

LAND WITH THE BUILDINGS THEREON SHOWN ON
PLAN 13890-A

PROPERTY ADDRESS: 31 Dale Avenue
                  Hyannis Port, MA



*The Commonwealth of Massachusetts*
*Secretary of the Commonwealth*
*State House, Boston, Massachusetts 02133*

William Francis Galvin
Secretary of the
Commonwealth

**January 7, 2020**

TO WHOM IT MAY CONCERN:

I hereby certify that a certificate of organization of a Limited Liability Company was filed in this office by

## MSSI 31 DALE AVE PROPERTY GROUP LLC

in accordance with the provisions of Massachusetts General Laws Chapter 156C on **August 8, 2017.**

I further certify that said Limited Liability Company has filed all annual reports due and paid all fees with respect to such reports; that said Limited Liability Company has not filed a certificate of cancellation; that there are no proceedings presently pending under the Massachusetts General Laws Chapter 156C, § 70 for said Limited Liability Company's dissolution; and that said Limited Liability Company is in good standing with this office.

I also certify that the names of all managers listed in the most recent filing are: **MARK S. SCOTT**

I further certify, the names of all persons authorized to execute documents filed with this office and listed in the most recent filing are: **MARK S. SCOTT,**

The names of all persons authorized to act with respect to real property listed in the most recent filing are:

In testimony of which,

I have hereunto affixed the

Great Seal of the Commonwealth

on the date first above written.

William Francis Galvin

Secretary of the Commonwealth

Processed By:sam



BARNSTABLE REGISTRY OF DEEDS
John F. Meade, Register



# **<u>EXHIBIT H</u>**



**GOVERNMENT EXHIBIT 2617-D**
17 Cr. 630 (ER)

Purchase of 31 Dale Avenue, Hyannis Port, MA
Date: September 20, 2017
Price: $3,765,000.00

Sourced from exhibits: GX-1705A-GX-1705C,
GX-814, GX-716A-GX-716E, GX-717A-GX-717G
GX-717, GX-3113, GX-3114, GX-3115, GX-3116 and
GX-1356, GX-3101





**Attorney's bank account**

xxxx4760
Bank of Ireland
Fenero Tradenext Holding

$250,000.00
Additional cap contribution for
Railroad/Barnstable Property
development
06/19/17

xxxx7100
DMS Cayman
MSS International Consultants BVI Ltd

$2,000,000.00
Re: Purchase Coral Gables
07/14/17

$1,000,000.00
31 Dale Ave Acquisition
08/17/17

xxxx9788
Sabadell / IberiaBank
Nicole J. Huesmann PA

$5,000.00
31 Dale Ave Pur MSS
International and Folley
08/22/17

Oneill Real Estate Inc

$14,606.20
Flood and HO3 payment for 31
Dale Ave for MSS
09/07/17

Frank L Horgan Insurance Agency Inc

$185,000.00
Second deposit for MSS
purchase of 31 Dale Ave
09/07/17

John W Kenney Client Trust

$3,593,762.72
Purchase of 31 Dale Avenue
Cape Cod Massauchussets
09/20/17

# EXHIBIT I

**The Cooperative Bank of Cape Cod**

## Incoming Wire Detail

### General Information

| | |
|---|---|
| Wire Number | ███ |
| Type of Wire | International Incoming Wire |
| Wire Status | Posted |
| OFAC Status | OFAC Passed |

### Audit Trail

| | |
|---|---|
| Uploaded | 04/26/2019 08:30 AM |
| Released | 04/26/2019 09:19 AM by Egle Bakunaite |
| Posted | 04/26/2019 09:20 AM by System |

### Originator Instructions

| | |
|---|---|
| Originating FI | FIRSTCARIBBEAN INTERNATIONAL BANK B FCIBKYKYXXX GEORGETOWN BRANCH GEORGETOWN, CAYMAN ISLANDS Cayman Islands |
| Originator | MSS INTERNATIONAL CONSULTANTS (BVI) D 10462701 RITTER HOUSE, WICKAMS CAY II P.O. BOX 3170, ROAD TOW TORTOLA, VG1110 |

### Core Information

| | |
|---|---|
| Debit Account | FRB Master ███ |
| Fee Account | Checking ███ |
| Credit Account | Checking ███ |
| Credit Tran Code | 012 |
| Statement Description | Incoming Wire ███ MSS INTERNATIONAL CONSULTANTS (BVI) ███ |
| Reference Number | ███ |
| Override Flag | No |
| Wire Amount / Currency | $299,960.00 USD |
| Wire Fee | $0.00 Waive Fee |

### Basic Settlement Information

| | |
|---|---|
| Effective Date | 04/26/2019 Prior to today's date! |
| Sending FI | ███2 WELLSFARGO NY INTL |
| Receiving FI | ███ CC COOP YARMTHPORT |
| Fedwire Type | CTP 1000 |
| IMAD | ███7 |
| OMAD | ███ |
| Sender Reference | ███ |
| Format Version | 30 P |
| Fed Acceptance Date / Time | 0426 0930 |
| Acceptance Appl ID | FT03 |

### Beneficiary Instructions

| | |
|---|---|
| Beneficiary | ███ |
| Beneficiary Reference | ███ |
| Originator To Beneficiary | 31 DALE AVE |

1

# Wire Original Information Report

**Our Ref** █████████████

| ID | Category | Value |
|----|----------|-------|
| 1 | Data Source | User Modified(FedLineWIRE) |
| 2 | Date | 4/26/2019 |
| 3 | Description | Incoming Wire |
| 4 | Account | ██████████ |
| 5 | Type | DDA |
| 6 | Amount | $299,960.00 |
| 7 | Direction | Incoming |
| 8 | Name | ██████████ |
| 9 | Party Name | MSS INTERNATIONAL CONSULTANTS (BVI) |
| 10 | Party Addr | RITTER HOUSE, WICKAMS CAY II<br>P.O. BOX 3170, ROAD TOW<br>TORTOLA, VG1110 |
| 11 | Dom/Int | International |
| | Party Bank | FIRSTCARIBBEAN INTERNATIONAL BANK |