UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    - against -<br><br>MARK S. SCOTT,<br><br>                              Defendant. | No. S10 17 Cr. 630 (ER) |

**OPPOSITION TO GOVERNMENT'S APPLICATION FOR A RESTRAINING ORDER**

Arlo Devlin-Brown
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 841-1046

David M. Garvin
Law Offices of David M. Garvin, P.A.
200 South Biscayne Boulevard
Suite 3150
Miami, FL 33131
(305) 371-8101

*Counsel for Mr. Scott*

**Preliminary Statement**

The Government seeks a complete restraining order (the "Proposed Total Restraining Order"), attached as Exhibit A, which would immediately and indefinitely bar Mr. Scott from spending any money whatsoever on anything: not food, not his upcoming surgery, not his defense in his own case. That application should be denied, for three reasons.

First, there is no precedent or authority for the Government's extraordinary proposal that Mr. Scott be immediately barred from spending any money from any source on anything. The reasons for that should be obvious: such a complete bar on a defendant from feeding, sheltering, or caring for his family (including his cancer-stricken elderly mother and his three-year old son) from funds *entirely and indisputably unrelated to the offense* is inhumane. The federal statute governing restraining orders in service of forfeiture judgments permits the restraint of assets traceable to the charged offense, not of clean funds.

Second, the Government's proposal is entirely unnecessary. The Government has already seized or restrained all of the funds and other assets it has traced to the offense. Although hardly necessary, the Court could issue a further restraining order that would expressly bar him from using any assets derived from the offense conduct, regardless of whether expressly identified, while his case is pending. That would address the Government's purported concern that Mr. Scott may have assets traced to the offense beyond assets previously seized or restrained. We attach as Exhibit B a Modified Proposed Restraining Order that would accomplish just that.

Third, the Government's proposal would further jeopardize Mr. Scott's Sixth Amendment right to defend himself in this case by barring Mr. Scott from using funds even the Government agrees are entirely untainted for legal fees. Regrettably, and as discussed in more

1

detail below, the Government has refused to cooperate in providing the peace of mind Mr. Scott's bank (UBS) needs to release past due legal fees to Covington from specific accounts of Mr. Scott at UBS that the Government has *never seized, restrained or claimed in its forfeiture submission contain proceeds of the offense.* The Modified Proposed Restraining Order addresses this issue as well.

## Relevant Background

Since the outset of these proceedings, the Government has sought and obtained a number of seizure warrants and restraining orders to secure property the Government believes is traceable to the charged offense. Such actions simply preserve the status quo so that assets allegedly linked to an offense are available in the event the defendant is convicted. But the Government has also taken steps since shortly after Mr. Scott's arrest, which continue to this date, that have prevented Mr. Scott from accessing assets the Government has *never* alleged were linked to the offense to cover legal fees and other expenses, including extensive medical care.

The Government's conduct with respect to UBS has been particularly problematic and impactful, as detailed in declarations submitted by Mr. Scott's counsel attached hereto as Exhibits C (the "Devin-Brown Declaration") and D (the "Garvin Declaration"). Prior to indictment, the Government obtained seizure warrants for certain accounts Mr. Scott held at UBS and other financial institutions that it had alleged (in a probable cause application to a U.S. Magistrate Judge) could be traced to the offenses. However, of the seven accounts that Mr. Scott held at UBS, the Government alleged that only three held criminal proceeds and sought to seize only these three accounts. At no time in the more than two years that have since passed did the Government obtain an order to seize or restrain the other four accounts at UBS, including a

retirement account and 529 Plan account for his son's future education, among others (the "Unrestricted UBS Accounts").

Following his arrest, Mr. Scott sought to identify unrestrained funds to obtain counsel. On approximately October 1, 2018 he sought to transfer some of the funds in the Unrestricted UBS Accounts to attorney James Nobles. *See* Devlin-Brown Declaration, ¶ 4. Counsel understood that Mr. Scott intended to use some portion of this transfer, along with funds from other unrestrained sources, towards Covington's legal fees in order for Covington, which had appeared solely for the purposes of bail, to remain on the case. *Id*. The Government apparently became aware of the transfer and placed a call to UBS, which blocked it. *Id*. ¶ 5. Immediately following the call from the Government, UBS froze all of the accounts that Mr. Scott had at the bank in addition to the three the Government had obtained a judicial order to seize or restrain. Due to Mr. Scott's inability to access the Unrestricted UBS Accounts or obtain other unrestrained funds, Mr. Devlin-Brown and Covington were unable to continue representing Mr. Scott.[1]

At various points prior to trial, counsel for Mr. Scott sought to access funds in the Unrestricted UBS Accounts, but was informed by counsel for UBS that the bank required the comfort of a judicial order for these funds to be released. *See* Devlin-Brown Declaration, ¶ 8. The bank has made clear that it will take no position on a joint application to release funds from the Unrestricted UBS Accounts. *Id*. In July 2019, Mr. Garvin contacted the Government to ask for its cooperation in facilitating the release of funds in the Unrestricted UBS Accounts but was rebuffed. *See* Garvin Declaration, ¶ 3. The Government has continued to refuse to support an

---

[1] Covington became involved in the case again, substituting for attorney James Nobles, approximately two months prior to trial, after Mr. Scott was able to obtain limited funds for a partial payment towards Covington's expected legal fees.

application for release of legal fees from the Unrestricted UBS Accounts. *See* Devlin-Brown Declaration, ¶ 9.

In fact, rather than provide UBS with the peace of mind it requires to release assets the Government has never alleged are tainted, much less sought to seize, the Government is now moving in the opposite direction. The Proposed Total Restraining Order would bar Mr. Scott from accessing any assets whatsoever, even if entirely untainted, for any purpose. This would continue to bar Mr. Scott from accessing any funds from UBS or any other source to support his Sixth Amendment right to counsel. But it would go far beyond that as well, barring Mr. Scott from using *any* money or other assets from any source for any reason, including food and urgent medical needs.

## Applicable Law

A court may issue an order to restrain a defendant charged with money laundering from accessing "property constituting . . . proceeds" of the offense until the case is fully adjudicated. Specifically, 21 U.S.C. § 853(e) provides that a court "may enter a restraining order . . . to preserve the availability of" such property.

However, there is a significant difference in the Government's right to restrain offense property, and its right to restrain substitute assets ("any other property of the defendant," 21 U.S.C. § 853(p)(2)) that *cannot* be traced to the offense. While the Government's right to offense property, under the "relation back" provision of 21 USC § 853(c), "vests in the United States upon the commission of the act giving rise to forfeiture," the statute lacks any such provision for substitute property. *See United States v. Egan*, 2015 WL 4772688, at *4 (S.D.N.Y. Aug. 13, 2015) ("[T]here is no explicit relation-back provision for substitute assets in § 853"). Similarly, the protective order provision of 853(e) that allows for an entry of a restraining order

for offense property, described above, does not provide that substitute property may be restrained prior to trial. *See United States v. Jarvis*, 499 F.3d 1196, 1199 n. 3 (10th Cir. 2007) ("Section 853(e) does not . . . explicitly provide for pre-trial restraint of § 853(p) substitute property.").

In fact, each of the eight circuits to address the issue has concluded that Section 853(e) does not permit a court to restrain substitute assets prior to the judgment of conviction. *See United States v. Chamberlain,* 868 F.3d 290, 296–97 (4th Cir. 2017) (noting that the Fourth Circuit had previously been alone in permitting pre-trial restraint of substitute assets and concluding in light of Supreme Court precedent that the seven circuits to hold the opposite were correct).  This includes the Second Circuit, which held that the materially identical provision of the RICO forfeiture statute "plainly states what property may be restrained before trial . . . and that description does not include substitute assets," *United States v. Gotti*, 155 F. 3d 144, 149 (2d. Cir. 1998).[2] *See also United States v. Perkins*, 994 F. Supp. 2d 272, 275 (E.D.N.Y. 2014) (quoting *United States v. Jarvis*, 499 F.3d 1196, 1204 (10th Cir. 2007) ("[F]orfeiture of substitute property cannot occur until after the defendant's conviction and a determination by the trial court that the defendant's act or omission resulted in the court's inability to reach [the forfeitable property].")); *United States v. Kramer*, 2006 WL 3545026, at *6–8 (E.D.N.Y. Dec. 8, 2006) ("[T]he Government has no colorable property interest in substitute assets of a defendant at least until the time of conviction."); *United States v. Espada*, 128 F. Supp. 3d 555, 556 (E.D.N.Y. 2015) (finding that the Government's interest in the defendant's pension did not vest

---

[2] As noted by the Fourth Circuit in *Chamblerlain*, the law in other circuits is in accord. *See United States v. Field*, 62 F.3d 246, 249 (8th Cir. 1995) (permitting restraint of substitute actions only after judgment of conviction); *United States v. Ripinsky*, 20 F.3d 359, 361 (9th Cir. 1994) (same); *United States v. Floyd*, 992 F.2d 498, 501–02 (5th Cir. 1993) (same); *United States v. Parrett*, 530 F.3d 422, 431 (6th Cir. 2008) ("21 U.S.C. § 853 does not provide authorization for the federal government to place restraints on substitute property prior to entry of an order of forfeiture."); *Jarvis*, 499 F.3d at 1204 (same); *United States v. Riley*, 78 F.3d 367, 371 (8th Cir. 1996) (same, interpreting the provision in the RICO context).

until the court entered a preliminary order forfeiting it as substitute property at time of sentencing).

Indeed, constitutional as well as statutory barriers protect against the restraint of assets used by a criminal defendant for his defense. In *Luis v. United States,* 136 S. Ct. 1083, 1088 (2016), the Supreme Court held that the pretrial restraint of untainted assets to retain counsel of choice violates the Sixth Amendment.

## Argument

The Government seeks, before the entry of any judgment of conviction and corresponding forfeiture order (or even a ruling on Mr. Scott's post-trial motions), an absolute freeze on Mr. Scott spending any funds, even those indisputably unrelated to OneCoin. Its Proposed Total Restraining Order is an unprecedented and unacceptable overreach that would deprive Mr. Scott, without any basis, from accessing untainted funds to cover basic living expenses for his family and his own substantial uninsured medical expenses. It also continues to jeopardize his Sixth Amendment rights.

Unsurprisingly, the Government offers *no* precedent for such a broad post-trial restraining order and cites only to catch all All Writs Act, 28 U.S.C. § 1651, as a purported basis for this authority. Worse, the Government fails to inform the Court that every single circuit court to address the issue – including the Second Circuit in *Gotti* – has held that the forfeiture statutes permit the Government to restrain substitute assets only upon a judgment of conviction or upon entry of a forfeiture order. Relying on the All Writs Act to restrain substitute assets when Congress has expressly excluded the restraint of such assets from the forfeiture statute is problematic at best, and should be reserved for measured relief: not an order like the Proposed

Total Restraining Order that would bar a defendant from accessing any funds from any source for any reason.

Indeed, the sole case from this circuit that the Government offers as support for its ability to restrain untainted assets after a jury verdict but prior to sentencing in fact shows just how far afield the Government has gone here. *See United States v. Numisgroup Int'l Corp.*, 169 F. Supp. 2d 133 (E.D.N.Y. 2001). In *Numisgroup*, the court agreed to restrain one specific asset of the defendant's – seized collectible coins – that the Government demonstrated the defendant was likely to dissipate before the defendant could pay a forfeiture judgment that had already been entered. No forfeiture judgment has been entered here. But more critically, the restraining order in *Numisgroup* case was highly targeted: it did not bar the defendant from using other untainted assets beyond the specified coins.[3] Here the Government's Proposed Total Restraining Order seeks to restrain "any and all property, or interests in property, held by Mark Scott." Simply put, the Government cannot point to a single case anywhere that provides the unprecedented relief it is now seeking: a freeze on Mr. Scott spending any untainted money for anything.

The Proposed Total Restraining Order would also continue impacting Mr. Scott's right to use funds the Government has *not* alleged to be proceeds of the offense to mount a legal defense. Tellingly, in the two years since it selectively seized some UBS accounts while leaving others untouched, the Government has never once alleged to the Court – including in its instant

---

[3] The three cases to which it cites from other circuits also do not remotely support the proposition that the Government can restrain all assets of a defendant pending sentencing. In *United States v. Swenson*, the court held that the defendant, following his conviction on securities and wire fraud counts, could not challenge a seizure warrant seizing assets held in six specific accounts that he held at TD Ameritrade, when the Government had sought forfeiture of those accounts based in part on fraud charges, 2014 WL 2506300, *2–4 (D. Idaho June 3, 2014); in *United States v. Kilbride*, the court prevented the defendant from "dissipat[ing] or mov[ing] funds" in a single specified account without the court's permission, 2007 WL 2990116, at *2 (D. Ariz. Oct. 11, 2007); *United States v. Wahlen*, entirely inapposite, dealt with joint versus individual property interests.

7

forfeiture and restraining order application – that the funds in any of the Unrestricted UBS Accounts were tainted.  The Government's instant forfeiture application identified numerous accounts that the Government asserted were proceeds of the offense *but do not identify the Unrestricted UBS Accounts as such*.  Instead, the Government identified the Unrestricted UBS Accounts as "substitute assets" – i.e. assets the Government may seek to forfeit if traceable proceeds are unavailable.  Gov't Br. at 7.  Yet despite this, the Government has continued to refuse defense counsel's request to support a Court order that would give UBS the comfort it requires to release funds from accounts the Government has never alleged contained criminal proceeds to pay Covington for Mr. Scott's already-incurred and ongoing legal fees.  Mr. Scott has a Sixth Amendment right to counsel of his choice and the Supreme Court has made clear that a defendant can use untainted funds for just this purpose. *See Luis*, 136 S. Ct. at 1088 (holding that "the pretrial restraint of legitimate, untainted assets needed to retain counsel of choice violates the Sixth Amendment").[4]

      The Government will likely take the position that it did not *direct* UBS to block Mr. Scott from accessing these Unrestricted UBS Accounts to pay for his defense when it contacted UBS shortly after Mr. Scott's arrest about a transfer Mr. Scott had initiated for defense counsel.  It was coincidence, in the Government's telling, that UBS spontaneously blocked these accounts after the Government called the bank about the transfer, not Governmental direction.  But even if the Government was not behind UBS's original decision to block access to the Unrestricted UBS Accounts, it has been the Government – and the Government alone – that has been the barrier to

---

[4] Notwithstanding that the Government has never alleged that the funds in the Unrestrained UBS Accounts contained criminal proceeds – and its listing of these accounts as simply substitute assets in its forfeiture application – the Government has told counsel that it is confident that only some of the funds, albeit a significant portion, in the Unrestricted UBS Accounts are untainted.  But, the Government has refused to consent to the release of even those funds to cover legal expenses.

Mr. Scott accessing those funds since that point. Counsel for UBS has made it clear that if the Government consents to Mr. Scott's use of the funds for legal fees, UBS will release them upon the Court's endorsement. *See* Devlin-Brown Declaration, ¶ 8. To suggest UBS, and not the Government, is the party blocking Mr. Scott's access to untainted funds for legal fees is to elevate form before substance. The reality is that the Government has blocked Mr. Scott from using untainted funds to address the debt he has incurred for legal services to date and is jeopardizing his ability to defend himself at sentencing.

Finally, the Government's legitimate objectives can be accomplished without the unprecedented and draconian remedy it seeks, and without infringing on Mr. Scott's right to counsel. The Government has already seized and/or restrained millions of dollars in assets that it contends are linked to the charged offense. While the Government complains in its application that Mr. Scott has previously dissipated property that was alleged proceeds of the offense but not specifically named in prior restraining orders, the solution is not the remedy the Government proposes. The Court could enter a new blanket restraining order preventing him from using any assets traceable in any way to the alleged offense (including all proceeds from the Fenero Funds), *regardless of whether the asset was specifically identified in any previous order*. This would maintain the status quo until further proceedings with respect to any funds or assets the Government asserts are linked to the offense and thus forfeitable. Accordingly, Mr. Scott has submitted as Exhibit B a Modified Proposed Restraining Order that would bar Mr. Scott from using such assets, while enabling UBS to release the funds from the Unrestricted UBS Accounts to Covington in payment of Mr. Scott's outstanding legal fees.

## **CONCLUSION**

For the reasons stated above, the Government's Proposed Total Restraining Order should be rejected and the Court should enter the Modified Proposed Restraining Order attached as Exhibit B.

Respectfully Submitted,

Dated: December 7, 2020

/s/ Arlo Devlin-Brown

Arlo Devlin-Brown
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 841-1046

David M. Garvin
Law Offices of David M. Garvin
200 South Biscayne Boulevard
Suite 3150
Miami, FL 33131
(305) 371-8101

*Counsel for Mr. Scott*