# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MARK S. SCOTT,<br><br>   Defendant. | DECLARATION IN SUPPORT OF DEFENDANT'S FORFEITURE MOTION.<br><br>S10 17 Cr. 630 (ER) |

DAVID GANNAWAY, of full age, does hereby certify as follows:

1.  I am an Executive Vice President at J.S. Held LLC ("JSH"), in the Forensic Accounting and Economics group. The JSH firm was asked by defense counsel to provide forensic accounting and financial tracing services. In particular, and as described in more detail below, I was asked to evaluate the tracing of funds alleged to be involved in a wire fraud scheme relating to OneCoin to various accounts associated with the Fenero Funds. My conclusion, further described below, is that the Government has failed to establish that funds from U.S. investors in OneCoin were transferred to the Fenero Funds. In fact, the Government's tracing analysis as detailed by Senior Financial Intelligence Analyst Rosalind October is flawed in numerous respects and does not establish the source of the vast majority of money transferred to accounts associated with the Fenero Funds.

**Education, Qualifications, and Relevant Experience**

2.  I have a Bachelor of Science in accounting from Bristol College and a Master of Business Administration from Fordham University. I am a Certified Valuation Analyst, a

Page 1 of 17

Certified Fraud Examiner, a Certified Anti-Money Laundering Specialist, and an Enrolled Agent to practice before the Internal Revenue Services ("IRS").

3. I worked for the IRS from 1987 to 2007. As a former IRS Examination Division Revenue Agent and IRS Criminal Investigation Special Agent with roughly 20 years of experience, I have substantial experience in tracing assets in white-collar financial fraud schemes involving tax evasion, money laundering, and asset seizure / forfeitures matters.

4. As an IRS Criminal Investigation Assistant Special Agent in Charge of the New York Field Office from 2005 to 2007, I had management oversight of five supervisory special agents and approximately 75 special agents who were conducting white collar financial fraud investigations involving income tax evasion, Bank Secrecy Act, and money laundering / asset seizure allegations.

5. Further, for the 75 special agents that were within my responsibility, I was the approving official for initiating, discontinuing, and submitting prosecution recommendations to the U.S. Attorney's Office for money laundering and asset seizure investigations in the Eastern and Southern Districts of New York.

6. Lastly, I had management oversight of a supervisory special agent and approximately 10 special agents who were dedicated to investigating asset forfeiture / seizure related cases that involved the movement of funds alleged to have been involved in or traceable to specified unlawful activities.

7. In 2007, I left the IRS and entered private practice. In one of my areas of practice, I provide various services to clients, such as forensic accounting, forensic auditing, valuation, advisory and litigation support.

8. I joined the JSH Firm in 2020.

**Materials Reviewed**

9.      In preparing this affidavit I have relied on the following: (1) Government's Preliminary Order of Forfeiture as to Specific Property and Substitute Assets and Exhibits dated August 31, 2020, including the declaration of Manhattan District Attorney financial analyst Rosalind October; (2) Government and Defense Trial exhibits, particularly bank records; (3) trial transcripts; and (4) documents provided in discovery.

**Tracing of U.S. OneCoin Funds to the Fenero Funds**

Overview

10.     I was asked by counsel to identify what funds – if any – from U.S. purchasers of OneCoin can be traced to the Fenero Funds. Notably, the Government's forfeiture submission and October's accompanying Declaration do not allege that funds from U.S. purchasers of OneCoin were transferred to the Fenero Funds. At trial, the Government presented evidence of payments by two U.S. purchasers of OneCoin: Linda Cohen and William Horn. However, there is no evidence that the combined $49,210.64 in transfers by these individuals were ultimately sent to the Fenero Funds.

11.     Both Cohen and Horn sent money to a TD Bank account numbered xxxx7544 (the "TD 7544 Account") in the name of SecurePoint Corporation, 45 Harvey Mill Road, Lee, New Hampshire, opened by Jesse A. Lowther and Robert L. Stewart on August 15, 2015. Upon review of October's trial testimony, it does not appear that these account holders were identified further or that any connection between them, SecurePoint, and OneCoin was established. Horn wired $6,062.60 to the TD 7544 Account on January 20, 2016 (GX-2811), and Cohen wired $22,577.29 to the TD 7544 Account on February 17, 2016. (GX-731-A)

12. Cohen and Horn's respective transactions of $22,577.29 and $6,062.60 are the only two deposits into the TD 7544 Account that the Government identified as payments connected to the OneCoin wire fraud scheme. The aggregate amount of these total investments represents only 0.27% of the total deposits of $10,568,472.73 made between August 17, 2015 and April 18, 2017. Of this total sum deposited into the TD 7544 Account, $2,287,642.67 was transferred to approximately 35 beneficiaries in the United States between November 13, 2015 and April 14, 2017. The remaining $8,058,373.26 was transferred to Bannockburn Global (a foreign exchange provider) (the "Bannockburn Account") during the period December 17, 2015 and May 13, 2016. The Bannockburn Account transacted about 110 separate currency swaps and made transfers to 13 non-U.S. banks in nine different countries from December 8, 2015 and September 27, 2016. In addition to the $8,058,373.26, the Bannockburn Account received deposits of $15,798,358.53 from sources that cannot be determined from the evidence provided. Accordingly, Cohen and Horn's investments constitute a tiny fraction of this total amount.

13. In addition, Horn also wired $20,570.75 to an account numbered xxxx6108 at Kreissparkasse Steinfurt Bank, Ibbenbueren, Germany ("the Kreissparkasse 6108 Account") on January 20, 2016. (GX-2804)

14. As detailed below, neither the Cohen or Horn payments can be traced to the Fenero Funds based on fundamental principles of forensic accounting.

***Linda Cohen Transaction $22,577.29***

15. On February 16, 2016, the day before Cohen's deposit of $22,577.29, the ending balance of the TD 7544 Account was $1,297,865.31. (GX-723-B)

16. On February 17, 2016, Linda Cohen sent $22,577.29 from her HSBC bank account numbered xxx7664 to the TD 7544 Account in payment of US2 Moon Invoice Order 8804009. (GX-731-A)

17. On February 17, 2016, there were 26 deposits totaling $125,587.23 and 29 withdrawals totaling $295,315, for an ending balance of $1,128,137.54. (GX-723-B)

18. On February 18, 2016, there were 32 deposits totaling $206,833.04 and 32 withdrawals for an ending balance of $1,334,490.58. (GX-723-B)

19. On February 19, 2016, there were 22 deposits totaling $141,814.42 and 26 withdrawals for an ending balance of $1,474,581. (GX-723-B)

20. Following Cohen's transfer to the TD 7544 Account on February 17, 2016, GX-2626, a summary chart introduced into evidence by the Government, shows subsequent transfers of funds from the TD 7544 Account to two accounts: (1) the Kreissparkasse 6108 Account, and (2) an account numbered xxxx6682 at United Overseas Bank in the name of IMS International Marketing Services GmbH ("the United 6682 Account"), via the Bannockburn Account.

    a. *The Kreissparkasse 6108 Account.* On February 19, 2016, the Bannockburn Account processed a transaction wherein on February 22, 2016, $279,475 was debited from the TD 7544 Account and €250,000 was credited to the Kreissparkasse 6108 Account. (GX-730-A) This was the first transfer from the TD 7544 Account to the Kreissparkasse 6108 Account subsequent to the deposit of Cohen's funds.

        i. It is not possible to determine whether Cohen's funds were included in this wire transfer because the TD 7544 Account balance prior to as well as after her deposit was in excess of $1 million. When Cohen's funds were deposited into the Bannockburn Account, it already had in it other pre-existing funds, the origin or

nature of which was not explained by the Government. Notwithstanding this, the Government summary chart GX-2626 communicates that her funds were included within the forex transfer to the Kreissparkasse 6108 Account, something that cannot be established.

b. *The United 6682 Account.* On March 18, 2016, Bannockburn Account processed a transaction wherein $116,346.76 was debited from the TD 7544 Account at the exchange rate of €1 to $1.1384 and was credited to the United 6682 Account via the Bannockburn Account. (GX-730-A) This was the first transfer from the TD 7544 Account to the United 6682 Account subsequent to the deposit of Cohen's funds on February 17, 2016, occurring over one month later. (GX-730-A)

    i. Moreover, the United 6682 Account was opened on February 4, 2016 and the first statement provided was dated May 1, 2016, with an opening balance of €38,464,405.36. (GX-820-B) Therefore, no tracing could have been completed for this account between February 4, 2016 and April 30, 2016, which leaves a wide gap in time as well as many potential transactions for which the source of funds cannot be determined.

    ii. Further, the arrow on GX-2626 showing the flow of funds to the United 6682 Account is misleading, as the bank statements for the United 6682 Account are not available from when it was opened on February 4, 2016 through April 30, 2016 to properly trace any inflows or outflows of funds. Secondly, the initial wire transfer from the Bannockburn Account to the United 6682 Account did not occur until March 18, 2016, or more than 30 days after the Cohen deposit.

21.     On GX-2626, the transactions listed and arrows showing the flow of funds give the reader the impression that Cohen's $22,577.29 deposit was transferred to the Bannockburn Account, and then to the Kreissparkasse 6108 Account and the United 6682 Account, though there is no basis for concluding that Cohen's funds were so transferred.  In contrast, as discussed above and as shown in Exhibits A-1 and A-2, the underlying evidence is much more complex. The evidence shows that the TD 7544 Account sent money to 35 domestic beneficiaries as well as to the Bannockburn Account, which made transfers to 13 non-U.S. banks in nine different countries.  GX-2626 makes no mention of the 35 domestic beneficiaries, and only identifies three of the 13 non-U.S. banks.  There is no evidence to suggest that Cohen's transfer went into either the Kreissparkasse 6108 Account or the United 6682 Account as depicted by the Government on GX-2626.

22.     The Cohen deposit of $22,577.29 on February 17, 2019, for tracing purposes, is property involved in or traceable to the TD 7544 Account only.  The $22,577.29 cannot be selectively removed from the TD 7544 Account and allocated to a specific wire transfer to a non-U.S. bank when over $1.2 million in funds were on deposit the day before and $1.1 million in funds remained at the end of day on February 17, 2016.

***William Horn Transaction $6,062.60***

23.     On February 24, 2016, the day before the William Horn $6,062.60 deposit, the ending balance of the TD 7544 Account was $1,285,598.97.  (GX-723-B)

24.     On February 25, 2016, there were 42 deposits totaling $224,594.91, and 47 withdrawals totaling $30,976.75 for an ending balance of $1,479,217.13.  (GX-723-B)

25.     On February 26, 2016, there were 44 deposits totaling $219,668.31 and 53 withdrawals totaling $398,763.72 for an ending balance of $1,300,121.72.  (GX-723-B)

26. On February 25, 2016, William Horn sent $6,062.60 from his Peoples B&T Co of Pickett County to the TD 7544 Account in payment of Tycoon Academy Package (FCA Moon Learning).  (GX-2811)

27. On February 26, 2016, the Bannockburn Account processed a transaction wherein a $332,667.72 debit was recorded to the TD 7544 Account and €300,025 was credited to the Kreissparkasse 6108 Account.  (GX-730-A)

28. Given the number of transactions on February 25, 2016 and February 26, 2016, as described above, it is not possible to determine whether William Horn's funds were included in the withdrawals or remained in the closing balance.

29. Furthermore, it is not possible to determine whether William Horn's funds were included in the wire transfer to the Kreissparkasse 6108 Account on February 26, 2016 or on any other date, as shown on the Government's summary chart, GX-2623.  As noted previously, the TD 7544 Account sent funds to 35 domestic beneficiaries as well as to the Bannockburn Account, which then made transfers to 13 non-U.S. banks in nine different countries, one of which was the Kreisseparkasse 6108 Account.  *See* Exhibits A-1, A-2.  However, it cannot be said that Horn's funds ended up in this, or in any other, account.

***William Horn Transaction $20,570.75***

30. In addition, Horn also wired $20,570.75 from his American Bank & Trust of the Cumberlands Tennessee to the Kreissparkasse 6108 Account on January 20, 2016.  (GX-2804)

31. On January 20, 2016, one day before the William Horn $20,570.75 deposit, the ending balance of the Kreissparkasse 6108 account was €11,258,334.29.  (GX-819-B)

32. On January 21, 2016, there were 271 deposits totaling €966,635.42 and one withdrawal totaling €4,347,677.25 for an ending balance of €7,877,292.46.  (GX-819-B)

33. On January 22, 2016, there were 318 deposits totaling €968,872.06, and one withdrawal totaling €5,006,283 for an ending balance of €3,839,881.52. (GX-819-B)

34. Given the number of transactions on January 21, 2016 and January 22, 2016, as described above, it is not possible to determine whether William Horn's funds were included in the withdrawals or remained in the closing balance.

35. Furthermore, between January 21, 2016, the date of Horn's deposit, and March 15, 2016 the day before the €60,000,000 transfer from Kreissparkasse 6108 account into an account at Commerzbank ending in 2001 (the "Commerzbank 2001 Account"), there were a total of 26,061 deposits totaling €102,674,108.69, and 1,985 withdrawals totaling €48,896,230.01. (GX-819-B)

36. Given the number of transactions between January 21, 2016 and March 15, 2016, as described above, it is not possible to determine whether William Horn's funds were included in the wire transfer to the Commerzbank 2001 Account on March 16, 2016, or on any other date.

**Source of Funds Analysis for the Fenero Funding Accounts**

Overview

37. I was also asked by counsel to identify if the funds transferred to the Fenero Funds can be traced to proceeds of a U.S. wire fraud scheme, as well as to OneCoin more generally.

38. The October Declaration asserts that €354,000,000 and $9,990,185 from nine accounts (the "Funding Accounts") funded four accounts in the name of Fenero, and that the proceeds in these accounts were all linked to OneCoin. The four accounts in the name of Fenero are: (1) an account ending in 6102 at DMS Cayman in the name of Fenero Equity Investments LP (the "Fenero 6102 Account"); (2) an account ending in 84102 at DMS Cayman in the name

of Fenero Financial Switzerland (the "Fenero 84102 Account"); (3) an account ending in 3464 at DB International Limited in the name of Fenero Equity Investments (Cayman) I, L.P. (the "Fenero 3464 Account"); and, (4) an account at Deutsche Bank Cayman Island ending in 3465 in the name of Fenero Equity Investment II L.P. (the "Fenero 3465 Account").

39.     In her testimony at trial, October stated that her concern was "the source of funds. Where is the money coming from?" (Tr. at 1543)  I agree that identifying the source of funds is crucial in any tracing analysis.  However, the tracing analysis conducted by October fell well short of this standard.  She failed to establish that the Fenero Funds were funded exclusively or even predominantly with funds linked to OneCoin, and failed to identify the source of funds deposited into the Funding Accounts.

40.     For six of the nine Funding Accounts, no evidence has been provided or reflected in bank records that the source of funds in these accounts came from activity related to OneCoin.  Accordingly, all the funds transferred from these accounts into the Fenero Funds should be excluded from the asset forfeiture calculations.

> a. **The OCBC 7201 Account.**  No records have been provided for the OCBC Account numbered xxxx7201 in the name of IMS Pte (the "OCBC 7201 Account").  (GX-2602)
>
>> i.   There were transfers on June 20, 2016 and June 21, 2016 from OCBC 7201 Account.  On each of these dates, €5,000,000 was deposited into the Fenero 6102 Account.  (GX-812-B)
>>
>> ii.  The deposit information / transaction detail appears to have been produced by records from the Fenero 6102 account.

        iii.    As previously stated, no bank records have been made available for the OCBC 7201 Account to determine the ownership of the account, and the source of funds that were transferred to the Fenero 6102 Account.

        iv.    Therefore, without these records, the source of funds cannot be determined, and the €10,000,000 listed should be excluded from the asset forfeiture calculation.

b.    ***The DSK 6342 Account.***  Documents provided for the account numbered xxxx6342 (the "DSK 6342 Account") in the name of B and N Consult LTD were provided in a foreign language, for which no translation was provided.

        i.    There were transfers on June 8, 2016, June 14, 2016, and June 20, 2016 from the DSK to the Fenero 6102 Account in the amount of €5,000,000 each (GX-816-B), as well as one transfer of €4,500,000 on August 11, 2016 into the Fenero 3464 Account.  (GX-816-B)

        ii.    The account statements provided for the DSK account have limited information written in English.  Therefore, the source of the deposits could not be determined.  (GX-816-B)

        iii.    Since the source of funds cannot be determined, the €19,500,000 listed should be excluded from the asset forfeiture calculation.

c.    ***The DBS 7960 Account.***  An account numbered xxx7960 in the name of Star Merchant Inc. Limited (the "DBS 7960 Account") was opened on April 29, 2016 by Cai Zhoulong.  (GX-808-A)  The account application reflects that this business was incorporated on July 19, 2013 in Hong Kong.

        i.      There were 16 wires sent between August 5, 2016 to October 20, 2016 totaling €95,000,000 into the Fenero 3464 Account. (GX-809-A)

        ii.     The bank statements for the DBS 7960 Account do not provide any description of the debits or credits. (GX-808-A)

        iii.    Therefore, the source of funds cannot be determined and the €95,000,000 listed should be excluded from the asset forfeiture calculation.

d.    **The OCBC 0301 Account.** No records have been provided for the OCBC account numbered xxxx0301 in the name of IMS Pte LTD ("the OCBC 0301 Account").

        i.      The €5,000,000 debited from this account was identified on the bank records from the credits / deposits into of the Fenero 3464 Account. (GX-809-A)

        ii.     Therefore, without the bank / financial records relative to this account, the ownership of the account and the source of funds cannot be determined. The €5,000,000 listed should be excluded from the asset forfeiture calculation.

e.    **The Morgan Stanley 0653 Account.** On June 29, 2016 and June 30, 2016, $2,000,000 and $3,000,000 respectively, were sent from an account at Morgan Stanley ending in 0653 (the "Morgan Stanley 0653 Account") to the Fenero 3465 Account"). (GX-711-B)

        i.      These two transactions caused the Morgan Stanley 0653 Account to be overdrawn in the amount of $5,027,585.57. (GX-711-B) This account continued to post a negative balance until September 1, 2016, when

$5,027,585.57 was internally transferred from an account at Morgan Stanley ending in 4653 ("the Morgan Stanley 4653 Account"). (GX-711-B)

ii. There are numerous transfers between several U.S.-based banks and financial accounts in the name of Fates Group LLC with some of the sources being from Zala Group, which is also based in the U.S. Again, the Government's forfeiture submission and October's accompanying Declaration does not allege that funds from U.S. purchasers of OneCoin were transferred to the Fates or Zala Groups financial accounts.

iii. Based on the transaction descriptions and bank records provided, there has not been any tracing by October to support the asset forfeiture amount of $5,000,000 as reported on GX-2602. Therefore, the $5,000,000 deposited to the 3465 Fenero Account should not be subject to asset forfeiture.

iv. **The Morgan Stanley 4653 Account.** The Morgan Stanley Account 4653 in the name of Fates Group LLC was opened by Gilbert Armenta on February 8, 2016. (GX-710-A) The initial deposit of $4,882,835.89 was received on February 19, 2016 by wire transfer from Bank United in the name of Zala Group LLC. (GX-710-B) These proceeds were used to purchase stocks and corporate bonds traded on the U.S. markets.

    (1) On March 11, 2016, the Morgan Stanley 4653 Account received a $3,568,071.30 wire transfer from U.S. based Ocean Bank account numbered xxxx2805 in the name of Fates Group LLC.

(GX-710-B) These funds were used to purchase stocks and corporate bonds traded on the U.S. markets. $5,027,585.57 from the Morgan Stanley 4653 Account was transferred into the Morgan Stanley 0653 Account to cover the overdrawn account balance. (GX-710-B)

f.   *The Sabadell 1736 Account.*  An account numbered xxxx1736 at Sabadell Bank in the U.S. was opened by Gilbert Armenta on March 8, 2016 ("the Sabadell 1736 Account"). (GX-716-A) An initial deposit of $2,000,000 was received on March 21, 2016 by wire transfer from Ocean Bank headquartered in Miami, Florida, from account numbered xxxx1392 in the name of Zala Group LLC. (GX-716-E)

    i.   On September 13, 2016, $4,990,185 was transferred from the Sabadell 1736 Account to the Fenero 3465 Account. (GX-716-B)

    ii.  The source of funds to cover this debit transaction came from deposits on September 9, 2016 and September 12, 2016 in the amounts of $985,000 and $4,195,998.24, respectively:

        (1)   The $985,000 originated from the Morgan Stanley 4653 Account which, as previously described, derived from sales of stocks and corporate bonds traded on the U.S. markets. (GX-710-B)

        (2)   The Sabadell 1736 Account bank statement description section states that the $4,195,998.24 deposit was from an internal transfer from account numbered 1000001517 (GX-716-B), which appears to be another bank account at Sabadell. There were no bank

        statements provided for this account to determine the source of deposits into it.

        iii.    Based on the transaction descriptions and bank records provided, there has not been any tracing completed by October to support the asset forfeiture amount of $4,990,185 as reported on GX-2602. Therefore, the $4,990,185 deposited to the Fenero 3465 Account should not be subject to asset forfeiture.

41.    For three of the nine accounts that sent money to the Fenero Funds, there are indications that these accounts may have been used, at least in part, to collect deposits from OneCoin purchasers *outside* the U.S. However, October did not trace any U.S. funds to these accounts.

        a.    ***The Commerzbank 2001 Account.*** The Commerzbank 2001 Account in the name of IMS International Marketing Services GmbH was opened on March 6, 2016 by Frank Robert Ricketts, Kathrin Epping, and Helke Maria Schmidt. (GX-806-A) The first transaction was a deposit of €60,000,000 on March 16, 2016 from the 6108 Account. (GX-806-B)

        i.    From June 2, 2016 to June 8, 2016, there were seven transfers of €5,000,000 each, totaling €35,000,000, from the Commerzbank 2001 Account to the Fenero 6102 Account. (GX-806-B)

        ii.    The Government has not offered any evidence linking any deposits originating from the U.S. into the Commerzbank 2001 Account.

        b.    ***The Deutsche Bank 8901 Account.*** The Deutsche Bank Account numbered xxxx8901 ("the Deutsche Bank 8901 Account") in the name of IMS

International Marketing Services GmbH was opened on April 11, 2016 by Elisabeth Manon Hubenthal, Helke Maria Schmidt and Kathrin Epping. (GX-811-A)

    i. The bank statements / records for the period April 11, 2016 through April 30, 2016 were not provided.

    ii. The opening balance on May 1, 2016 was €0.00. The first deposit was on May 31, 2016 in the amount of €3,000,000. (GX-811-B) The source of the deposit was from the Commerzbank 2001 Account.

    iii. There were eight €5,000,000 transfers totaling €40,000,000 from June 2016 through August 2016 into the Fenero 6102 Account. (GX-812-F)

    iv. There has been no evidence admitted by the Government linking any deposits originating from the U.S. into the Deutsche Bank 8901 Account.

c. **The United 6682 Account**: The United 6682 Account was opened on February 4, 2016 by Frank Robert Ricketts and Elisabeth Manon Huebenthal. The account application reflects that this business was incorporated on October 22, 2013 in Singapore. (GX-820-A)

    i. There were 11 transfers from May 30 to July 29, 2016 totaling €55,000,000 into the Fenero 6102 Account (GX-812-B), seven transfers from September 9 to September 30, 2016 June 8, 2016 totaling €60,000,000 into the Fenero 84102 Account (GX-813-B), and from August 10 to October 27, 2016, six wire totaling €34,500,000 into the Fenero 3464 Account. (GX-809-A)

      ii.      The first bank statement available is for the period May 1, 2016 through May 31, 2016.  The opening balance as of May 1, 2016 was €38,464,405.36.  (GX-820-B)

      iii.      A summary chart prepared by the Government, GX-2614, reflects that four transfers were made from the Kreissparkasse 6108 Account to the United 6682 account on April 5, 2016 totaling €33,400,000.  Records for the Kreissparkasse 6108 Account reflect that four debits were made payable to International Marketing Services totaling €33,400,000.  However, these records do not identify which bank or bank account number the funds were sent to.  (GX 819-B)

      iv.      Further, the first bank statement provided for the United 6682 Account is dated May 1, 2016.  (GX 820-B)  Therefore, no tracing to determine the source of funds could have been completed for this account between February 4, 2016 (the account opening date) and April 30, 2016, which leaves a wide gap in time along with minimal or numerous potential transactions that have not been analyzed to make any factual determinations.

      v.      The Government has not identified any evidence linking any deposits originating from the U.S. into the United 6682 Account.

I declare under penalty of perjury, pursuant to 28 U.S.C. Section 1746, that the foregoing is true and correct.

Dated:  December 7, 2020

By: _____
       DAVID GANNAWAY