# EXHIBIT 2

Filing # 115515768 E-Filed 10/23/2020 12:47:54 PM

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO: 2020-012112-CA-01
COMPLEX BUSINESS DIVISION

MARIETTA HALLE,

   Plaintiff,

vs.

MARK SCOTT and LIDIA SCOTT,

   Defendants.

_____/

## AMENDED COMPLAINT

Plaintiff, MARIETTA HALLE, pursuant to Fla. R. Civ. P. 1.190(a), hereby files this amended complaint and sues defendant MARK SCOTT and defendant LIDIA SCOTT, and as grounds therefore, Plaintiff alleges, as follows:

## PARTIES AND JURISDICTION AND VENUE

1.      Plaintiff, MARIETTA HALLE ("MARIETTA") is a resident of Broward County, is above the age of 18, and is otherwise *sui juris*.

2.      Defendant MARK S. SCOTT ("MARK") is a former Florida lawyer, currently suspended by the Florida Bar and ineligible to practice law in Florida. MARK is a former equity partner at the law firm Locke Lord LLP, is a resident of Miami-Dade County, is above the age of 18, and is otherwise *sui juris*. MARIETTA and her deceased husband, Jens Halle retained MARK as their lawyer. Mr. Halle, a business client of MARK, died in 2015. Upon his death, MARK became legal counsel to MARIETTA. MARK represented MARIETTA in the probate of Mr. Halle's significant estate in the United States, Austria, and Germany. MARK continued to act as MARIETTA's attorney up and through the end of 2019. MARIETTA looked to MARK as both a trusted legal advisor and as a friend. MARK is married to defendant LIDIA SCOTT.

3.      Defendant LIDIA SCOTT ("LIDIA") is a resident of Miami-Dade County, is above the age of 18, and is otherwise *sui juris*.   LIDIA is married to MARK.

4.      This Circuit Court, and its' Complex Business Litigation Section, has subject matter jurisdiction of suit because this matter involves breaches of contracts and the amount in controversy exceeds $750,000.00, exclusive of attorneys' fees, interest, or costs.   *See,* Eleventh Judicial Circuit in and for Miami-Dade County, Administrative Order, 17-11, Section 3.A.

5.      Proper venue of this lawsuit lies with this Circuit Court in Miami-Dade County, Florida, pursuant to Fla. Stat §47.011 on the grounds that Miami-Dade County: i) is where the causes of action asserted herein accrued; and ii) where all of the defendants reside.

## GENERAL ALLEGATIONS

### A.      THE FORMATION OF MSSI 105 SUNSET LN PROPERTY GROUP, LLC

6.      After Mr. Halle's death, MARK solicited MARIETTA in 2017 to become partners with him in purchasing an investment property in Cape Cod, Massachusetts.   As set forth in paragraphs 18 to 24, below, MARK's capital contribution to the investment was obtained via bank fraud and money laundering.   The chosen property has a street address of 105 Sunset Lane, Barnstable MA 02630 (the "Property").

7.      The business premise was to purchase the Property, an exclusive beachfront vacation rental home, which would in turn be rented to generate income and profits.   Those profits would be shared between MARK and MARIETTA based upon their membership interest in a duly organized Massachusetts limited liability company.

8.      In furtherance of that business plan, in the fall of 2017, MARK incorporated, in Massachusetts, a single purpose entity known as MSSI 105 Sunset Ln Property Group, LLC (hereinafter, the "Company") which is co-owned by MARK with a 56.71% member interest (for his $1,310,000 capital contribution from laundered money) and is co-owned by MARIETTA with

a 43.29% member interest (for her $1,000,000 capital contribution from her inheritance).   The

Company's principal place of business is a law office located at 150 Alhambra Circle, Suite 1200,

Coral Gables, Florida, 33134.

9.     On October 24, 2017 MARK caused the Company's certificate of organization to

be filed with the Secretary of Commonwealth of Massachusetts, Division of Corporations.

MARK and MARIETTA then entered into the Company's November 7, 2017 operating

agreement, a copy of which is attached to the original Complaint as Exhibit "A" (the "Operating

Agreement"), as is incorporated herein.

10.    At all relevant times, MARK and MARIETTA were (and are) the sole members of

the Company.   MARK has served as the sole manager of the Company since January 24, 2018.

MARK has not filed the requisite annual reports for the Company with the Division of

Corporations for 2019 or 2020.

B.     MARK GETS INDICTED AND CONVICTED IN THE U.S. DISTRICT COURT FOR
       THE SOUTHERN DISTRICT OF NEW YORK FOR CONSPIRACY TO COMMIT
       MONEY LAUNDERING AND CONSPIRACY TO COMMIT BANK FRAUD.

11.    On September 5, 2018, the U.S. District Court for the Southern District of New

York in a case styled *U.S.A. v. Mark S. Scott,* Case No. 17-Cr.-630, USDC SDNY (J. Ramos),

unsealed a four-count criminal indictment against MARK for money laundering, bank fraud, and

entering into a conspiracy to commit both.

12.    MARK laundered approximately $400 million in proceeds of a massive

international cryptocurrency fraud scheme known as "OneCoin" through fraudulent investment

funds that MARK set up and operated for that purpose.   MARK was paid more than $50 million

for his money laundering services, which he used to buy luxury cars, a yacht, and several seaside

homes, including the purchase of the Property.

13.    In August of 2019, as MARK was preparing for his criminal trial, MARK contacted

MARIETTA seeking to borrow $500,000 "so that he could pay his criminal defense lawyer dream team".   MARIETTA agreed.   In connection with the loan, MARK prepared the August 14, 2019 Secured Promissory Note in the principal amount of $500,000, a copy of which is attached to the original Complaint as Exhibit "B," and is incorporated herein.   In exchange for MARK AND LIDIA's execution and delivery of the Secured Promissory Note, MARIETTA wired MARK's criminal counsel the requested $500,000.

14.     In November of 2019, MARK was tried in a 3-week jury trial in the Southern District of New York on two counts: i) conspiracy to commit money laundering; and ii) conspiracy to commit bank fraud.   On November 21, 2019, the jury returned a unanimous verdict convicting MARK on both counts.   MARK is scheduled to be sentenced on December 17, 2020 before the Honorable Edgardo Ramos.

15.     MARIETTA has retained the undersigned law firm and has agreed to pay them a reasonable fee.

16.     All conditions precedent to the filing of this instant lawsuit have occurred or have been waived.

### COUNT I – FRAUDULENT INDUCEMENT
(AGAINST MARK ONLY)

17.     MARIETTA incorporates and realleges the allegations in paragraphs 1 through 16 of this Amended Complaint as if fully set forth herein.

18.     On October 8, 2019, a grand jury empaneled in the Southern District of New York rendered a superseding indictment against MARK, a copy of which is attached hereto under Tab 1.   In the superseding indictment, the grand jury found that MARK's participation in the conspiracy to commit money laundering began "in or about September 2015", as set forth in the below screenshot:

*Marietta Halle v. Mark & Lidia Scott*
*Complaint*
*Page 5*

## COUNT ONE
### (Conspiracy to Commit Money Laundering)

The Grand Jury charges:

1. From at least in or about September 2015 through in or about 2018, in the Southern District of New York and elsewhere,

MARK S. SCOTT, the defendant, and others known and unknown, knowingly did combine, conspire, confederate, and agree together and with each other to commit money laundering, in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 1956(a)(2)(B)(i).

*See,* October 8, 2019 Superseding Indictment, Tab 1, ¶1 (highlighting added for emphasis).

19.     In the superseding indictment, the grand jury found that MARK's participation in the conspiracy to commit bank fraud began "in or about September 2015", as set forth in the below screenshot:

## COUNT TWO
### (Conspiracy to Commit Bank Fraud)

The Grand Jury further charges:

4. From at least in or about September 2015 through in or about 2018, in the Southern District of New York and elsewhere, MARK S. SCOTT, the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit bank fraud, in violation of Title 18, United States Code, Section 1344.

*See,* October 8, 2019 Superseding Indictment, Tab 1, ¶4 (highlighting added for emphasis).

20.     From 2015 through the unsealing of his indictment in September of 2018 MARK committed fraud upon MARIETTA by failing to tell her that he was involved in laundering $400

million in proceeds from a cryptocurrency Ponzi scheme since "in or about September 2015".

"Florida law recognizes that fraud can occur by omission." *ZC Ins. Co. v. Brooks*, 847 So. 2d 547,

551 (Fla. 4th DCA 2003); *see also Berg v. Capo*, 994 So. 2d 322, 327 (Fla. 3d DCA 2007) ("Fraud

may be established by either an intentional misrepresentation or omission of a material fact.").

21.     From the moment his original indictment was unsealed in September of 2018

through the present day, MARK committed fraud upon MARIETTA by repeatedly telling her that

he was innocent and that he was not a money launderer and not a bank defrauder. MARK told

MARIETTA it was just a big misunderstanding related to one bank transaction.   MARIETTA

was justified in relying upon MARK'S claims of innocence because of the close bond they had

established through their attorney-client relationship.

22.     At all material times hereto, MARK knew he was a money launderer and a bank

defrauder and that his denials to the contrary were false and misleading.

23.     In 2017 when MARK solicited MARIETTA to invest in the Company and

purchase the Cape Cod summer rental Property, MARK omitted to tell MARIETTA the material

fact that: i) MARK was a money launderer and bank defrauder; and ii) the proceeds that MARK

would use for his $1.31 million investment were the fruits of his money laundering/bank fraud.

24.     MARK omitted these material fact in order to induce MARIETTA to invest her $1

Million in the Company.  If MARIETTA knew that MARK was a money launderer and bank

defrauder, MARIETTA would not have gone into business with MARK.  As a result of MARK's

fraudulent inducement to MARIETTA to enter into the Operating Agreement, MARIETTA has

been damaged.

25.     On August 15, 2019, MARK fraudulently induced MARIETTA to "lend" him

$500,000 by entering into the Secured Promissory Note on the assurances that he was innocent

and not a money launderer/bank defrauder.  MARK knew that was false.  MARK intended for

MARIETTA to rely upon his claims of innocence in order to induce her to give him the $500,000.

26.    In addition, MARK further fraudulently induced MARIETTA into "lending" MARK the $500,000 by sending MARIETTA an August 11, 2020 email wherein MARK told MARIETTA:

> <u>i promise none of your money will be at risk and will be paid back either way within 6 months from now the latest.</u> If all goes well in 2. . . .
> <u>Never would I shift my risk to you.</u> I am only asking for you to help me quickly monetize existing assets that cannot be challenged by the government as they have already cleared. They also cleared you as a source of funding. <u>And I am providing full short term collateral to completely cover your risk and make some money on interest.</u>

27.    Earlier in the August 11, 2020 email to MARIETTA, MARK assured MARIETTA that the Secured Promissory Note and the collateral provided upon default was "a simple solution that ensures you carry **<u>NO</u>** financial risk." The bolded, all-capped and underlined "no" in the preceding quote is original and was MARK's handiwork to induce his client MARIETTA to lend him the $500,000.

28.    Also contained in that same August 11, 2020 email is MARK'S false statement to MARIETTA that one of the items MARK pledged as collateral and assigned to MARIETTA was the repayment to MARIETTA of 300,000 Great Britain Pounds owed to MARK:

> I have a GBP 300,000 (US-$ 350,000) Promissory Note payable to me upon Lilly Becker's divorce from Boris Becker, which should not be later than in February 2020.

29.    MARK further explained the terms of that Lily Becker promissory note in another email the same day.   Below is a screenshot of this second email:

*Marietta Halle v. Mark & Lidia Scott*
*Complaint*
*Page 8*

**From:** mark Scott <mark@msscottlaw.com>
**Subject: SB Note attached - Confidential**
**Date:** August 11, 2019 at 10:38:52 AM EDT
**To:** "'Marietta Halle (marietta.halle@gmail.com)'" <marietta.halle@gmail.com>

Good morning Marietta,

I have attached the Note from Lilly Becker, so that you can see what I am even talking about. The Note has increased to almost GBP 300,000 by now and will be rapid either at the time that Lilly and Boris are ordered there final decree by the judge in February 2020 or whenever they settle, which could be within a few short weeks as everyone's working on it and willing. As per the Judge, Boris will have to pay to Lilly a minimum alimony payment of GBP 3,000,000, with half due immediately, excluding any childcare etc. Lilly is due to pay the Note as she receives "any" payments.


Just to show you this all has real value.

Best regards,

Mark


Mark S. Scott, Esq.
Managing Member

MARK S. SCOTT, P.L.
Attorneys at Law
2525 Ponce de Leon Blvd
Suite 300
Coral Gables, FL 33134
(786) 544-4994
mark@msscottlaw.com

The use the red font for emphasis is MARK's artistic touch and designed to induce his client into lending him the $500,000 on false terms.

30.     As it turns out, MARK refuses to help MARIETTA to recover the money from Lily Becker, Lily Becker refuses to take MARIETTA's calls, and MARK stated in his interrogatory responses that the debt is now only 185,000 Great Britain Pounds.

31.     MARIETTA reasonably relied upon MARK's misstatements and omissions set forth above in lending MARK the $500,000, and as a result MARIETTA has been damaged.

WHEREFORE, based upon the foregoing, MARIETTA HALLE, respectfully requests that the Court enter final judgment for compensatory damages in her favor and against MARK SCOTT, which judgment shall include prejudgment and post-judgment interest, court costs any other relief that this Court deems just and proper.

## COUNT II – BREACH OF CONTRACT (THE OPERATING AGREEMENT)
### (AGAINST MARK ONLY)

32.     MARIETTA incorporates and realleges the allegations in paragraphs 1 through 16 of this Amended Complaint as if fully set forth herein.

33.     MARIETTA entered into a written contract with MARK, the terms of which are memorialized in the Operating Agreement, which is attached to the original complaint as Exhibit "A."

34.     On or about April 20, 2020, MARIETTA, via counsel, sent a demand to MARK requesting the right to inspect the Company's books and records, pursuant to Section 10.2 of the Operating Agreement, the pertinent portion of which is highlighted below:

> 10.2     Books and Records. The books and records of the Company shall be maintained at the principal office of the Company. Each Member has the right, upon reasonable request and during normal business hours, to inspect such records.

*See,* Complaint, Exhibit "A," Operating Agreement, Section 10.2 (highlighting added for emphasis).

35.     MARK refused to provide MARIETTA with the above requested records and thus breached the Operating Agreement.

36.     On or about April 20, 2020, MARIETTA, via counsel, sent a demand to MARK requesting the right to inspect the Company's "financial, accounting and banking information" pursuant to Section 10.4 of the Operating Agreement, the pertinent portion of which is highlighted below:

> 10.4   <u>Financial Information</u>.  The Manager(s) shall maintain, or cause to be maintained,
> the financial records of the Company and each Member shall have access to all financial,
> accounting and banking information with respect to the Company.

*See,* Complaint, Exhibit "A," Operating Agreement, Section 10.4 (highlighting added for

emphasis).

37.   MARK refused to provide MARIETTA with the above requested records and thus

breached the Operating Agreement.

38.   On or about April 20, 2020, MARIETTA, via counsel, sent a demand to MARK

requesting the right to inspect the Company's pertinent tax information for each taxable year

pursuant to Section 10.5 of the Operating Agreement.

39.   MARK breached this provision of the Operating Agreement by not providing this

information to MARIETTA annually, nor in response to her April 20, 2020 demand.

40.   To induce MARIETTA to invest her $1,000,000 into the Company, MARK

guaranteed MARIETTA a minimum $60,000 annual return, no matter the financial results of the

Company.   This $60,000 "Annual Guaranteed Payment" is memorialized in Section 4.1(a)(1) of

the Operating Agreement.

41.   MARK breached the Operating Agreement by failing to pay MARIETTA her

$60,000 "Annual Guaranteed Payment" for years 2018 and 2019.

42.   Section 6.12 of the Operating Agreement addresses conflicts of interest and this

provision prohibits MARK from causing the Company to entering into business transactions that

benefit MARK unless the terms of that transaction "are no less favorable than the Company could

obtain from unrelated third parties."   Section 6.12 is set forth in a screenshot below.

> 6.12   <u>Conflicts of Interest</u>.  Subject to the other express provisions of this Operating
> Agreement, each Manager, Member and Officer of the Company at any time and from time to time
> may engage in and possess interests in other business ventures of any and every type and
> description, independently or with others,  with no obligation to offer to the Company or any other
> Member, Manager or Officer the right to participate therein.  The Company may transact business
> with a Manager, Member, Officer or affiliate thereof, provided the terms of those transactions are
> no less favorable than those the Company could obtain from unrelated third parties.

*See,* Complaint, Exhibit "A," Operating Agreement, Section 6.12 (highlighting added for emphasis).

43.      MARK has breached this provision by allowing his friends and associates to stay in the Property free of charge, without the obligation of paying rent, causing the Company to lose hundreds of thousands of dollars in income and profits.

44.      Pursuant to Section 6.3(c) of the Operating Agreement, in order for the Company to obtain a mortgage on the Property, both MARK and MARIETTA had to agree, in writing:

> 6.3    Member Approval Required for Major Decisions. Notwithstanding anything to the contrary in this Agreement, the following actions (the "Major Decisions") shall require the prior written consent and approval of all Members:
>
> (a)    The Transfer of all or substantially all the assets of the Company;
>
> (b)    The acquisition, sale, lease, exchange or other Transfer by the Company of any real property with a fair market value greater than $10,000.00;
>
> (c)    The granting of any mortgage, lien, claim, encumbrance or security interest with respect to the Company's assets, as security for the debts and obligations of the Company or otherwise, if the amount exceeds $10,000.00;

*See,* Complaint, Exhibit "A," Operating Agreement, Section 6.3(c) (highlighting added for emphasis).

45.      MARIETTA has learned that without her knowledge or written consent as required above, MARK caused the Company to apply for a loan and mortgage agreement with UBS Bank whereby MARK pledged the Property as collateral.   Attached to the original Complaint as Exhibit "C" is a copy of the Property's insurance declaration pages, which show that UBS Bank is the first mortgagee on the Property.   Below is a screenshot of that information from page 2 of Exhibit "C":

*Marietta Halle v. Mark & Lidia Scott*
*Complaint*
*Page 12*

0600635
12/12/19

First Mortgagee
Loan 1805006893
UBS BANK CO CENTRAL LOAN ADMIN & REPORT
ISAOA ATIMA
PO BOX 202028
FLORENCE SC 29502-2028

46.     MARK has breached Section 10.4 of the Operating Agreement by: i) failing to provide MARIETTA with a copy of the loan application to UBS pledging the property as collateral as requested pre-litigation (as set forth in paragraphs 36 and 37 above); ii) failing to provide a copy of the loan application in MARK's production of documents in response to MARIETTA's request for production; and iii) fighting a subpoena to UBS for the loan application and related documents. MARIETTA as a member of the Company "shall have access to all financial, accounting and banking documents with respect to the Company."   *See,* Operating Agreement at Section 10.4.

47.     Article XII of the Operating Agreement has certain pre-suit obligations as a condition precedent to the filing of a lawsuit.   Those obligations have either been complied with or waived by MARK.   Counsel for MARIETTA attempted in good faith to negotiate these disputed issues with counsel for MARK, to no avail.   Also, through counsel, MARIETTA requested that the parties schedule a mediation with a Massachusetts certified mediator, and MARK, through counsel refused the request.

48.     Pursuant to Section 13.8 of the Operating Agreement, MARK and MARIETTA agreed that the Operating Agreement would be construed and governed under Massachusetts law.

49.     As a result of the breaches of the Operating Agreement set forth in this breach of contract count, MARIETTA has been damaged.

**WHEREFORE,** based upon the foregoing, MARIETTA HALLE, respectfully requests that the Court enter final judgment for compensatory damages in her favor and against MARK

SCOTT, which judgment shall include contractual attorneys' fees and costs pursuant to the Operating Agreement,   prejudgment and post-judgment interest, court costs any other relief that this Court deems just and proper.

## COUNT III – BREACH OF CONTRACT (SECURED PROMISSORY NOTE)
### (AGAINST MARK AND LIDIA)

50.     MARIETTA incorporates and realleges the allegations in paragraphs 1 through 16 of this Amended Complaint as if fully set forth herein.

51.     On or about August 14, 2019 MARK borrowed $500,000 from MARIETTA as memorialized in the Secured Promissory Note, a copy of which is attached to the original Complaint as Exhibit "B".

52.     MARIETTA owns and holds the original Secured Promissory Note.

53.     The Secured Promissory Note provided that the principal and all accrued interest was due to be repaid MARIETTA, in full, by or on March 15, 2020.

54.     MARK failed to repay the Secured Promissory Note as promised, resulting in a breach.   MARK is now in default.   Per the terms of the Secured Promissory Note, the note is now accruing default interest at the rate of 15% per annum.   MARK has further breached the Secured Promissory Note by failing to take any steps to transfer the secured collateral to MARIETTA.

55.     The Secured Promissory Note is collateralized with a schedule of assets set forth in Exhibit "A," thereto.   It also further defines LIDIA's obligations to transfer the collateral as set forth in the following screenshot:

> In the event Mr. Scott is unavailable, for any reason, including his demise, Lidia Scott shall be responsible to pay out of Marital Assets to the Lender any interest payments from other existing transactions between the Borrower and Lender, such as or example the $60,000 annual distribution stemming from 105 Sunset Ln, Barnstable development project.

56.     First, MARK is "unavailable" to repay MARIETTA out of his personal or marital

assets because i) the Secured Promissory Note is past due and owing and MARK refuses to liquidate the collateral for MARIETTA's benefit (indeed, he and LIDIA are fighting MARIETTA every step of the way); ii) the U.S. Government has frozen MARK's personal and marital assets pursuant to court orders and the U.S. Government seeks to forefeit MARIETTA's collateral at a future forfeiture hearing in the SDNY; and iii) MARK is "unavailable" to repay MARIETTA because he is presently "in jail" pursuant to a home incarceration order from the SDNY, as per the below screenshot:

( ☒ ) (p) participate in one of the following location restriction programs and comply with its requirements as directed.
    ( ☐ ) (i)  **Curfew.** You are restricted to your residence every day ( ☐ ) from _____ to _____ , or ( ☐ ) as directed by the pretrial services office or supervising officer; or
    ( ☐ ) (ii)  **Home Detention.** You are restricted to your residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities approved in advance by the pretrial services office or supervising officer; or
    ( ☒ ) (iii)  **Home Incarceration.** You are restricted to 24-hour-a-day lock-down at your residence except for medical necessities and court appearances or other activities specifically approved by the court.

57.    LIDIA signed the Secured Promissory Note and is identified as a "Co-Signor" and as the "POA and Executor of the Marital Assets." As "Co-Signor", LIDIA has defaulted under her obligations to take steps as the "POA and Executor of the Marital Assets" to transfer the collateral to MARIETTA to satisfy the debt.

57.    As a result of their breaches set forth above, MARIETTA has been damaged.

**WHEREFORE**, based upon the foregoing, MARIETTA HALLE, respectfully requests that the Court: i) enter final judgment for compensatory damages in her favor and against MARK SCOTT and LIDIA SCOTT, jointly and severally, which final judgment shall include contractual collection costs, attorneys' fees, prejudgment default interest, post-judgment interest, and court costs; and ii) enter an equitable lien upon the identified collateral and any other assets of MARK SCOTT and LIDIA SCOTT; and iii) any other relief that this Court deems just and proper.

## COUNT IV – BREACH OF FIDUCIARY DUTY
### (AGAINST MARK ONLY)

58.    MARIETTA incorporates and realleges the allegations in paragraphs 1 through 16 of this Amended Complaint as if fully set forth herein.

59.     MARIETTA and MARK, as her lawyer up through December 2019, share a relationship whereby MARIETTA reposed trust and confidence in MARK, and ii) MARK undertook such trust and assumed a duty to advise, counsel and/or protect MARIETTA.   In handling MARIETTA's interests in her deceased husband's estate, MARK became aware of the sizable amount of assets that MARIETTA would inherit.   He used his leverage as her trusted lawyer to gain her confidence to enter into the Operating Agreement and the Secured Promissory Note.

60.     MARK breached this duty to MARIETTA by entering into, and then engaging in, business transactions with MARIETTA that were unfair to MARIETTA and favorable to MARK. Further MARK failed to adequately disclose his innate conflict of interest with MARIETTA in: i) entering into the Operating Agreement with MARIETTA; and ii) entering into the Secured Promissory Note with MARIETTA.   In entering both business arrangements with MARIETTA, MARK failed to give MARIETTA all the information and advice which it would have been MARK's duty to give if the transaction were made with a stranger.

61.     In the Operating Agreement, MARK buried at the last paragraph of the 22nd page a small disclaimer that MARIETTA was advised of the conflict of interest and given the right to seek counsel.   This waiver is ineffective because: i) MARK failed to disclose sufficient information and advice on the investment to MARIETTA; and ii) MARK discouraged MARIETTA from obtaining independent legal counsel   Set forth below is the brief email exchange between MARK and MARIETTA, which was the only discussion MARK had with MARIETTA on the issue of conflict of interests and MARK's potential overreaching/fairness of the deal to MARIETTA:

*Marietta Halle v. Mark & Lidia Scott*
*Complaint*
*Page  16*

**From:** Marietta Halle <marietta.halle@gmail.com>
**Sent:** Saturday, June 6, 2020 9:52 AM
**To:** John M. Quaranta <john.quaranta@quaranta.law>
**Subject:** 105 Sunset Lane

Begin forwarded message:

**From:** "Mark S. Scott" <msscott@msicbvi.com>
**Subject:** Re:
**Date:** November 4, 2017 at 9:33:57 PM EDT
**To:** Marietta Halle <marietta.halle@gmail.com>

I have to put that in being a licensed attorney and having represented you before.  Have the obligation to point that out and remind you that you have that option. You don't have to.

Mark S. Scott
Chief Executive Officer

MSS International Consultants (BVI), Ltd.
BVI Registered and Approved Fund Manager

Email Address: msscott@msicbvi.com
Tel. +1-305-587-4030
Fax +1 786-513-7770

Sent from my BlackBerry KeyOne device - the most secure mobile device. Please excuse short responses and typos.

**From:** marietta.halle@gmail.com
**Sent:** November 4, 2017 9:29 PM
**To:** msscott@msicbvi.com
**Subject:**

Only 1 question  -  13.16
Have I been advised to consult with separate and independent counsel? Do I need to?  :-))

*See,* MARK and MARIETTA email thread, attached hereto under Tab 2 (highlighting added

for emphasis).   As such, when directly questioned by MARIETTA as to whether she needed

independent legal counsel, MARK discouraged MARIETTA by insinuating that it was simply a

formality and then stating to her "you don't have to."

      62.    MARK breached his fiduciary duty by the fraud he committed on MARIETTA with

respect to the Operating Agreement as set forth in paragraphs 21 through 24 above.   MARK

further breached his fiduciary duty to MARIETTA with respect to the Operating Agreement as set

      63.    MARK breached his fiduciary duty by the fraud he committed on MARIETTA with

respect to the Secured Promissory Note as set forth in paragraphs 25 through 31 above.   MARK

further breached his fiduciary duty to MARIETTA with respect to the Secured Promissory Note as set forth in paragraphs 51 through 54 above, which are hereby realleged.

64.    As a result of MARK's breaches of fiduciary duty to MARIETTA, MARIETTA has been damaged.

WHEREFORE, based upon the foregoing, MARIETTA HALLE, respectfully requests that the Court enter final judgment for compensatory damages in her favor and against MARK SCOTT, which judgment shall include prejudgment and post-judgment interest, court costs any other relief that this Court deems just and proper.    Additionally, MARIETTA reserves the right to amend this pleading to assert a claim against MARK for punitive damages.

## COUNT V – FRAUDULENT INDUCEMENT
### (AGAINST LIDIA ONLY)

65.    MARIETTA incorporates and realleges the allegations in paragraphs 1 through 16 of this Amended Complaint as if fully set forth herein.

66.    LIDIA fraudulently induced MARIETTA to enter into the Secured Promissory Note by agreeing to sign the document and claim the fictitious title of "POA and Executor of Marital Assets".    At the time LIDIA signed the document, LIDIA knew, or should have known, that the pledged collateral was either forfeited, assigned, or had values significantly less than stated on Exhibit A to the Secured Promissory Note.

67.    As further evidence of the sham, LIDIA was never given a power of attorney from MARK or LIDIA would have produced it in discovery, and LIDIA did not.

68.    LIDIA knew when she signed the Secured Promissory Note her signature was an imprimatur that would convince MARIETTA that her repayment was assured.    Similarly, LIDIA knew when she signed the Secured Promissory Note, her bogus title of "POA and Executor of Marital Assets" was an additional imprimatur that would further convince MARIETTA that her loan was safe and her repayment assured.    And that is exactly what happened, MARIETTA

*Marietta Halle v. Mark & Lidia Scott*
*Complaint*
*Page 18*

placed great importance on LIDIA's signature and title, leading MARIETTA to sign the Secured

Promissory Note and lend MARK the $500,000.

     69.    As a result of LIDIA's fraud, MARIETTA has been damaged.

## JURY TRIAL DEMAND

    MARIETTA demands a jury trial on all issues for which a jury trial is afforded under the

law.

                  Respectfully submitted,

                  QUARANTA P.A.
                  814 Ponce de Leon
                  Blvd. Suite 201
                  Coral Gables, FL
                  33134 Telephone
                  305.930.6077
                  By: ***/s/ John M. Quaranta***
                      JOHN M. QUARANTA (FBN 940641)
                      Email: john.quaranta@quaranta.law
                      Secondary:
                      kristine.rodriguez@quaranta.law

                  *Co-Counsel for the Plaintiff*

                  **LAW OFFICE OF NEIL G. TAYLOR, P.A.**
                  SunTrust Plaza, Suite 1050
                  201 Alhambra Circle
                  Coral Gables, FL 33134
                  Telephone: 305.858.2233

                  By: ***/s/ Neil G. Taylor***
                      NEIL G. TAYLOR (FBN 283029)
                      Email: ngt@bellsouth.net

                  *Co-Counsel for Plaintiff*

*Marietta Halle v. Mark & Lidia Scott*
*Complaint*
*Page  19*

## CERTIFICATE OF SERVICE

I hereby certify that pursuant to Florida Rule of Judicial Administration 2.516, a true and

correct copy of the foregoing has been furnished via the Florida E-portal as required pursuant to

Rule 1.080, Fla. R. Civ. P. on this 23rd day of October 2020.

By:*/s/ John M. Quaranta*
JOHN M. QUARANTA

Respectfully submitted,

QUARANTA P.A.
814 Ponce de Leon Blvd.
Suite 201
Coral Gables, FL 33134
Telephone 305.930.6077
By:*/s/ John M. Quaranta*
    JOHN M. QUARANTA (FBN 940641)
    Email: john.quaranta@quaranta.law
    Secondary: kristine.rodriguez@quaranta.law

*Co-Counsel for the Plaintiff*


**LAW OFFICE OF NEIL G. TAYLOR, P.A.**
SunTrust Plaza, Suite 1050
201 Alhambra Circle
Coral Gables, FL 33134
Telephone: 305.858.2233

By:*/s/ Neil G. Taylor*
    NEIL G. TAYLOR (FBN 283029)
    Email: ngt@bellsouth.net

*Co-Counsel for Plaintiff*