# COVINGTON

BEIJING   BRUSSELS   DUBAI   FRANKFURT   JOHANNESBURG
LONDON   LOS ANGELES   NEW YORK   PALO ALTO
SAN FRANCISCO   SEOUL   SHANGHAI   WASHINGTON

Covington & Burling LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
T  +1 212 841 1000

August 23, 2021

**Request to Be Sealed**
Honorable Edgardo Ramos
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

Re:   *United States v. Mark S. Scott*, S10 17 Cr. 630(ER)

**Letter Motion: Additional Grounds for New Trial Pursuant to Rule 33**

Dear Judge Ramos:

Defendant Mark S. Scott respectfully submits this letter motion for a new trial, supplementing his original post-trial motions filed February 4, 2020. (*See* Dkt. 218). Mr. Scott moves for a new trial on the basis of newly discovered evidence of perjury committed by cooperating witness Konstantin Ignatov ("Konstantin").[1] In particular, Konstantin testified falsely, and in great detail, that he had tossed into a Las Vegas trash can a OneCoin laptop that the Government had returned to him after detaining him at the border. In fact, Konstantin provided the laptop ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ – so that it could be returned to OneCoin. ▮▮▮ did just that.

Upon realizing that Konstantin testified falsely, ▮▮▮ – who voluntarily cooperated with the Government in this investigation – contacted an investigator in the New York District Attorney's Office, which jointly investigated this case alongside the U.S. Attorney's Office for the Southern District of New York. The Government failed to disclose this instance of perjury by its key witness to defense counsel. Fortunately, ▮▮▮ more recently contacted defense

---

[1] Mr. Scott timely submits this motion, as "[a]ny motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty." Fed R. Crim. P. 33(b)(1). The Court can also treat this as supplementary submission to Mr. Scott's previously filed motion for a new trial, which remains pending.

**COVINGTON**

counsel directly to prevent a miscarriage of justice. ▮ did this despite not knowing Mr. Scott, having no desire to help him, and ▮

▮ For this reason, we request that this letter be maintained under seal.[2]

In July 2021, ▮ contacted counsel for Mr. Scott to inform them that Konstantin lied on the stand about the whereabouts of his laptop computer after it was returned to him by authorities in March 2019. (*See* Ex. A (the "Stanley Declaration")). While Konstantin testified that he discarded the laptop in a trash bin in Las Vegas (Tr. at 206-07), ▮ informed counsel for Mr. Scott that Konstantin in fact gave him the computer and instructed him to take it with him to Sofia, Bulgaria. (Ex. A, ¶2D.) ▮ did as instructed and returned the laptop to Konstantin's and Ruja Ignatova's mother in Bulgaria. (Ex. A, ¶2E.)

Konstantin's deceit upon this Court undermines the credibility of the Government's star witness against Mr. Scott. His testimony was absolutely central to the Government's evidence that Mr. Scott engaged in any kind of illegal activity, and thus, "[t]he jury's estimate of [his] truthfulness and reliability [was] determinative of guilt or innocence." *Alvarez v. United States*, 808 F. Supp. 1066, 1092 (S.D.N.Y. 1992). Konstantin's perjury and the deliberate steps he took to conceal his laptop from authorities "had it been known to the jury, would have exerted a compelling impact on his credibility as to the unsubstantiated aspects of his testimony." *Id.* at 1093 (quoting *United States v. Seijo*, 514 F.2d 1357, 1363-64 (2d Cir. 1975)). The "interest of justice" requires the court to vacate Mr. Scott's conviction and grant a new trial. Fed. R. Crim. P. 33(a). At minimum, the Court should order an evidentiary hearing so that this issue – as well as critical factual issues relating to Mr. Scott's previously filed post-trial motions – can be resolved.

**Konstantin's Perjury**

Konstantin perjured himself when on direct examination, the Government asked him about the events that transpired when he traveled to the United States in February 2019 to attend meetings related to OneCoin. (Tr. at 205). He testified that when he landed in San Francisco, he was stopped by an agent from border patrol who took his phone and computer. (*Id.*) He testified that the agents kept the phone and (somewhat inexplicably given that Konstantin was soon to be arrested) gave the computer back. (*Id.*) The following exchange occurred next:

> Q. After you got your computer back, what did you do with it?
>
> A. I threw it away.

---

[2] After initially describing Konstantin's perjury to defense counsel on July 9, 2021, ▮

▮ Accordingly, we have included a Declaration by Katri Stanley, Esq., describing the statements ▮ has made to her. (*See* Ex. A). While ▮ statements to defense counsel are hearsay, they can be considered by the Court should ▮ refuse to participate in any hearing on this issue ordered by the Court and if corroborated by other evidence. (*See* Fed.R.Evid. 804(b)(3)).

**COVINGTON**

> Q. Can you describe exactly what you did.
>
> A. When I was in Las Vegas, I put it into a paper trash bag with other trash items, and I took it to a trash bin on a busy place in the Las Vegas Strip, and I threw it into the trash bin there.
>
> Q. Why did you do that?
>
> A. Because I was afraid that somebody might find more evidence connecting me to OneCoin.

(Tr. at 206).

This was a complete fabrication. Konstantin did not put his computer "into a paper trash bag with other trash items." (Tr. at 206). He did not take the bag "to a trash bin on a busy place in the Las Vegas Strip." (Tr. at 206). He did not then throw this bag "into the trash bin there." (Tr. at 206). He did not throw the computer out at all.

Instead, as detailed in the Stanley Declaration, Konstantin gave his computer to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (Ex. A, ¶¶2B, 2E). Konstantin instructed ▮▮▮ to return it to OneCoin in Sofia, Bulgaria. (Ex. A, ¶¶ 2D, 2E). ▮▮▮ did just that, flying the computer out of the U.S. – beyond the reach of Governmental authorities – and returning it to Veska Ignatova, the mother of Konstantin and Ruja, at the OneCoin offices in Sofia, Bulgaria. (Ex. A, ¶2E). As a result any evidence on the computer, including evidence that may have been exculpatory to Mr. Scott, was forever lost.

**The Impact of Konstantin's Perjury On The Trial**

Konstantin's willfully false testimony about the OneCoin laptop casts grave doubt on the fairness of the trial. Konstantin was the sole co-conspirator called to testify, and one of only two witnesses had even met Mr. Scott. Konstantin testified at length about statements that other alleged co-conspirators supposedly said to him about Mr. Scott and the role Mr. Scott supposedly played in laundering OneCoin funds. Mr. Scott was unable to challenge this hearsay as the co-conspirators who supposedly said these things to Konstantin – Ruja Ignatova, Gilbert Armenta, Irina Dilkinska and others – were unavailable to the defense. That made Konstantin's credibility crucial, and the fact that he testified falsely about the OneCoin laptop renders his uncorroborated hearsay statements about Mr. Scott entirely unreliable.

Crucially, the false story about disposing the OneCoin laptop was compounded by a second clear lie that Konstantin told at trial. In particular, Konstantin testified falsely about the *only* occasion when he ever met Mr. Scott. Konstantin testified to a meeting on July 20, 2016 in which Mr. Scott met Ruja Ignatova and – allegedly – Irina Dilkinska at OneCoin's Sofia, Bulgaria office. (Tr. at 246). Given that Irina Dilkinska was allegedly in charge of supervising the laundering of OneCoin funds (Tr. at 131), her supposed presence at this meeting was a key inculpatory detail. In dramatic fashion, Konstantin recounted how Ruja supposedly instructed him to call Irina Dilkinska into this meeting and "to make sure that everybody on this floor leaves and goes home so that Irina, Mark, and Ruja are alone." (Tr. at 246). Konstantin

3

COVINGTON

testified that the following week, Dilkinska told him that "she had to stay [at the meeting] a long time . . . until Mark Scott understood everything that has to be done or he has to do." (Tr. at 246-47).

This was simply a lie. E-mails from the Government's production provided clear and compelling evidence that Dilkinska was not even in Bulgaria at the time of the meeting in question. Specifically, on Sunday, July 17, 2016, Dilkinska emailed Mr. Scott saying that she was "traveling for the whole week," referencing the upcoming week. (*See* Dkt. 176, DX 550). On Wednesday, July 20, 2016, the date of the Sofia meeting at which Konstantin had falsely testified Dilkinska had participated (Tr. at 243-44), she emailed Mr. Scott, "I am traveling too." (*See* Dkt. 176, DX 552). Despite evidence that the Government's sole witness from OneCoin who met Mr. Scott during the conspiracy lied to the jury about the *single* meeting he had with Mr. Scott, the Government disappointingly objected to Mr. Scott's efforts to correct the record through the introduction of these e-mails, and the Court ruled – wrongly, we respectfully submit – that those e-mails were inadmissible hearsay. (*See* Dkt. 176; Tr. at 398, 1292). At that time, counsel for Mr. Scott argued that "casting doubt on whether Ms. Dilkinska was in fact at the meeting is highly relevant both to the credibility of the sole cooperating witness and to the evidentiary significance of the meeting itself." (Dkt. 176).[3] This remains the case. Indeed, the laptop that Konstantin returned to OneCoin – and then perjured himself about – could have contained additional evidence establishing that his testimony about Dilkinska's presence at the meeting was also false.

**The Appropriate Remedy is a New Trial**

To succeed on a Rule 33 motion based on newly discovered evidence of perjury, a defendant must "pass two threshold inquiries—he must present some newly discovered evidence and must prove that 'the witness in fact committed perjury.'" *United States v. Bourke*, 488 F. App'x 528, 529 (2d Cir. 2012) (quoting *United States v. Stewart*, 433 F.3d 273, 297 (2d Cir. 2006)). Thus, a Rule 33 motion on this basis must satisfy four elements: "(1) 'the newly discovered evidence could not with due diligence have been discovered before or during trial'; (2) 'the evidence demonstrates that the witness in fact committed perjury'; (3) 'the newly discovered evidence [is] material'; and (4) the newly discovered evidence is not cumulative." *United States v. Bout*, 144 F. Supp. 3d 477, 484 (S.D.N.Y. 2015) (quoting *United States v. White*, 972 F.2d 16, 20-21 (2d Cir. 1992)).

Mr. Scott satisfies each of those four prongs here, and requests a hearing to further develop the record should that be necessary.

First, the newly discovered evidence clearly could not have been discovered before or during trial. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ was not in contact with defense counsel and had not – at least according to the produced § 3500 material the Government provided for him – ever told

---

[3] Pursuant to *Brady* and *Giglio*, we asked the Government during trial for any evidence in its possession tending to show that Dilkinska was not in Sofia on July 20, 2016, and we reiterate that request here.

4

**COVINGTON**

the Government that he had removed the laptop from the United States.[4] Furthermore, no testimony at trial tied ▋ to the scheme: ▋ did not testify, and Konstantin only mentioned him on direct examination as one of seven individuals who worked at Raven R, a London-based investment company that "invested funds that were made from OneCoin investors." (Tr. at 220-21). Thus, none of the evidence available to Mr. Scott before and during trial put the defense on notice that ▋ might possibly be in possession of pertinent information. Only in July 2021 did ▋ inform counsel for Mr. Scott that he transported Konstantin's laptop to Bulgaria—the first time Mr. Scott received any notice that ▋ possessed direct, material knowledge that Konstantin committed perjury when he testified that he discarded the laptop in Las Vegas. (Tr. at 206). Indeed, ▋ himself did not become aware that Konstantin had testified falsely about what happened to the laptop until very recently, when he reviewed Konstantin's trial testimony. (Ex. A, ¶2A).

With respect to the second prong, the newly discovered evidence clearly establishes that Konstantin committed perjury. "A witness perjures himself when he[ ] 'gives false testimony concerning a material matter with the willful intent to provide false testimony, as distinguished from incorrect testimony resulting from confusion, mistake, or faulty memory.'" *United States v. Hernandez*, 521 F. App'x 14, 16 (2d Cir. 2013) (quoting *United States v. Monteleone*, 257 F.3d 210, 219 (2d Cir. 2001)).

That is just what Konstantin did. He testified falsely – and in detail entirely inconsistent with a mistake of recollection – that he threw out the laptop in question in a garbage can on the Las Vegas strip (Tr. at 206), when in fact he had given it to Arthur to return to OneCoin (Ex. A, ¶2D). At the urging of the Government, he recounted each step he claimed he took: He claimed he put his computer "into a paper trash bag with other trash items," took the bag "to a trash bin on a busy place in the Las Vegas Strip," and threw this bag "into the trash bin there." (Tr. at 206). The newly discovered evidence does not merely demonstrate some simple inconsistency in this testimony. *See Monteleone*, 257 F.3d at 219. This is not a situation where Konstantin in fact threw the laptop out in Caesar's Palace instead of the Strip, or where he recycled the laptop rather than placing it in the trash. Rather, the evidence demonstrates that Konstantin arranged for ▋ to transport his laptop across international borders back to the safety of his family /OneCoin operatives in Bulgaria. Such a stark difference—a plot to remove evidence from the United States and return it to co-conspirators rather than simply throwing away old electronics—cannot be ascribed to confusion or faulty memory. *Id.*

---

[4] The only § 3500 material that the Government provided relative to ▋, notes and a memo of a March 6, 2019 interview conducted by IRS agents at the Los Angeles International Airport, gave no indication that ▋ possessed any information whatsoever regarding Konstantin's laptop, and the topic of the laptop did not come up. (*See* Ex. B). Additionally, in § 3500 material provided by the Government for Konstantin, notes from an interview dated 8/8/19 state in relevant part, "After getting stopped was concerned that would be stopped again so threw away laptop. . . . Threw it in trash bin went out of Bellagio took a right towards LV sign and threw it in garbage. Wrapped it in bag. Worried about the gov't finding it." (*See* Ex. C). Thus, Mr. Scott was not on notice at trial that Konstantin's testimony on the laptop may have been false.

COVINGTON

Newly discovered evidence of perjury that raises questions about the credibility of a key witness, "[g]iven the importance of this single credibility determination," satisfies the third and fourth prongs. *Alvarez*, 808 F. Supp. at 1093 (finding the newly discovered evidence material and not merely cumulative). While "merely additional evidence tending to undermine the credibility of [the witness] for reasons already before the jury" does not satisfy this prong, *id.* at 1092 (quoting *United States v. Petrillo*, 821 F.2d 85, 89 (2d Cir. 1987)), where "[t]he jury's estimate of the truthfulness and reliability of a given witness may be determinative of guilt or innocence[,] . . . new evidence may not be 'merely cumulative or impeaching,' but critical." *Id.* (quoting *Napue v. Illinois*, 360 U.S. 264, 271 (1959)); *see also United States v. Wallach*, 935 F.2d 445, 458 (2d Cir. 1991) (quoting same).

Konstantin did not simply perjure himself in testimony related to some ancillary matter. Konstantin portrayed the image of a man remorseful for his actions who was committed to telling the jury the truth as part of his cooperation agreement. Had the jury known that Konstantin merely feigned taking responsibility for his falsehoods and continued to dissemble during the very testimony where he admitted to lying, it "would have exerted a compelling impact on his credibility as to the unsubstantiated aspects of his testimony." *Alvarez*, 808 F. Supp. at 1093 (quoting *Seijo*, 514 at 1363-64)' *see also* IV.B.3 *infra*. *See United States v. Stofsky*, 527 F.2d 237, 246 (2d Cir 1975) ("[T]he court should decide whether the jury probably would have altered its verdict if it had had the opportunity to appraise the impact of the newly-discovered evidence [of witness perjury] not only upon the factual elements of the government's case but also upon the credibility of the government's witness.")

Konstantin's credibility was particularly crucial as he was the *sole* alleged co-conspirator who testified against Mr. Scott. His testimony consisted largely of hearsay claims of what other alleged co-conspirators said about Mr. Scott,[5] individuals who Mr. Scott could not themselves cross-examine, placing great weight on whether Konstantin was truthfully relaying this hearsay. Konstantin's testimony about Mr. Scott's supposed meeting with Dilkinska —unsupported and indeed contradicted by documentation the jury did not have the opportunity consider—was likewise particularly inculpatory.

In short, the jury's estimate of Konstantin's "truthfulness and reliability" was "determinative of [Mr. Scott's] guilt or innocence." *Alvarez*, 808 F. Supp. at 1092. The newly discovered evidence of Konstantin's perjury is "not 'merely cumulative or impeaching,' but critical." *Id.* (quoting *Napue*, 360 U.S. at 271); *see also Wallach*, 935 F.2d at 458 ("Despite the presence of other impeaching material during the trial the disclosure of the witness' false statement would have had a tremendous impact on the jury's credibility assessment of the witness.") (quoting *Seijo*, 514 F.2d at 1364). A new trial is therefore warranted.

---

[5] For example, Konstantin testified that "Irina told me … that Mark Scott is in charge of Fenero, and I learned that Fenero is one of the entities that is in charge of the money laundering." (Tr. at 272).; "[Irina] said that for the risk he took, he got paid a lot of money. . . . "[A]t that time, I knew that Mark Scott was laundering money for Ruja and OneCoin." (Tr. at 295).

COVINGTON

**At Minimum, An Evidentiary Hearing Is Required**

While a new trial is warranted on the existing record, the Court should at minimum order an evidentiary hearing on the motion and order Konstantin and ▮▮▮▮ to appear at such a hearing. The Government should also be directed to explain in advance of any such hearing (1) what it learned from ▮▮▮▮ (or any other source) with respect to whether Konstantin testified falsely and (2) why it did not disclose this exculpatory evidence to Mr. Scott. As noted above, ▮▮▮▮ reported that Konstantin had testified falsely to ▮▮▮▮ of DANY, which jointly investigated this matter with the USAO-SDNY and whose own ADA, Juliana Lozano, tried the case with the USAO-SDNY as a SAUSA. The Government should be required to make ▮▮▮▮ available at the hearing for testimony.

Finally, the Government should be directed to produce in advance of any hearing (1) all documents relating to the laptop in question, including documents relating to its initial seizure and return; (2) all documents or other information bearing on Konstantin's credibility, including but not limited to any material relating to the truthfulness of Konstantin's testimony about the destruction of the laptop and Irina Dilkinska's presence at the July 20, 2016 meeting in Sofia.

The hearing should also address factual issues necessary to resolve other aspects of Mr. Scott's post-trial motions, which remain pending. Mr. Scott sought a judgment of acquittal on the money laundering count under Rule 29 on the grounds that that the Government failed to establish either the existence of a wire fraud scheme with sufficient U.S. nexus or that funds from any U.S. victims of such a wire fraud scheme were transferred to the Fenero Funds and that crucial evidence provided by the Government was at best unreliable. (Dkts. 218, 275). On April 21, 2020, only after a written request for posttrial discovery by Mr. Scott, the Government produced records demonstrating that it had not even collected many bank records central to Mr. Scott's case, which calls into serious question testimony by the Government's financial analyst, Rosalind October that she prepared summary charts based on financial analysis that she conducted. (Tr. at 1549; Dkt. 345, Ex. A (the "Gannaway Declaration")). Mr. Scott seeks an opportunity to question Ms. October about her testimony on these issues, which is likewise relevant to the pending forfeiture motions. (*See* Dkts. 318, 345).

Respectfully submitted,

/s/ Arlo Devlin-Brown
Arlo Devlin-Brown