# EXHIBIT G



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

February 25, 2022

**BY EMAIL**

Arlo Devlin-Brown, Esq.
adevlin-brown@cov.com

David M. Garvin, Esq.
ontrial2@gmail.com

Re:     ***United States v. Mark S. Scott**, S10 17 Cr. 630 (ER)*

Dear Counsel:

The Government writes in response to your letter, dated February 23, 2022, requesting clarification regarding several statement in the Government's Sur Reply to Scott's Supplemental Motion for a New Trial (the "Sur Reply"). (Dkt. 445.)

*First*, the Government had reason to believe that there were potentially privileged communications in the Greenwood Devices, based on Greenwood's position as a co-founder of OneCoin and the Government's awareness based on its investigation—including its review of the voluminous email search warrant returns—that OneCoin, its principals, and OneCoin-related entities had retained attorneys for the purpose of seeking legal advice.   Indeed, the Government requested that the filter team review communications on the Greenwood Devices that directly involved Scott (an attorney), based on this awareness as well as Scott's assertions that he represented various OneCoin-related parties.   On July 16, 2019, the filter team provided the prosecutors in this case with communications between Scott and Greenwood contained on the Greenwood Devices that it had designated as non-privileged, which the Government produced to the defendant in discovery pursuant to Rule 16.   As described in the Government's Sur Reply, the Government subsequently obtained a full privilege waiver from Greenwood as to the Greenwood Devices,[1] and therefore was able to produce the entire contents of the Greenwood Devices to Scott. (Dkt. 445 at 7.)

*Second*, the FBI's New York Office did not have the technical capability to access the contents of Ignatov's MCC Cellphone.   As of at least September 17, 2021, FBI Headquarters was attempting to assess means to circumvent encryption to access the contents of the MCC Cellphone.

---

[1] Greenwood's written privilege waiver was executed on September 12, 2019 and provided to the Government by Greenwood's counsel on September 17, 2019; it was produced as 3521-027.

On October 8, 2021, the Government requested the passcode for the MCC Cellphone from Ignatov's counsel.  That same day, Ignatov's counsel provided four possible passcodes to the Government.  On October 13, 2021, the FBI advised the prosecutors on this case that the FBI had successfully accessed the contents of the MCC Cellphone using one of the passcodes that Ignatov's counsel had provided.

*Third*, the Government stands by the accuracy of its factual summary of the communications among the parties regarding DX 550.  Regarding the quoted language from the Government's Sur Reply, and as the emails make clear, the word "clarifying" was meant to indicate that the Government was "reversing its position" regarding the admissibility of DX 550, and *also* advising Scott that the Government would oppose the admission of DX 552.  (Dkt. 445 at 16.)   As to your request for internal documents regarding the Government's internal deliberations and attorney work product, such materials are not subject to disclosure.  *United States v. Nobles*, 422 U.S. 225, 236 (1975) (holding that the attorney work product doctrine applies to criminal cases); *United States v. Armstrong*, 517 U.S. 456, 462-63 ("[U]nder [Federal] Rule [of Criminal Procedure] 16(a)(2), [a defendant] may not examine Government work product in connection with his case.")  Rule 16 clearly recognizes "the prosecution's need for protecting communications concerning legitimate trial tactics."  *United States v. Pfingst*, 490 F.2d 262, 275 n.14 (2d Cir.1973), *cert. denied*, 417 U.S. 919 (1974).

*Finally*, you have requested production of all documents and information in the Government's possession relating to an alleged Rolex watch that you assert Ignatov wore during the charged conspiracy.  As an initial matter, it is not apparent from your letter how the requested information is potentially favorable to Scott pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), or would otherwise be subject to disclosure (to the extent that such information exits).  Nonetheless, the Government has: (a) reviewed all records in its possession relating to the U.S. Custom and Border Protection border examination of Ignatov at San Francisco International Airport on or about February 27, 2019; (b) reviewed the inventory of items seized from Ignatov at the time of his arrest at Los Angeles International Airport on March 6, 2019;[2] and (c) spoken with an FBI agent who participated in Ignatov's arrest on March 6, 2019, and has identified no evidence from those sources regarding an alleged Rolex watch worn by Ignatov at the time of Ignatov's border examination or subsequent arrest.

Very truly yours,

DAMIAN WILLIAMS
United States Attorney

By:             /s/
Nicholas Folly / Michael McGinnis / Juliana Murray
Assistant United States Attorneys
(212) 637-1060 / 2305 / 2314

---

[2] This inventory was produced to the defense at 3524-056.