UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

– against –

MARK S. SCOTT,

Defendant.

---

**ORDER**

17-cr-630 (ER)

RAMOS, D.J.:

Mark Scott was convicted on November 21, 2019 of conspiracy to commit bank fraud and conspiracy to commit money laundering. Before the Court is Scott's motion for bail pending appeal. Doc. 639. For the reasons set forth below, the motion is GRANTED.

I. BACKGROUND

   A. The Underlying Offense

Scott was a part of the OneCoin conspiracy, which marketed and sold what it purported to be a digital cryptocurrency by the same name but was, in fact, a global multi-level marketing pyramid scheme. Doc. 577 at 1. As financial institutions around the world began to recognize OneCoin as a fraud, they grew unwilling to provide it banking services, meaning OneCoin needed to conceal the origin of its funds and the purpose of transfers through its bank accounts, and it could not open accounts in its name. *Id.* at 2. Scott was brought into the scheme to create an elaborate, sophisticated money laundering operation for OneCoin. *Id.* Specifically, from late 2015 to early 2016, Scott set up a series of investment funds in the British Virgin Islands and Cayman Islands (collectively, "the Fenero Funds"), each with its own offshore bank account in the Cayman Islands. *Id.* at 3. From May to October 2016, the Fenero Funds received wire transfers of €364 million and $10 million in alleged "investments." *Id*. The transfers originated from approximately ten different bank accounts, all for various shell

corporations owned by OneCoin co-conspirators, held at banks in Singapore, Germany, Hong Kong, the United Kingdom, and the United States.  *Id.*  On paper, the shell corporations were "investors" in the Fenero Funds, but the money they transferred into the Fenero Funds was in fact all money derived from OneCoin.  *Id.*  In total, Scott laundered approximately $400 million of OneCoin proceeds through the Fenero Funds.  *Id.*

Scott purposefully sought to conceal from the banks any connection between OneCoin and the purported investors in the Fenero Funds.  *Id.* at 3.  For instance, when an investment fund administrator sought to conduct enhanced due diligence on the Fenero Funds in July and August 2016, Scott drafted fraudulent letters of comfort for two other attorneys to put on their letterhead and sign, created and sent backdated wire instruction letters, forged a series of agreements to attempt to justify the large volume of transfers to and from the funds, and directed co-conspirators to sign the documents with different pens and e-sign others to hide the forgery.  *Id.* at 3–4.  Several of these transactions also involved lying to U.S. federally insured banks to effectuate the transfers of OneCoin proceeds into and out of the Fenero Funds.  *Id.* at 4-5.

### B.  Criminal Proceedings Against Scott

On August 21, 2018, Scott was charged in a one count indictment for conspiracy to commit money laundering, and an arrest warrant was issued the same day.  Docs. 6, 8.  He was arrested on September 5, 2018.  Doc. 11.  By superseding indictment, Scott was further charged with conspiracy to commit bank fraud on October 8, 2019.  Doc. 143.  He was tried on both counts from November 5 to November 20, 2019, and he was found guilty on both on November 21, 2019.  Doc. 577 at 5–8.

Scott moved for a judgment of acquittal or, in the alternative, a new trial pursuant to Federal Rules of Criminal Procedure 29 and 33 on February 4, 2020.  Doc. 217.  He alleged there was insufficient evidence to sustain a conviction on either count.  *Id.*  He further challenged whether venue was proper and alleged several errors with the jury

2

instructions.  *Id.*  He additionally filed a supplemental motion for a new trial pursuant to Rule 33 on August 23, 2021 based on new allegations that one of the key witnesses against him, Konstantin Ignatov (a co-conspirator who became a cooperator for the Government), committed perjury.  Docs. 410, 433.  On September 14, 2023, the Court denied Scott's motions.  Doc. 577.  It held that the Government provided sufficient evidence to prove Scott guilty of both conspiracy to commit bank fraud and conspiracy to commit money laundering, and that no new trial was warranted because of Ignatov's alleged perjury or on any other basis.  *Id.*

On January 25, 2024, Scott was sentenced to a term of imprisonment of 120 years on each count, to run concurrently, followed by a term of supervised release of 3 years on each count, also to run concurrently.  Doc. 623.  Scott filed a notice of appeal on February 7, 2024.  Doc. 620.  Scott moved for bail pending appeal on March 26, 2024.  Doc. 639.  The Government opposes the motion.  Doc. 642.

### C. Scott's Health Issues

[redacted]

## II.    LEGAL STANDARD

Under the Bail Reform Act of 1984, a district court "shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal" be detained unless the judicial officer finds (1) "by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of

---

[1] Scott's unredacted sentencing submission was filed under seal because of the inclusion of his medical information; Doc. 606 is the public, redacted version of the submission.

any other person or the community if released" and (2) "that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in (i) reversal [or] (ii) an order for a new trial." 18 U.S.C. § 3143(b). The relevant statutory guidance "establishes a presumption in favor of detention." *United States v. Abuhamra*, 389 F.3d 309, 319 (2d Cir. 2004); *see United States v. Randell*, 761 F.2d 122, 124 (2d Cir. 1985) ("Congress intended section 3143 to reverse the then prevailing presumption in favor of post-conviction bail . . . .").

In addition to determining that the person is unlikely to flee or pose a danger to the community and that the appeal is not for the purpose of delay, the Court must employ a two-step analysis to determine whether bail pending appeal is warranted. *United States v. Percoco*, No. 16-cr-776 (VEC), 2019 WL 493962, at *4 (S.D.N.Y. Feb. 8, 2019) (citing *Randell*, 761 F.2d at 124–25). First, the Court must determine whether the appeal raises a "substantial question of law or fact." *Id.* (quoting *Randell*, 761 F.2d at 124). A "substantial question" is "a 'close' question or one that very well could be decided the other way." *Randell*, 761 F.2d at 125 (quoting *United States v. Giancola*, 754 F.2d 898, 901 (11th Cir. 1985)). This does not require the "trial court to certify that it is likely to be reversed." *Id.* (internal quotation marks and citation omitted). Rather, appeals may raise substantial questions of law or fact even if success on appeal is "doubtful" but "not impossible." *United States v. Kaufman*, No. 19-cr-0504 (LAK), 2021 WL 8055691, at *3 (S.D.N.Y. Oct. 27, 2021). The question is whether the issues on appeal are frivolous. *Id.*

Second, "[i]f a court does find that a question raised on appeal is 'substantial,' it must then consider whether that question is 'so integral to the merits of the conviction on which defendant is to be imprisoned that a contrary appellate holding is likely to require reversal of the conviction or a new trial.'" *Id.* (quoting *United States v. Miller*, 753 F.2d 19, 23 (3d Cir. 1985)). In addition, the defendant must show that the question, if resolved in his favor, would result in reversal or an order for a new trial "on all of the counts" for

4

which he has been sentenced to a term of imprisonment. *Id.* at 126. As to both steps, "the burden of persuasion rests on the defendant." *Id.* at 125.

### III. DISCUSSION

#### A. Scott is Not Likely to Flee or Pose a Danger to the Community

Scott argues that he is not a flight risk given his medical conditions and the fact that both he and his wife have surrendered their passports, nor is he a safety risk given that he has never been accused of a violent crime. Doc. 639. The Government does not dispute that Scott is not a danger to the community, but it does dispute Scott's argument that he will not flee, particularly noting that Scott has German dual citizenship and therefore could not be extradited if he fled to Germany. Doc. 642 at 2–3.

Based on the record before the Court, given Scott's medical conditions and because he has not been charged with a violent crime, the Court does not find that Scott is likely to flee or pose a danger to the safety of any other person or the community if allowed to remain on bail.

#### B. The Appeal is Not for Purpose of Delay

Scott argues that the appeal is not a delay tactic, as he has never demonstrated a pattern of dilatory conduct and timely filed the appeal. Doc. 639 at 4. The Government argues that the appeal is for the purpose of delay. Doc. 642 at 3–4. The Court does not find that the appeal is for purposes of delay.

#### C. Scott's Appeal Presents Substantial Questions of Law and Fact

Scott argues that his appeal raises substantial questions as to whether: (1) the Court erred in denying Scott's post-trial motions without conducting an evidentiary hearing; (2) the Government's use of Ignatov's perjured testimony at trial required "virtually automatic" reversal of his conviction; (3) reversal was still required on the basis of Ignatov's testimony, even if the "virtually automatic" standard does not apply, because there is a "reasonable likelihood" that the perjury affected the jury's judgment; (4) the Court erred in excluding evidence that would have showed the jury that Ignatov

5

was lying; (5) the Government presented sufficient evidence to convict Scott of either count, particularly as (a) the money laundering conspiracy required a substantial U.S. nexus, (b) the bank fraud required deception of an federally insured bank, and (c) venue was improper as to the bank fraud charge. Doc. 639 at 6–10. Moreover, if the Second Circuit were to agree with Scott as to any of these issues, it would require that Scott be acquitted or receive a new trial. *Id.* at 10–11.

The Government argues that all these issues have already been litigated and decided against Scott, and his appeal therefore presents no substantial questions of law or fact. Doc. 642 at 4–8. Additionally, the Government argues that, while some of these issues may be so integral to the merits of Scott's conviction as to require reversal or a new trial, not all would. *Id.* at 8. The first would require only an evidentiary hearing, the second and third would only require that the Court reconsider its decision on Scott's post-trial motions, and each part of the fifth question by itself would disturb only one of the two charges on which Scott was convicted. *Id.*

For all of the reasons set forth in the Court's opinion concerning Scott's post-trial motions, the Court believes it is quite doubtful that Scott will obtain a reversal or new trial on both counts. *See* Doc. 577. But the Court cannot say that the questions are frivolous. And they are sufficiently integral to the merits of Scott's conviction that a contrary appellate holding could likely require a reversal or new trial on all of the counts for which Scott has been imprisoned.

### IV.   CONCLUSION

Accordingly, Scott's motion for bail pending appeal is GRANTED.

It is SO ORDERED.

Dated:   April 18, 2024
         New York, New York

                                                    _____
                                                    EDGARDO RAMOS, U.S.D.J.