

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

August 26, 2025

**BY ECF**
Honorable Edgardo Ramos
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

    Re:    *United States v. Mark S. Scott*, S10 17 Cr. 630 (ER)

Dear Judge Ramos:

    In November 2019, Scott was convicted for his role in a massive money laundering scheme, and he was then sentenced to a 10-year term of imprisonment. Nearly six years after his conviction, Scott has *still* not begun serving his sentence. His current surrender date is September 15, 2025. He now seeks yet another stay of his surrender date premised on a Hail Mary certiorari petition to the Supreme Court based on the testimony of Konstantin Ignatov ("Konstantin") at his trial (the "Motion"). Dkt. 699. The motion to further delay his surrender date should be denied.

**I.    Applicable Law**

    A court "shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment" be detained pending appeal *unless* the court finds "by ***clear and convincing evidence that the person is not likely to flee*** or pose a danger to any other person or the community if released," and

> that the appeal is not for the purpose of delay and raises a ***substantial question of law or fact*** likely to result in—(i) reversal, (ii) an order for a new trial, (iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b) (emphasis added).

    This provision gives effect to Congress's view that "[o]nce a person has been convicted and sentenced to jail, there is absolutely no reason for the law to favor release pending appeal or

even to permit it in the absence of exceptional circumstances." *United States v. Miller*, 753 F.2d 19, 22 (3d Cir. 1985).   Following a guilty verdict and sentencing, there is a "presumption in favor of detention." *United States v. Abuhamra*, 389 F.3d 309, 319 (2d Cir. 2004).   It is the defendant's burden to "rebut that presumption with clear and convincing evidence." *Id.*

Under the second prong of the standard, a "substantial question" is "a close question or one that very well could be decided the other way." *United States v. Randell*, 761 F.2d 122, 125 (2d Cir. 1985).   With respect to all of these issues, "the burden of persuasion rests on the defendant." *Id.*

## II.    Procedural History

Scott was convicted at trial on November 25, 2019, and sentencing was adjourned pending the resolution of post-trial motions, including post-trial motions based on Konstantin's testimony about the disposition of a laptop and the attendees at a meeting.   On September 14, 2023, this Court denied the defendant's post-trial motions.   As to the laptop, this Court's opinion described Konstantin's testimony as "negligible" and on a "purely collateral matter."   Dkt. 577 at 30-32.   As to the meeting, it explained both that the defense had failed to prove that Konstantin committed perjury and that even if he had, there was no "reasonable likelihood that the false testimony could have affected the judgment of the jury."   *Id.* at 34-37.

On January 25, 2024, this Court sentenced the defendant to a term of imprisonment of 120 months.   Scott appealed, and this Court granted bail pending appeal despite noting that, "the Court believes it is quite doubtful that Scott will obtain a reversal or new trial on both counts." Dkt. 643 at 6.

On January 15, 2025, the Second Circuit affirmed Scott's conviction by summary order. 24-368, Dkt. 60.   It rejected Scott's arguments as to Konstantin's testimony, concluding that "[t]here was no 'reasonable likelihood' that the testimony affected the judgment of the jury."   *Id.* at 7.

On February 25, 2025, the Supreme Court issued an opinion in *Glossip v. Oklahoma*, 145 S. Ct. 612 (2025).   On March 17, 2025, Scott sought rehearing from the Second Circuit based on *Glossip*, which is also the basis of Scott's certiorari petition.   24-368, Dkt. 64.   On April 21, 2025, the Second Circuit denied the motion for rehearing based on *Glossip*.   24-368, Dkt. 66. On April 25, 2025, Scott moved the Second Circuit to stay the mandate based on his pending certiorari petition based on *Glossip*.   24-368, Dkt. 67.   On May 14, 2025, the Second Circuit denied that motion to stay the mandate.   24-368, Dkt. 70.

Scott has also adjourned his surrender date, most recently based on medical issues.   Dkt. 691.   He is currently scheduled to surrender on September 15, 2025.   He now seeks to further postpone his surrender date and requests bail pending resolution of his certiorari petition.

### III.     Scott Is Not Entitled To Bail Pending Appeal

#### A.     Scott Has Failed to Show By Clear and Convincing Evidence He Will Not Flee

At the outset, Scott has failed to show by clear and convincing evidence that he is not likely to flee if granted bail pending resolution of his certiorari petition. *See* 18 U.S.C. § 3143(a)(1). To the contrary, several factors indicate that Scott is a significant risk of flight.

*First*, Scott has been sentenced to a substantial term of imprisonment of ten years. The length of Scott's sentence gives him a powerful motive to flee from the United States, and he may well be waiting until he exhausts all avenues to avoid imprisonment before attempting to flee.

*Second*, Scott's motive to flee is heightened in this case because Scott is a dual German citizen. If Scott were to flee to Germany to avoid serving his ten-year sentence in this case, Scott cannot be extradited.

*Third*, there are increasingly fewer reasons for Scott to stay in the United States in light of his conviction. Scott is barred from practicing law. He is a convicted felon. And he has been ordered to forfeit nearly $400 million, as well as many of his assets, including his cars, oceanfront properties, and his residence in Florida.

*Fourth*, Scott was a critical money launderer for an international fraud that took in billions of dollars, and may well have assets secreted abroad that would allow him to live comfortably if he fled to Germany.

#### B.     Scott Has Failed to Show that His Certiorari Petition Presents a Substantial Question of Law or Fact

Scott's certiorari petition does not present a substantial question justifying bail. He argues that, in *Glossip*, the Supreme Court adopted a new, more rigorous standard for weighing materiality "when the Government obtains a conviction based on testimony that the prosecution knew was false." Mot. at 9.

Contrary to Scott's claim, *Glossip* did not announce any new standard. Scott relies on the following portion of the *Glossip* decision:

> In *Napue v. Illinois*, this Court held that a conviction knowingly "obtained through use of false evidence" violates the Fourteenth Amendment's Due Process Clause. 360 U.S. at 269, 79 S.Ct. 1173. To establish a *Napue* violation, a defendant must show that the prosecution knowingly solicited false testimony or knowingly allowed it "to go uncorrected when it appear[ed]." *Ibid.* If the defendant makes that showing, a new trial is warranted so long as the false testimony "may have had an effect on the outcome of the trial," *id.*, at 272, 79 S.Ct. 1173—that is, if it "'in any reasonable likelihood [could] have affected the judgment of the jury,'" *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) (quoting *Napue*, 360 U.S. at 271, 79 S.Ct. 1173). In effect, this materiality standard requires "'"the beneficiary of [the] constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict

>   obtained.""" *United States v. Bagley*, 473 U.S. 667, 680, n. 9, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) (quoting *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)).

*Glossip*, 145 S. Ct. at 626-27. As this passage makes clear, the Supreme Court was not announcing a new standard. Rather, it was describing the same standard it had previously applied in multiple prior cases. And that is the same standard that this Court and the Second Circuit applied in this case: whether there was any "reasonable likelihood that the testimony affected the judgment of the jury." Dkt. 577 at 31 (decision of this Court denying post-trial motions and setting forth the standard as "If the Government knew or should have known of the perjury before the conclusion of the trial, the motion will be granted if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury"); 24-368, Dkt. 60 (decision of the Second Circuit: "There was no 'reasonable likelihood' that the testimony affected the judgment of the jury.") (citations omitted).

Scott contends that *Glossip* somehow changed that well-established standard by adding, "In effect, this materiality standard requires the beneficiary of [the] constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Glossip*, 145 S. Ct. at 627 (internal quotation marks omitted). But that sentence is just another way of explaining the same standard, and does not change the standard in any way. Where there is a "reasonable likelihood" that perjury affected the judgment of the jury, the Government cannot prove beyond a reasonable doubt that the perjury did not contribute to the verdict. And *Glossip* did not, as Scott claims, provide a new clarification of the materiality standard by referring to proof "beyond a reasonable doubt." Instead, it simply repeated an explanation of the existing standard that the Court had already relied on multiple times before. *See, e.g., Bagley*, 473 U.S. at 680 n.9 (citing *Chapman*, 386 U.S. at 24) ("The Court in *Chapman* noted that there was little, if any, difference between a rule formulated, as in *Napue*, in terms of 'whether these is a reasonable possibility that the evidence complained of might have contributed to the conviction,' and a rule 'requiring the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' It is therefore clear, as indeed the Government concedes, that this Court's precedents indicate that the standard of review applicable to the knowing use of perjured testimony is equivalent to the *Chapman* harmless-error standard.").[1]

In short, *Glossip* did not change the materiality standard in any way. There is thus no basis for concluding that the Supreme Court will reverse the opinions of this Court and the Second Circuit, which faithfully applied the very same standard articulated in *Glossip*.

In any event, even assuming that *Glossip* changed the materiality standard (and it did not), there is still no reasonable probability that the Supreme Court will grant certiorari or reverse the judgments of this Court and the Second Circuit.

---

[1] *See also, e.g., Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (defining harmless-beyond-a-reasonable-doubt standard as no "reasonable possibility that trial error contributed to the verdict"); *Chapman*, 386 U.S. at 24 (same); *Strickler v. Greene*, 527 U.S. 263, 299 (1999) (Souter, J., concurring in part and dissenting in part) ("We have treated 'reasonable likelihood' as synonymous with 'reasonable possibility' and thus have equated materiality in the perjured-testimony cases with a showing that suppression of the evidence was not harmless beyond a reasonable doubt.").

4

***First***, as to both the statements about the laptop and the meeting, the Government did not know, nor should it have known, that the testimony was false during the trial. The standard articulated in *Glossip* thus does not apply to that perjury. See Mot. at 5 (arguing that the *Glossip* standard applies when a conviction is "based on testimony that the prosecution knew was false").[2]

***Second***, as to both the statements about the laptop and the meeting, the testimony was immaterial. As to the laptop, this Court explained that the statements were "such a small part of his testimony as to be negligible," and "was a purely collateral matter." Dkt. 577 at 32; *see also* 24-368, Dkt. 60 at 7 ("Konstantin's perjurious testimony that he threw his laptop into a garbage bin in 2019 concerned 'a collateral matter' that did not implicate 'the merits of the case'"). As to the meeting, the Court noted that (i) Konstantin "provided no information as what was discussed at the Meeting,"; (ii) there was "ample other evidence [] both of Scott's involvement with Ruja and Dilkinska and, more generally, of his guilt; and (iii) information about the meeting "would, at most, have been cumulative impeachment material." Dkt. 577 at 36; *see also* 24-368, Dkt. 60 at 7 ("showing would have 'merely furnishe[d] an additional basis on which to impeach a witness whose credibility ha[d] already been shown to be questionable.'")

***Third***, as to the meeting, this Court concluded that the statement was not perjury, and therefore the *Glossip* standard does not apply. *Id.* at 34 ("The Court does not find that Scott has established Konstantin's testimony regarding the Meeting was perjurious."); *see also* 24-368 (testimony "was not shown to be perjurious").

***Fourth***, *Glossip*'s reasoning was based on the unique, specific facts of that case. In *Glossip*, "[b]ecause Sneed's testimony was the only direct evidence of Glossip's guilt of capital murder, the jury's assessment of Sneed's credibility was necessarily determinative." 145 S. Ct. at 628. "Besides Sneed, no other witness and no physical evidence established that Glossip orchestrated" the murder. *Id.* Under these particular circumstances, the Supreme Court concluded that it was "self-defeating" to argue that additional impeachment evidence "could hardly have made a

---

[2] In *Glossip*, unlike here, the Government admitted that the perjury in question was known to the prosecution at the time of the trial, that the prosecution's failure to correct the false testimony was a violation of *Napue v. Illinois*, 360 U.S. 264 (1959), and that a new trial was required. The defendant in *Glossip* was charged with murder for hire, and Sneed (the man who personally committed the murder) testified against the defendant at trial. 145 S. Ct. at 618. The defendant was convicted and sentenced to death. *Id.* Nearly two decades later, the State disclosed previously withheld documents that established certain medical information about Sneed, including that he suffered from bipolar disorder and that a jail psychiatrist had prescribed Sneed lithium to treat that condition. *Id.* During trial, however, Sneed had falsely testified that he had never seen a psychiatrist. *Id.* The disclosed evidence also established, and the State conceded, that the prosecution knew at the time of trial that Sneed's testimony was false but allowed him to testify falsely. *Id.* The State conceded that the prosecution's failure to correct Sneed's knowingly false testimony violated *Napue* and asked the Oklahoma Court of Criminal Appeals ("OCCA") to grant the defendant a new trial, which the OCCA denied. *Id.* The Supreme Court reversed and remanded for a new trial because the prosecution violated its obligations under *Napue*. *Id.* Where the Government knowingly failed to correct false testimony, the Supreme Court held, the materiality standard requires the Government to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. *Id.* at 627. In short, *Glossip* is readily distinguishable from this case in multiple respects.

5

difference." *Id.* at 628-29. "If the evidence impeaching Sneed's credibility was already overwhelming," the Court noted, "then no reasonable jury could have convicted Glossip in the first place, **given that the prosecution's case rested centrally on Sneed's credibility**." *Id.* at 629 (emphasis added).

Here, in contrast to *Glossip*, the Government's case did not rest "centrally"—or even significantly—on Konstantin's testimony. The key dispute at trial was whether Scott knew that the money he received was criminally derived. The Government presented devastating evidence that Scott knew the money was derived from criminal activity, and this evidence was almost entirely independent of Konstantin's testimony. See 24-368, Dkt. 60 at 8-13 (discussing this evidence in detail). Konstantin's testimony had little bearing on the key issue of whether Scott knew the money was criminally derived. See *id.* at 13-16. Konstantin's interactions with Scott were very limited: he only met Scott once, had no substantive conversations with him, and primarily communicated with him about meeting and travel logistics. *Id.* at 14. This is a far cry from *Glossip*, where Sneed's testimony was "the only direct evidence of Glossip's guilt." 145 S. Ct. at 628.

***Fifth***, the Supreme Court grants only a small fraction of certiorari petitions, the Second Circuit's decision is not "in conflict with the decision of another United States court of appeals on the same important matter," U.S. Sup. Ct. R. 10(a), and the Supreme Court does not typically grant certiorari where the only claim is a case-specific error.[3]

---

[3] Scott argues that the Supreme Court may issue a "grant-vacate-remand ('GVR') order—*i.e.*, an order granting the Petition, vacating the panel's ruling, and remanding to the court of appeals to reconsider its decision in light of *Glossip*. Mot. at 6. But a GVR is only appropriate "when intervening developments reveal a reasonable probability that the decision below rests upon a premise that the lower court would reject if given the opportunity for further consideration, and where it appears that such a redetermination may determine the ultimate outcome of the matter." *Wellons v. Hall*, 558 U.S. 220, 225 (2010) (cleaned up). Here, Scott gave the Second Circuit a chance to consider its prior decision in light of *Glossip*, and it ***twice*** rejected his request: once in the context of his rehearing motion, and once in the context of his motion to stay the mandate.

6

In sum, for all the reasons stated above, Scott has failed to present a substantial question of law or fact, and it is exceedingly unlikely that the outcome of a pending certiorari petition would require a reversal of Scott's conviction or a new trial. Scott's Motion should be denied.

Very truly yours,

JAY CLAYTON
United States Attorney

By:     /s/
Kevin Mead
Juliana Murray
Assistant United States Attorneys
(212) 637-2211/2314

Cc: Defense Counsel, via ECF