June 17, 2026

RECEIVED on 6/17/2026 via email.
Chamber of Hon. Edgardo Ramos, U.S.D.J.

Judge Edgardo Ramos
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

**Re: United States v. Scott, 17 Cr. 630 (ER)**
**Follow-Up to Letter Dated May 5, 2026**


Dear Judge Ramos:


I respectfully write as a follow-up to my letter dated May 5, 2026.

I understand from Ms. Ellen Blain that the Court recently granted her motion to withdraw as my counsel. However, I am unsure whether the Court had the opportunity to consider my prior request for a sixty-day stay, rather than a thirty-day stay, to allow me sufficient time to seek and retain pro bono counsel. I was not consulted regarding the duration of the stay requested by counsel and did not receive a response to my prior letter.

I have also been informed that the Court directed the Government and I to respond to Mrs. Halle's request to lift the stay by July 6, 2026.

Since receiving that notice, I have continued my efforts to locate pro bono counsel. Unfortunately, despite contacting multiple attorneys and organizations, I have not yet been successful. Given the complexity of the forfeiture proceedings and the significance of the property interests at issue, legal representation is necessary to provide me with a fair opportunity to protect my rights. Any new attorney would also require time to become familiar with the lengthy history of this matter.

Accordingly, I respectfully request that the Court extend the current deadline until August 7, 2026. This would allow me a meaningful opportunity to secure pro bono counsel and also continue previously ongoing discussions with the Government that were interrupted by the litigation initiated by Mrs. Halle.

As the Court will recall, the stay was originally granted so that issues relating to ownership of the property located at 600 Coral Way in Miami, Florida (the "Home") could be resolved in the appropriate Florida forum.

For the Court's information, after Judge Walsh entered her Order on May 18, 2026, Mrs. Halle's counsel submitted a letter to this Court dated June 2, 2026, requesting that the stay be dissolved. In that filing, counsel represented that the Florida court had "unequivocally"

authorized Mrs. Halle to pursue her lien against the property that is the subject of the ancillary petitions and therefore argued that no further purpose would be served by maintaining the stay.

As I understand it, however, the purpose of the stay was not simply to determine whether Mrs. Halle possessed a judgment lien. Rather, the stay allowed the Florida court to resolve the competing ownership, homestead, and settlement-agreement issues relating to the Home and my ownership interests therein. Those issues were subsequently addressed and resolved by the Honorable Lisa Walsh.

The June 2, 2026 letter was submitted after Judge Walsh had already entered her Order and expressly referenced that Order. I respectfully note that the filing characterized the Florida court's ruling as having "unequivocally" authorized Mrs. Halle to pursue her lien against the property without discussing the significant limitations that Judge Walsh simultaneously imposed.

Judge Walsh ultimately considered the effect of the Mediated Settlement Agreement ("MSA") between Mrs. Halle and Mark S. Scott executed on October 11, 2021, the releases contained therein, my ownership interests in the Home, and Mrs. Halle's efforts to pursue those interests notwithstanding the MSA.

In doing so, Judge Walsh expressly found that Mrs. Halle "broadly released Lidia Kolesnikova Scott ('Lidia Scott') from all claims known or unknown." The court further recognized that both Mark Scott and I "maintain a co-ownership interest in the Property." Most importantly, the court determined that because Mrs. Halle expressly released me in the MSA, she is "legally precluded from executing her judgment lien in a manner that extinguishes, suppresses, or seizes Lidia Scott's severable interest in the jointly owned Property."

Judge Walsh's ruling resolved the very ownership issues that formed the basis of Mrs. Halle's claims against my interests in the Home. In her petition before this Court, Mrs. Halle sought relief that, in practical effect, would have allowed her to reach ownership interests that the Florida court ultimately determined were protected by the MSA and the releases contained therein.

The court entered an Order providing that Mrs. Halle is "legally precluded from executing her judgment lien in a manner that extinguishes, suppresses or seize Lidia Scott's interest (e.g., her 50% share) in the Coral Gables Property."

Accordingly, the Florida court expressly protected my ownership interest and my fifty percent (50%) share of the Home from execution by Mrs. Halle. From my perspective as a layperson, that determination substantially undermines those portions of Mrs. Halle's petition directed at my interests in the Home.

Accordingly, while the June 2 letter correctly noted that Mrs. Halle may continue to pursue whatever retained interest of Mark Scott may exist, the Florida Order also makes equally clear that she may not pursue, adjudicate, extinguish, or execute upon my ownership interest in the Home. In my understanding as a layperson, that distinction is central to the issues presently before this Court because the Florida litigation was initiated precisely to determine whether Mrs. Halle could reach my interests notwithstanding the MSA and the releases it contains.

To be clear, Judge Walsh also ruled that Mrs. Halle may continue to maintain her ancillary petition in this Court to pursue any retained interest of Mark Scott in the Property, if any. I do not take a position on that issue. My concern is limited to protecting my ownership interest, which the Florida court has now expressly recognized and protected.

Accordingly, while Mrs. Halle previously sought dissolution of the stay based upon her interpretation of the Florida proceedings, the final Florida ruling demonstrates why the stay was necessary. In my understanding as a layperson, the stay successfully accomplished its intended purpose by allowing the Florida court to resolve the issues uniquely governed by Florida law before this Court resumed consideration of the ancillary petitions.

The Florida court's conclusions are also consistent with the historical record. My ownership interest in the Home predates both the MSA and Mrs. Halle's present claims. As set forth in my petition and supporting documents previously filed with this Court, I contributed approximately one-third of the down payment used to purchase the Home in 2015. My ownership interest was subsequently formalized through the recorded warranty deed.

In addition, long before execution of the MSA, the Government recorded its lien against the property on April 5, 2019, and expressly identified me as an owner. The Internal Revenue Service later recorded a federal tax lien exceeding $12 million on November 3, 2020. Those liens were matters of public record before the MSA was negotiated and executed.

Accordingly, when Mrs. Halle entered into the MSA, the ownership structure of the Home, my recorded ownership interest, and the existence of both the Government's lien and the IRS lien were already matters of public record. These facts were therefore available to Mrs. Halle and her counsel during the negotiation and execution of the MSA. The same information remained publicly available when Mrs. Halle later filed her petition before this Court.

I do not know what expectations Mrs. Halle may have had regarding any potential recovery against my husband's interests. However, the Florida court ultimately determined that the MSA she negotiated and executed bars efforts to reach my ownership interest and protects my fifty percent (50%) share of the Home from execution under her judgment.

Mrs. Halle's petition before this Court appears to seek only one remaining form of relief relating to the Home: any ownership interests belonging to my husband that may not ultimately be forfeited to the Government. I do not take a position on that issue. Whether any such interests exist and whether the Government intends to pursue them are matters for the Government and this Court.

I also respectfully note that the litigation initiated by Mrs. Halle concerning my ownership interests imposed substantial burdens upon me. Defending those interests in both Florida and New York required approximately $30,000 in additional legal fees. Ultimately, those expenses significantly contributed to my inability to continue paying counsel and resulted in Ms. Blain's withdrawal.

While I fully respect Mrs. Halle's right to seek judicial relief, the Florida court has now determined that her judgment may not be used to reach my ownership interest in the Home. In

hindsight, the substantial litigation that followed appears to have been unnecessary in light of the Florida court's conclusions. Unfortunately, the financial consequences of defending against those claims have been very real and continue to affect my ability to retain pro bono counsel.

For that reason, I respectfully submit that granting a modest extension would serve the interests of fairness. It would allow me an opportunity to obtain pro bono counsel, continue discussions with the Government, and ensure that any further proceedings occur on a fully informed record reflecting the Florida court's determinations.

I sincerely appreciate the Court's consideration of this request. I apologize for communicating in this manner, but at present I have no practical alternative other than submitting correspondence by mail. Copies of this letter will be provided to the Government and counsel for Mrs. Halle.

Respectfully submitted,

Lidia V. Scott

600 Coral Way Apt#12

Coral Gables, FL, 33134