

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 38th Floor*
*New York, New York 10278*

August 4, 2026

**VIA ECF**
Honorable Edgardo Ramos
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

     Re:    *United States v. Mark Scott,* **17 Cr. 630 (ER)**

Dear Judge Ramos:

     The Government moves to dismiss the forfeiture petition filed by Marietta Halle (the "Halle Petition") pursuant to Federal Rule of Criminal Procedure 32.2(c)(1)(A).   The Halle Petition by its terms makes clear that she acquired any interest in the disputed property long after defendant Mark Scott engaged in the criminal conduct that gave rise to forfeiture, and also after she became aware that the disputed property was subject to forfeiture.   The Halle Petition therefore fails to state a claim under 21 U.S.C. § 853(n)(6), and should be dismissed on the papers.

     Similarly, Halle filed an updated petition (the "Updated Petition") on August 2, 2026 raising new claims.   The new claims in the Updated Petition are plainly untimely, and also fail on the merits for the same reasons the claims in the original petition fail.   The Updated Petition should therefore also be dismissed on the papers.

### Procedural Background

     On November 21, 2019, a jury convicted Mark Scott of conspiracy to commit money laundering for his role in laundering $400 million in proceeds from the OneCoin scheme.   On August 31, 2020, the Government submitted a memorandum in support of a preliminary order of forfeiture for various assets, including the real property at 600 Coral Way (the "Coral Way Property") and any assets in Mark Scott's UBS Securities Account No. PW A5494 03 (the "UBS Account").   Dkt. 318 at 16.[1]   The Government's briefing established that on October 16, 2016, Scott used $1,000,794.66 of OneCoin criminal proceeds to pay off the mortgage for the Coral Way Property, and that the UBS Account was a substitute asset.   *Id.* at 44, 54.   Scott was sentenced

---

[1] The Government also filed a lis pendens against the Coral Way Property on April 5, 2019.

on January 25, 2023, and on February 2, 2024, the Court entered a preliminary order of forfeiture (the "POF") that included the Coral Way Property and the UBS Account.    Dkt. 612 at 5.

On March 20, 2025, Lidia Kolesnikova, Scott's wife, filed a petition asserting interests in certain of the property in the POF, including the Coral Way Property (the "Kolesnikova Petition"). Dkt. 675.   On July 11, 2025, Marietta Halle filed a petition asserting an interest in the Coral Way Property (i.e., the Halle Petition).    Dkt. 688.

On March 25, 2026, the Court entered a final order of forfeiture (the "FOF").    Dkt. 746. Because there were pending petitions as to the Coral Way Property, that property was not included in the FOF.    However, because there were **no** pending petitions as to the UBS Account, the FOF finally forfeited that account to the Government.    *Id.* at ¶¶ (cc).

The Government delayed filing its response to the Kolesnikova Petition and the Halle Petition due to negotiations between the parties; the withdrawal of Kolesnikova's attorney; and pending litigation between Halle, Scott, and Kolesnikova in Florida (the "Florida Litigation").

On May 18, 2026, the court in the Florida Litigation held that (i) a settlement agreement barred Halle from pursuing any ownership interest Kolesnikova possessed in the Coral Way Property; and (ii) that settlement agreement did not bar Halle from pursuing any ownership interest Scott possessed in the Coral Way Property (the "Florida Order").    Dkt. 756-1 at 3.    Halle submitted a copy of the Florida Order to this Court.    Dkt. 756.

The Court has set a deadline of August 6, 2026 to respond to the Halle Petition.    Dkt. 765. No deadline has yet been set for a response to the Kolesnikova Petition, and due to the greater potential factual complexity of the Kolesnikova Petition and the fact that a negotiated resolution with Kolesnikova may be possible, the Government here only responds to the Halle Petition.

### The Halle Petition

The following facts are taken from the Halle Petition and its attachments.

In September 2018, Halle loaned Scott $750,000 for his bail in the criminal proceeding. Halle Pet. at ¶ 4 and Ex. 1.   The Government served a subpoena on Halle, at which point she retained counsel and was interviewed at length by prosecutors and agents.   Halle Pet. at ¶¶ 5-6, Ex. 2.   On August 20, 2019—after learning that Scott had been indicted, being interviewed by the Government, and retaining counsel[2] to advise her—Halle loaned Scott $500,000 to retain criminal counsel.   Halle Pet. at ¶ 7, Ex. 6.   The $500,000 loan was secured by certain property, which did **not** include the Coral Way Property.   Halle Pet. at Ex. 13 (copy of secured promissory note).   The promissory note acknowledged "Mr. Scott's legal proceedings regarding money laundering charges in New York."   *Id*.

---

[2]  The same counsel to Halle has filed the Halle Petition on her behalf.

In 2020, Halle successfully moved for exoneration of Scott's bond and the $750,000 was returned to her.    Halle Pet. at ¶¶ 8-9.    That initial $750,000 loan is therefore not part of the basis for her claim.

Halle subsequently sued Scott and obtained a consent judgment against him for $1.34 million on October 13, 2021.    Halle Pet. p. 6 and Ex. 14.    On November 4, 2021, she filed that consent judgment as a lien against the Coral Way Property.    Halle Pet. p. 10.

The Halle Petition explicitly acknowledges that Scott used $1,000,794.66 of criminal OneCoin proceeds to pay off the mortgage for the Coral Way Property in 2016.    Halle Pet. p. 11. It also explicitly acknowledges that on September 5, 2018, Scott was arrested, and as of that date, "All parties have notice of potential forfeiture and creditor claims."    Halle Pet. p. 11.

## Applicable Law

Under 21 U.S.C. § 853(n)(6), a third party may contest forfeiture if they can establish either that:

> (A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or

> (B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section[.]

21 U.S.C. § 853(n)(6).

> As Judge Rakoff has summarized the substantive law on third party forfeiture petitions:

> Third parties claiming an interest in forfeited property may file petitions requesting a hearing. 21 U.S.C. § 853(n)(2).    Such third-party petitions cannot challenge the predicate finding that the Government's interest in the property is superior to the defendant's; they are limited to arguing that the third party's interest trumps the Government's.    *See DSI Assocs. LLC v. United States*, 496 F.3d 175, 185 (2d Cir. 2007).

> To carry its burden, a petitioner "must first establish his standing to challenge the forfeiture order by demonstrating a 'legal interest' in the forfeited property." *United States v. Watts*, 786 F.3d 152, 160 (2d Cir. 2015).    "Where the petitioner has no valid interest in the property under state law, the inquiry ends, and the claim fails for lack of standing."    *Id.* at 161 (*quoting United States v. Timley*, 507 F.3d 1125, 1130 (8th Cir. 2007).    "The petitioner must then prove his entitlement to

3

relief on the merits by establishing, through a preponderance of the evidence, one of two superior claims to the property under § 853(n)(6)." *Id.* at 160. The petitioner can prevail by showing either that he (1) had superior title to the defendant at the time of the act giving rise to forfeiture or (2) was a bona fide purchaser for value of the property and "was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture." 21 U.S.C. § 853(n)(6)(A), (B). The former provision applies to third parties who had an interest in property before the subject crime was committed (and so before the government's interest vested); the latter applies to third parties who innocently acquire property after the crime. *See Watts*, 786 F.3d at 166.

*United States v. Chowaiki*, 369 F. Supp. 3d 565, 572 (S.D.N.Y. 2019).

Third party forfeiture petitions such as the Halle Petition are governed procedurally by Federal Rule of Criminal Procedure 32.2(c)(1). Rule 32.2(c)(1)(A) states that, "the court may, on motion, dismiss the petition for lack of standing, for failure to state a claim, or for any other lawful reason. For purposes of the motion, the facts set forth in the petition are assumed to be true." "[U]nder Rule 32.2, a motion to dismiss a third-party petition in a forfeiture proceeding prior to discovery or a hearing should be treated like a motion to dismiss a civil complaint under Federal Rule of Civil Procedure 12(b)." *Pacheco v. Serendensky*, 393 F.3d 348, 352 (2d Cir. 2004). "'To survive a motion to dismiss, a petition must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Chowaiki*, 369 F. Supp. 3d at 572 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) in the context of a Rule 32.2 motion to dismiss) (internal punctuation omitted). In considering such a motion to dismiss a petition, "a court may consider only the complaint or petition, any written instrument attached to the complaint or petition as an exhibit, any statements or documents incorporated in it by reference, any publicly filed document subject to judicial notice, and any document upon which the complaint heavily relies." *United States v. Rodriguez-Perez*, No. S38 10 CR 905-LTS, 2019 WL 188400, at *3 (S.D.N.Y. Jan. 11, 2019) (cleaned up).

## Discussion

As described above, a petitioner can contest criminal forfeiture if and only if (i) their interest in a property vested in the property before the defendant committed the acts that gave rise to the forfeiture of the property, 21 U.S.C. § 853(n)(6)(A); or (ii) the petitioner was a bona fide purchaser who "was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section," 21 U.S.C. § 853(n)(6)(B). Because the Halle Petition fails to allege either of these possibilities, it must be dismissed.[3]

---

[3] Kolesnikova has also asserted an ownership interest in the Coral Way Property. The Government does not concede that Kolesnikova has any such ownership interest in the Coral Way Property, but even if she did, the Florida Order prohibits Halle from arguing that she has a superior interest to Kolesnikova in the Coral Way Property. Dkt. 756-1 at 3 ("As to Lidia Scott [Kolesnikova], Plaintiff Marietta Halle is bound by the release contained in Paragraph 4(a) of the Agreement. Ms. Halle is hereby prohibited from using her final consent judgment to adjudicate, extinguish, or execute upon Lidia Scott's interest (i.e., her 50% share) in the [Coral way Property]

The Updated Petition must be dismissed because it is untimely and also fails to allege either prong of 21 U.S.C. § 853(n)(6).

## I.    Halle's Interest in the Coral Way Property Does Not Pre-Date Scott's Actions Giving Rise to Forfeiture

Scott used over $1 million in criminal proceeds to pay off the mortgage for the Coral Way Property in 2016.   Thus "the time of the commission of the acts which gave rise to the forfeiture of the property under this section," 21 U.S.C. § 853(n)(6)(A), occurred no later than 2016, and the Halle Petition explicitly acknowledges that fact, Halle Pet. at 11 (noting that as of that date, the "Government's forfeiture interest in tainted proceeds attaches," and "[t]he Government's quantifiable forfeiture interest is created").

Halle's interest in the property, by contrast, vested at the earliest when Halle filed a judgment lien in 2021.   Halle Pet. p. 10.   Even if she is correct that a constructive trust existed on the date she made the loan, however, that was in 2019.   Halle Pet. at ¶ 7, Ex. 6.[4]

By the plain terms of her own petition, therefore, Scott committed the criminal act that gave rise to forfeiture of the Coral Way Property in 2016, but Halle's interest in the property was not created until either 2019 or 2021.   It is therefore not the case that Halle's interest in the Coral Way Property was, "superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section," and her petition cannot succeed under 21 U.S.C. § 853(n)(6)(A).   *See United States v. Watts*, 786 F.3d 152, 166 (2d Cir. 2015) ("Because forfeitable property vests in the government immediately upon

---

or its proceeds in the S.D.N.Y proceedings.")   This brief therefore focuses on Halle's claims as they relate to Scott's ownership interest in the Coral Way Property.

[4] To be clear, Halle's argument (made in a footnote) that a constructive trust over the Coral Way property was created when she loaned Scott $500,000 in 2019 is meritless.   Halle Pet. at fn. 1. She makes no argument as to why a constructive trust should apply, and cites no law creating a constructive trust under remotely analogous circumstances.   In fact, Halle (while represented by counsel) entered into a promissory note with Scott related to this loan that did ***not*** include the Coral Way Property as collateral.   Halle Pet. at Ex. 13.   Moreover, an unsecured general creditor (such as Halle was until she filed the lien in 2021) is not a bona fide purchaser and cannot recover under the forfeiture statute.   *See, e.g.,   United States v. Ribadeneira*, 105 F.3d 833, 837 (2d Cir. 1997) ("Appellants have no specific interest in property greater than that of a general creditor, and thus cannot claim standing to petition to modify an Order of Forfeiture by virtue of either § 853(n)(6)(A) or (B)"); *United States v. Madoff*, No. 09 CR 213 DC, 2012 WL 1142292, at *5 (S.D.N.Y. Apr. 3, 2012) ("Because EBG does not have a lien, it does not possess a sufficient legal interest under federal law to prevail under § 853(n)(6)(A). Without a lien, EBG cannot claim interest in a particular asset, and it is merely a general creditor.")   That being said, as explained in detail herein, Halle's petition fails under either prong of 21 U.S.C. § 853(n)(6) regardless of whether the relevant date is August 20, 2019 (when she made the loan) or November 4, 2021 (when she filed the lien).

the commission of a criminal act, a third party may prevail under § 853(n)(6)(A) only by establishing that he had a legal interest in the forfeited property before the underlying crime was committed—that is, *before* the government's interest vested. Where, by contrast, the petitioner obtains his interest in the property *after* the commission of the crime giving rise to forfeiture, he may defend his right to the property only under § 853(n)(6)(B), by establishing that he acquired the interest as a bona fide purchaser for value without cause to believe that the property was forfeitable.") (cleaned up) (emphasis in original).

## II.    Halle was not a Bona Fide Purchaser Without Reasonable Cause to Believe the Property was Subject to Forfeiture

Alternatively, a petitioner can defeat forfeiture by establishing that she was a bona fide purchaser who, "was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section."    21 U.S.C. § 853(n)(6)(B).    Assuming that the Halle Petition asserts a bona fide purchaser claim, this claim also fails on the face of the Petition.

The Halle Petition gestures at Halle's belief in 2019 that Scott may have been innocent. *See* Halle Pet. at ¶ 8 ("At first, Ms. Halle dismissed various inconsistencies as simple oversights. At some point, however, despite painstakingly slow recognition, Ms. Halle realized that the oversights were, in fact, misrepresentations.").    But at no point does Halle claim in her verified petition that she was "without cause to believe that the property was subject to forfeiture," let alone that any such belief would have been reasonable.    That failure is fatal to her petition, since it means that she has not made a core allegation for her claim to succeed.

In fact, the Halle Petition ***explicitly recognized*** that as of September 5, 2018, when Scott was arrested in this case, "All parties have notice of potential forfeiture and creditor claims." Halle Pet. at 11.    In other words, Halle's petition makes clear that she was on notice as of 2018— before her loan to Scott—that the Coral Way Property was subject to forfeiture.

And that is not a stray line in the Halle Petition.    The petition makes clear that, before she made the $500,000 loan to Scott on August 20, 2019, the following had occurred:[5]

- Mark Scott had been arrested on September 5, 2018.    Halle Pet. at 11.

- The Government served Halle with a grand jury subpoena on October 23, 2018.    Halle Pet. Ex. 2.

- Halle retained counsel to advise her on the Government's investigation and her dealings with Scott.    Halle Pet. at ¶ 2 ("Ms. Halle retained undersigned counsel and fearlessly agreed to enter the lion's den."), ¶ 8 ("she engaged in extensive discussions with

---

[5] Of course, using the correct date of November 4, 2021, when Halle had actually filed the lien, the case for Halle's knowledge is even more overwhelming.    By that date, (i) Scott had been convicted, (ii) the Government had publicly filed its forfeiture brief seeking to forfeit the Coral Way Property, Dkt. 318, and, (iii) the Halle Petition admits that Halle had recognized Scott's criminal conduct, testified as a witness against him, and sued him.    Halle Pet. at p. 4, 6.

6

undersigned counsel, which included her history with Mr. Scott, the investments he solicited from her, the documentation related to the investments, and the Government's case against Mr. Scott").

- On November 20, 2018, the Government interviewed Halle about her dealings with Scott, which the Halle Petition describes as "a full session" and a "debriefing." Halle Pet. at ¶¶ 6, 8.

- On or about August 13, 2019, Halle and Scott entered into a Promissory Note explicitly acknowledging "Mr. Scott's legal proceedings regarding money laundering charges in New York." Halle Pet. Ex. 13 at 5.

In other words, Halle's own petition (i) fails to claim under penalty of perjury that she was reasonably without cause to believe that the property was subject to forfeiture; (ii) includes a statement that she was in fact on notice of the forfeiture claim before she acquired her judgment lien interest; and (iii) pleads a number of facts making it clear that she could not have reasonably believed that the property was not subject to forfeiture. For that reason, her petition must be dismissed. *See, e.g., Pacheco v. Serendensky*, 393 F.3d 348, 354 (2d Cir. 2004) (forfeiture petition could be dismissed "because [petitioner] alleged specific facts—such as her knowledge of the notice of pendency—that put a lie to her general allegation that she was a bona fide purchaser"); *United States v. Harrold*, No. CR111412RHKSER, 2017 WL 2543891, at *3 (D. Minn. June 12, 2017) (dismissing forfeiture petition under because petitioner "nowhere contends she was unaware of Defendant's criminal activity, indictment, and guilty plea" at the time that she acquired an interest in the property); *United States v. Cazares*, No. CR 10-00666-PHX-JAT, 2013 WL 3894976, at *4 (D. Ariz. July 29, 2013) (dismissing forfeiture petition because, "[e]ven a rudimentary title search of the land records would have disclosed the Lis Pendens recorded by the Government"); *United States v. BCCI Holdings (Luxembourg), S.A.*, 961 F. Supp. 287, 296 (D.D.C. 1997) (granting summary judgment against petitioner because "[g]iven the extensive public record of BCCI's misconduct, [petitioner] knew or should have known that BCCI's assets were subject to forfeiture. Excerpts from some of those articles make clear that the [petitioner's] claim that it was not aware of BCCI's criminal and fiscal troubles jeopardizing BCCI's assets is simply not reasonable"); *United States v. Baker*, No. 3:10-CR-00018-KI, 2011 WL 3860500, at *4 (D. Or. Aug. 31, 2011) (dismissing forfeiture petition because petitioner "knew his son had been arrested and that the police had seized his son's bank account. Although he thought the evidence was slim that the Brightwood property had been used to facilitate defendant's criminal activity, there is no question that [petitioner] knew defendant was arrested for engaging in criminal activity and knew there was a possibility the property could be connected to the criminal activity. That is sufficient."); *United States v. Parenteau*, 647 F. App'x 601, 605 (6th Cir. 2016) (affirming denial of petition because at the time of acquiring the interest, petitioner was aware "that a grand jury was investigating several people, including Thomas, for money laundering, bank and wire fraud, and other criminal activities").

## III. The Updated Petition Must Be Dismissed

Four days before the Government's response to the Halle Petition was due—and 2.5 years after the preliminary order of forfeiture was docketed, and more than a year after Halle submitted

her original petition—Halle filed an updated petition (i.e., the Updated Petition).   Dkt. 768.   The Updated Petition is identical to the Halle Petition except that it adds a claim for Mark Scott's UBS Securities Account No. PW A5494 03 (i.e., the UBS Account).

The claim for the UBS Account should be dismissed because it is untimely and was in fact submitted after a final order of forfeiture for the UBS Account issued on March 25, 2026.   Dkt. 746 at ¶¶ (cc).

A petitioner must establish statutory standing through compliance with, among other things, the pleading requirements set forth at 21 U.S.C. § 853(n)(2), which clearly and unambiguously create a thirty-day window for third parties to file claims. If a third party files a claim after the thirty days has expired, the court should dismiss the claim as untimely.   *See United States v. Marion*, 562 F.3d 1330, 1339-40 (11th Cir. 2009) (21 U.S.C. § 853(n)(2) creates a thirty-day window for parties to file claims; claims not filed within the thirty-day window must be dismissed as untimely); *United States v. Weekley*, 2010 WL 5247936, *4 (N.D. Iowa Dec. 1, 2010) (recommending dismissal of claim filed four days after the filing deadline in §853(n)(2)) (Report and Recommendation); *United States v. Southall*, 2022 WL 1645800 (S.D. Ala. May 24, 2022) (court dismissed ancillary petitions where petitioners received direct notice of ancillary proceeding from government but failed to file petition within 30 days of receipt, concluding that 30-day rule was mandatory); *United States v. Grossman*, 501 F.3d 846, 848-49 (7th Cir. 2007) (claim filed by lienholder five months after it received notice of the order of forfeiture dismissed as untimely); *United States v. Fisher*, 2016 WL 225679, *2 (N.D. W.Va. Jan. 19, 2016) (petition filed nearly 4 months after deadline dismissed as untimely); *United States v. Muckle*, 709 F. Supp.2d 1371, 1372 (M.D. Ga. April 28, 2010) (dismissal of a claim filed 22 days late is mandatory; "the court cannot recognize an untimely claim"), *aff'd*, *United States v. Davenport*, 668 F.3d 1316, 1323 (11th Cir. 2012) (following Marion and noting "the written notice of forfeiture sent to Davenport's attorney was adequate, thereby triggering the mandatory 30-day period for filing third-party petitions and rendering Davenport's petition untimely"); *United States v. Carmichael*, 440 F. Supp. 2d 1280 (M.D. Ala. June 21, 2006) (claim filed long after the 30–day period in section 853(n)(2) was time barred); *United States* v. *Jackson*, 2011 WL 2262922, *4 (S.D. Ala. June 8, 2011) (the failure to file a petition within the thirty day time period extinguishes a third party's interests).

The United States Code and case law direct that if a third party does not file a claim within the required thirty days, "the United States shall have clear title to the property that is subject to the order of forfeiture."   *See* 21 U.S.C. § 853(n)(7), *United States v. Rashid*, 2009 WL 723382, *4 (E.D. Pa. Mar. 17, 2009), *aff'd*, 373 F. App'x. 234 (3d Cir. 2010); *see also United States v. Gilbert*, 244 F.3d 888, 910 (11th Cir. 2001).   As noted in the Advisory Committee Notes following Fed. R. Crim. P. 32.2(c), citing to *United States v. Hentz*, 1996 WL 355327, *4 (E.D.Pa. June 20, 1996): "if a third party has a notice of forfeiture but fails to file a timely claim, his or her interests are extinguished, and may not be recognized when the court enters the final order of forfeiture."   And in fact here, this Court has already ordered that, "All right, title, and interest in the Subject Property [defined to include the UBS Account] is hereby forfeited and vested in the United States of America," and "the United States of America shall and is hereby deemed to have clear title to the Subject Property.   Dkt. 746 at 5.

Even if Halle disputes the adequacy of the Government's notice, Halle was on notice of the Government's forfeiture application by at least July 11, 2025, when she filed the Halle Petition.    In fact, the Halle Petition even includes the Government's brief seeking to forfeit the UBS Account as an exhibit.    Dkt. 688-2 at page 9.    Yet Halle waited more than a year after that point to seek to contest the forfeiture of the UBS Account.    Her petition is untimely and must be dismissed.

In addition, the claim as to the UBS Account fails on the merits.    It, like the claim for the Coral Way Property, relies on the loan agreement she made with Scott on August 20, 2019.    But for the same reason that loan agreement did not satisfy either requirement of 21 U.S.C. § 853(n)(6) as to the Coral Way Property, it also does not satisfy either requirement for the UBS Account.[6]

### Conclusion

For the foregoing reasons, the Halle Petition and the Updated Petition should be dismissed.

Respectfully submitted,

JAMES M. MCDONALD
United States Attorney

By:      /s/
Kevin Mead / Juliana N. Murray
Assistant United States Attorneys
(212) 637-2211/2314

cc:    All Counsel of Record (by ECF)

---

[6] Unlike the claim for the Coral Way Property, Halle's claim for the UBS Account does include a perfunctory statement that, "At the time Ms. Halle acquired her security interest in the UBS Account, she was reasonably without cause to believe that the property was subject to forfeiture."    Updated Pet. at 16.    However, her own statements in the petition make clear that any such belief was not reasonable.    *See supra* at 6-7.