UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

United States of America,

Plaintiff,

v.

Mark S. Scott,

Defendant.

Marietta Halle,

Third-Party Petitioner

Case No. 1:17-cr-00630-ER

**MEMORANDUM OF LAW IN OPPOSITION TO THE GOVERNMENT'S MOTION TO DISMISS THE THIRD-PARTY PETITION OF MARIETTA HALLE**

**PRELIMINARY STATEMENT**

The government's motion to dismiss rests on a misapplication of federal forfeiture statutes and the established factual record. Rather than addressing the merits of Marietta Halle's claims, the government asks this Court to disregard controlling Second Circuit

precedent to avoid an evidentiary hearing. Ultimately, the government seeks to strip Ms. Halle, a widow and the documented victim of her own fiduciary attorney's fraud, of her secured property rights without affording her a day in court.

The government's motion fails on four distinct fronts. ***First***, the government attempts to bar Ms. Halle's claim to the UBS account as untimely, completely ignoring its own failure to provide her with the direct written notice required by the Constitution and the Federal Rules of Criminal Procedure. *See* Fed. R. Crim. P. 32.2(b)(6)(A); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 318 (1950) ("Where the names and post office addresses of those affected by a proceeding are at hand, the reasons disappear for resort to means less likely than the mails to apprise them of its pendency."). ***Second***, the government invokes the "relation-back" doctrine to defeat Ms. Halle's perfected judgment lien on the Coral Way property. This directly contravenes *United States v. Daugerdas*, 892 F.3d 545 (2d Cir. 2018), which holds that the relation-back doctrine does not apply to substitute assets[1]. ***Third***, Ms. Halle holds an equitable lien under Florida law that arose immediately upon the 2019 fraud, securing her interest years before the government's substitute-asset claim ever vested. *Craven v. Hartley*, 102 Fla. 282, 287–88, 135 So. 899, 901–02 (1931) (Brown, J., concurring). Finally, Ms. Halle has plausibly pleaded her status as a *bona fide* purchaser for value. 21 U.S.C. §

[1] Immediately after making the above observation, the court substantially qualified it. The court explained that § 853(n)(6)(A), the provision governing third-party petitions in forfeiture proceedings, "does not distinguish between contested property initially forfeited as offense proceeds and property forfeited as substitute assets." *Id*. at 555-5556. Instead, that provision requires that any third-party claimant's interest in forfeited property must have been superior to the defendant's "at the time of the commission of the acts which gave rise to the forfeiture," regardless of whether the contested property consists of proceeds or substitute assets.

853(n)(6)(B). To conclude that she had "cause to believe" the collateral was forfeitable, the government demands that this Court resolve disputed facts against the petitioner and turn a blind eye to the documented, systematic deceit her attorney employed to isolate and exploit her. *United States v. Watts*, 786 F.3d 152, 161 (2d Cir. 2015) ("We must assume all facts alleged in the petition to be true, affirming the dismissal only where the plaintiff fails to plead any "factual content that allows the court to draw the reasonable inference that" he is entitled to relief.").

Because Ms. Halle's claims are timely, legally superior, and plausibly pleaded, the government's motion must be denied.

## ARGUMENT

### I. The Claim to the UBS Account Is Timely Because the Government Failed to Provide Mandatory Direct Notice.

The government urges the Court to dismiss Ms. Halle's supplemental claim to the UBS account (PW A5494 03) (Dkt. 689-2, Appx. B) because it was filed outside the 30-day statutory window of 21 U.S.C. § 853(n)(2). Respectfully, a statutory clock cannot expire if it never started.

Rule 32.2(b)(6)(A) of the Federal Rules of Criminal Procedure requires the government to "send notice to any person who reasonably appears to be a potential claimant with standing to contest the forfeiture in the ancillary proceeding." Fed. R. Crim. P. 32.2(b)(6)(A). This rule enforces the bedrock due process principle that publication notice is constitutionally defective when the government knows the identity and location of an interested party. *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 318 (1950) ("As to known present beneficiaries of known place of residence, however, notice by publication stands on a different footing. Exceptions in the name of necessity do not sweep

away the rule that within the limits of practicability notice must be such as is reasonably calculated to reach interested parties. Where the names and post office addresses of those affected by a proceeding are at hand, the reasons disappear for resort to means less likely than the mails to apprise them of its pendency.”).

The government has known of Ms. Halle’s secured interest for years. In November 2018, federal prosecutors subpoenaed her and conducted a *proffer* session. Dkt. 689-1, Exs. 2-3. During its investigation, the government acquired the Secured Promissory Note explicitly pledging the UBS account as collateral. Dkt. 689-3, Ex. 13. Despite possessing actual knowledge of Ms. Halle’s security interest and the identity of her counsel, the government never sent her direct written notice of the preliminary order of forfeiture. Dkt. 689 at 7. As such, the 30-day deadline was never properly triggered.

**<u>A. Alternatively, the Deadline is Subject to Equitable Tolling.</u>**

Even if publication notice somehow triggered the 30-day clock, Ms. Halle's claim is timely under the doctrine of equitable tolling. The Supreme Court has established that non-jurisdictional filing deadlines are presumptively subject to equitable defenses. *Boechler, P.C. v. Comm'r of Internal Revenue*, 596 U.S. 199, 206 (2022). Applying the equitable tolling doctrine here is appropriate: Ms. Halle was an unrepresented layperson deliberately misled by her trusted fiduciary, the very attorney who defrauded her [State Court Amended Complaint, D.E. 42 at ¶¶ 15-20], and the government’s own investigative file proves it possessed actual knowledge of her claim. [Dkt. 689-1, Exs. 2-3].

**II. Ms. Halle’s Perfected Judgment Lien Is Superior to the Government’s Claim on the Untainted Substitute Equity.**

The government attempts to use the relation-back doctrine to extinguish Ms. Halle’s judgment lien on the 600 Coral Way condominium. This argument misstates Second Circuit

law. The government established that Mark Scott used $1,000,794.66 of tainted funds to pay off the mortgage on the property. (Gov't Mem. in Supp. of Prelim. Order of Forfeiture, Dkt. 318, at 44). The remaining equity in the condominium is legitimate. Recognizing this, the government explicitly seeks to forfeit Mr. Scott's remaining 50 percent interest not as tainted proceeds, but as a "substitute asset" under 21 U.S.C. § 853(p). Gov't Reply Mem., Dkt. 392, at 8.

The law of this Circuit is clear: The relation-back doctrine does not apply to substitute assets. *United States v. Daugerdas*, 892 F.3d 545, 553 (2d Cir. 2018) (but see footnote 1, *supra*). As a result, the government's interest in substitute property does not vest until the court enters an order forfeiting those specific assets. *See, e.g., United States v. Espada*, 128 F. Supp. 3d 555, 560, 564–65 (E.D.N.Y. 2015).

The Court entered the preliminary order of forfeiture on February 2, 2024. (Prelim. Order of Forfeiture, Dkt. 612)]. Ms. Halle, however, perfected her $1.34 million judgment lien against the property under Florida law in November 2021. [Dkt. 689-3, Exs. 14-15]. If the relation-back doctrine does not apply to the untainted substitute equity, Ms. Halle's 2021 perfected judgment lien firmly predates the government's 2024 vested interest.

**III. Ms. Halle Holds an Independent, Superior Equitable Lien Under Florida Law.**

Independent of her perfected judgment lien, Ms. Halle holds an equitable lien over the Coral Way equity that is superior to the defendant's interest. 21 U.S.C. § 853(n)(6)(A). State law determines a petitioner's legal interest in the property at issue. *Willis Mgmt. (Vermont), Ltd. v. United States*, 652 F.3d 236, 242 (2d Cir. 2011). Florida law, which governs the Coral Way property, recognizes that an equitable lien arising from fraud relates back to the exact transaction out of which it arose, rather than to the later date of its judicial recordation. *In re*

*Diamond*, 196 B.R. 635, 639 (Bankr. S.D. Fla. 1996) ("Generally under Florida law, the imposition of an equitable lien based upon general considerations of right or justice requires some equitable basis supporting a court's equitable jurisdiction such as fraud, mutual mistake, estoppel or reprehensible conduct" (internal citation omitted). Mr. Scott committed the underlying fraud and issued the promissory note in August 2019 [State Court Amended Complaint, D.E. 42]. This equitable interest predates the government's substitute-asset interest, which vested no earlier than 2024. *Espada*, 128 F. Supp. 3d at 566 ("Accordingly, the government's interest in Mr. Espada's pension vested on January 23, 2014, when the Court entered a preliminary order forfeiting his pension as substitute property. Mrs. Espada's interest in the pension, which she acquired in January 2011, was therefore "vested in the petitioner rather than the defendant ... at the time of the commission of the acts which gave rise to the forfeiture of the property...." 21 U.S.C. § 853(n)(6)(A).").

## IV. Ms. Halle Has Plausibly Pleaded Her Status as a *Bona Fide* Purchaser for Value.

To retain her security interest in the UBS account, Ms. Halle must demonstrate that she was a *bona fide* purchaser for value who was "reasonably without cause to believe that the property was subject to forfeiture." 21 U.S.C. § 853(n)(6)(B). The government argues that her knowledge of Mr. Scott's indictment automatically gave her cause to believe his assets were forfeitable. This argument demands that the Court ignore the extraordinary abuse of a lawyer/client and fiduciary relationship.

On a motion to dismiss a third-party petition, the Court must accept the factual allegations as true and draw all reasonable inferences in the petitioner's favor. *Pacheco v. Serendensky*, 393 F.3d 348, 352 (2d Cir. 2004). Ms. Halle's petition details a chilling narrative

of fiduciary deceit. Mr. Scott was not an arm's-length borrower; he was Ms. Halle's trusted legal adviser, managing the estate of her late husband. Dkt. 689 at 1-2. When she questioned whether she should obtain independent counsel, he actively isolated her. On November 4, 2017, he instructed her in writing: "You don't have to." See, Nov. 4, 2017, Email Exchange, attached to Supp. Pet.

When Mr. Scott solicited the $500,000 loan in August 2019 (Supp. Pet. ¶ 7), he did not simply ask for money. He provided a written, affirmative misrepresentation regarding the specific collateral. He assured Ms. Halle that the assets "cannot be challenged by the government as they have already cleared." *See*, Aug. 11, 2019, Email, quoted in State Court Complaint ¶ 26.

The statute asks whether she was "reasonably" without cause to believe the property was subject to forfeiture. Reasonableness is heavily dependent on context. S*ee e.g., United States v. Watts,* 786 F.3d 152 (2d Cir. 2015) It is entirely plausible that a grieving widow, in a foreign land, manipulated and isolated by her fiduciary attorney, would reasonably rely on his explicit written assurance that federal prosecutors had cleared the specific assets securing her loan. By providing a $500,000 cash loan in exchange for the Secured Promissory Note (Dkt. 689-3, Ex. 13), Ms. Halle independently satisfied the "value" requirement of § 853(n)(6)(B) as a matter of law. *Id*. at 590–91.

Finally, the Eighth Amendment's Excessive Fines Clause serves as a constitutional backstop. The Second Circuit holds that forfeiting an innocent party's interest in property can be unconstitutionally excessive where that party's own culpability is minimal or nonexistent. *von Hofe v. United States*, 492 F.3d 175, 184–86, 188–89 (2d Cir. 2007); U.S. Const. amend. VIII. Depriving a defrauded widow of her $500,000 loan collateral and her $1.34 million

judgment lien to satisfy a forfeiture judgment against her own corrupt fiduciary raises a substantial question of gross disproportionality.

**CONCLUSION**

For the foregoing reasons, the government's motion to dismiss should be denied, and the Court should schedule an ancillary hearing to adjudicate Ms. Halle's superior interests.

Respectfully submitted,

**Law offices of Neil G. Taylor, P.A.**
1023 Manatee Avenue W
Bradenton, Florida, 34205
305/794-1575 (O)
941/748-0158 (Fax)
By: /s/Neil G. Taylor
Neil G. Taylor
NY Bar Reg. No.: 2075919
ngt@bellsouth.net
mgroseclose@grimesgalvano.com

**QUARANTA P.A.**
1600 Ponce de Leon Blvd.
10th Floor
Coral Gables, FL 33134
Telephone 305.930.6077
By: */s/ **John M. Quaranta***
John M. Quaranta
Florida Bar No. 940641
john.quaranta@quaranta.law
paul.okomo@quaranta.law